UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BETTY ANNE WATERS, as )
Administratrix of the Estate of )
KENNETH WATERS, )
          Plaintiff, )
)
v. )
) C.A. No. 04-10521-GAO
TOWN OF AYER, NANCY TAYLOR- )
HARRIS, in her individual capacity, )
ARTHUR BOISSEAU, in his individual )
capacity, BUDDY DECOT, in his )
individual capacity, WILLIAM )
ADAMSON, in his individual capacity, )
PHILIP L. CONNORS, in his individual )
capacity, an JOHN DOE AND JANE )
DOES 1-16, in their individual capacities, )
          Defendants. )
)

## MEMORANDUM OF LAW IN SUPPORT OF KEEPER OF THE RECORDS, MIDDLESEX COUNTY DISTRICT ATTORNEY'S OFFICE'S MOTION TO QUASH SUBPOENA FOR DOCUMENTS

### Introduction

This memorandum of law is submitted by the Keeper of the Records of the Office of the District Attorney of Middlesex County (hereinafter, "the District Attorney's Office"), through counsel, in support of its motion to quash the subpoena issued to the District Attorney's Office in connection with the above referenced case. As grounds for this motion, and set forth in greater detail in this memorandum of law, the subpoena should be quashed because it seeks disclosure of privileged and/or other protected matter to which no waiver or exception applies. Specific common law and statutory provisions of Federal and Massachusetts law require the confidentiality of this information and forbid its dissemination. *See* Fed. R. Civ. P. 26(b)(3);

Fed. R. Civ. P. 45(C)(3)(A)(iii); Mass. Gen. L. ch. 4, § 7, clause twenty-sixth; Mass. Gen. L. ch. 6 §§ 167-178; Mass. R. Crim. P. 5(d); Mass. Gen. L. ch. 66, § 10. Moreover, to the extent that the subpoena seeks information which is not privileged, this information is available from other sources. The subpoena simply seeks unfettered access to the District Attorney's files, including materials gathered as part of it's investigation of an unsolved crime, which should not be permitted, the subpoena should be quashed. In the alternative, the District Attorney's Office requests that this Court issue an appropriate protective order in its favor.

## Background

The subpoena which is the subject of the instant motion was served in connection with a civil case, seeking damages for alleged violations of the plaintiff's civil rights in connection with Kenneth Waters's arrest and conviction on charges of murder and armed robbery. The facts are, briefly, as follows: on May 21, 1980, Katherine Reitz Brow was found stabbed to death in her Ayer, Massachusetts trailer home by her daughter-in-law.[1] The police department of the Town of Ayer conducted an investigation of this crime. As a result of the police department's investigation, the plaintiff was arrested for, charged with, and convicted of murder and armed robbery. After serving nineteen years of a life sentence, the plaintiff was exonerated by virtue of DNA evidence which showed that the blood evidence used against him at trial was not his.[2]

The plaintiff, Kenneth Waters's estate now claims that the conduct of the defendants in

---

[1] Unless noted otherwise, all facts set forth in this memorandum are drawn from the plaintiff's complaint.

[2] The plaintiff made a motion for new trial, which was granted. Subsequently, the Middlesex District Attorney's Office file a nolle prosequi in the matter.

2

this matter constituted a violation of his Fourteenth Amendment right to Due Process, under 42 U.S.C. § 1983, for failure to disclose material exculpatory evidence and impeachment evidence, and fabrication of inculpatory evidence.

As part of the discovery process in this case, plaintiff's counsel issued a subpoena seeking:

> A complete copy of the Middlesex County District Attorney's files in the case of *Commonwealth v. Kenneth Waters* (Middlesex Superior Court Docket Nos. 82-2026 and 82-2027). This request includes all documents from the initial investigation into the murder and robbery, up to and including the re-opening of the investigation with Mr. Waters as the target, and the prosecution of Mr. Waters... all documents regarding any investigation that took place after his conviction and leading up to the decision of the District Attorney's Office to nol pros the charges, and all documents regarding any investigation into the murder and robbery since Mr. Waters's exoneration.[3]

*See* Subpoena, attached hereto as Exhibit A.

The Middlesex District Attorney's Office now moves to quash the subpoena served by plaintiff's counsel.

