UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 04 Civ. 10521 (GAO) |
| v. | ) ) ) | **PLAINTIFF'S MEMORANDUM IN** |
| TOWN OF AYER, NANCY TAYLOR-HARRIS, in her individual capacity, ARTHUR BOISSEAU, in his individual capacity, BUDDY DECOT, in his individual capacity, WILLIAM ADAMSON, in his individual capacity, PHILIP L. CONNORS, in his individual capacity, and JOHN DOE and JANE DOES 1–16, in their individual capacities, | ) ) ) ) ) ) ) ) ) | **OPPOSITION TO MIDDLESEX COUNTY DISTRICT ATTORNEY'S OFFICE'S MOTION TO QUASH SUBPOENA FOR DOCUMENTS** <br><br>**ORAL ARGUMENT REQUESTED** |
| Defendants. | ) ) ) | |

The Keeper of the Records of the Office of the District Attorney of Middlesex County ("MCDA"), a non-party to this action, has moved to quash plaintiff Betty Anne Waters's subpoena for the prosecution file in *Commonwealth v. Kenneth Waters*, Nos. Cr. 82-2026 and 82-2027 (Middlesex Sup. Ct), the murder prosecution underlying this 42 U.S.C. § 1983 wrongful conviction action. The MCDA claims that disclosing the subpoenaed documents would violate various federal and state-law privileges and that the subpoena should also be quashed because the information sought is otherwise available. However, this motion, like the three almost identical motions brought by non-party Massachusetts District Attorney's offices in three other § 1983 wrongful conviction cases in this District, should be rejected because the information sought is relevant, probative, not available from any other source, and, most importantly, not privileged. As found by the Hon. Rya Zobel in

1

L. Tauro in *Miller v. City of Boston, et al.*, No. 03 Civ. 10805 (JLT), and by the Hon. Michael A. Ponsor of the Springfield Division in *Velazquez v. City of Chicopee, et al.*, No. 03 Civ. 30249 (MAP), where, as here, an innocent man spent years in prison for a crime he did not commit and has been exonerated by DNA testing, the need for secrecy is outweighed by the plaintiff's and the public's need to discover what went wrong.

**Procedural History**

This 42 U.S.C. § 1983 lawsuit seeks to expose and redress constitutional violations by Ayer police officers that led Mr. Waters to be wrongly arrested and convicted of murder and armed robbery, for which he served nineteen years in prison before DNA testing fully exonerated him. Based on the results of the DNA testing, Middlesex County District Attorney Martha Coakley consented to Mr. Waters's release after his conviction was vacated on March 16, 2001, and entered a *nolle prosequi* on June 19, 2001. This § 1983 action followed, alleging that defendant Town of Ayer police officers engaged in concerted misconduct such as fabricating evidence (including false and coerced witness statements) and suppressing or destroying material exculpatory and impeachment evidence (including Mr. Waters's time cards, which were dispositive alibi evidence) in order to secure the unfair trial, conviction, and lengthy imprisonment of an innocent man.

On April 11, 2005, plaintiff Betty Anne Waters (Kenny Waters's sister and now the administratrix of his estate), served the MCDA with a subpoena for its complete files in Mr. Waters's murder prosecution. Counsel for the MCDA left a single voicemail message for plaintiff's counsel indicating that a motion to quash would be filed, and indeed filed it before any negotiation could be attempted, in violation of Local Rule 7.1(a)(2), which mandates good-faith discussion between counsel prior to the filing of any motion. Had the MCDA complied with the rule and

offered a real opportunity to confer, counsel would have offered to stipulate to a suitable protective order in the hopes of avoiding the need for motion practice. Likewise, counsel would have urged the MCDA's counsel not to file the motion in light of the outcomes in *Sarsfield*, *Miller* and *Velazquez* – although these cases are not new to the MCDA's counsel, since the Criminal Appeals Bureau of the Massachusetts Attorney General's Office has now represented the D.A.s' offices in all four cases, and *Sarsfield* involved the same non-party movant, the MCDA.

In *Sarsfield*, Judge Zobel ordered the production of the entire, unredacted MCDA prosecution file – including grand jury transcripts and prosecutors' notes – subject to a protective order. (*See* No. 1:03 Civ. 10319(RWZ), docket entries of March 15, 2004 and May 11, 2004, attached as Exhibit 1). In *Miller*, Judge Tauro ordered the production of "all materials that were provided to Plaintiff's trial counsel during the course of Plaintiff's criminal trial" by the Suffolk County D.A.'s Office, ordered that the SCDA make its entire file available for review by plaintiff's counsel before additional sealed briefing, and ultimately ordered the production of the entire prosecution file under a protective order.[1] In *Velazquez*, Judge Ponsor similarly ordered the Hampden County D.A.'s Office to allow plaintiff's counsel to review its entire file for additional briefing, and ultimately ordered the production of the bulk of the prosecution file subject to a protective order.[2]

Here, the MCDA seeks to quash the subpoena based on the following objections:

1. "Investigative privilege" arising under the common law;
2. Attorney work product;

---

[1] *See Miller v. City of Boston, et al.,* No. 03 Civ. 10805 (JLT), Slip Orders of June 14, 2004 and January 25, 2005, attached as Exhibits 2 and 3.

