UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 04 10521 (GAO)<br>)<br>) |
| v. | )<br>) **MOTION TO COMPEL STATE** |
| TOWN OF AYER, NANCY TAYLOR-HARRIS, in her individual capacity, ARTHUR BOISSEAU, in his individual capacity, BUDDY DECOT, in his individual capacity, WILLIAM ADAMSON, in his individual capacity, PHILIP L. CONNORS, in his individual capacity, and JOHN DOE and JANE DOES 1–16, in their individual capacities, | ) **POLICE TO RESPOND TO**<br>) **SUBPOENA DUCES TECUM**<br>)<br>)<br>)<br>)<br>) ORAL ARGUMENT REQUESTED<br>) |
| Defendants. | )<br>) |

Plaintiff Betty Anne Waters moves this Court for an order compelling the Massachusetts State Police ("State Police"), a non-party, to produce for inspection and copying the following relevant, non-privileged documents from its file in the twenty-three-year old wrongful prosecution in *Commonwealth v. Kenneth Waters*, the murder prosecution underlying this 42 U.S.C. § 1983 wrongful conviction action.

**I.     INTRODUCTION**

Kenneth Waters was wrongfully convicted of murder and armed robbery on May 11, 1983. This 42 U.S.C. § 1983 lawsuit seeks to expose and redress constitutional violations by Ayer police officers that led Mr. Waters to be wrongly arrested and convicted, for which he served nineteen years in prison before DNA testing fully exonerated him. Defendant Town of

1

Ayer has denied fault and claimed that the Massachusetts State Police are to blame for Mr. Waters' wrongful conviction. The State Police have refused to comply with our subpoena for documents.

Plaintiff served a subpoena *duces tecum* upon the State Police on March 15, 2005. *See* Exhibit A. On April 5, 2005, counsel for the State Police sent a one paragraph facsimile stating general objections to the subpoena. *See* Exhibit B. They asserted: (1) undue burden, (2) generic privileges, *i.e.*, that the documents sought include "investigative material and other confidential and/or privileged information," and (3) "the material sought is or was possessed by the Office of the Middlesex County District Attorney. . .".[1] In or about June 2005, counsel for the Plaintiff, Jennifer L. Bills, left telephone messages for the State Police counsel. On June 24, 2005, Attorney Bills wrote to Attorney Halpin: (1) informing him that his faxed response did not sufficiently advise us of the specific nature of his objections, and (2) requesting a privilege log. *See* Exhibit C. Attorney Halpin requested Plaintiff's assistance in order to respond to the subpoena. Attorney Bills agreed to provide the State Police with a redacted copy of the privilege log that had been produced by the Middlesex D.A.'s office. This was provided on June 28, 2005. *See* Exhibit D.

One month later, on July 28, 2005, counsel for the Plaintiff telephoned counsel for the State Police inquiring as to the status of their response. On Friday, July 29, 2005, Attorney Bills received an email from Attorney Halpin requesting an unspecified additional amount of time to comply with the subpoena. *See* Exhibit E. On Tuesday, August 2, 2005, Attorney Bills wrote a

---

[1] Oral argument on the Middlesex County District Attorney's Office's motion to quash Plaintiff's subpoena for its file in the prosecution of Kenneth Waters is calendered for September 13, 2005.

letter to Attorney Halpin agreeing to wait an additional three weeks for his response to the subpoena, but informing him that if a response was not forthcoming, a motion to compel would be filed. *See* Exhibit F. On Monday, August 22, 2005, after those three weeks had run without any response – much less production – from the State Police, pursuant to Local Rules 7.1(A)(2) and 37, Attorney Bills attempted to confer with Attorney Halpin by telephone, and she left him a voicemail message. Thus, on August 23, 2005, having received neither responsive documents to the subpoena nor a privilege log, and having received no response to Attorney Bills's attempt to hold a Local Rule 7.1 conference, counsel for the Plaintiff file the instant motion.

## II.   APPLICABLE LEGAL STANDARDS

For subpoenaed information, as with any other discovery sought by any other means, "[r]elevant information need not be admissible at the trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); *see also* Fed.R.Civ.P. 26(a)(5). Written objections to the subpoenas must be served within 14 days after service of the subpoena. Fed.R.Civ.P. 45(c)(2)(B). Where, as here, a non-party objects to inspection or copying of subpoenaed materials, Rule 45(c)(2)(B) authorizes the subpoenaing party to move for "an order to compel production."

