UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-10521-GAO

| | |
|---|---|
| BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,<br><br>Plaintiff<br><br>v.<br><br>TOWN OF AYER, NANCY TAYLOR-HARRIS, in Her Individual Capacity, ARTHUR BOISSEAU, In His Individual Capacity, BUDDY DECOT, In His Individual Capacity, WILLIAM ADAMSON, in His Individual Capacity, PHILIP L. CONNORS, in His Individual Capacity, and JOHN DOE and JANE DOES 1-16, in Their Individual Capacities,<br><br>Defendants | DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO PRECLUDE TAKING OF DEPOSITION |

Now come the defendants, Town of Ayer, William Adamson, et al. and hereby request, pursuant to Fed.R.Civ.P.26(c), that this Honorable Court issue a Protective Order, precluding plaintiff from taking the deposition of defendant William Adamson.  As grounds therefor, defendants state that Mr. Adamson is incompetent to testify due to his suffering from Parkinson's disease, dementia, and hallucinations.  Defendants submit that, because Adamson's testimony is inherently unreliable due to his mental condition, and any information he possesses, in any event, lacks relevance, the risk of unfair prejudice posed by forcing Adamson to testify at deposition substantially outweighs the probative value of any testimony he may offer.  As a result, his deposition should be precluded.

As further grounds therefor, defendants rely on the within Memorandum of Reasons.

MEMORANDUM OF REASONS

I.   BACKGROUND

This case arises out of the murder of Katerina Brow in Ayer on May 21, 1980. Kenneth Waters (plaintiff's brother), a neighbor of Ms. Brow at the time, was immediately questioned by two Ayer Police Officers, Chief William Adamson and Lieutenant Arthur Boisseau, and State Police officers, but was not arrested until October 13, 1982. The impetus for the arrest was, at least in part, the unsolicited testimony of Brenda Marsh, Waters' former girlfriend. Ms. Marsh stated to the police that Waters admitted to her that he committed the murder and that he was not at work at the time of the murder as he had claimed. Defendant Nancy Taylor-Harris participated in the interview of Ms. Marsh which elicited Waters' admission, together with defendant Chief Philip Connors. There was also additional substantial corroborating evidence supporting the arrest.

Waters was convicted of first degree murder in Middlesex Superior Court on May 11, 1983. His motion for a new trial was denied and he was sentenced to life in prison at MCI Walpole-Cedar Junction. His conviction was upheld on appeal (Commonwealth v. Waters, 399 Mass. 708, 506 N.E.2d 859 (1987)). After serving approximately nineteen years of his sentence, DNA technology that did not exist at the time of the original investigation and trial suggested that Waters was not the source of non-victim blood found at the murder scene, resulting in a motion for a new trial, which was allowed as unopposed on March 16, 2001. The Commonwealth chose not to re-try Mr. Waters, and he was released from prison on or about March 16, 2001.

Ms. Waters now brings the civil suit at issue on behalf of the estate of Kenneth Waters, who died in an accident shortly after his release from prison. The suit seeks damages for the

alleged wrongful arrest and malicious prosecution of Waters, who was incarcerated for approximately nineteen years. Specifically, plaintiff contends that Waters was falsely arrested without probable cause, and maliciously prosecuted by the Ayer police, whom she contends knew or should have known that Waters was innocent. In support of these claims, the plaintiff alleges that the Ayer police coerced witnesses into giving false testimony by threatening to charge them as accessories if they did not cooperate, and that the Ayer police lost or destroyed evidence that would have supported Waters' alibi that he was working at the time of the murder. The plaintiff also claims that the Ayer police failed to disclose their investigative techniques and other evidence that may have been favorable to Waters during his criminal trial.

