UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BETTY ANNE WATERS as | ) | |
| Administratrix of the Estate of | ) | |
| KENNETH WATERS, | ) | |
|      Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| TOWN OF AYER, | ) | CIVIL ACTION |
| NANCY TAYLOR-HARRIS, | ) | NO. 04-10521-GAO |
| ARTHUR BOISSEAU, | ) | |
| BUDDY DECOT, | ) | |
| WILLIAM ADAMSON, | ) | |
| JOHN AND JANE DOES 1-16, | ) | |
| | ) | |
|     Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM
## IN SUPPORT OF MOTION TO COMPEL DISCOVERY

Plaintiff Betty Anne Waters moves this Court pursuant to Federal Rules of Civil

Procedure 34(b) and 37(a) to compel production of discoverable material demanded in Plaintiff's

Amended Second Request for Production of Documents. In particular, defendant Town of Ayer

has withheld documents concerning the investigation of Ernest Downing, the Ties incident, the

investigation of Stanley Randall, and potentially other allegations, complaints, or investigations

of Ayer Police Department ("APD") officers for misconduct from May 21, 1976 to the present.

The Town of Ayer should be compelled to disclose these files because, as explained in further

detail below, their objections fail to outweigh Plaintiff's need to discover this relevant evidence

in pursuit of her Monell claims.

I.    BACKGROUND

In claims against the Defendant Town of Ayer, Plaintiff Betty Anne Waters (Kenny

Waters' sister and now the administratrix of his estate) alleges that the APD created, maintained,

and promoted unconstitutional policies, practices, and customs that permitted APD officers to

routinely engage in coercion, pressure, intimidation, and/or the making of promises, rewards, or

inducements to witnesses in exchange for false statements against suspects, directly and

proximately causing Mr. Waters' unconstitutional arrest, prosecution, conviction, and nineteen-

year imprisonment for a murder and robbery he did not commit.  Similarly, Plaintiff also alleges

claims against the Town of Ayer related to the policies, practices, and customs of the routine

commission and/or suborning of perjury by APD police officers; the systemic failure to disclose

to prosecutors exculpatory and impeachment evidence; and the systemic failure to adequately

train and/or supervise APD officers to ensure that they did not coerce or apply undue pressure to

witnesses, that they did not fabricate false inculpatory evidence against suspects, that they did not

commit or suborn perjury, and that they turned over all exculpatory and impeachment evidence to

the prosecution.  In order to best prove the existence of such policies, practices, or customs,

Plaintiff may seek to introduce evidence beyond the single incident that deprived him of his

liberty for nineteen years.  See City of Oklahoma v. Tuttle, 471 U.S. 808, 824 (1985); Mahan v.

Plymouth House of Corrections, 64 F.3d 14, 16–17 (1st Cir. 1995).

Thus, in Plaintiff's First Request for Production of Documents, Plaintiff requested that

the Town of Ayer produce all documents from May 21, 1976 to the present concerning

allegations, complaints, or investigations of professional misconduct, including: (1) false official

statements, perjury, or fabrication of evidence; (2) suppression of evidence from the prosecutor;

and (3) coercion. (See Ex. A, Plaintiff's First Set of Requests for Production of Documents and Things, Request No. 16.) Although the Town of Ayer objected to producing any such evidence on vagueness, lack of relevance, and over breadth grounds, Plaintiff discovered the existence of other allegations of misconduct against the Town of Ayer and/or the individual defendants, including those involving the Ties scandal and subsequent investigation of APD officer Stanley Randall.

By letter dated November 7, 2006, Plaintiff's counsel specifically requested the production of any complaints of investigative misconduct against every individual defendant including but not limited to all documents related to the Ties scandal, the Stanley Randall investigation, and any allegations of witness intimidation, coercion, or false accusations of rape or sexual assault by the defendant officers. (See Ex. B, Letter from Cornwall to Corbo dated Nov. 7, 2006.) The Town of Ayer renewed its blanket objections to the request and simply named two civil lawsuits filed against the Town of Ayer and/or the individual defendants in this case: Dennis Maher v. Town of Ayer et al. and Stanley D. Randall v. Town of Acton et al. In addition, the Town of Ayer further objected to producing any information related to the Ties scandal on the grounds that it "has no relevance to any of the claims asserted by the plaintiff in this case because the facts underlying that matter bear no similarity to the case at bar." (See Ex. C, Defendants' Third Supplemental Response to Plaintiff's First Set of Requests for Production of Documents and Things, Supplemental Response No. 16.)

