**EXHIBIT L**

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, S.S.

| | | MIDDLESEX SUPERIOR COURT CIVIL DOCKET NO. 82 2265 |
|---|---|---|

* * * * * * * * * * * * * * * *

Stanley D. Randall
      Plaintiff

  v.

William Adamson, Sr.
      Defendant

William Adamson, Jr.
      Defendant

James Lenney
      Defendant

Town of Ayer
      Defendant

Selectman Chairman Thomas Casey
      Defendant

Selectman Murray Clark
      Defendant

Selectman Francis Callahan
      Defendant

Nancy Taylor
      Defendant

Dominick Pugh
      Defendant

Lisa Frawley
      Defendant

John McIntosh
      Defendant

Edward Gintner
      Defendant

Denise Leger
      Defendant

* * * * * * * * * * * * * * * *

AMENDED COMPLAINT

PLAINTIFF DEMANDS A
TRIAL BY JURY TO ALL
ISSUES OF LAW AND
EQUITY



FILED
IN THE OFFICE OF THE
CLERK OF THE COURT
FOR THE COUNTY OF MIDDLESEX

AUG 17 1983

CLERK

## PARTIES

1.  The Plaintiff, Stanley D. Randall, resides at 11 Columbia Street, Ayer, Massachusetts 01432, County of Middlesex.  Stanley D. Randall is a Police Officer for the Town of Ayer.

2.  The Defandant, William Adamson, Sr., is a resident at Douglas Drive, Ayer, Massachusetts 01432, County of Middlesex.  William Adamson, Sr. was the Police Chief of the Town of Ayer until November 1981.

3.  The Defendant, William Adamson, Jr., is a resident at Groton-Shirly Road, Ayer, Massachusetts  01432, County of Middlesex.  William Adamson, Jr. was formerly a Police Officer for the Town of Ayer.

4.  The Defendant, James Lenney, is a resident of Mohawk Village, Route 2A, Shirley, Massachusetts, County of Middlesex.  James Lenney is currently a Police Officer for the Town of Ayer, whose employment as a police officer was terminated by Police Chief Phillip Connors and the Ayer Selectmen.  James Lenney has appealed all charges and proce-dures.

5.  The Town of Ayer is a municipality in the Commonwealth of Massachusetts whose address is Town Hall, Ayer, Massachusetts 01432, County of Middlesex.  The Town of Ayer

-2-

maintains a Police Force and a Board of Selectmen.

6.  The Defendant, Thomas Casey, is Chairman of the Board of Selectman, Ayer, Massachusetts, Town Hall, Ayer, Massachusetts 01432, County of Middlesex.

7.  The Defendant, Murray Clark, is a Selectman for the Town of Ayer, Massachusetts, Town Hall, Ayer, Massachusetts 01432, County of Middlesex.

8.  The Defendant, Francis Callahan, is a Selectman for the Town of Ayer, Massachusetts, Town Hall, Ayer, Massachusetts 01432, County of Middlesex.

9.  The Defendant, Nancy Taylor, is a resident of 10 Sheffield Street, Pepperell, Massachusetts, County of Middlesex.  Nancy Taylor is a Police Officer for the Town of Ayer.

10.  The Defendant, Dominick Pugh, is a resident of Boston Road, Groton, Massachusetts, County of Middlesex.  Dominick Pugh is currently a Police Officer for the Town of Ayer, whose employment as a police officer was terminated by Police Chief Phillip Connors and the Ayer Selectmen. Dominick Pugh has appealed all charges and procedures.

11.  The Defendant, Edward Gintner, is a resident of 3 Nashua Street, Ayer, Massachusetts  01432, County of

-3-

Middlesex.   Edward Gintner is a Police Officer for the Town of Ayer, currently under suspension.

12.  The Defendant, Lisa Frawley, is a resident of 214 Pleasant Street, Leominster, Massachusetts, County of Worcester.

13.  The Defendant, John McIntosh, is a resident of 214 Pleasant Street, Leominster, Massachusetts, County of Worcester.

14.  The Defendant, Denise Leger, is a resident of 19 Roosevelt Street, Fitchburg, Massachusetts, County of Worcester.  Denise Leger is currently employed at The Wagon Wheel, Fitchburg, Massachusetts.

## FACTS

15.  On or about August 2, 1979, the Ties Construction Company, Ayer, Massachusetts began hiring off duty Ayer Police Officers for private security details.  It was the most lucrative detail ever awarded to an Ayer Police Officer.  Ayer Police Officers:  William Adamson, Jr., James Lenney, and Dominick Pugh were privately employed on the Ties Construction Company detail.

16.  The private paid security detail at the Ties Construction Company was terminated for Ayer Police Officers on January 4, 1980.

-4-

17.  On or about February 25, 1980, Stanley D. Randall was summoned in his official capacity as an Ayer Police Officer on cruiser patrol to the Ties Construction Company, located on the easterly side of Ayer, Massachusetts adjacent to Speck Pond.

18.  Upon arrival to the Stony Brook Warehouse, Ties Construction Company, Randall spoke with Kevin Nangle and Robert Awbin, Ties Construction Company employees.  They advised Randall that when they arrived at work on February 25, 1980, they observed extensive damage and destruction to the facility.

