UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-10521-GAO

BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,

Plaintiff

v.

TOWN OF AYER, NANCY TAYLOR-HARRIS, in Her Individual Capacity, ARTHUR BOISSEAU, In His Individual Capacity, BUDDY DECOT, In His Individual Capacity, WILLIAM ADAMSON, in His Individual Capacity, PHILIP L. CONNORS, in His Individual Capacity, and JOHN DOE and JANE DOES 1-16, in Their Individual Capacities,

Defendants

DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSES (CRIMINAL DEFENSE FILES)

Now come defendants Town of Ayer, Nancy Taylor-Harris, Arthur Boisseau, William Adamson and Philip Connors (the "Defendants"), and hereby move, pursuant to Fed.R.Civ.P. 37(a)(2)(B) and Local Rule 37.1, that this Honorable Court issue an order, compelling plaintiff to provide a complete supplemental response to Defendants' First Request for the Production of Documents seeking potentially highly relevant documentation regarding Mr. Waters' criminal prosecution.

As grounds therefor, the Defendants rely on the following Memorandum of Reasons.

MEMORANDUM OF REASONS

I.  Introduction

In Defendants' First Request for Production of Documents, Request No. 9, served on or about March 3, 2005, Defendants requested "[a]ll documents and materials pertaining to or concerning the prosecution of plaintiff's decedent, the appeal from his conviction and his subsequent motion for a new trial." In response to Defendants' request, Plaintiff has failed to produce potentially highly relevant documents from Kenneth Waters' criminal prosecution, on

grounds of attorney work product privilege.  See Exhibit A, Plaintiff's Privilege Log, Production of November 21, 2006.

Defendants assert that plaintiff has waived attorney work product privilege by alleging Brady v. Maryland claims against the Defendants and that the requested information is highly relevant to the Defendants' defense.  Plaintiff alleges in her Complaint that the Defendants "withheld and/or destroyed presumptively exculpatory evidence, including alibi and fingerprint evidence."  Complaint ¶3.  In addition, plaintiff alleges "upon information and belief, the APD defendants either deliberately failed to compare Mr. Waters' fingerprints to the unidentified print found at the scene as they had done to exclude other suspects, or had his prints compared and withheld the exculpatory results."  Complaint ¶57.  Plaintiff further alleges "APD defendants never disclosed to the prosecutor or defense counsel material exculpatory and/or impeachment information…" Complaint ¶61 (Emphasis supplied).

Plaintiff, despite raising such serious allegations, refuses to provide the Defendants with necessary, and otherwise unavailable, documents currently in her possession to defend against such allegations.  Specifically, exculpatory information provided to Waters' criminal defense counsel will serve to negate the Brady claim.  Defendants now seek to compel information, "without which they may be unfairly prejudiced in their defense."  Newburyport Clamshell Alliance v. Public Service Company of New Hampshire, 838 F.2d 13, 22 (1st Cir. 1988) (discussing the attorney-client privilege).  To defend against plaintiff's Brady claims, Defendants need to review the criminal defense file of Kenneth Waters.  Defendants further assert that, as explained in more detail below, that plaintiff has waived such privilege by asserting the Brady claim against the Defendants, and that Defendants have a substantial need for the materials. Moreover, policy favors such disclosure as there is no risk of criminal prosecution against Kenneth Waters and such information to defend against the Brady claim is only available from reviewing criminal defense files.

2

II.   Plaintiff Has Waived Kenneth Waters' Criminal Defense Attorney Work Product Privilege By Asserting Brady Claims Against the Defendants

Three factors are analyzed to determine if there has been a waiver of the work product privilege; a court evaluates whether the party asserting the privilege: 1) seeks to use it in a way inconsistent with the privilege's purpose; 2) has a reasonable basis for believing that the disclosed materials would be kept confidential, and 3) as in this instance, whether waiver would "trench on any policy elements inherent in the privilege." In re Atlantic Financial Management Securities Litigation Margaret Hall Foundation, Inc., et al., v. Strong, et al., 121 F.R.D. 141, 145 (D.Mass. 1988) (citing In re Subpoena Duces Tecum, 738 F.2d. 1367, 1372 (D.C. Cir. 1984)).  Moreover, the First Circuit has held:

> [T]he work product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent.  The purpose of the work product privilege is to protect information against *opposing parties*, rather than against *all others* outside a particular confidential relationship, in order to encourage effective trial preparation…

In Re Raytheon, 218 F.R.D. 354, 359 (D. Mass. 2003) (citing U.S. v. Amer. Tel. & Tel. Co., 642 F.2d. 1285 (D.C. Cir. 1980)).  (Emphasis in original).