### Argument

<u>The Requested Documents Should Not Be Disclosed Because the Documents Are Privileged and No Waiver of or Exception to the Privileges Applies.</u>

Under the Federal Rules of Civil Procedure, the scope of examination of documents is expressly limited, and a subpoena shall be quashed to the extent that it "requires disclosure of privileged or otherwise protected matter." Fed. R. Civ. P. 45(c)(3)(A)(iii). The subpoena at issue in this case seeks the production of documents that are privileged, and should not, therefore, be enforced. Specifically, the documents are protected by several common-law and

---

[3] Subsections of the plaintiff's subpoena are omitted. *See* Exhibit A for complete subpoena.

statutory restrictions, including the investigative privilege, and the District Attorney is prohibited by law from disclosing them. *See, e.g.,* Fed. R. Civ. P. 45(C)(3)(A)(iii); Fed. R. Civ. P. 26(b)(3); Mass. Gen. L. ch. 4, § 7, clause twenty-sixth; Mass. Gen. L. ch. 6 §§ 167-178; Mass. R. Crim. P. 5(d); Mass. Gen. L. ch. 66, § 10.[4]

A.)     **Investigative Privilege**

The District Attorney's records are privileged where they constitute criminal investigatory documents compiled by law enforcement personnel. The public interest in maintaining the confidentiality of documents that would tend to reveal law enforcement investigative techniques or sources is well established. *See United States v. Cintolo*, 818 F.2d 980, 1002 (1st Cir.), *cert. denied*, 484 U.S. 913 (1987); *Association for Reduction of Violence v. Hall*, 734 F.2d 63, 65-66 (1st Cir. 1984); *Black v. Sheraton Corp. of America*, 564 F.2d 531, 545-46 (D.C. Cir 1977)(and cases cited therein).

This privilege, well-established in federal jurisprudence, is properly applied in this case, where Massachusetts recognizes a virtually identical privilege. *See In re Hampers*, 651 F.2d 19, 22 (1st Cir. 1981); *N.O. v. Callahan*, 110 F.R.D. 637, 642-43 (D.Mass. 1986); G.L. c. 4, § 7, cl. Twenty-Sixth, Exemption (f). *See also WBZ-TV4 v. District Attorney for the Suffolk District*, 408 Mass. 595, 603, 562 N.E.2d 817 (1990); *Bougas v. Chief of Police of Lexington*, 371 Mass. 59, 62-63, 354 N.E.2d 872 (1976). Massachusetts law, specifically Mass. Gen. L. ch. 4 § 7, cl. 26, exemption (f) recognizes that the disclosure of certain investigatory materials "could so detract from effective law enforcement to such a degree as to operate in derogation, and not in

---

[4] A general description of the documents or groups of documents contained in the *Waters* file and the applicable privileges are set forth in the Privilege Log attached as Exhibit B.

support of, the public interest." *Bougas*, 371 Mass. at 61-62. The exemption is intended, *inter alia*, to prevent disclosure of confidential investigative techniques, procedures or sources of information, and to encourage private citizens to "come forward and speak freely concerning matters under investigation." *Id.* at 62. *See also Globe Newspaper Company v. Police Commissioner of Boston*, 419 Mass. 852, 858-59, 648 N.E.2d 127 (1995); *WBZ-TV4*, 408 Mass. at 603. If information provided by the public to the District Attorney is to become subject to disclosure in collateral civil proceedings, then members of the public will be discouraged from providing information to law enforcement officials in the first place for fear of becoming involved in later civil proceedings. *Bougas*, 371 Mass. at 61-62. Further, disclosure would impair law enforcement officials candor in discussing and recording their observations, hypotheses and conclusions. *Id.* at 62.

This privilege applies equally to concluded investigations as it does to ongoing investigations. *See Black*, 564 F.2d at 546; *Bougas*, 371 Mass. at 63. As was set forth in *Black*:

> It is clear that if investigatory files were made public subsequent to the termination of enforcement proceedings, the ability on any investigatory body to conduct future investigations would be seriously impaired. Few persons would respond candidly to investigators if they feared that their remarks would become public record after proceedings. Further, the investigative techniques of the investigation body would be disclosed to the general public."