[2] *See Velazquez v. City of Chicopee, et al.,* No. 03 Civ. 30249 (MAP), Slip Orders of Oct. 14, 2004 and December 30, 2004, attached as Exhibits 3 and 4.

3.     State-law protections for Criminal Offender Record Information ("CORI");

4.     State-law invasion of privacy for the results of DNA testing on other suspects;

5.     State-law statutory protections for grand jury materials;

6.     State-law statutory protections for personal information about crime victims; and

7.     The information is "available from other sources."

Just as in *Sarsfield*, *Miller* and *Velazquez*, these claimed privileges cannot thwart the broad federal discovery rules which foster the vindication of federal constitutional rights.

## Argument

## I.    Broad Federal Discovery Rules Trump State-Law Privileges in this § 1983 Action

Although the MCDA has asserted several state-law objections, the Federal Rules of Civil Procedure, not state laws, govern discovery in this federal civil rights dispute. *See National Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000); *Miller v. Pancucci*, 141 F.R.D. 292, 297 (C.D. Cal. 1992) ("It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state or local authorities."); *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) ("state law does not govern discoverability and confidentiality in federal civil rights actions"); Fed. R. Evid. 501 (state-law privileges apply only to state-law claims or defenses).

The test for discoverability is relevancy, defined by the Federal Rules as information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This threshold has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case," *Oppenheimer Fund, Inc. v Sanders*, 437 U.S. 340, 350 (1978) (citing *Hickman v. Taylor*, 329 U.S.

495, 500-01 (1947)), and is even lower in this civil rights action because "[t]he great weight of policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery." *King*, 121 F.R.D. at 195. Thus, the unique policy interests favoring discovery in civil rights cases weigh heavily in balancing the need for discovery and any countervailing interests asserted. The MCDA fails to challenge the relevance of the subpoenaed file.

The MCDA's claims of state-law investigative privilege, work-product privilege, CORI protection, privacy privilege, grand jury testimony secrecy, and victim information secrecy are all trumped by the strong federal interest in vindicating federal constitutional rights via § 1983. In *In re Hampers*, 651 F.2d 19 (1st Cir. 1981), the First Circuit considered the same argument presented here: that the subpoenaed party would allegedly be subject to statutory state-law sanctions for complying with a federal subpoena in a § 1983 case. The Court noted that, in balancing these concerns, "[i]t makes a difference whether the federal interest in seeking full disclosure is weak or strong…[t]he whole purpose behind § 1983 was to insure an independent federal forum for testing alleged constitutional violations by state officials." *Id*. at 22. Finding that the federal interest in disclosure was very strong in the § 1983 context, the court held, "[w]hen compliance with a federal subpoena compelled by the Supremacy Clause is ... the only act which could be a violation of state law, there remains no room for state law sanction." *Id*. at 21-23.

Just as in *Hampers*, the full D.A.'s file is critical to the vindication of Kenny Waters's federal constitutional rights in this § 1983 litigation, and there is no valid concern that the D.A.'s Office could be sanctioned for violating state law in response to a federal subpoena. Nor has the MCDA marshaled any substantial private interests that could outweigh the strong federal interest in disclosure.

5

## II.    The Complete Prosecution File is Discoverable

The subpoenaed documents meet this low threshold for discoverability because they are all highly relevant to the plaintiff's claims. Indeed, reviews of prosecution files in the aforementioned three cases yielded relevant police reports, notes of interviews, revelations of additional witnesses, laboratory findings and other material that has proven critical to the plaintiffs' civil rights claims. Here, the prosecutor's pretrial and trial notes, potentially including, but not limited to, Ayer police defendants' and witnesses' pretrial conversations with prosecutors, are highly probative because they will reveal what was and was not disclosed to prosecutors by the police defendants, a critical element of the civil *Brady* claim. *See Brady v. Maryland*, 373 U.S. 83 (1963).