## III.   THE STATE POLICE'S GENERIC, UNSPECIFIED OBJECTIONS ARE NON-RESPONSIVE AND NEVERTHELESS UNAVAILING

### A.   The State Police Have Violated the Federal Rules of Civil Procedure By Failing Properly To Comply With a Valid Subpoena

By failing to provide either responsive documents or a detailed, privilege log, the State Police have violated Federal Rule of Civil Procedure 45(d)(2). This rule requires:

> When information subject to a subpoena is withheld on a claim that it is privileged. . ., the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Fed.R.Civ.P. 45(d)(2). As a party to a federal civil lawsuit, Plaintiff Betty Anne Waters is entitled to subpoena relevant documents, information and things from non-parties in pursuit of proving her claims. Fed.R.Civ.P. 45. The State Police's file in *Commonwealth v. Kenneth Waters* is relevant to Plaintiff's constitutional civil rights claims. Although the State Police are entitled to assert claims of privilege, its vague, unsupported assertions cannot be used to obfuscate the legal process and avoid discovery of relevant information.

Indeed, as the "public. . . has a right to every man's evidence," the State Police bear the burden of proving that any claimed privilege shields the subpoenaed documents from disclosure. *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000); *Kelly v. City of San Jose*, 114 F.R.D. 653, 662 (N.D. Cal. 1987) (noting the "well-established notion that because privileges operate in derogation of the truth-finding process the law places the burden of proving all the elements essential to invoking any privilege on the party seeking its benefits."). Since the State Police have failed to raise any proper objections, the Court should order the State Police to comply with Plaintiff's subpoena and make the responsive documents and information available for inspection and copying.[2]

### B. The State Police's Objections Are Unavailing

Although the State Police have failed to state their objections with particularity sufficient to permit Plaintiff to contest their claims, Plaintiff nevertheless briefly addresses the vague,

---

[2] Rule 45(e) provides that failure to obey a subpoena "without adequate excuse. . . may be deemed a contempt of the court from which the subpoena issued."

general objections raised in the State Police's one-paragraph faxed response to the subpoena. This response (Exhibit B) mentions objections on the following bases, that the subpoena: (1) "is unduly expensive and burdensome, unreasonable, and oppressive," (2) "demands the production of investigative material and other confidential and/or privileged information that is [sic] privileged or exempt from disclosure under Massachusetts law," and (3) "most, if not all, of the material sought is or was possessed by the Office of the Middlesex County District Attorney and is likely subject to appropriate privileges and objections from that office as well."

> **1. The subpoena is not unduly expensive, burdensome, unreasonable, or oppressive**

The subpoenaed documents meet the low threshold of discoverability because they are relevant to Plaintiff's claims. Plaintiff has limited the scope of its requests to information that directly relates to the subject matter of Plaintiff's claims and is reasonably calculated to lead to the discovery of admissible evidence. The information sought in this case – police reports, notes, statements, identification procedures, fingerprints, expert reports, tangible objects, drafts, memoranda, video or audio tapes, exculpatory and impeachment information, internal communications, as well as crime lab reports, notes, biological evidence, and forensic evidence – is all discoverable. It includes information and documents kept in the ordinary course of business and should be in identifiable locations, as much of it was made public during the criminal trial. Moreover, in order to ease the burden of locating and producing older documents to counsel for the State Police, counsel for the Plaintiff provided a redacted list of documents from the Middlesex County D.A.

To prevail on her claims under *Brady v. Maryland*, 373 U.S. 83 (1963), Ms. Waters will

5

have to prove what was in the State Police files. Unlike criminal cases, in this § 1983 context, an actionable *Brady* violation occurs when police withhold material, exculpatory or impeachment information from prosecutors, since prosecutors cannot fulfill their constitutional obligations if information is withheld from them by law enforcement officials. *See Brady v. Dill*, 187 F.3d 104, 114-15 (1st Cir. 1999 ). Simply producing the complete State Police files would not be burdensome or oppressive.

### 2. No privilege or confidentiality protections apply to the information sought by Plaintiff's subpoena

The State Police have made no specific claim of privilege or confidentiality, but rather asserted general claims that the subpoena seeks production of "confidential and/or privileged information... under Massachusetts law." Without identifying specific documents and specific statutory or common law protections, it is impossible to refute this claim. An assertion of privilege "must also be accompanied by sufficient information to allow the court to rule intelligently on the privilege claim." *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991) (citations omitted). Thus, by failing to submit a privilege log, despite repeated requests and months of delays, the State Police have "waive[d] the underlying privilege claim." *In Re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001).

In any case, in no way can the unspecified privileges claimed justify withholding even the identification of documents following a valid subpoena in a federal civil rights case. To argue otherwise is absurd.

> State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in [civil rights] cases. It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from

> abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 655–56 (N.D. Cal. 1987). The information sought by the subpoena is not privileged or otherwise exempt from disclosure under federal or state law.