William Adamson was the Ayer Chief of Police at the time the murder took place, on May 21, 1980. Adamson performed initial investigative work at the murder scene and, along with members of the State Police and senior Ayer Police Officer Arthur Boisseau, questioned Waters shortly after the murder. Adamson retired in late 1981, about a year before Waters was arrested, on October 13, 1982. As noted, the decision to seek a warrant for Waters' arrest was based, in substantial part, on statements by Waters' former girlfriend, Brenda Marsh, that 1) Waters admitted to her that he committed the murder, and 2) Waters was not at work at the time of the murder, as he claimed to be. Marsh made these statements after her boyfriend at the time made an unsolicited call to the Ayer Police Department stating that she had information about the murder. Although she passed a lie detector test prior to Waters' arrest, Marsh now claims that she lied in response to police pressure.

Chief Adamson retired in 1981 and played no role in the murder investigation following his retirement. Chief Adamson did not participate in either the interview of Marsh, or the

3

decision to arrest Waters. Further, Chief Adamson did not testify at the original criminal trial regarding the portion of the investigation that took place prior to his retirement.

Plaintiff has noticed the deposition of Adamson for January 24, 2007[1]. Defendants seek to preclude plaintiff from taking Mr. Adamson's deposition, on grounds that he is incompetent to testify. Specifically, Mr. Adamson, who will be 78 years old as of or soon after the filing of this motion, has been diagnosed with Parkinson's disease, dementia, and hallucinations. See Affidavit of Deborah F. Gelinas, M.D. (attached hereto as Exhibit A), ¶3. According to Dr. Gelinas, a Board certified neurologist who has treated Mr. Adamson since August 2, 2006, "As a result of his illnesses, Mr. Adamson cannot be expected to accurately recall events that occurred in the past and may be unable to distinguish between reality and delusions." Exhibit A, ¶7. Further, according to Dr. Gelinas, Mr. Adamson "experiences periods of confusion as well as memory and perceptual problems," and at times is "quite paranoid … severely disoriented and hallucinatory." Exhibit A, ¶¶3-4. Mr. Adamson takes medication which causes him increased confusion, depression, and psychosis. Exhibit A, ¶5. Mr. Adamson's symptoms of dementia typically worsen with fatigue, or when he is under unfamiliar or stressful conditions. Exhibit A, ¶6. Finally, Dr. Gelinas has stated that "Mr. Adamson is so severely incapacitated by his cognitive problems that he cannot competently testify on his own behalf." Exhibit A, ¶7.

II.    ARGUMENT

---

[1] Although not a defendant in that case, the plaintiff in the case of Dennis Maher v. Town of Ayer, et al., Civil Action No. 06-10514RGS, has also noticed Mr. Adamson's deposition. Both plaintiffs are represented by the same counsel and the defendants and Mr. Adamson are simultaneously filing a Motion for Protective Order in that case.

Defendants submit that Mr. Adamson's mental condition renders him incompetent to testify. In order to give competent testimony, a witness must "have sufficient understanding to apprehend the obligation of an oath and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue." U.S. v. Devin, 918 F.2d 280, 292 (1st Cir.1990) (quoting District of Columbia v. Armes, 107 U.S. 519, 521-22, 2 S.Ct. 840 (1883)). Whether a witness is competent to testify is a question for the Court. See Fed.R.Ev. 104(a) ("preliminary questions concerning the qualification of a person to be a witness … shall be determined by the court"); Devin, 918 F.2d at 292 ("[t]he determination of competency is primarily for the trial court"); Eisen v. Picard, 452 F.2d 860, 865 n.8 (1st Cir.1971). "[W]here a prima facie case of incompetence has been made," and the Court does not have an opportunity to make a first-hand determination of the witness's competence, "there should be some reliable evidence that the witness's statements are competent." Eisen, 452 F.2d at 865 n.8.

As noted, Mr. Adamson's treating neurologist has testified that, due to dementia, Mr. Adamson "cannot be expected to accurately recall events that occurred in the past and may be unable to distinguish between reality and delusions." Moreover, Mr. Adamson's symptoms of dementia typically worsen when he is under unfamiliar or stressful conditions, which the taking of a deposition will surely create. Given his mental condition, it is unlikely that Mr. Adamson will be able to understand the obligation of an oath, or correctly recall matters that happened during a brief period nearly 27 years ago, as is required to render competent testimony. See Devin, 918 F.2d at 292. Indeed, Dr. Gelinas opines that Mr. Adamson is so severely incapacitated by his mental diseases that "he cannot competently testify on his own behalf." Exhibit A, ¶7.