Plaintiff then learned of other allegations of misconduct against defendant Town of Ayer and/or the individual defendants, those related to the investigation of Ernest Downing. Plaintiff then served an amended second set of requests for production of documents on defendants on

January 9, 2007. In Request No. 1, Plaintiff sought documents reflecting allegations of pressure, intimidation, abuse, threats, coercion, or the making of promises, rewards, or inducements to witness, victims, or suspects from May 21, 1976 to the present, including letters or correspondence from complainant Richard Boucher alleging that APD officers threatened him into falsely accusing Ernest Downing of molesting him and any and all documentation of the APD's investigation of Downing for the alleged crime. In Request No. 2, Plaintiff demanded all documents reflecting allegations of the fabrication of evidence from May 21, 1976 to the present, including all documentation of the investigation of Stanley Randall for the rape of Lisa Frawley. And in Request No. 3, Plaintiff demanded all documents reflecting allegations of the spoliation, destruction, and/or withholding of evidence from May 21, 1976 to the present, including all documentation related to the discovery, handling, and chain of custody of the knife found by APD officers at the scene of the Ties incident. (See Ex. D, Plaintiff's Amended Second Set of Requests for Production of Documents and Things, Requests Nos. 1–3.)

In response, defendant Town of Ayer objected to all three requests on the grounds of vagueness, relevance, temporal and substantive over breadth, and undue burden to privacy rights of non-parties. The Town of Ayer nonetheless produced one set of documents in response to Request No. 2, disclosing for the first time an internal affairs report concerning an allegation that defendant Taylor-Harris and APD officer Dennis MacDonald created a false police report in the case of an individual named Bruce Holdorf. The Town of Ayer failed to initially disclose these documents despite Plaintiff's first request for production, which specifically demanded documents reflecting any allegations, reports, or complaints regarding the creation of false

- 4 -

reports or perjury and any internal affairs documents concerning the individual defendants.[1]  The

Town of Ayer also specifically objected to producing any documents related to the Downing

investigation on relevance grounds and claimed that "the information relating to the so-call 'Ties

scandal' has no relevance to any of the claims asserted by the [P]laintiff in this case because the

facts underlying that matter bear no similarity to the case at bar." (Ex. E, Defendant's Responses

to Plaintiff's Amended Second Set of Requests for Production of Documents and Things to

Defendant Town of Ayer, Responses Nos. 1–3.)  Aside from the Holdorf file, the Town of Ayer

represented that it is not in possession of any documents responsive to Requests Nos. 1–3 for the

period May 21, 1976 to May 21, 1986, suggesting that they are in possession of responsive

documents for the rest of the remaining period of time, May 21, 1986 to the present.  (See id.)

As described in detail below, contrary to the Town of Ayer's claims, documents

pertaining to the Downing investigation, Ties scandal, and the Randall investigation are

relevant—indeed critical—to Plaintiff's Monell claims against the Town of Ayer and, thus, are

discoverable under the Federal Rules of Evidence.  See Fed. R. Civ. Pro. 26(b)(1).

## II.    ARGUMENT

### A.    Legal Standard

The test for discoverability is relevancy, defined by the Federal Rules as information that

"appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P.

---

[1] Plaintiff requested the following documents as part of her request for the complete personnel files of the individual defendants:  all internal affairs records (including all civilian complaints whether or not substantiated); complaints, reports or investigations of uttering false statements/perjury; coercion complaints, reports of investigations; threatening or intimidating witnesses complaints, reports or investigations; verbal abuse complaints, reports of investigations; all documents concerning civil or criminal lawsuits involving misconduct allegations against the individual defendants; and all documents concerning allegations or investigations of misconduct from any source.  (See Ex. A, Request No. 17.)