19.  Randall made a check of the building and found a large amount of damage to the Ties Construction Company. Furthermore, Randall discovered that persons entered the building and attempted to set fire at two different locations.

20.  Stanley D. Randall, in his official capacity as investigator of the damage to the Ties Construction Company itemized that damages exceeded $25,000 on February 25, 1980.

21.  On or about February 25, 26, 1980, Stanley D. Randall completed his report concerning the destruction to Ties Construction Company; then advised Lt. Boisseau and Police Chief William Adamson, Sr., about the investigation.  The

-5-

investigation was further continued by Lt. Boisseau.

22.  The Ties Construction Company resumed its off duty Ayer
Police Officer detail of William Adamson, Jr., James Lenney
and Dominick Pugh on February 29, 1980.

23.  On or about April 28, 1981; Leon Smith, an Ayer
Policeman, advised Stanley D. Randall that Ayer Police
Officer Edward Gintner told Leon Smith that James Lenney,
William Adamson, Jr., and Dominick Pugh did the damage and
destruction to the Ties Construction Company on or about
February 23, 24, 25, 1980.  Further Leon Smith stated that
Edward Gintner dropped Lenney, Pugh, and Adamson, Jr. off at
Ties Construction Company from his police cruiser.  Leon
Smith further stated that Gintner told him he picked up
Lenney, Pugh and Adamson, Jr. afterwards.

24.  William Adamson, Jr. threatened Edward Gintner that he
would kill him if he opened his mouth, according to state-
ments by Leon Smith to Stanley D. Randall.

25.  On or about May 20, 1981, Stanley D. Randall informed
Edward Gintner that the Ties story was out about the destruc-
tion to the Ties Construction Company and his involvement.
Randall further informed Gintner what he was told by Leon
Smith and Gintner advised Randall it was correct.

-6-

30.  During this period it was discovered that the reports and pictures of the Ties vandalism were out of their proper file.  These documents were mailed to the Attorney General's office.

31.  The Ayer Police log had an entry on August 3, 1981 that Sgt. James Lenney, Officers Dominick Pugh, Edward Gintner and former Police Officer, William Adamson, Jr., son of the Chief, were advised of their rights by Chief William Adamson, Sr., and asked if they had anything to say regarding allegations now under investigation regarding the Ties Construction Corporation.

32.  The Ayer Police log stated:  "The log says the Chief (Adamson, Sr.) was aware of the investigation in progress — and that it had been going on for some time."

    "He (Trooper O'Brien) denied that it had been going on for more than three days," the log continued.

33.  On or about August 27, 1981, Stanley D. Randall took the Polygraph Test voluntarily concerning the Ties Construction Company matter and passed the Polygraph Test. On August 26, 1981, the Ties incident was reported on Channel 7.

34.  Stanley D. Randall charged that William Adamson, Sr. has known about who was involved in the Ties situation since before the Attorney General's investigation started.

-8-

Stanley D. Randall also states that at no time did Chief Adamson ever talk to Randall or Leon Smith during Adamson's investigation of Ties construction.

35.  Ernest Downing, a 27 year veteran of the Ayer Police Department went to the District Attorney's office to testify about a drug involvement investigtion involving Sgt. James Lenney.  Ernest Downing also testified that a certain group of Ayer Police Officers have engaged in serious misconduct, including beating prisoners.

36.  There were seven criminal complaints pending in Ayer District Court charging assault and battery by an Ayer Police Officer.  The names cited in these complaints were those alleged to be involved in the Ties Construction Company break and vandalism.

37.  On or about October, 1981, Ernest Downing was tried at the Lowell District Court - six man jury on charges brought by Ayer Police Officer, Dominick Pugh, that Downing had committed unnatural acts and lascivious acts with a child under the age of 16 and two counts of inducing the delinquency of a child.

38.  In July, 1979, William Adamson, Sr., ordered Pugh to sign the complaint against Ernest Downing.

-9-

39.   Dominick Pugh testified that Downing on two occasions on June 11, 1979, July 15, 1979 had oral sex with Richard Boucher then 15.   The acts were allegedly witnessed by Michael Camblin.

40.   The jury heard allegations that the charges against Downing were contrived.

41.   Two letters from the alleged victim, Richard Boucher, were introduced into evidence by Defense Attorney Robert Casey.   The letters were in the form of an apology to Downing for "lying".

42.   Richard Boucher, the victim, in the letter written several months after Downing was charged and introduced into evidence stated the Ayer Police "scared me with a whole bunch of questions and said if I didn't answer they would put me away".

43.   In his letter Boucher charged:   "They told me they wanted Ernie Downing off the force no matter what it took. To save my own skin I said what they wanted to hear, even when it was all a lie."   Boucher indicated that he was stoned from drugs and told police everything they wanted to hear about Downing.   Boucher stated he was very confused and mixed up at the time.

-10-

44. Ernest Downing was <u>acquitted</u> of two counts of committing unnatural acts with a child under 16 and inducing the deliquency of a minor. Downing claims he was one of those who fell victim to concocted charges.