Moreover, in the attorney-client privilege context, this Circuit has held that disclosure is appropriate when "the criminal trial ended with an entry of *nolle prosequi…*" and the revelation of information "will no longer increase the risk of criminal or civil liability." Greater Newburyport Clamshell Alliance v. Public Service Company of New Hampshire, 838 F.2d 13, 21 (1st Cir. 1988).  Courts also favor disclosure in similar factual contexts because "plaintiffs are not being *compelled* to forego their privilege.  Having control of their lawsuit, they can always drop the case if disclosure of the privileged information is too high a price to pay." Id.  (Emphasis in original).

Plaintiffs may also "amend their complaint to lessen the defendants' need for the privileged information." Id.

Plaintiff seeks to use the work product privilege in a manner inconsistent with its intent. In this instance, the privilege's proper purpose was to successfully defend Waters' criminal charges and such use has long ago ended. Plaintiff had no reasonable basis for believing such documents would be kept confidential in this litigation, especially given the Brady claims asserted against the Defendants. The only way for the Defendants to defend themselves against such claims is to determine what was and was not disclosed to Waters' criminal attorney at the time of his criminal prosecution; thus there is no reasonable expectation of confidentiality. Moreover, plaintiff's assertion of the attorney work product privilege is unjust given the circumstances of this case, where the underlying criminal case ended decades ago, there is no issue or risk regarding Waters' reprosecution for the underlying crime in this case and the mental impressions and knowledge of Waters' criminal defense attorneys remains a central issue in the current civil matter.

It is well-settled that in a civil action for damages, "fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend. That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails." Greater Newburyport Clamshell Alliance v. Public Service Company of New Hampshire, 838 F.2d 13, 20 (1st Cir. 1988) (discussing attorney/client privilege); Federal Deposit Insurance Corp. v. R.W. Beck, Inc., 2004 WL 1474579 (D.Mass. 2004) (discussing work product privilege). As noted, in this case, the thoughts, impressions, and knowledge of Waters' former criminal defense attorneys is essential to the Defendants' defense of the Brady claim against the allegation that Waters was deprived of a

fair trial because exculpatory evidence was withheld by the Ayer defendants. Therefore, in the context of this case, plaintiff's assertion of work product privilege is inapplicable.

III.    <u>Defendants Have a Substantial Need for the Withheld Materials</u>

Pursuant to Fed.R.Civ. P 26(b)(3), even trial preparation materials in the pending case may be disclosed "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Clearly, an even stronger case for disclosure exists concerning a long-terminated underlying criminal prosecution. Defendants, as explained in more detail above, have a substantial need for the criminal defense materials being withheld by plaintiff in this litigation. Such materials, which are otherwise unavailable to the Defendants by any other means, may provide significant insight into the knowledge of Waters' criminal defense attorneys and the information provided to them by the Defendants. Such materials are necessary to properly defend plaintiff's <u>Brady</u> claims.

WHEREFORE, Defendants request that this Honorable Court order the plaintiff to provide full and complete responses to the Defendants' discovery request described herein, within 10 days of the Court's order.

RESPECTFULLY SUBMITTED,

DEFENDANTS

By their attorneys,

<u>/s/ Joseph L. Tehan, Jr.</u>
Joseph L. Tehan, Jr. (BBO# 494020)
Gregg J. Corbo (BBO# 641459)
Kopelman and Paige, P.C.
101 Arch Street, 12th Floor
Boston, MA  02110-1109
(617) 556-0007

313226/AYER-WATERS/0053

CERTIFICATION OF COMPLIANCE PURSUANT TO
LOCAL RULES 7.1(A)(2) AND 37.1(A)

I, the undersigned Gregg J. Corbo, hereby certify that the provisions of Local Rule 7.1(A)(2) and 37.1(A) have been complied with prior to filing this Motion to Compel. On November 16, 2006, I sent a written conferral letter to plaintiff's counsel Deborah L. Cornwall, Esq., which is attached hereto as Exhibit B.

/s/ Gregg J. Corbo
Gregg J. Corbo