*Black*, 564 F.2d at 546, (quoting *Aspin v. Department of Defense*, 491 F.2d 24, 30 (D.C. Cir. 1973)(internal quotation marks omitted).

The law enforcement investigative privilege exists to prevent "the harm to law enforcement efforts which might arise from public disclosure of ... investigatory files." *Raphael v. Aetna Cas. & Surety Co.*, 744 F.Supp. 71, 74 (S.D.N.Y. 1990)(quoting *Black v. Sheraton*

*Corp.*, 564 F.2d 531, 541 (D.C. Cir 1997)). The privilege serves, *inter alia*, "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dept. of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988). This rational is especially applicable to the present case where many of the documents that the plaintiff seeks are part of an on-going, active investigation. Protection of the Middlesex District Attorney's files are paramount where disclosure of those files would severely jeopardize the success of the on-going investigation and prosecution.

The documents subject to the plaintiff's subpoena include such documents as police reports in the District Attorney's investigative file; grand jury testimony; the assistant district attorney's hand-written notes; drafts and outlines; confidential reports; communications with witnesses and potential witnesses; communications with police officers; and criminal records. The documents were prepared out of the public view, and have not been disclosed to the public. The documents, therefore, fall squarely within the law enforcement investigative privilege. *See, e.g., Association for Reduction of Violence*, 734 F.2d at 65-66; *Black*, 564 F.2d at 545-46; *Cincotti*, 678 F.Supp. at 347-48.

### B.)   <u>Attorney Work Product</u>

Subpart (10) of the plaintiff's subpoena seeks documents which are plainly protected by the attorney work-product doctrine.[5] Subpart (10) demands the following;

---

[5] To the extent that the plaintiff's subpoena contains any other demand for materials and/or documents containing work-product apart from those demanded in subpart (10), this discussion would apply equally to those documents.

6

  (10) Copies of drafts, reports, notes, memoranda, diagrams, video or audio tapes, maps or any other writing or recording of any information prepared by the prosecuting attorney(s), investigating officers, forensic examiners, witnesses, informants, and/or suspects in the investigation of this case.

*See* Exhibit A at p. 2. The protections accorded work-product are well established. *See* Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947). Before gaining access to such carefully protected material, the plaintiff must establish both substantial need and undue hardship. *Id.* There is no evidence in the present case that the plaintiff has a substantial need for the Middlesex District Attorney's work product nor is there a showing of substantial hardship.

  Moreover, many of the attorney-work product documents in the *Waters* files contain the "mental impressions, conclusions, opinions, or legal theories" of the Middlesex District Attorney's Office, which must not be disclosed even if a showing of need for "ordinary" work product is made. *See In re San Juan Dupont Hotel Plaza Fire Litig.*, 859 F.2d 1007, 1014-15 (1st Cir. 1988)(discussing difference between "ordinary" and "opinion" work product and higher level of protection accorded the latter); *In re Grand Jury Subpoena (Legal Svcs. Center)*, 615 F. Supp. 958, 962-63 (D. Mass. 1985)(at a minimum, the requesting party must make a "far stronger showing of necessity and unavailability by other means" than is required for ordinary- *i.e.*, fact-work product)(quoting *Upjohn Co. v. United States*, 449 U.S. 383, 401-02 (1981)).

  Furthermore, although the Middlesex District Attorney's Office is not a party to this action, it still has the full protection of the attorney work-product doctrine. *See Slack v. Federal Trade Comm'n*, 1980 WL 1984, *3 (D. Mass., Nov. 18, 1980)("[T]he attorney work product privilege protects documents prepared in anticipation of litigation with third parties in unrelated cases"); *In re Grand Jury Subpoena*, 2004 WL 515651, *20-22 (D. Mass., Mar. 16,

2004)(Supreme Court decisions do not support view that work-product protection ends with the conclusion of the litigation; after surveying opinions from other circuits, court holds that work-product doctrine extends to subsequent lawsuits, even if those suits are unrelated to the first litigation).