To prevail on this claim, Ms. Waters will have to prove what was – and what was not – in the MCDA files at Kenny Waters's trial. *Brady* and its progeny are violated not only when prosecutors withhold information, but also when police withhold material exculpatory or impeachment information from prosecutors, since prosecutors cannot fulfill their constitutional obligations if information is withheld from them by law enforcement officials. *See Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995); *U.S. v. Bagley*, 473 U.S. 667, 672 n.4, 678 (1985) (finding *Brady* violation although prosecutor never knew exculpatory information existed); *Giglio v. U.S.*, 405 U.S. 150 (1972) (extending *Brady* rule to impeachment material).[3] Although all pertinent inculpatory and

_____

[3] *See also Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir.), *aff'd after remand*, 319 F.3d 301 (7th Cir. 2003) (upholding § 1983 *Brady* verdict against police for suppressing information from prosecutors about undue suggestion employed during identification procedures); *Spurlock v. Satterfield*, 167 F.3d 995, 1005 & n.17 (6th Cir. 1995); *U.S. v. Endicott*, 869 F.2d 452, 455 (9th Cir. 1989) (finding *Brady* violation "for the nondisclosure of assurances made to his principal witnesses even if such promises by other government agents were unknown to the prosecutor."); *Walker v. Lockhart*, 763 F.2d 942, 958 (8th Cir. 1985); *Smith v. Fairman*, 769 F.2d 386, 391 (7th Cir. 1985); *Wedra v. Thomas*, 671 F.2d 713, 717 n.2 (2d Cir. 1982); *Martinez v. Wainwright*, 621 F.2d 184, 186-87 (5th Cir. 1980); *Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 844-46 (4th Cir. 1964); *Gov't of V.I. v. Martinez*, 642 F. Supp. 1571, 1581 (D.V.I. 1986); *Hauptmann v. Wilentz*, 570 F. Supp. 351, 389 (D.N.J. 1983), *aff'd*, 770 F.2d 1070 (3d Cir. 1985), *cert. denied*, 474 U.S.

exculpatory information should be in police reports, the prosecutor likely also interviewed the police, and the notes of those oral communications and interviews may reveal or lead to the discovery of additional admissible information.    *See* Fed. R. Civ. P. 26(b)(1).  Thus, to assess whether Ayer police withheld exculpatory evidence from the MCDA, plaintiff must examine the complete Middlesex County prosecution file relating to Mr. Waters's case, including any allegedly "privileged" material.  Likewise, any post-conviction materials in the file will help prove that the *nolle prosequi* was entered because Mr. Waters was actually innocent of the crime he was convicted of, a fact that is highly pertinent to damages.

Nor can the subpoenaed evidence – the complete MCDA file – be obtained from any other source. *See, e.g., Hernandez v. Longini*, No. 96 Civ. 6203, 1997 WL 754041, *2 (N.D. Ill. Nov. 13, 1997) (ordering state's attorney to comply with subpoena for their files in § 1983 false arrest case); *Doubleday v. Ruh*, 149 F.R.D. 601, 608 (E.D. Cal. 1993) (same in malicious prosecution case).  For purposes of the Brady claim, even if this information were available in Ayer police files, it would be critical for Mr. Waters to obtain the complete MCDA file to compare what was provided to, and what was withheld from, the prosecutor.  Thus, the information sought is "highly relevant, helpful and unavailable from other sources;" under these circumstances, even with the claim of privilege that will be addressed below, the "interest of the party seeking disclosure is strongest." *Gomez v. City of Nashua*, 126 F.R.D. 432, 435 (D.N.H. 1989).

**III.    The Claimed Privileges Do Not Apply**

**A.    Investigative Privilege Does Not Dictate Nondisclosure Here**
The MCDA claims that the file should not be disclosed because it "would tend to reveal law enforcement investigative techniques." (Br. at 4.)  However, as set forth below, none of the

1103 (1986).

techniques that investigative privilege protects was employed here.

**1.    The Federal Investigatory Privilege Does Not Protect the Documents Sought in this Case**

The First Circuit recognizes a "conditional" federal privilege "for law enforcement investigatory information," *U.S. v. Lilly*, 185 F.R.D. 113, 115 (D. Mass. 1999). However, this privilege does not apply here since it "has only been upheld in two limited circumstances: when disclosure might reveal the location of electronic surveillance equipment or the identity of a Government informant." *Id.*; *Kattar v. Doe*, Civ. A. No. 86-2206-MC, 1987 WL 11146, at *1 (D. Mass. Jan. 27, 1987) (rejecting claim of privilege because the Government merely argued an interest in keeping "general procedures and security measures" secret);    *see also Sarsfield, Miller, Velazquez*, attached as Exhs. 1-4. As in *Lilly*, the D.A. "has argued neither of those two risks, nor has it offered any analogous dangers of disclosure that are specific enough to support a claim of privilege." 185 F.R.D. at 115. Indeed, there is no indication that the investigation in this case involved either electronic surveillance equipment or a confidential informant.[4] Even if there were evidence of this nature, the Court would have to "balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." *Id.* It is highly unlikely that even if there were any sensitive information in the file revealing the Ayer Police Department's investigative processes leading up to Mr. Waters's 1983 prosecution, it would be pertinent to daily