### a. Criminal Offender Record Information (CORI)

Regulations promulgated by the Criminal History Systems Board specifically provide that an agency may disseminate "CORI pursuant to a valid subpoena or summons issued by a court or a body or person authorized by law to issue such process."[3] The State Police have been served with a valid subpoena. Further, to the extent that the materials contain CORI, it is CORI as to Plaintiff, who is requesting the documents. Although this was not specifically raised, the privacy concerns the CORI statute is meant to address are simply not at issue.

### b. Federal and Massachusetts Law Enforcement Investigative Privilege

The First Circuit recognizes only a limited, conditional investigatory privilege, for law enforcement investigatory information, which "has been upheld in two limited circumstances: when disclosure might reveal the location of electronic surveillance equipment or the identity of a Government informant." *U.S. v. Lilly*, 185 F.R.D. 113, 115 (D.Mass. 1999). To the extent the State Police's response can be read to raise an objection based on "investigative material," neither risk is present in this case. There is no current prosecution against anyone for the murder of Katherina Brow; thus, disclosure of documents contained in the State Police's Waters file to Plaintiff in this case will not affect any future, potential case against the true perpetrator. While

---

[3] 803 CMR 2.04 (10).

7

there may be information in the Waters file that could someday – hypothetically – be used against the actual perpetrator of this twenty-five-year-old crime – these efforts will not be jeopardized by Plaintiff's current efforts to vindicate constitutional rights.

The Massachusetts investigatory privilege does not apply in this federal civil rights case. *See Krokilowski v. University of Massachusetts*, 150 F.Supp.2d 246, 248 (D. Mass. 2001). Nor should this court recognize the state law privilege. *See In re: Hampers*, 651 F.2d 19 (1st Cir. 1981). Even if this Court were to recognize the privilege, however, it only shields disclosure where it would "so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." *See* M.G.L. c. 4 § 7 cl. 26(f). Again, the disclosure of documents from a twenty-three-year-old wrongful prosecution cannot be said to create this risk.

### 3. The material sought cannot be obtained from any other source

The claim that the material sought "is or was possessed by the Office of the Middlesex County District Attorney" has no bearing on the subpoena to the State Police. The material sought from the State Police is precisely that – the contents of the police files, and <u>not</u> the D.A.'s files. This information, by definition, cannot be obtained from the Office of the Middlesex County District Attorney because the Plaintiff's burden is to prove just what information the individual police officer defendants withheld from the prosecutor. The documents in the police file must be compared with the documents in the D.A.'s file in order to establish that individual police officers violated *Brady* by withholding exculpatory evidence. Thus, even if the files were identical, this request would not be duplicative; if true, this fact would assist defendants in defending against the *Brady* claims.

Likewise, information in State Police files will likely reveal other investigative leads,

potential suspects, and forensic information not included in Ayer Police files disclosed by defendants in discovery thus far. In a twenty-three-year-old murder case where an innocent man was wrongly convicted, it is of paramount importance to discover the complete files of all law enforcement agencies that played any role in the investigation.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court order the State Police to produce its complete files in connection with its investigation of the murder Katherina Brow, as well as the prosecution of Kenneth Waters, forthwith.

Respectfully submitted,

/s/ Jennifer L. Bills

_____
Howard Friedman, Esq. (BBO #180080)
Jennifer L. Bills, Esq (BBO # 652223)
Myong J. Joun, Esq. (BBO # 645099)
Law Offices of Howard Friedman, P.C.
90 Canal St., 5th Floor
Boston, MA 02114-2022
Tel. (617) 742-4100 / Fax (617) 742-5858


Barry C. Scheck, Esq. (BS 4612)
Deborah L. Cornwall, Esq. (DC 2186)
Cochran Neufeld & Scheck, LLP
99 Hudson Street, 8th Floor
New York, NY 10013
Tel. (212) 965-9081 / Fax (212) 965-9084

**Attorneys for Plaintiff Betty Anne Waters**

Dated: August 23, 2005

**L.R. 37 CERTIFICATE**

I hereby certify that the provisions of L.R. 37 have been complied with.

Date: August 23, 2005          /s/ Jennifer L. Bills

**CERTIFICATE OF CONFERENCE PURSUANT TO L.R. 7.1(A)(2)**

Pursuant to L.R. 7.1(A)(2), I certify that I attempted to confer in good faith to resolve or narrow the issue that is the subject of this motion by speaking with Attorney Michael Halpin on several occasions, and by calling and attempting to speak with him again on August 22, 2005.

Date: August 23, 2005          /s/ Jennifer L. Bills