5

As it cannot be determined whether Mr. Adamson understands his obligation to tell the truth, his testimony would be inherently unreliable. Defendants submit that it could be highly prejudicial not only to Mr. Adamson, but to the remaining defendants as well, if Mr. Adamson were forced to testify under such circumstances. Moreover, although this motion concerns deposition testimony, forcing Mr. Adamson to testify at this juncture poses a substantial risk of prejudice at trial because, pursuant to Fed.R.Civ.P. 32(a)(2), Mr. Adamson's deposition testimony will be admissible against him. Given his metal disability, it would be manifestly unjust to require Mr. Adamson to testify regarding matters that occurred almost thirty-years ago. Therefore, this Motion for Protective Order should be allowed.

In contrast to the substantial risk of prejudice to the defendants, the risk of prejudice to the plaintiff if this testimony is excluded is slight. Although Adamson was the Chief of Police at the time of the murder, his involvement in this case was limited, and any information possessed by Mr. Adamson, can be obtained from other sources. To the extent that the plaintiff wishes to question Mr. Adamson in support of her municipal and supervisory claims, two of the defendants in this case, Taylor and Boisseau, were members of the Ayer Police Department during Mr. Adamson's tenure as Chief. Indeed, Arthur Boisseau was a senior officer, who served as Interim Chief both before and after Mr. Adamson's tenure. These defendants are familiar with the policies, practices and procedures in effect at the time of the murder and through the end of Mr. Adamson's tenure, and, are aware of their own training, education and experience. In addition, the plaintiff has been provided with personnel files and written policies and procedures in effect at that time.

As to the underlying claims against the individual defendants, Adamson's expected testimony, even if reliable, has marginal relevance to plaintiff's case. Specifically, as noted, Mr.

Adamson retired as Police Chief shortly after the murder occurred, and before the Ayer Police were made aware that Marsh had information about the murder.  Adamson's role in the murder investigation ended when he retired, and he did not participate in either the interview with Marsh or the decision to arrest Waters.  As such, Adamson played no role in the alleged determinative event underlying plaintiff's claims – i.e. that the police coerced Marsh into making incriminating statements.  Therefore, his testimony is irrelevant to the issues in this case – specifically, whether there was sufficient probable cause to arrest and prosecute Waters, whether Marsh was coerced into giving false testimony, and whether the police destroyed or failed to disclose exculpatory evidence.

Moreover, Adamson's role in the original investigation was minimal, and his testimony in this regard would be merely duplicative of Arthur Boisseau's.  Most significantly, Adamson interviewed Waters shortly after the murder.  Arthur Boisseau was also present during this interview, and testified about the police department's investigation of the murder during the original trial.  Adamson's actions with respect to the murder investigation are detailed in reports written by him at the time, and can be corroborated by the testimony of others.  Therefore, the risk of prejudice to the plaintiff if this Motion is allowed is slight.

Defendants submit that, because Adamson's testimony is inherently unreliable due to his mental condition, and any information he possesses lacks relevance, the risk of unfair prejudice posed by forcing Adamson to testify at deposition substantially outweighs the probative value of any testimony he may offer.  As a result, his deposition should be precluded.

III.     CONCLUSION

WHEREFORE, defendants respectfully request that this Court issue a Protective Order, precluding plaintiff from taking the deposition of William Adamson.

                              DEFENDANTS,
                              By their attorneys,

                              /s/ Gregg J. Corbo
                              Joseph L. Tehan, Jr. (BBO # 494020)
                              Gregg J. Corbo (BBO # 641459)
                              Kopelman and Paige, P.C.
                              101 Arch Street
                              Boston, MA  02110
                              (617) 556-0007

302342/01907/0053