26(b)(1).  This threshold has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case," Oppenheimer Fund, Inc. v Sanders, 437 U.S. 340, 350 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 500-501 (1947)), and is even lower in this civil rights action because "[t]he great weight of policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery." King v. Conde, 121 F.R.D. 180, 195 (E.D.N.Y. 1988).  Thus, the unique policy interests favoring discovery in civil rights cases weighs heavily in balancing the need for discovery and any countervailing interests asserted.

> **B.    Documents Concerning the Ties Incident, the Randall Investigation, the Downing Investigation, and Other Allegations, Complaints, or Reports of Misconduct by APD Officers Are Discoverable In Support of Plaintiff's Monell Claims**

A Section 1983 plaintiff asserting Monell claims must prove that the municipal defendant or policymaker was on notice of the problem such that the failure to intervene was deliberate indifference to the plaintiff's constitutional rights. Bordanaro v. McLeod, 871 F.2d 1151 (1st Cir. 1989) (Monell liability exists where unconstitutional custom is so "well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.").  Plaintiff's Requests Nos. 1–3 seek evidence that the kinds of unconstitutional acts alleged here were not at all uncommon, and that Town of Ayer policymakers must have been on notice of them, all of which tends to prove the Monell claim. Fiacco v. City of Rensselaer, et al., 783 F.2d 319 (2d Cir. 1986), cert. denied,

480 U.S. 922 (1987); see also Sango v. City of New York, et al., No. 83 CV 5177, 1989 WL

86995, *10-12 (E.D.N.Y. July 25, 1989).[2]

Plaintiff alleges Monell theories with regard to (1) coercion, pressure, intimidation,

and/or the making of promises, rewards, or inducements to witnesses in exchange for false

statements or testimony against suspects; (2) failure to disclose to prosecutors exculpatory and

impeachment evidence; (3) lack of training and/or supervision enabling APD officers to coerce,

pressure, intimidate, or make promises, rewards, or inducements to witnesses to fabricate false

inculpatory evidence against suspects; commit or suborn perjury; fail to disclose all exculpatory

and impeachment evidence to the prosecution. In Mr. Waters' case, defendants Connors and

Taylor-Harris threatened, intimidated, and made promises, rewards, and inducements to Brenda

Marsh and Roseanna Perry to make false inculpatory statements against Mr. Waters.

Specifically, defendants Connors and Taylor-Harris showed Ms. Marsh, a former

girlfriend of Mr. Waters, autopsy photographs of Katherina Brow and repeatedly threatened her

with taking away her children, charging her as an accessory, and being imprisoned for ten years if

she did not cooperate with them by falsely inculpating Mr. Waters in murder of Katherina Brow.

(See Ex. F, Marsh Aff. ¶¶ 5–6; Ex. G, Excerpts of Marsh Dep. 207–19.) In a meeting with

Connors and Taylor-Harris prior to Mr. Waters' arrest, Ms. Marsh denied that she had any

knowledge of Mr. Waters' alleged involvement in the Brow murder. (See Ex. F ¶ 6; Ex. G at

210.) Yet, in fear that she would lose her children and be charged with a felony, Ms. Marsh

falsely testified before the Grand Jury and at trial to numerous events that never happened,

---

[2] Evidence of prior similar misconduct by these defendants would also admissible pursuant to Federal Rule
of Evidence 404(b) "to show gross lapses in the supervision and discipline of [the defendants]," as well as
absence of mistake or motive. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 572 (1st Cir. 1989).

including allegedly observing a long red scratch on the left side of Mr. Waters' face on the morning after the murder and Mr. Waters allegedly admitting to her that he committed the murder. (See Ex. F ¶ 8; Ex. G at 214–17.) Ms. Marsh now admits that the statements she made before the Grand Jury and at trial are false and were only made under duress due to Connors and Taylor-Harris's threats. (See Ex. F ¶ 8; Ex. G at 217–18.)