45. Officer Dominick Pugh, who investigated the Downing case and lodged complaints, was placed on the stand as a prosecution rebuttal witness. Pugh admitted wanting certain officers off the Ayer Police Force including Downing and Randall.

46. Officer Leon Smith testified that after Downing was charged he heard Pugh say, "Two down, one to go." Testimony later indicated that Officer Arthur Flynn and Downing were the two down and that the one to go was Stanley D. Randall.

47. Stanley D. Randall testified for Downing and about drugs. Randall stated some officers were involved in drug abuse. He stated Downing once investigated Sgt. Lenney for alleged involvement in drugs "but nothing was ever done."

48. On or about October 2, 1981, Chief William Adamson, Sr. set a new policy that the Ayer Police Department log would no longer be immediately available to reporters despite the 1980 Amendment to the Public Records law (M.G.L.A. Ch. 41, §98f) which allows the public and the press access to the

-11-

police log. The Ayer Selectmen fully supported Adamson on this matter.

49. On or about October 13, 1981 William Adamson, Sr. brought charges formally against Stanley D. Randall for violation of rules and regulations of the Ayer Police Department with the intent to expel Randall from the department and impeach his credibility.

50. Stanley D. Randall requested an open hearing on October 13, 1981 despite Adamson's request for a closed hearing.

51. Public opinion was aroused at this open hearing and extremely evident against William Adamson, Sr. on October 13, 1981. The public sensed that Adamson could not respond to articulated community values to fair investigation, they sensed he was on a path of retaliatory lawlessness.

52. After testimony by Stanley D. Randall and fellow officers, all charges were dropped against Randall.

53. Randall believed that the charges of October 13, 1981 brought by Adamson against him were for the purpose to totally remove him as a witness in any future Ties Construction Company court actions or investigations. The dismissal of Randall from the Ayer Police Department could mean the possible disruption, if not elimination, of any court proceedings on the Ties case.

-12-

54. An attempt was made at Randall's hearing on October 13, 1981 to allow Randall to state to the Town of Ayer what he knew about the Ties incident. The Selectmen refused to allow such evidence. The Selectmen indirectly endorsed Adamson's harassment program against Randall to control the Ties investigation.

55. Randall contended that the charges on October 13, 1981 were made in an attempt to silence Randall on the Ties incident. This evidence was critical to any defense Randall might have. The Selectmen refused this testimony.

56. The huge crowd became vocal and demanded the evidence on Ties be heard in Randall's defense. The Selectman still refused.

57. The Selectmen called a recess and dismissed all charges against Randall. The Ayer Selectmen could not respond in a proper manner to the articulated community values of fairness and Adamson's retaliatory lawlessness towards Randall.

58. On or about November 1, 2, 3, 1981, Stanley D. Randall testified before the Grand Jury, concerning the Ties incident, by the Attorney General of the Commonwealth of Massachusetts.

-13-

59.  The Ayer Selectmen, William Adamson, Sr. never once interviewed Randall about the Ties incident or attempted to evaluate his allegations.  Both parties used every means available to silence Randall before his testimony before the Grand Jury.

60.  Adamson and Taylor now invoke the criminal process to harass Randall to control the Ties investigation with their retaliatory lawlessness.  On October 27, 1981, Lisa Frawley with the aid of John McIntosh brought charges against Stanley D. Randall for rape, threatening to kill, assault and battery at the District Court of Central Middlesex, Concord, Massachusetts.  These charges were made one week before Randall was to testify before the Grand Jury.

61.  The alleged incidents allegedly took place at the Rusty Scupper parking lot Acton, Massachusetts August 31, 1981 at 5:30 PM in broad daylight with no eye witnesses to the rape. The alleged victim never took a shower after the rape, went out to dinner.

62.  Lisa Frawley waited almost two months to bring such charges and instead of going directly to the Acton Police Department which had jurisdiction over the matter; Frawley first visited William Adamson, Sr. and Nancy Taylor at Ayer Police Department which did not have jurisdiction over the

-14-

matter.  Nancy Taylor is a close personal confidant of
William Adamson, Sr.

63.  Lisa Frawley dated William Adamson, Jr. and was a room
mate of Denise Leger, a constant companion of Sgt. Lenney.

64.  Lisa Frawley was an office manager at Nu-Car Carrier in
Ayer, Massachusetts in August, September 1981.  Stanley D.
Randall deliverd a summons as an official process server on
or about September 9, 1981 at Nu-Car Carrier with Lisa
Frawley present in the office.  Lisa Frawley was friendly
and calm with Stanley D. Randall on that encounter, nine
days after the alleged rape incident.

65.  William Adamson, Sr. and Nancy Taylor produred infor-
mation about Stanley D. Randall in the Frawley incident in
an impermissibly suggestive manner with no such authority to
do so.  The alleged incident took place at Acton,
Massachusetts completely out of the scope of jurisdiction of
the Ayer Police Department.  Nancy Taylor handled the
situation instead of the Acton Rape Councilor.

66.  Again, William Adamson, Sr. never interviewed Stanley
D. Randall to gain information as to his contentions in the
Frawley incident.  Adamson and Taylor were staging a
contrived confrontation in a court room, coldly and artifi-
cially calculating to invent a witness and bolster any iden-

-15-

tification she might have to impeach and destroy Randall's
credibility before the Grand Jury. The rape victim was
brought into Acton Police Station one week before the Grand
Jury on the Ties incident.