### C.) <u>**Criminal Offender Record Information**</u>

Under Massachusetts law, the District Attorney is prohibited from disclosing criminal offender record information ("CORI records"). *See* Mass. Gen. L. ch. 6 §§ 167-178. Such information includes all records "which concern an identifiable individual" and which "relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, other judicial proceedings, sentencing, incarceration, rehabilitation, or release." *Id.* at § 167. *See also Globe Newspaper Co. v. District Attorney for the Middle District*, 439 Mass. 374, 385, 788 N.E.2d 513, 521 (2003)(CORI records include information in district attorney's criminal files, including background information on criminal defendants).

CORI documents may not be disclosed to anyone other than criminal justice agencies or "agencies and individuals required to have the information by statute," unless the Criminal History Systems Board ("CHSB") approves disclosure to an individual or entity. *See Globe Newspaper*, 439 Mass. at 380-81, 385, 788 N.E.2d at 518-19, 521 (interpreting G.L. c. 6, § 172 to prohibit disclosure of CORI documents unless a CHSB determination has been made that "disseminating the information [to a person or entity not covered under § 172] 'clearly outweighs the interest in security and privacy.'"). Because the plaintiff has not sought such an order from the CHSB, the Middlesex District Attorney is prohibited from disclosing such records as a matter

of Massachusetts law.

The Middlesex District Attorney's file contains arrest records and background information relating to other un-named individuals related to this case. These documents are subject to Massachusetts General Law chapter 6 §§ 167-178 and the public interest does not outweigh those un-named individuals security and privacy interests where the information sought is not relevant to the plaintiff's civil rights claims. Without such a determination from CHSB that such documents may be disclosed, the Middlesex District Attorney cannot produce them.

### D.  Invasion of Privacy

Massachusetts General Law, chapter 4, § 7 cl. 26(c) creates a privacy exemption from the requirements of the Massachusetts public records statute, Mass. Gen. L. ch. 66, § 10. The provision exempts any "personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." Mass. Gen. L. ch. 4, § 7 cl. 26(c). "Information falling within the 'personnel and medical files or information' category is absolutely exempt from disclosure." *Wakefield Teachers Ass'n v. School Committee of Wakefield*, 431 Mass. 792, 800, 731 N.E.2d 63, 69 (2000). All "other materials or data relating to a specifically named individual" require a showing of "unwarranted invasion of personal privacy," for the exemption to apply. It is clear from the provision that "[t]he Legislature saw the need to establish a more sensitive and particularized balance between the public interest in disclosure and the individual's interest in personal privacy...." *Id.* at 801.

The plaintiff's demand for results of DNA testing on individuals other than Kenneth

Waters falls squarely within the two categories of information protected under Mass. Gen. L. ch. 4 § 7 cl. 26(c). Specifically, the DNA results of those individuals tested would be "medical files or information" and should be considered "absolutely exempt from disclosure." *Wakefield Teachers Ass'n*, 431 Mass. at 800, 731 N.E.2d at 69. Furthermore, the identity of those individuals and the results of the their DNA tests, if disclosed, would "constitute an invasion of [their] personal privacy." *Hastings & Sons Publishing Co. v. City Treasurer of Lynn*, 374 Mass. 812, 817, 375 N.E.2d 299, 303 (1978). Documents regarding DNA test results are replete with "intimate details of a highly personal nature," and therefore are exempt. *Id.* at 818, 275 N.E.2d at 303.

Finally, it is appropriate for this court to recognize the provisions of the Massachusetts privacy exemption where Massachusetts "would recognized the privilege [being] asserted," and the privilege is 'intrinsically meritorious." *Krolikowski v. University of Massachusetts*, 150 F. Supp.2d 246, 248 (D. Mass. 2001). There is no doubt that the privacy exemption is recognized under Massachusetts law, as it is codified under Mass. Gen. L. ch. 4, § 7 cl. 26(c). Furthermore, the exemption is "intrinsically meritorious." *Id.* The Massachusetts privacy exemption is based on 5 U.S.C. § 552(b)(6), the Federal public records exemption, *Wakefield Teachers Ass'n*, 431 Mass. at 796, 731 N.E.2d at 66) and "closely tracks the language of the...exemption. *Hastings*, 374 Mass. at 818, 375 N.E.2d at 304 n. 8. The Federal and the Massachusetts exemptions were both created to protect the privacy interests of the public and to prevent the release of public records that could result in "an unwarranted invasion of privacy." *Wakefield Teachers Ass'n*, 431 Mass. at 797, 731 N.E.2d at 67. Accordingly, the Massachusetts privacy exemption is

"intrinsically meritorious," and this Court should recognize the exemption. *Krolikowski*, 150 F. Supp.2d at 248.