---

[4] Nonetheless, the cases cited by the D.A. involve only these two inapplicable scenarios (Br. at 4). *See U.S. v. Cintolo*, 818 F.2d 980, 1002 (1st Cir. 1987) ("We find the policy of qualified privilege to be entirely appropriate in the context of *criminal* trials where a defendant seeks disclosure of confidential government surveillance information.") (emphasis added), *cert. denied*, 484 U.S. 913 (1987); *Association for Reduction of Violence v. Hall*, 734 F.2d 63, 65-66 (1st Cir. 1984) (holding that need to protect identity of confidential informant in case involving incarcerated plaintiffs outweighed need for disclosure); *Black v. Sheraton Corp. of America*, 564 F.2d 531, 545-46 (D.C. Cir. 1977) (concerning disclosure of files reflecting illegal official eavesdropping on plaintiff).

police operations in 2005. Moreover, insofar as documents reflecting ongoing investigation of the Brow murder are concerned, the plaintiff is willing to stipulate to a suitable protective order that would guarantee the confidentiality of any investigative techniques, procedures, or sources.[5]

In any case, the D.A. has waived the privilege by failing to raise it properly. To invoke the "law enforcement privilege" adequately, "the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." *Ostrowski v. Holem*, 2002 WL 31956039, *2 (N.D. Ill. Jan 21, 2002) (citing cases). No such evidence has been presented here.

### 2.    The Massachusetts Investigatory Privilege Does Not Protect the Documents Sought in this Case

Even "[i]n a federal question case where the court is also hearing state law claims pursuant to supplemental jurisdiction, [as in this case], federal privilege law governs the claims in the action." *Krolikowski v. University of Massachusetts*, 150 F. Supp. 2d 246, 248 (D. Mass. 2001). Thus, federal privilege law, specifically the federal investigatory privilege discussed above, not state law, governs the MCDA's claim of investigatory privilege in this case.[6] Because there is a federal privilege, this Court should not analyze the MCDA's claim of investigatory privilege under state privilege law. The cases cited by the MCDA to support its claim of state-law investigatory privilege actually do not involve claims of investigatory privilege, but rather concerned situations where no

---

[5] Again, plaintiff had no opportunity to raise this option before the motion was filed.

[6] *See, e.g., Lilly*, 185 F.R.D. at 115 (rejecting the government's claim of law enforcement investigatory privilege under federal privilege law recognized in the First Circuit); *Jones v. City of Indianapolis*, 216 F.R.D. 440, 444 (S.D. Ind. 2003) (noting the parties' misplaced reliance on state law in a federal question case with pendant state claims, where the federal investigatory privilege governs).

federal privilege existed, leading the parties opposing production to seek federal recognition of a state privilege. *See Hampers*, 651 F.2d at 20-21 (recognizing a privilege created by a state statute criminalizing disclosure of tax return information). Here, by contrast, the First Circuit recognizes a federal qualified investigatory privilege and, thus, there is no basis for applying a state investigatory privilege.

Even if a federal investigatory privilege were not recognized in the First Circuit and this Court were to recognize the Massachusetts investigatory exemption, under that privilege the MCDA may only elect to refuse disclosure of investigatory materials that would "so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." M.G.L. ch. 4 § 7 cl. 26(f). There is no blanket exemption for police records or investigation materials. *Reinstein v. Police Commr. of Boston*, 378 Mass. 281, 289-90 (1979). Rather, each case must be considered based on its unique circumstances, *id.*, and the party resisting disclosure must "prove with specificity the exemption which applies." M.G.L. ch. 66 § 10(c); *see also Bougas v. Chief of Police of Lexington*, 371 Mass. 59, 65-66 (1976) ("There must be specific proof elicited that the documents sought are of a type for which an exemption has been provided.").[7]

In the present case, the MCDA provides only conclusory claims that disclosing the requested material would undercut the cooperation of witnesses in future investigations. Yet there is no evidence that any of the witnesses requested any form of confidentiality, which is further supported by the fact that none of the witnesses concealed their identities during Mr. Waters's public trial. In

---

[7] The MCDA's heavy reliance on *Bougas* is not helpful here, as *Bougas* arose in the context of a pending criminal case, where the criminal defendant sought to circumvent criminal discovery rules by seeking access to the prosecution's file through a separate civil action. 371 Mass. at 60, 64 ("the prime reason for inspection of these records was in preparation of the defense in a criminal trial."). Unlike *Bougas*, this criminal prosecution has been completed since 1983, and the former criminal defendant has been conclusively exonerated of the crime, so the equities weigh much more heavily in plaintiff's favor here.

the absence of any evidence of a confidentiality agreement, the presumption is that:

> individuals of normal sensibilities ... who speak with the police have no reasonable expectation that their names and what they have said will not be made known to defendants in a civil action arising out of and relating to the crime about which they were interviewed just as their statements may be ... made available to the defendant in the criminal proceeding

*Doe v. Lyons*, 6 Mass. L. Rptr. 274, 1996 WL 751531, at *6 (Mass. Super. Dec 23, 1996) (citing *Attorney General v. Collector of Lynn*, 377 Mass. 151, 157 (1979)). Thus, in the absence of any confidential informant in this case, none of the individuals interviewed by police during their investigation of Mr. Waters had any expectation of privacy in their identities or the substance of their communications with authorities about this crime. Indeed, some of these witnesses even cooperated with Kenny Waters's attorneys during post-conviction proceedings. In addition, the MCDA's claim that disclosure would chill cooperation of witnesses in the future (br. at 5), was made and rejected in *Sarsfield, Miller* and *Velazquez*. Nor does the MCDA explain just how exposing these 25 year-old files to the light of day could in any way detract from its ability to conduct homicide investigations or prosecutions today.

Furthermore, the Massachusetts Supreme Court held in *Globe Newspaper Co. v. Police Comm'r of Boston*, that prior disclosure of information could support the conclusion that "the incremental effect of revealing the citizen witness statements would not unduly restrain citizen participation in future criminal investigations." 419 Mass. 852, 863 (1995). The court continued that "in a case…which has generated considerable negative publicity, such disclosure may help to restore public confidence in a police department which has been highly criticized for its handling of a sensitive case." *Id.* In fact, several federal jurisdictions have concluded that limiting disclosure

of investigatory materials actually results in *less* honest and accurate work by police.[8]  Here, the prior disclosure of the various witnesses' identities during Mr. Waters's public trial and in post-conviction proceedings seriously undercuts any claim that the release of their statements would discourage them or others from participating with local authorities.  Kenny Waters's wrongful conviction and nineteen-year imprisonment has generated considerable and justifiable negative publicity against the Ayer Police Department, and in this unique instance, full disclosure of the prosecution file will ultimately help to restore public confidence in the APD by bolstering the plaintiff's ability to pinpoint the official misconduct which caused her brother's ordeal and prevent similar miscarriages of justice in the future.

### B.    Attorney Work-Product Privilege Does Not Apply Here

The MCDA next claims work-product protection for parts of its file.  Since the "public ... has a right to every man's evidence," the MCDA bears the burden of proving that the claimed privilege shields the materials requested from disclosure.  *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000).  Their assertions to the contrary notwithstanding, the attorney work-product privilege invoked here does not protect the MCDA because it is a non-party in this action.

For any privilege, Fed. R. Civ. P. 26(b)(3) specifically "limits ... protection to one who is a party (or a party's representative) to the litigation in which discovery is sought."  *Hernandez*, 1997 WL 754041, at *2 (citation and internal quotations omitted); Fed. R. Civ. P. 26(b)(3) (referring to

---

[8] For example, one found that "[a] police officer who knows that no one from outside the law enforcement community will scrutinize his statements or his investigatory work may not feel the same level of pressure to be honest and accurate as would his counterpart in a system where ... [a] person from the outside already has substantial information about the incident under investigation and has a strong motive to challenge the accuracy of the officer's memory or the reliability of his conclusions." *Kelly v. San Jose*, 114 F.R.D. 653, 665 (N.D. Cal. 1987).  *See also Wong v. City of New York*, 123 F.R.D. 481, 483 (S.D.N.Y.1989); *King*, 121 F.R.D. at 193.

"party"). Neither the MCDA nor any individual employee of it is a defendant in this action. Indeed, "many courts have found the work-product privilege unavailable" in the precise circumstances presented here, "when a prosecutor in a prior criminal investigation later objects to discovery by a litigant in a related and subsequent civil lawsuit." *Ostrowski*, 2002 WL 31956039, at *3-*4; *see also Klein v. Jefferson Parish School Board*, No. Civ. A 00-3401, 2003 WL 1873909, at *3-*4 (E.D. La. Apr. 10, 2003) (no work-product privilege for non-party prosecution file underlying § 1983 action); *Carter v. City of Philadelphia*, No. Civ. A 97-4499, 2000 WL 632988, at *2 (E.D. Pa. May 5, 2000) (same); *Schultz v. Talley*, 152 F.R.D. 181, 184 (W.D. Mo. 1993) (non-party assistant attorney general may not assert work-product privilege for investigative file); *Doubleday*, 149 F.R.D. at 608 ("We have not been directed to, nor have we found, any authority holding that a public prosecutor – having completed his investigation and having announced, after failing to obtain an indictment, that no further action would be taken by him – is entitled to rely on the work product doctrine when the fruits of the investigation become relevant to civil litigation to which he is not a party.").