Similarly, Taylor-Harris showed Roseanna Perry, another former girlfriend of Mr. Waters, Brow's autopsy photographs and repeatedly threatened her with accessory charges if she did not falsely inculpate Mr. Waters. (See Ex. H, Roseanna Perry Unsigned Aff. ¶¶ 6, 8–13.) Perry told Taylor-Harris that she was plastered on the night she and Mr. Waters talked about the Brow murder and that she did not remember what Mr. Waters actually said. (See Ex. H ¶ 13; Ex. I, Roseanna Perry Signed Affidavit.) Despite this, prior to Mr. Waters' trial, Perry was brought to Ayer from Providence, placed in a jail cell at APD headquarters, and later moved to a motel prior to trial all in an effort to secure her false testimony. (Ex. H ¶¶ 19–20; Ex. I ¶ 7.) Taylor-Harris also informed the Providence Police Department of Perry's cooperation in the Waters case, presumably in exchange for dropping or reducing pending charges against her in Rhode Island. (Ex. J, Sentencing Hr'g Tr. 5.) The exculpatory and impeachment evidence related to Marsh and Perry was never disclosed to the prosecutor prior to trial and, therefore, was never brought to defense counsel's attention in clear violation of Mr. Waters' due process rights under Brady and Giglio.

APD documents related to the Downing investigation, the Ties incident, and the Randall investigation bear directly on Plaintiff's Monell theories by establishing additional incidents where, as in this case, APD officers engaged in the fabrication of evidence. In the late 1970s,

- 8 -

APD officer Ernest Downing reported to the District Attorney's Office that several other APD

officers were engaged in serious misconduct, including involvement in drugs and the abuse of

prisoners. (Ex. K, Lowell Sun Article Oct. 4, 1981; Ex. L, Randall Amended Complaint ¶¶ 35–

36.)  In July 1979, Chief Adamson, a named defendant in this case, ordered APD officer Domick

Pugh to file a complaint against Downing alleging that he had oral sex with a fifteen-year old boy

named Richard Boucher on two occasions in June 1979. (Ex. L ¶¶ 38–39.)  At Downing's trial

in October 1981, two letters from the alleged victim Boucher were introduced by the defense

wherein he apologized to Downing for lying about the charges against him. (Ex. L ¶ 42.)  In the

letters, Boucher, who was a minor at the time, stated that APD officers

> scared me with questions and said if I didn't answer them they would put
> me away.  At the time I was stoned and I was freaking out because I was
> very confused, mixed up, and didn't know what the hell was going on.
> Since they had brought me to another police station and *used a tape
> recorder and threats and promises.*  They told me they wanted Ernie
> Downing off the police force no matter what it took.  *To save my own skin
> I said what they wanted to hear even when it was all a lie and even when it
> wasn't true.*  They promised me I wouldn't go to jail . . . . P.S. Please tell
> Mr. Downing that *I am truly sorry for lieing [sic] about him.*

(Ex. L ¶¶ 42–43) (emphasis added).  Downing was subsequently acquitted of all counts. (Ex. M,

Oct. 15, 1981 Public Spirit Letter to Editor.)  Just as Plaintiff's complaint alleges with respect to

Mr. Waters' case, the Downing documents will show that APD officers fabricated evidence by

threatening to charge the main witness in the Downing case, the complainant, with a crime if he

did not make false statements against a suspect.

Similarly, the APD documents related to the Ties incident and the Randall investigation

provide additional evidence that APD officers routinely engaged in the fabrication of evidence.

On February 25, 1980, the APD received a report of a breaking and entering and malicious