67. On or about November 5, 1981 Lisa Frawley met with
William Adamson, Jr., Sgt. James Lenney, Dominick Pugh and
Denise Leger at James Lenney's apartment at Mohawk Village,
Shirley, Massachusetts.

68. On November 6, 1981, Lisa Frawley dismissed all charges
against Stanley D. Randall at the District Court of Central
Middlesex. Caveat on October 26, 1981, Nancy Taylor,
William Adamson, Sr's. confidant certified under the pains
and penalties of perjury that her report was true and
correct to the Acton Police. Again Nancy Taylor had no
jurisdiction to make such a report since she was an Ayer
Police official and the alleged incident took place in
Acton.

69. On November 6, 1981, at the District Court of Central
Middlesex, Concord, Judge Orlando announced that the victim,
Lisa Frawley, wanted all charges dismissed against Randall.
Frawley also testified under oath that her actions were not
a result of threats, coercion or pressure. She further

-16-

added that she had not received any promises, awards or inducements. There were no witnesses present to substantiate her contentions.

70. On or about November 3, 1981, William Adamson, Sr. resigned as Police Chief; "in the best interests of the Town of Ayer that a new chief be found."

71. Phillip Connors succeeded William Adamson, Sr. as Ayer Police Chief on or about February 1982. One of his first acts is to open up the police log to the public.

72. On or about April 24, 1982, Ayer Police Officers Dominick Pugh and Sgt. James Lenney were fired by Police Chief Connors and Ayer Board of Selectmen for failing to take a lie detector test and to testify before a Middlesex County Grand Jury in connection with the investigation into the $25,000 break and vandalism at Ties Construction Company.

73. On or about April 17, 1982, Ayer Police Chief Connors suspended Edward Gintner for disobeying an order to take a lie detector test concerning the Ties incident.

74. Stanley D. Randall and Leon Smith took and passed a Polygraph Test as part of the Massachusetts Attorney General's official investigation into the $25,000 break and vandalism at the Ties Construction Company.

-17-

74a.  Subsequently, Edward Gintner was fired for failing to take a polygraph test and invoking the fifth amendment before testifying before a grand jury.

75.  Stanley D. Randall emphatically and unequivocally contends that he never raped Lisa Frawley and the entire matter was a gross distortion.  Substantiated by a chronic spirit of hostility by all the defendants to control the Ties investigation.

76.  Stanley D. Randall's decision to testify before the Grand Jury was consistent with honest judgment as a police official.  William Adamson, Sr. never recorded Randall's investigatory observations in public documents.  Adamson had a duty to interview Randall and record his views; Adamson became spite motivated in a retaliatory lawlessness inflicting appalling punishments on Randall.

77.  William Adamson, Sr. advised William Adamson, Jr., Edward Gintner, Dominick Pugh and James Lenney they did not have to take a polygraph on the Ties investigation during his tenure as police chief.  These individuals used Adamson's directives to immunize them from the polygraph.  This again is a significant deterrance to the Ties investigation.

-18-

78.  The Attorney General of the Commonwealth of Massachusetts suggested to William Adamson, Sr. in his capacity as police chief that the officers alleged to have been involved in the Ties incident submit to a polygraph. William Adamson, Sr. again would not order them to take a polygraph.

79.  On July 19, 1982, William Adamson, Sr. testified, under oath, that Officer Nancy Taylor was present at the Attorney General's office during the negotiation, discussions, and statements concerning the Ties incident.  She was also present the entire time Adamson was there.

80.  On July 19, 1982, Edward Gintner admitted under oath to having made the statements to Officer Leon Smith relative to the breakin or destruction of Ties Construction Corporation.

81.  On July 19, 1982, Michael J. Norton of the Attorney General's office stated under oath that Ayer Police Chief William Adamson, Sr had received prior notification in April, 1981 from the Attorney General's office of the statements concerning the breakin or destruction of Ties Construction Corporation.

82.  James Lenney, Dominick Pugh, William Adamson, Jr. and Edward Gintner upon notification to the Attorney General's office through their attorney all invoked the Fifth

-19-

Amendment rights if called before the Grand Jury as law enforcement officials, to testify about the Ties incident.

COUNT ONE:    Malicious interference with the contractual rights of Stanley D. Randall, bad faith attempt to terminate employment contract.

83.   The Plaintiff incorporates by reference paragraphs one through eighty two.

84.   The Plaintiff, Stanley D. Randall, contends that Defendant, William Adamson, Sr., maliciously interfered with his contractual rights as a law enforcement official.

First, Michael J. Norton of the Attorney General's office notified William Adamson, Sr., in his official capacity as Ayer Police Chief in April, 1981 concerning the Ties investigation and the allegations about William Adamson, Jr., Edward Gintner, Dominick Pugh and James Lenney.

William Adamson, Sr. was notified by the Attorney General's office that Stanley D. Randall was the investigating officer of Ties Construction incident and would testify before the Grand Jury in his official capacity as the investigating officer. After this notification, William Adamson, Sr. set upon a procedure of retaliatory

lawlessness to terminate Stanley D. Randall's employment as a law enforcement official. Adamson, Sr. did nothing to investigate Ties between April and August.