### E.) Mass. R. Crim. P. 5(d)

Under the Massachusetts Rules of Criminal Procedure, Rule 5(d), "a person performing an official function in relation to the grand jury may not disclose matters occurring before the grand jury except in the performance of his official duties or when specifically directed to do so by the court." Mass. R. Crim. P. 5(d). This rule is intended to insure the tradition of grand jury secrecy. The Supreme Court of the United States has recognized the importance of this tradition of secrecy, even after the grand jury has completed its function. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979). There are several important justifications for the continuance of grand jury secrecy:

> First, if pre-indictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testified would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Id.* at 219. For a party to effectively circumvent the secrecy that attaches to grand jury proceeding the **moving party** must show, "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. *Id.* at 222 (emphasis added). A court has substantial discretion to determine whether grand jury transcripts should be release to the moving party. *Id.*

In the present case, the plaintiff's need for disclosure of transcripts from grand jury testimony that took place subsequent to the exoneration of the plaintiff, which is intended to be used in an open and active investigation, is not greater than the need to protect the identity of the witness and the content of the testimony. Further, the plaintiff's demand for such documents are generalized and do not cover only those materials so needed.

### F.) Mass. Gen. L. ch. 66, § 10

A further restriction on the ability to divulge the information sought by the plaintiff is found in Mass. Gen. L. ch. 66, § 10, which provides that "[t]he home address and telephone number or place of employment or education of victims of adjudicated crimes ... and the name and home address and telephone number, or place of employment or education of a family member of any of the foregoing shall not be public records... and shall not be disclosed." Mass. Gen. L. ch. 66, § 10.

In light of the provisions set forth in Mass. Gen. L. ch. 66, § 10, the request contained in the subpoena is clearly overly broad, and the District Attorney cannot lawfully comply with the subpoena. Accordingly, the subpoena should be quashed.

### The Subpoena Should Be Quashed Because The Information Sought, To The Extent That It Is Not Privileged, Is Available From Other Sources.

Beyond the fact that both concerns of privilege and applicable statutes suggest that the documents should not be disclosed, the subpoena should be quashed because the information sought by the plaintiff is available from other sources. It is well recognized that attempts to seek discovery of evidentiary material through subpoenas to district attorneys is not favored, unless the party seeking discovery makes a showing that such material is not available by other means.

12

*See Gomez v. City of Nashua*, 126 F.R.D. 432, 436 (D.N.H. 1989). Compelling prosecutors to make evidentiary disclosures "absent the showing of a compelling need would violate public policy concerns that the time and resources of that office be conserved for the public business." *Id.* In short, courts have recognized that the function of a district attorney's office is to prosecute crimes, not serve as a font of information for civil proceedings.

Here, the materials sought by the plaintiff are explicitly available from other sources. For example, the plaintiff specifically requests "all police reports" in the file, which should be available from the Ayer Police Department. Further, much of the District Attorney's file consists of pleadings and transcripts, which should be available in the Middlesex County Superior Court clerk's office. Moreover, the file contains correspondence between the Innocence Project and the Middlesex District Attorney's Office and the results of DNA testing done on Kenneth Waters provided by the Innocence Project, which, presumably, are all in the possession of plaintiff's attorneys.

## Conclusion

For all the foregoing reasons, the Middlesex County District Attorney's Office respectfully requests that this Court quash the subpoena issued for the District Attorney's files regarding Kenneth Waters.

Respectfully submitted,

MIDDLESEX COUNTY DISTRICT
ATTORNEY'S OFFICE,

By their attorney,

THOMAS F. REILLY,
ATTORNEY GENERAL

/s/ Cathryn Neaves
Cathryn Neaves
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2557
BBO # 556798

Dated: April 28, 2005

### CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2005 I served a true copy of the undersigned to plaintiff by mailing a copy of the same, first-class mail, postage pre-paid, to his counsel as follows: Howard Friedman, Esq., 90 Canal Street, Boston, Massachusetts 02114.

/s/ Cathryn A. Neaves
Cathryn A. Neaves