The cases cited by the MCDA do not involve fact patterns similar to this case or state an established rule in this district. The more recent case the MCDA cites *In Re Grand Jury Subpoena*, 220 F.R.D. 130 (D. Mass. 2004), inconclusively surveys caselaw from the Supreme Court and various Circuits other than the First, ultimately adopting a proposal formulated by noted commentators "that work product protection be extended in subsequent litigation, even if it is 'unrelated,' but that '[t]o the extent that the rule seems to give undue protection to material prepared for some other suit the court can ... view tolerantly the showing necessary to overcome work product immunity." 220 F.R.D. at 150 ( *quoting* 8 Charles Alan Wright, Arthur R. Miller & Richard L.

Marcus, FEDERAL PRACTICE & PROCEDURE § 2024, at 351-54 (2d ed. 1994)).[9] Even if this Court

were to adopt that standard, plaintiff easily meets the showing necessary to overcome work-product

protection, especially if, in accordance with the standard suggested by commentators, that showing

is viewed "tolerantly" by the Court.  Indeed, plaintiff has a substantial need for access to the MCDA

files to support her *Brady* claims, and the complete file is only available from that office.

Fundamentally, the work-product privilege should not apply in this case because the policy

behind it is to prevent attorneys from poaching the work of more diligent ones, which is not an issue

here.  As the *Doubleday* court noted, "[t]he fact that the prior litigation involved a criminal

prosecution is a pertinent reason to refuse to extend work product protection," because, as in this

case, "plaintiff's attorney is seeking information directly pertinent to the issues in this civil case, is

not seeking the information because he is too 'lazy' to develop the information himself, and is

seeking information solely within the possession of the prosecuting agency."  149 F.R.D. at 607.

Thus, non-party MCDA may not invoke this privilege.

C.    **No State-Law Privileges Apply**

As set forth above, since federal law, not state law, governs discoverability in this § 1983

action, state-law privileges cannot frustrate the disclosure of relevant information.  Nonetheless, the

complete, unredacted files should be disclosed even under the terms of the state statutes invoked.

1.    **This Court Should Order Production of Criminal Offender Record Information**

a.    **Valid Subpoena Enables Production**

---

[9] Likewise, *Slack v. Federal Trade Comm'n*, cited by the MCDA at page 7, is also inapposite.  Unlike the MCDA here, the movant there was a party defendant.  1980 WL 1984, *3 (D. Mass, Nov. 18, 1980).  The defendant had prepared the documents at issue in anticipation of litigation with third parties in other cases; the subpoena was not directed at the non-parties themselves, as in this case.

The MCDA's objection based on the Criminal Offender Record Information Act is misplaced. CORI generally prohibits the disclosure of criminal offender record information, namely records and data "which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pretrial proceeding, or other judicial proceedings . . .." *See* M.G.L. c.6 §§167 et seq. The statute's objective is to provide individuals with protection against invasion of their privacy, and in cases of conviction, to promote the public's interest in rehabilitation. *See New Bedford Standard Times Co. v. Clerk of the Third District Court*, 377 Mass. 404, 414 (1979).

Regulations promulgated by the Criminal History Systems Board specifically provide that an agency may disseminate "CORI pursuant to a valid subpoena or summons issued by a court or a body or person authorized by law to issue such process." *See* 803 C.M.R. 2.04 (10). The MCDA has been served with such a valid subpoena by plaintiff's counsel. Thus, it should be compelled to produce all of the requested documents regardless of whether or not they contain CORI as to Mr. Waters (whose estate by definition has consented to release by serving the subpoena) or other individuals. CORI material relating to individuals other than Mr. Waters may well prove pertinent in the context of the *Brady* claim if it points to other suspects and leads not disclosed or investigated by the defendants.

        **b.**    **The CORI Statute Does Not Preclude this Court from Ordering Production of CORI and Does Not Require This Court to Conduct a Balancing Test Prior to Issuing Such an Order**

Nothing in the CORI statute precludes this Court from ordering the disclosure of documents that contain CORI. *See* M.G.L. c.6 §§167 et seq.; *see also Doe v. Lyons*, 1996 WL 751531, at *4 (Mass. Super. Ct. Dec. 23, 1996). The MCDA incorrectly argues that this Court cannot order disclosure of CORI unless the order is based on a Criminal History Systems Board (CHSB) finding

that the public interest in disseminating such information clearly outweighs the interests in security and privacy; the balancing test in M.G.L. c.6 §172 applies to disclosures made by the CHSB, and nothing in the statute purports to require courts to conduct a balancing test in civil discovery disputes regarding documents validly subpoenaed from other state agencies. *See* M.G.L. c.6 §§167 et seq.