destruction of property at Ties Construction, a company that hired off-duty APD officers to guard its property. (Ex. N, Nov. 11, 1982 Public Spirit Article.) APD officer Stanley Randall was assigned to investigate the case and subsequently discovered that four APD officers, who were formerly employed as off-duty officers at Ties, were the perpetrators of the break-in. (See id.) The accused officers were Sergeant James Lenney and Officers Dominick Pugh, Edward Gintner, and Williams Adamson, Jr., the son of the chief at the time, defendant Williams Adamson, Sr. (See id.) Rather than investigating the case against his son and the other officers, defendant Adamson brought disciplinary charges against Randall on October 13, 1981 for violating APD regulations. (See id.) After an open hearing before the Town of Ayer Board of Selectmen, all charges were dropped against Randall. (See Ex. O, Oct. 29, 1981 Boston Globe Article.) Randall was scheduled to testify against the suspected officers in grand jury proceedings brought by the State Attorney General's Office in November 1981. (Ex. L ¶ 58.) One week prior to his scheduled appearance before the grand jury, defendant Taylor-Harris reported that an individual named Lisa Frawley was allegedly raped by Randall in broad daylight in the parking lot of a diner in Acton, Massachusetts. (Id. ¶¶ 60, 62.) Although Acton was the proper jurisdiction for the complaint, Frawley, who was friends with Lenney and formerly dated Adamson, Jr., filed her initial complaint with Taylor-Harris at the APD. (See id.) On October 27, 1981, Frawley filed rape charges against Randall in Concord District Court. (See id.) On November 6, 1981, Frawley dropped the rape complaint against Randall. (See Ex. P, Randall Arrest Report; Ex. L ¶ 68.) Randall subsequently filed a civil complaint against the Town of Ayer, Adamson, Sr., and Taylor-Harris, among others, alleging that they had fabricated the complaint against him in order to silence him on the Ties incident. (See Ex. L.)

Contrary to defendants' conclusory objections, documents related to Downing, Ties, and Randall are directly relevant to Plaintiff's <u>Monell</u> claim because the essential misconduct is precisely the same across the board—APD officers engaged in the fabrication of false inculpatory statements in order to secure criminal charges against Downing, Randall, and Mr. Waters. These documents will therefore demonstrate that the custom and practice of coercing or otherwise inducing complainants or witnesses to make false statements was so widespread that the constitutional violation Mr. Waters suffered here—the use of fabricated evidence against him at trial—was "almost bound to happen, sooner or later, rather than merely likely to happen in the long run." <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1390 (4th Cir. 1987). This is powerful evidence that the Town of Ayer was deliberately indifferent to the constitutional rights of its citizens. Thus, Defendants' claim that these documents are not relevant to Plaintiff's claim is entirely without merit.

As with any discovery objection, it is "the burden of the objecting party to demonstrate irrelevance," and in lieu of such a showing, "the documents requested must be produced." <u>Kaplan v. Morrison</u>, No. 81 Civ. 3096 (RO), 1984 WL 733, * 7 (S.D.N.Y. August 6, 1984). Defendant's conclusory relevance objection fails to carry the burden—and their failure to identify whether there are any responsive files does not give Plaintiff sufficient information to argue this motion. Nor has the Defendant "explained why the request is unduly burdensome to [it]. At a minimum, [Defendant] must explain the burdensome effect of the request." <u>Joiner v. Blackwood</u>, No. 93-374-B, 1995 WL 85375, at *3 (D.N.H. 1995). <u>See also</u> <u>Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles</u>, 179 F.R.D. 41, 48 (D. Mass. 1998) (same). It has failed to do so.

- 11 -

## III.    CONCLUSION

For the foregoing reasons, the APD files concerning the Downing investigation, the

Randall investigation, the Ties incident, and any other files reflecting allegations, complaints, or

investigations of APD officers for this and other relevant misconduct between May 21, 1976 to the present should be disclosed or, in the alternative, submitted for *in camera* review.

Respectfully submitted,

BETTY ANNE WATERS,
By her attorneys

/s/ Robert N. Feldman
BIRNBAUM & GODKIN, LLP
Robert N. Feldman (BBO # 630734)
280 Summer Street
Boston, MA  02210
Tel: 617-307-6100
Fax: 617-307-6101

Barry C. Scheck, Esq.
Deborah L. Cornwall, Esq.
Monica Shah, Esq.
Cochran Neufeld & Scheck, LLP
99 Hudson St., 8th Floor
New York, NY 10013
(212) 965-9081

## CERTIFICATE OF SERVICE

I, Robert N. Feldman, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 3, 2007.

/s/ Robert N. Feldman
Robert N. Feldman