Adamson's one well defined purpose was to destroy Randall with the motive that Randall and the investigation could not provide a fair and reliable determination of guilt which was part of Randall's duty to the public.

First, in October, 1981, William Adamson, Sr. recommended to the Ayer Board of Selectmen to take disciplinary action against Randall for numerous unsubstantiated and frivolous charges. All the charges were dismissed immediately. Adamson knew since April, 1981 of Randall's involvement with the Attorney General and Ties.

Second, William Adamson, Sr. next tactic was to use the prosecutorial system to harass Randall with a treacherous scheme to impute a crime so despicable and dangerous as rape in an unconscionable effort to terminate Randall's employment and silence the Grand Jury. William Adamson, Sr. did not have the authority to investigate the charges since they allegedly occurred in Acton, Massachusetts and were solely within the jurisdiction of Acton. The rape charges were dismissed.

-21-

William Adamson, Sr. with malice attempted to terminate Stanley D. Randall's contractual rights of employment to be a law enforcement official. All charges were dismissed. William Adamson, Sr. took no steps to investigate.

The Plaintiff, Stanley D. Randall, contends that Defendant, Nancy Taylor, maliciously interfered with his contractual rights as a law enforcement official.

Nancy Taylor accompanied William Adamson, Sr. to the Attorney General's office concerning the Ties investigation. According to sworn testimony Nancy Taylor was involved in the negotiations, discussions and statements during the entire interview with the Attorney General.

Nancy Taylor with malice investigated the rape charges in Acton though she had no jurisdiction to do so and signed numerous affidavits, without such jurisdiction, to charge Randall with a crime as odious as rape with intent to murder. This was done with malice to improperly control the Ties investigation and proceedings to terminate Randall's employment.

Public policy is intended that principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good. Stanley D. Randall's assertive rights during a Grand

Jury investigation were to an absolute standard of fairness to be free from harassment and damnifying exposure. Nancy Taylor with malice harassed Randall with malice to terminate his contractual obligation as a law enforcement official.

The Plaintiff, Stanley D. Randall, contends that Defendant, William Adamson, Jr., maliciously interfered with his contractual rights to be a law enforcement official.

William Adamson, Jr. maliciously interfered with the contractual rights of Stanley D. Randall to destroy Randall's credibility as the investigating officer of the Ties investigation. William Adamson, Jr. assisted William Adamson, Sr. in attempting to terminate Randall's employment and assisted Nancy Taylor and William Adamson, Sr. in bringing the alledged rape charges against Randall all with the expressed purpose of terminating employment and destroying Randall's credibility before the Grand Jury and Town. William Adamson, Jr. dated Lisa Frawley and was instrumental in intimidating Lisa Frawley to bring the charges of rape with intent to murder against Randall to destroy Randall's credibility before the Grand Jury and to limit his ability in the Ties investigation.

The Plaintiff, Stanley D. Randall, contends that Defendant, James Lenney, maliciously interfered with his contractual rights to be a law enforcement official.

-23-

Stanley D. Randall contends that James Lenney assisted William Adamson, Sr. in attempting to terminate his employment as a law enforcement official with malice due to the factor that Stanley D. Randall was summoned to give his testimony as a law enforcement official at the Lowell District Court in the matter of Ernest Downing.

Lenney was attempting to destroy Downing's credibility by charging him to having committed unnatural acts and lascivious acts with a child under the age of sixteen. These charges were all dismissed due to an acquittal with the jury. The victim stated he was coerced into lying and that Adamson, Sr and Lenney wanted Downing off the force no matter what it took. Lenney transmitted this malice to Randall and attempted to destroy him by assisting William Adamson, Sr. to terminate his contract.

Lenney also tried to terminate Randall's contract due to the allegations in the Ties investigation and assisting Lisa Frawley through her roommate Denise Leger, a constant female companion of Lenney, in terminating his employment by bringing the odious charges of rape with intent to murder.

The Plaintiff, Stanley D. Randall, contends that Defendant, Dominick Pugh, maliciously interfered with his contractual rights to be a law enforcement official.

-24-

Dominick Pugh made the statement under oath that he stated, "Two down, one to go." Testimony later indicated that Officer Arthur Flynn and Downing were the two down and that the one to go was Stanley D. Randall.

This clearly evinces a malicious intent on his part to terminate Stanley D. Randall's employment. Pugh also intended to silence Randall due to the Plaintiff's involvement in the Ties investigation and assisted in bringing the rape charges against Randall.

The Plaintiff, Stanley D. Randall, contends that Defendant, Lisa Frawley, maliciously interfered with his contractual rights to be a law enforcement official.

The Plaintiff contends that Lisa Frawley used the prosecutorial system with a treacherous scheme to impute a crime so despicable and dangerous as rape to silence Stanley D. Randall before the Grand Jury and to termiante his employment as a law enforcement official with malice.

Lise Frawley acted with malice in this matter with William Adamson, Sr., William Adamson, Jr., Nancy Taylor, Denise Leger, James Lenney and Dominick Pugh.