The fact that this Court is not statutorily or otherwise required to conduct such a balancing test is evidenced by the *Doe* opinion itself. The *Doe* court did not undertake such a balancing test before ordering the Boston Police Department and the Suffolk D.A. to produce the requested CORI information in that case. Going one step further, the *Doe* court ordered the disclosures, while simultaneously refusing to put in place the protective order requested by BPD and the Suffolk D.A. *See id.*, at *4. As explicitly recognized in *Doe*, "[a] defendant who commits a serious rape has no reasonable expectation that records relating to that rape will not be made available to litigants in a civil action arising out of and relating to that rape." *Id*. While *Doe* involved a civil action brought by the rape victim against the owners of the nightclub where she was raped, the reasoning applies with equal force to this §1983 case, where an innocent man was wrongly convicted of a murder he did not commit. Even if the balancing test were applied here, the need for disclosure outweighs any continued interest in secrecy. The Court should grant the plaintiff full access to the documents sought, including any CORI material.

## 2.    Invasion of Privacy: M.G.L. c. 4 § 7 cl. 26(c)

The MCDA next claims state-law privacy protects dissemination of information about DNA testing of the blood left at the crime scene by the actual perpetrator, and his identity. (Br. at 9-10.) Due to the lack of pre-filing discussion, it is not known whether the DNA profile has been run

16

through the criminal offender database, much less whether there has been a "hit" identifying the perpetrator. Assuming that this objection would not have been raised unless there were responsive information in the file, the true perpetrator's identity must be disclosed.

First, as discussed above, M.G.L. c. 4 § 7 cl. 26(c) does not govern here because state privileges are trumped by federal rules favoring broad discovery. The privacy argument fares equally poorly on its merits because the MCDA fails to establish that this Court should recognize the Massachusetts privacy privilege. The MCDA lays out the two-part test adopted by the First Circuit in determining whether to recognize a state-law privilege, but fails to address any of the factors relevant to the second part of the inquiry, i.e. whether the asserted privilege is "intrinsically meritorious." *See Hampers*, 651 F.2d at 22. Relevant to this inquiry, a court must assess "whether the injury that would inure to the relation by the disclosure of the communications [would be] greater than the benefit thereby gained for the correct disposal of litigation." *Id.* at 23. As the *Krolikowski* court recognized, the "high value [placed] on the vindication of civil rights" weighs heavily in favor of disclosure in civil rights cases.[10] 150 F. Supp. 2d at 249.

Plaintiff alleges her brother's civil rights were violated by the defendants, resulting in his being incarcerated for nineteen years for crimes he did not commit. His innocence has been conclusively established by scientific evidence – his exclusion as the source of blood found at the scene of Ms. Brow's brutal murder, presumably left in her struggle with her attacker. Because of the centrality of the scientific evidence in this case, complete disclosure of DNA evidence and the identity of the person whose blood was left at the scene is highly favored as it will assist plaintiff

---

[10] *See also ACLU v. Finch*, 638 F.2d 1336, 1343–44 (5th Cir. 1981) ("The purpose of enacting §1983 was to ensure an independent federal forum for adjudication of alleged constitutional violations by state officials; and . . . there is a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged.").

in establishing this civil rights claim. As to the other side of the *Hampers* balance, the "injury that would inure" from disclosure, the MCDA fails to offer any countervailing considerations that could outweigh the overwhelming interest in discovery in the context of this federal civil rights action.[11]

### 3.    There Is No Need for Continued Secrecy of Grand Jury Materials

It is ironic that the MCDA seeks to shield grand jury materials in this case under state rules of criminal procedure, given the Supreme Court's recognition that, "[o]ne of the several interests promoted by grand jury secrecy is the protection of the innocent accused from disclosure of the accusations made." *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 218 n.8 (1979). In this action, the innocent person, Kenny Waters, suffered much more than the disclosure of an accusation; he was imprisoned for nearly two decades for crimes he did not commit. While citing concerns raised in other cases,[12] the MCDA has failed to identify any particularized harm that would result from disclosure here. To be sure, there is none. First, grand jury transcripts of witnesses called at trial must be disclosed to the defense, so there can be no claim that these witnesses had any expectation of privacy to begin with.[13] Furthermore, any other grand jury testimony is certainly highly relevant to the plaintiff's claims and, as stated above, she is willing to stipulate to any protective order deemed necessary by the Court to preserve the interests of the judicial process.

---

[11] In any case, the very testing that excluded Mr. Waters identified the DNA profile of the perpetrator, so that information is already public.

[12] The standard the MCDA relies on specifically dealt with the disclosure of *federal* grand jury materials, pursuant to the Federal Rules of Criminal Procedure, not grand jury materials arising out of *state-court* prosecutions such as this one. *Douglas Oil* at 222 ("Parties seeking grand jury transcripts under Rule 6(e) must show that...").