The Plaintiff, Stanley D. Randall, contends that Defendant, Denise Leger, maliciously interfered with his contractual rights to be a law enforcement official.

-25-

Stanley D. Randall contends that Denise Leger assisted James Lenney, William Adamson, Sr., William Adamson, Jr., Dominick Pugh, Lisa Frawley and Nancy Taylor in a scheme to impute a crime so despicable and dangerous as rape to silence Stanley D. Randall before the Grand Jury and to terminate his employment as a law enforcement official.

Denise Leger did conspire with Lisa Frawley personally to protect her constant companion James Lenney to control the Ties investigation and dismiss Randall.

The Plaintiff, Stanley D. Randall, contends that Defendant, Edward Gintner, maliciously interfered with his contractual rights to be a law enforcement official.

Stanley D. Randall contends that Edward Gintner admitted under oath to making the statements concerning the allegations in the Ties matter. Edward Gintner was dismissed for failure to obey a lawful order of Chief Connors for not taking a polygraph and for failure to testify before a Grand Jury by invoking the Fifth Amendment.

This was a malicious act to assist William Adamson, Sr. in covering up the Ties investigation and to terminate Stanley D. Randall's employment.

Edward Gintner had a duty under public policy that principle of law which holds no citizen can lawfully do that

-26-

which has a tendency to be injurious to the public or against the public good. Edward Gintner had a duty to testify truthfully about Ties Construction in his professional capacity as a law enforcement official and if he had, this matter would not have reached such appalling proportions.

Plaintiff, Stanley D. Randall, contends that Defendant, John McIntosh, maliciously interfered with his contractual rights to be a law enforcement official.

Stanley D. Randall contends that John McIntosh signed affidavits in a wilful and malicious manner concerning the rape charges with the intent to terminate his contractual rights as a law enforcement official and influence the Ties investigation.

Stanley D. Randall contends that the Defendants: Selectman Chairman, Thomas Casey, Selectman Murray Clark and Selectman Francis Callahan with the Town of Ayer did maliciously interfere with his contractual rights to be a law enforcement official.

Stanley D. Randall contends that these actions to terminate his employment contract as a law enforcement official and the retaliating lawlessness of William Adamson, Sr. to inflict appalling punishments on Randall were

-27-

encouraged and approved by Casey, Clark, Callahan and the Town of Ayer by:

(1)  Their acting with malice to discipline Randall for misconduct in October, 1981.

(2)  The malice to discipline Randall was a reasonably foreseeable consequence to the appalling conditions that evolved in Ayer to the Ties Construction matter.

The Selectmen and Town of Ayer also failed to correct the malicious actions of William Adamson, Sr. during the Grand Jury testimony of Randall on Ties Construction failing to provide Randall with full and equal benefits under the law and his employment contract.  Therefore, they implied or tacitly approved or encouraged the harassment of Randall as a law enforcement official.

COUNT TWO:  Tort of Civil Conspiracy

85.  The Plaintiff incorporates by reference paragraphs one through eighty-four.

86.  Stanley D. Randall contends that the Defendants: William Adamson, Sr.; William Adamson, Jr.; James Lenney; Nancy Taylor; Dominick Pugh; Lisa Frawley; John McIntosh; Edward Gintner; Denise Leger acted as a combination of persons pursuant to an agreement to injure the Plaintiff.

-28-

The purpose of this conspiracy is the perpetuation of unlawful acts to inflict wrong injury upon Stanley D. Randall.  The combinations with such purposes were to interfere with the contractual rights and constitutional rights of Stanley D. Randall by depriving him of his right to work as a law enforcement official and with a scheme to impute a crime so despicable and dangerous as rape in an unconscionable effort to silence his investigation of Ties Construction and testimony before the Grand Jury.

The Defendants:  Selectman Chairman Thomas Casey, Murray Clark, Francis Callahan impliedly, tacitly approved or encouraged the conduct of the defendants by acting with malice to discipline Randall for misconduct during the Ties investigation and implementing the reasonably foreseeable consequences in the harassment of Randall in the Ties investigation and his testimony before the Grand Jury.

Liability exists due to their actions due to their implementation of policies, statements and actions in accordance with the purpose, combination and acts if the above named defendants to interfere with the contractual rights of plaintiff for illegal means.

COUNT THREE:  Tort of Intentional or Negligent infliction of
                Emotional Distress.

87. The Plaintiff incorporates by reference paragraphs one through eighty-six.

88. Stanley D. Randall contends that Defendant, William Adamson, Sr., intended to inflict emotional distress or he knew or should have known that emotional distress was the likely result of his conduct by recommending to the Board of Selectmen to take disciplinary action against Randall after the Ties investigation by the Attorney General and his harassment of the rape charges against Randall which were all dismissed.

William Adamson's conduct in these matters was extreme and outrageous beyond all bounds of decency and utterly intolerable.

William Adamson, Sr. knew as a law enforcement official that his unrestrained intrusion into destroying Randall's career and credibility with the damnifying exposure of charging Randall with a crime so despicable and dangerous as rape caused the Plaintiff's distress.

The distress was severe so that no reasonable man could be expected to endure it. One who by extreme and outrageous conduct and without privilege causes severe emotional distress to another is subject to liability for such emotional distress even though no bodily harm can result.