[13] Due to the passage of time, plaintiff has been unable to locate the criminal defense file, making disclosure of the MCDA's file all the more critical.

There is no *per se* bar on such disclosure; indeed such evidence has been deemed relevant and admissible in other civil rights cases. *See, e.g., Cipolla v. County of Rensselaer*, 129 F. Supp.2d 436, 446 n.14 (N.D.N.Y. 2001) (noting admissibility of grand jury transcripts in § 1983 malicious prosecution case). Indeed, grand jury minutes were ordered disclosed in all three prior wrongful conviction cases. (*See* Exs. 1-4.) Moreover, the criminal proceedings have long terminated and the request for disclosure arises in a 42 U.S.C. § 1983 action more than twenty years after the grand jury sat. The dangers of "future retribution or social stigma" theorized in *Douglas Oil* are simply not present here. 441 U.S. at 222. In any case, the state-law rule allows disclosure with a court order. Mass. R. Crim. P. 5(d).

Because this case is so unique, arising after a conviction and a conclusive post-conviction DNA exoneration, the likelihood of such circumstances arising again are fairly remote.[14] Thus, disclosing grand jury information here will not threaten to chill future grand jury proceedings or open the floodgates. Under these circumstances, the traditional concerns justifying the secrecy of grand jury materials no longer apply. In fact, the public interest in shining a light on this miscarriage of justice weighs strongly in favor of disclosure, and it would perpetuate the injustice Kenny Waters suffered to deprive the plaintiff of this discoverable material.

**4.    There Is No Need for Secrecy of Other Personal Information**

Invoking M.G.L. c. 66 § 10, the MCDA contends that it could be sanctioned for disclosing the prosecution file because it contains personal information such as addresses and telephone numbers. This provision provides that "[t]he home address and telephone number or place of

---

[14] Unlike the run-of-the mill § 1983 case, plaintiff is aware of only 3 other wrongful conviction actions like this one that have arisen in this District, and in each, the plaintiff's and public's interest in disclosure was held to have trumped the prosecutor's claim to secrecy.

employment or education of victims of adjudicated crimes…and the name and home address and telephone number or place of employment or education of a family member of any of the foregoing shall not be public records…and shall not be disclosed." Here, the victim is deceased. Since she was murdered at home, that address is already a part of the public record. Likewise, her place of work at the Park Street Diner was well known and the subject of testimony at trial. In any case, this Court's order would satisfy the statute.

### III.    Plaintiff Has a Substantial Need for the Complete Prosecution File, Which Is Not Available From Other Sources

Finally, the MCDA's argument that the subpoena should be quashed because the information sought is "available from other sources" has no foundation in law or fact. As set forth above, the MCDA has cited only a single District of New Hampshire case in support of this allegedly "well-recognized" rule. Even if such a rule existed, as set forth above, plaintiff has a substantial need for the entire prosecution file, which is "solely and exclusively within defendants' possession." *MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 51 (1st Cir. 1987). Given her *Brady* burden to prove just what information defendants withheld from the prosecutor, the police reports defendants have produced in discovery are not, alone, an adequate substitute for the complete prosecution file.

### Conclusion

For the foregoing reasons, the plaintiff respectfully requests that the Court follow the decisions in *Sarsfield*, *Miller* and *Velazquez* by denying the Middlesex County District Attorney's Office's motion to quash and entering an Order compelling the MCDA to provide the complete prosecution file in *Commonwealth v. Waters*, Nos. 82-2026 and 82-2027, forthwith.

Dated: May 16 , 2005

BETTY ANNE WATERS

By: _Deborah L. Cornwall_

Deborah L. Cornwall, Esq. (DC 2186)
Barry C. Scheck, Esq. (BS 4612)
COCHRAN NEUFELD & SCHECK, LLP
99 Hudson Street, 8th Floor
New York, NY 10013
Tel. (212) 965-9081 / Fax (212) 965-9084

Howard Friedman, Esq. (BBO #180080)
Law Offices of Howard Friedman
90 Canal St., 5th Floor
Boston, MA 02114-2022
Tel. (617) 742-4100 / Fax (617) 742-5858

**Attorneys for Plaintiff Betty Anne Waters**

**Certificate of Service**

I, being over eighteen years of age, hereby certify pursuant to the laws of the Commonwealth of Massachusetts that I served the following person by placing a copy of this brief in the United States Postal Service mailbox, on the 16th day of May, 2005.

Cathryn Neaves
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, MA 02108

Joseph L. Tehan, Jr.
Gregg J. Corbo
Kopelman & Paige, PC
31 St. James Avenue, 7th Floor
Boston, MA 02116-4102

Michael Gelinas