-30-

William Adamson knew about Ties Construction on April, 1981 and did nothing but harass Randall professionally from April until November 1981.

Stanley D. Randall contends that Defendants: William Adamson, Jr.; Dominick Pugh; Edward Gintner and James Lenney intended to inflict emotional distress on Plaintiff when Pugh stated under oath "Two down, one to go." The one to go was Stanley D. Randall, their harassment of Randall as investigator of the Ties incident and Grand Jury witness, assisting Chief Adamson in attempting to dismiss Randall and subsequently their involvement with Lisa Frawley and Denise Leger in bringing rape charges against Randall. Their conduct was extreme and outrageous beyond all bounds of decency. This conduct was the cause of the Plaintiff's distress and was so severe that no reasonable man could be expected to endure it.

Stanley D. Randall contends that Defendant, Nancy Taylor, intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of her conduct when she attended the Attorney General's meeting on Ties Construction knowing Randall was the investigative officer and Grand Jury witness then Taylor beyond all bounds of decency assisted Frawley in bringing rape charges two weeks before Randall was to testify before

-31-

the Grand Jury.   Nancy Taylor also assisted William Adamson, Sr. in terminating Randall's employment.   This conduct caused the Plaintiff distress and no reasonable man could be expected to endure it.

Stanley D. Randall contends that Lisa Frawley intended to inflict emotional distress on Stanley D. Randall by filing false rape charges against him two weeks before he was to testify before a grand jury, then dismissing them two days after testimony.   This conduct was extreme and outrageous.   This conduct was the cause of the Plaintiff's distress and was so severe no reasonable man can endure it.

Stanley D. Randall contends that Denise Leger intended to inflict emotional distress on Stanley D. Randall by assisting Lisa Frawley in filing false rape charges against Stanley D. Randall.   Denise Leger was Lisa Frawley's roommate and used her apartment for discussions on the scheme.   Denise Leger dated James Lenney an individual Randall was testifying against when the rape charges were filed.   This conduct was extreme and outrageous and caused Randall emotional distress.   The distress was so severe no reasonable man could be expected to endure it.

Stanley D. Randall contends that John McIntosh intended to inflict emotional distress on Stanley D. Randall by

-32-

assisting Frawley in filing false rape charges against Randall with false affidavits and reports. This conduct was so extreme and outrageous and without privilege causing Randall severe emotional distress that no man can endure.

Stanley D. Randall contends that Selectmen Thomas Casey, Murray Clark, Francis Callahan and the Town of Ayer intended to inflict emotional distress or knew or should have known emotional distress was the likely result of their conduct when they followed Adamson's recommendation to take disciplinary action against Randall after the Ties investigation broke, knowing Adamson's son was involved and that all Adamson did was to harass Randall before his Grand Jury testimony. They held Randall up to ridicule by having a public hearing in these frivolous charges that were dismissed.

Their conduct was extreme and outrageous and they subsequently impliedly, tacitly approved or encouraged the harassment of Stanley D. Randall.

Their conduct was the cause of Randall's distress and the distress was so severe that no reasonable man could be expected to endure it.

Stanley D. Randall is on medication and is seeking medical attention due to the distress.

-33-

COUNT FOUR:  Violations of Constitutional Rights, Civil
             Actions by Aggrieved Persons Pursuant to
             M.G.L.A. Chapter 12 S. 11I and the Federal
             Civil Rights Acts, 42 U.S.C. 1981-1988.

89.  The Plaintiff incorporates by reference paragraphs one
through eighty-eight.

90.  Stanley D. Randall contends that his exercise and
enjoyment of rights secured by the Constitution or laws of
the United States, or of rights secured by the Constitution
or laws of the Commonwealth have been interfered with or
attempted to be interfered with as described in Section 11h.

    The acts described in paragraphs 1 through 89
constitute an unlawful arrest, denial of free speech,
conspiracy to commit an unlawful act all in violation of the
First, Fifth, Sixth, and Fourteenth Amendments to the
Constitution and 42 U.S.C. S 1981-1988.

    Where police conspire among themselves or in
conjunction with private individuals to deprive persons of
their constitutional rights a cause of action is stated
under 42 U.S.C. 1983.

    Stanley D. Randall contends there was a misuse of power
possessed by state law or virtue of state law and made

-34-

possible because the wrongdoers:  William Adamson, Sr.,
William Adamson, Jr., Dominick Pugh, James Lenney, Edward
Gintner and Nancy Taylor as policemen were clothed with the
authority of state law.

Further, Stanley D. Randall contends that private
parties:  Lisa Frawley, Denise Leger, John McIntosh did
conspire with the public officials and are liable under
Section 1983.

Stanley D. Randall still further contends that
Selectmen Thomas Casey, Murray Clark and Francis Callahan as
public officials of the municipality of Ayer and the Town of
Ayer did impliedly or tacitly authorize, approve or
encourage the harassment of the Plaintiff.  Liability exists
that where a municipal policy of some nature is the cause
unconstitutional actions taken by municipal employees, the
municipality is liable pursuant to 42 U.S.C. 1981, 1983,
First, Fifth, Sixth and Fourteenth Amendments.

Pursuant to 42 U.S.C. 1983 all of the Defendants
combined and conspired to commit an individual act, or to
commit a lawful act by unlawful means and unlawful acts in
agreement between all the parties to inflict a wrong or
injury upon another and their overt acts ended in damage to
Randall.

The conspiracy among the Defendants resulted in the actual deprivation of the constitutional rights of Stanley D. Randall by:

(1)   The cover up of Ties by William Adamson, Sr., William Adamson, Jr., Nancy Taylor, James Lenney, Edward Gintner, Dominick Pugh as law enforcement officials in their official capacity under the color of state law.

(2)   The failure of police officials William Adamson, Sr., William Adamson, Jr., Nancy Taylor, Dominick Pugh, James Lenney, Edward Gintner from testifying before the Grand Jury and Gintner, Adamson, Jr., Lenney and Pugh invoking the Fifth Amendment before testifying before the Grand Jury.

(3)   Gintner, Pugh, Lenney and Adamson, Jr. failing to take a polygraph test concerning Ties.  Gintner, Pugh and Lenney being dismissed for failure to obey a lawful order by Chief Connors to take a polygraph test concerning Ties.

(4)   William Adamson, Sr. having full knowledge of the Ties allegations since April, 1981 from the Attorney General and failing to take any positive action except to harass and torment Randall, the investigative officer and witness before the Grand Jury.

-36-

(5)  The filing of false criminal charges of rape by Frawley two weeks before the Grand Jury with the aid of Adamson and Taylor who had no jurisdiction in the matter and in conjunction with the rest of the Defendants.

(6)  The manipulation of evidence and the police log by William Adamson, Sr. concerning Ties, where Adamson broke statutory laws.

(7)  The recommendation by William Adamson, Sr., to the Board of Selectmen to take disciplinary action against Randall after the investigation by the Attorney General into Ties.  The Selectmen approved these frivolous charges that were dismissed.

Further, Stanley D. Randall invokes 42 U.S.C. 1983 where negligent conduct is a sufficient basis for S. 1983 liability and states that Murray Clark, Francis Callahan, Thomas Casey and Town of Ayer were negligent in their duties where Stanley D. Randall's constitutional rights were violated.

Stanley D. Randall also invokes 42 U.S.C. 1983 against Supervisory Defendants, Clark, Callahan, Casey and Town of Ayer in that the Supervisory Selectmen Defendants and Town of Ayer are held liable where they knew or should have known of actual or potential problems concerning Ties construction

-37-

and Randall and failed to correct them or prevent them. The
Defendants are charged with a failure to exercise their duty
to supervise the police officers or the institutions.
Publicity of police misconduct was widespread and credible.
The Selectmen and Town of Ayer should have taken steps
immediately to have prevented the deprivation of Randall's
rights.

COUNT FIVE:  Slander, Libel, Injurious Falsehood.

91.  The Plaintiff incorporates by reference paragraphs one
through ninety.

92.  Stanley D. Randall contends that Defendants, Lisa
Frawley, Denise Leger, John McIntosh did state to third
persons that Stanley D. Randall did rape Lisa Frawley with
intent to murder or words to that effect.  These words were
published in numerous publications and did hold Stanley D.
Randall up to hatred, ridicule and contempt within a
respected class of the community.

Defendants William Adamson, Sr., William Adamson, Jr.,
Nancy Taylor, Edward Gintner, Dominick Pugh, James Lenney
did state Stanley D. Randall did rape Lisa Frawley with
intent to murder or words to that effect and that Stanley D.
Randall was incompetent in his duties as a police officer or
words to that effect to third persons.  These words were

-38-

published in numerous publications and did hold the
Plaintiff up to hatred, ridicule and contempt within a
respected class in the community.

COUNT SIX:  Negligence

93.  The Plaintiff incorporates by reference paragraphs one
through ninety-two.

94.  Stanley D. Randall contends Defendants, Thomas Casey,
Murray Clark, Francis Callahan and the Town of Ayer were
negligent in their supervisory duties in managing the Town
of Ayer during the Ties investigation from April 1981 until
November 1981.  William Adamson, Sr. was negligent in his
supervisory powers as police chief.

   WHEREFORE, Stanley D. Randall demands four million
dollars in damages from William Adamson, Sr. and one million
dollars from each and every defendant plus interest plus
costs plus reasonable attorney's fees.

Damon Scaraно, Esquire
60 Commercial Wharf
Boston, Massachusetts 02110
(617) 723-4572

-39-

AFFIDAVIT OF ROBERT F. CASEY, JR.

I, Robert F. Casey, Jr., under oath depose and say as follows:

1) In November, 1981, I was Stanley Randall's attorney.

2)  On November 10, 1981, I received a call from Connie Fedkow, and she related the following to me:

She told me that in a conversation with James Lenney, James Lenney said to her that a meeting had taken place in his apartment on November 5, 1981 and that present were Lisa Frawley, Domenic Pugh, Denise Ledger, William Adamson, Jr. and James Lenney.

Signed under the pains and penalties of perjury this _____16 TH_____ day of November, 1982.

Robert F. Casey, Jr.