# COCHRAN NEUFELD & SCHECK, LLP
99 Hudson Street
New York, New York 10013

---

Tel: 212-965-9081
Fax: 212-965-9084

Peter J. Neufeld
Barry C. Scheck
Nick J. Brustin
Debi Cornwall

Johnnie L. Cochran, Jr.
(1937-2005)

---

Jennifer E. Laurin
Monica R. Shah
Anna Benvenutti Hoffmann

November 27, 2006

Gregg J. Corbo, Esq.
Kopelman & Paige, PC
101 Arch Street, 12th Floor
Boston, MA 02110

  Re:  <u>Waters v. Town of Ayer et al.</u>, No. 04 Civ. 10521

Dear Mr. Corbo:

  I write in response to your letter dated November 17, 2006. With respect to the privilege log associated with plaintiff's November 10, 2006 Supplemental Rule 34 Disclosure, you argue that the assertion of attorney work product privilege is inappropriate because the mental impressions of Mr. Waters' criminal defense attorneys is allegedly "the central issue in this case." While plaintiff's *Brady* claim has arguably placed a narrow scope of attorney work-product at issue – and as such we will produce certain documents identified below – the *Brady* claim does not vitiate the privilege as to all work product. In the context of attorney-client privilege, courts have recognized that "'[a]n 'at issue' waiver, in circumstances where it is recognized, should not be tantamount to a blanket waiver of the entire attorney-client privilege in the case.'" *Fed. Deposit Ins. Corp. v. R.W. Beck, Inc.*, No. Civ.A.01.-CV-11982RGS, 2004 WL 1474579, at *2 (D. Mass. July 1, 2004) (quoting *Darius v. City of Boston*, 433 Mass. 274, 283 (2001). As a result, "a court is obligated to craft its order in such a way 'so as to limit the permissible discovery to what is truly 'at issue'" *Id.* (quoting *Darius*, 433 Mass. at 283).

  With these principles in mind, your request for a broad disclosure of all work product, even by Mr. Waters' post-conviction attorneys, is overbroad and unreasonable. Plaintiff's *Brady* claim alleges that the failed to disclose exculpatory evidence to the prosecutor and Mr. Waters' trial attorney, Bernard Bradley. At most, plaintiff has arguably placed at issue Mr. Bradley's underlying knowledge concerning the exculpatory evidence at the time of the trial. As such, plaintiff only acknowledges that work-product privilege may be waived with respect to documents reflecting the mental impressions, conclusions, opinions, or legal theories of Mr.

1

Bradley prior to Mr. Waters' conviction.  Therefore, plaintiff hereby discloses Mr. Bradley's pre-conviction correspondence or notes that you identified in your letter, without waiver of any other privileges.

Sincerely,

*Monica R. Shah*

Monica R. Shah

Enclosures

cc.:    Rob Feldman, Esq. (w/o encl.)

1) lived in Ayer w/ Grandfather during years December 79 - Jan 1980 stage dental left go R.I. —

* Left Ayers in 1980 because he lost job — gave address to P.O. office in Ayer D.C. When went to Providence he was on probation in R.I. — this Ayer case was transf. to R.I.

Scene on Rosewood Ave. —
         500 yds from ?'s address.
Trailer in which I lived.

5/21/81 does not know time —

On 5/21/1980 D in Ayer D.C. in front of J. Williams. came w/ self with ex girl & child. chgd w/ B+E a P.O. —
went to Park St Diner — saw boss (?) name talked heard siren saw cruiser go by Diner around lunch. (gews) talk about cruiser speed —

D call/wife pick me up.
       she did

Went home - went right by the trailer
passed + went home, thought fight

Uncle came in from work sd Mrs Brown
been murdered - May have been 4:30 5:00

Police came next day. Lt. Beausteau
to station at least thrice.

Dsd he would take a polygraph -
set up. D went to Prov R.I

D took a Voice Stress Test at
station by Lt Berteau administered
the test. Done 2nd time at station.

Whole town knew bout it

Brenda Marsh + D lived together for
about 5 years — had one child by
her) —
      continued to live together —
she not getting along w D's grandfather
" so he was rude — tough —
" went back to Worcester — D lost job +
was drinking —

      continued to see her — got job with brother
got apt from father-in-law — &
Brenda moved to ? in R.I.
lived together about 1 month
D drinking — she left about 3 mo after
the killing or longer
she kept coming down — kept telling D
went for alch. program at Brockton V.A.

Labor Day 1980  she came to visit
     both — + 15 other people went fishing
D drunk    got into big fight she
both Kens arrested for assault  D released
next A.M.  she chopper — never saw
her again —

BAW00100

Uncle saw a guy around the house that day the Romeo Collard - lives in Shirley

Uncle name Benny Davenport Jr - 7 Vernon St Ayer

is a gay lives with friend

Uncle works with him (Romeo) at Groton Paper Mill

1 yrs ago Romeo's wife com. suicide w a shotgun 1st after he bought brand new car

~~Romeo~~

Benny may have told May Jarvis Fitchburg

~~of Benny R~~

friend of D's mother

Eugenie Brow

Eugenie Brow    Dearnolm    Grafton
Her mother in law
7½ Rosewood Ave    Ayer

Two photos  E₂ 2 & 3 q trailer  Each
renfew  # 40 A - 41

Feb. 1980    linen closet
kept money tired  envelope
fell to floor    it contained $
multiple "100    bills — $1600

did not trust banks every way
and    going to Germany


Saw money again at Rock St Pine
she hid money with her
towards end of March or 1st of April
when untold

2 days of to death  went to home
went thru linen closet  floor empty
any item  money & pocketbook
gone

Photo linen closet    #28 on beds

#4

_____

Dewyer —    5-21-80

went to scene    11 A.m    got there

entered parlor — rugs kitchen    saturated

with blood    bedroom    saturated

Keylor Area    #30    Ex #  6

Kitchen    " #13    Ex. #  5

BR

closet —

Kitchen eating area — #37    Ex 7

closet

Kitchen to fl    #14    Ex 8

linen closet

face up on floor    staff words all over

floor    body

Eight photos —

✓ to bed    #5

✓ "  " head part    #1

another part    #5B

5A

1Y

9

3

✓ head
✓ arm + forearm          30
✓ stab wounds head       17          ↓
                          9          16

lamp broken  stan fed   #13        #17
after lamp ∼ not broken  #34       #18
Toooter                  #15        #19

Photo Knife found in event socket 33   #20
                                        21

Time Cezar. PD      time Stats got there  10³⁰ – 11
                                          ⁹
Cezar Police called   7-8 A.M.

cannot recall where talk with I both
place

Subsequently he had left area
access to information

Brenda Marsh,    7-14-57
live Worcester all life

in 1980 lived in Ayer + Providence
w/ Def    he was boy frien

lived in Worc.    close to 3 yrs
Went to Ayer 7 Vernon St grandfathe
lived 1 month    moved
sometime in May    before    5-21-80

D worked Pink St Diner    as cook

May 21 something happens?    V dead
seen all cruisers    10³⁰ - 11⁰⁰
D went + looked
D sleeping

Night before supposed to working
left sometime 11 sometimes latter

came here 5·6 in morning nature
earlier

saw him 10³⁰ little earlier
he went to sleep    w/ THK

I saw cruisers    1/2 liter

woke up   so there was police
cruisers  in neighborhood
* Do you want to go down there

D did go with Police

came back so going to R.I —

* so I'm being blamed for something
I did not do

Stayed with father on West St.
for 1 months —

left Prov in July about 5 weeks
it after birthday

Back to 5/21/80
D had been drinking  drinks
evening white shirt  + pants
some clothing
SCRATCH on Left cheek

*O* her station wagon might have —
been Ford

all her clothes in car — tools,
soda bottles —
how get scratched        none business

talked about woman _____ up ____ in _____
I guess she was going _____ to
Jenny — I'd like to hear
the _____

— in area   no other trailer in area
O woods up to trailer

* Swimming Pool

_____ July — just after birthday,
fight
he had gone out
_____ _____ had been drinking
dumped her _____ _____ _____
hit _____ _____ _____

 Red

Only once

have not seen ~ until ~~they~~
Sept of some year

later day —

Knife
used by D at Global Van Lines

BAW00108

who is Grace Kelly — does not know

Susan Harmon - lives in neighborhood
knew sue her

Cookie (Carolyn) was married to Gary Costello — not drug dealer

Thomas Curly (in court day of murder)

ADI is waitress at restaurant
told I Mrs Bean had told
her that someone is following her
+ afraid of life.

DEEDS                    HOMICIDE

| KNOWN | KNOWN |
|---|---|
| ~TH OCCURRED SOMETIME TWEEN 7:15AM AND TIME OF DISCOVERY BY DAUGHTER-IN-LAW AT ABOUT 10:45AM | "EARLEY" TRUCK DRIVER HAS STATED HE SAW A "GREEN" VEHICLE IN YARD OF VICTIMS HSE BETWEEN 6:45AM & 7:15AM DAY OF MURDER |

RENT DOOR FOUND "OPEN"
(NOT UNUSUAL)
BACK DOOR FOUND "OPEN"
(VERY UNUSUAL)

~OOD SAMPLES FOUND ON
WOODEN STEPS OUTSIDE
FRONT DOOR "NOT VICTIMS"

INTERIOR NOT RANSACKED
~EPT FOR LINEN CLOSET
~ERE VICTIM KEPT MONEY
~N ENVELOPE

VICTIM BLOOD - O - POS.
ASSAILANT " - O
~VIDENCE OF FIERCE
BATTLE IN KITCHEN &
DINING ROOM AREA,
BEDROOM WHERE VICTIM
FOUND

VICTIM'S POCKETBOOK IS
~ISSING. SUPPOSEDLY HAD
LARGE AMOUNT OF MONEY
~N SAME.
SUPPOSEDLY "NO CREDIT
~ARDS"

BAW00110

BEB          10:15      10/14/82

E. Fahey called (494-4618)

She was advised by Ayer

D.C. that you have been

appointed as counsel to

Kenneth Waters charged

with murder.  He was

arraigned on 10/13, there is

a bail petition hearing 10/14.

In Ayer D.C. continued to

BAW00114

10-12-82 Providence R.I. 8.W.

Did You know Mrs Brow.

A Re I went to School with Charlie. her son I've seen her down the here

have you ever Been in there house.

I dont know maybe I Broke into every house in the area when

I was a kid.

Refused to look at Pictures of murder looked at 2 or 3

and then them down turned his head and said who ever did this

was sick

~~~~ Where were you on the to Night of the murder or the morning

of the murder. did you work the night before

I got drunk the night before Because I had to Be in court

the day of the murder MY x GIRL friend will verify that her

name is Brenda ward and this home when in Worcester.

were you a heavy drinker-

Yes I drank alot and was doing drugs

what kind of drugs were you doing

mostly speed and some marijuana

Did you ever have Black outs when you did all this drinking

and drugs.

Sometimes

- it Possible that you could have done this in one of you Black

out stages.

maybe I don't know no no I dont think I could have done anything

n.

KENNETH WATERS CALLED                    NOVEMBER 30, 1982          3:30

HE GOT ONE OF THE PERSONS HE USED TO WORK WITH ON GLOBAL VAN LINES...

HIS NAME IS EVERETT LAPORE, 57 PRESTON STREET, SHREWSBURY, MASS.
TELEPHONE 842-6347

DETECTIVES HAVE ALREADY QUESTIONED HIM ABOUT CASE AND ABOUT THE KNIFE
AND TRIED TO GET HIM TO SAY THAT WAS KNIFE HE HAD.  HE TOLD DETECTIVES
IT WAS NOT...

SAID HE WOULD BE WILLING TO TESTIFY...

BAW00119



*The Commonwealth of Massachusetts*
*Massachusetts Defenders Committee*

*189 Cambridge Street, Cambridge 02141*

GERARD F. SCHAEFER
CHIEF COUNSEL

TELEPHONE:
(617) 868-3300

February 2, 1983

Mr. Raymond Morgan
Morgan Investigations
4 Longfellow Place
Boston, Mass., 02114

Dear Ray,

I enclose a copy of the latest police report from Ellie
Fahey.  Seems to me they are really fishing but maybe
you should talk to this guy and to Kenneth's brother
Leroy.

Sincerely,


Bernard E. Bradley
Regional Supervisor

BAW00132

March 29, 1963


Mr. Ray Morgan
Morgan Investigations
4 Longfellow Place
Boston, Mass., 02114

Dear Ray,

I received the enclosed today and I am wondering about the
adviseability of checking the records of this complex in
Worcester to see if the defendant and Brenda and these
witnesses actually lived there at the same time.

Very truly yours,


Bernard D. Bradley
Attorney at law


BDB/bh
Enc.


P.S.  What about the swimming pool?  Have we found that yet?

BAW00137

February 25th, 1983

Mr. Ray Morgan
Morgan Investigations
4 Longfellow Place
Boston, Mass., 02114

Dear Ray,

No wonder I had so much trouble getting this report...

Sincerely,


Bernard E. Bradley
Attorney at law


BEB/bh
Enc.

BAW00139

1982     Kenneth W. Waters          Case #EC- *13/03-MD*                    Page 1

Oct. 14   Barbara Hodgkins, Secy.
          This date received notice from Ayer District Court that our office had been appointed
          to represent D charged with 82-2026, murder; and 82-2027, armed robbery.  Case continue
          to <u>OCTOBER 20, 1982, QUESTION OF COUNSEL</u>.

          D PRESENTLY AT BILLERICA H OF C.

          DOB: 8/16/53

          D's address: 28 Erie Street, Providence, Rhode Island

          Case assigned to Bernard E. Bradley.

Oct. 18   Bernard E. Bradley, Atty.:  Barbara Hodgkins, Secy.  Dict. 10/18/82.
          Saw D today very briefly.  Says he did not kill the lady.

          I spoke briefly and off the record with Jack Dwyer who investigated this for the state
          police.  He said that he wished they had not moved so quickly, referring to the DA's
          office, that they had more work they wanted to do and that they knew where the D was
          and that there would be no problem in picking him up.  He said that this D was a suspect
          earlier on and that he agreed to take a poly-graph but when the poly-graph was setup
          the they went to his home in Ayer the D was gone and they did not know according to
          Dwyer where he was.

          In relationship to that the D said that he lost his job, that he moved to Providence,
          Rhode Island his original home and since he was on probation he left his new address
          with his probation officer.

          He asked me to call his sister, Betty Ann Correntte, 11 Mozart Street, Cranston,
          Rhode Island.  <u>Telephone 401-942-2904</u>.

Oct. 20   Bernard E. Bradley, Atty.:  Shirley M. Roderick, Secy., Dict. 10/20.
          Two of D's sisters were in the courtroom.  Case continued to November 5,
          1982 for probable cause.

Oct. 18   Bernard E. Bradley, Atty:  Barbara Hodgkins, Secy.  Dict. 10/19/82.
          Had a brief initial interview with him at BHC.  At the time of the murder, he lived
          with his grandfather in Ayer some 500 yards from the trailer where the victim lived.
          Her trailer was located on Rosewood Avenue.  He stayed there from sometime in
          December of 1979 until he left Massachusetts in 1980.  He left Massachusetts because
          he lost his job.  The murder took place on May 21.  He does not know the time on
          the 21st of May.  He was in the Ayer District Court in front of Judge Williams.
          He was charged with an A&B PO.  After that he went to the Park Street Diner where
          he was working.  Saw and talked to his boss whose name he doesn't remember.  They
          heard the siren and saw the cruiser go by at a high rate of speed.  They thought
          there may have been an accident.  He called his wife to pick him up.  She did.
          When they went home they went right by the trailer and said it was loaded with
          police.  He thought there may have been a fight.  His uncle Bennie (?) said Mrs.
          Brow had been murdered.    The police came to him the next day.  He was taken to the
          station at least twice and interrogated.  He said he would take a polygraph.  He
          did take a voice stress test that was administered at the Ayer police station.
          On his second appearance he said he said he "passed it".  By the time the poly graph
          had been setup the D had moved to Providence.  Brenda Marsh, the girl that maybe
          the fink and the D lived together for about 5 years.  They have one child, a
          daughter about 3 years old.  They were living in his grandfathers house.  She and
          the grandfather did not get along.  D was drinking and she returned to Worcester.
          Through the D's brother-in-law, he got an apartment in Providence.  Brenda went
          with him, stayed about a month.  She left again because of his drinking.  She

1982    Kenneth W. Waters    Case #EC-13103-MD                              Page 2

Oct. 18    Bernard E. Bradley, Atty.:    Barbara Hodgkins, Secy.  Dict. 10/18/82.
(cont)     apparently left on Labor Day of 1980 after a fishing trip.  D got drunk, got into
a big fight with her.  She had him arrested and charged with assault.  In the
morning she dropped the charges and he has never seen her again.  During this
period of time D said he went to Brockton VA Hospital in their alcohol program.

The D has an uncle named Bennie Davenport.  He lived at 7 Vernon Street, Ayer.  He
is gay.  He lives with a friend.  The uncle said that on the day of the murder he
saw one Romeo Collard who lives in Shirley at the victims trailer.  The uncle worked
with Romeo at the Groton Paper Mill 12 years ago.  Romeo wife committed suicide with
a shotgun and right after that he bought a brand new car.  Bennie will not say
anything because he is afraid his gay background will come out, but he may have told
a friend of the D's mother, one May Jarvis of Fitchburg hoping that she would spread
the word.

Told the D I would see him tomorrow in Ayer.

Nov. 2    Bernard E. Bradley, Atty.:    Barbara Hodgkins, Secy.  Dict. 11/2/82.
Saw ADA Fahey.  She gave me copies of transcription of Brenda Marsh's testimony.

Nov. 4    Bernard E. Bradley, Atty.:    Barbara Hodgkins, Secy.  Dict. 11/4/82.
Checked Ayer DC this morning.  He was in court on the day of the murder on complaints
706 and 707 of 1980.  I think they are Assault P. O.  They will have certified copies for
me tomorrow.

There is no evidence that he left a forwarding address of Providence, R. I. with his
probation officer.

He said that he did carry a knife when he worked with the Global Van Lines, but he said
it was more of a tile cutter and they used it for opening cartons and cutting sealing
tape.  He said that is the knife he had when he was arrested.  He was arrested at
his mothers in Providence, R. I. in the house in which he was living.  He is unsure of
the actual moving around of himself and Brenda, but he did say that Brenda and the two
kids and the D were living with his grandfather Benjamin Davenport.  The grandfather
hated Brenda because she was so dirty.  The D said he then left and went to Providence.
He doesn't know when, maybe July.  He thinks that Brenda returned to Worcester in
her apartment at 1 Upton or Uplan Gardens a couple of weeks afterwards.  The D got an
apartment through his brother-in-law, Betty Ann's husband.  They stayed together for some
two or three weeks.  They never got along.  She took the kids and went to Worcester
and it was about that time that the children were taken from her by the Welfare
Department, apparently because of her neglect and dirty habits.  The little girl had
magots.  He said that on labor day when he found this out, I think labor day of 1980,
there was a tremendous fight over it and he did punch her out.  The police were called.
He was arrested for assault, pleaded guilty and the case was filed.

The D told me that Brenda had said she would get him if he ever left her.  She made that
threat to his ex-wife Michelle.

Talked also with the sister Betty Ann.  She tells me that the kids and Brenda did live in
the apartment that her husband got for them on Unid Street.  The D then got an apartment
for Brenda and asked her to leave.  She did not live in the apartment, but rather
lived in a van that she had with the children outside the D's apartment.  Betty Ann
thinks this is when the little one became infested with the magots.

A man named Osborn who originally called the police with Brenda's statement, is now
apparently her boyfriend, but until recently was married to her sister.

1982     Kenneth W. Waters          Case #EC-13103-MD                    Page 3

Nov. 5     Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 11/5/82.
           Picked up certified copies of complaints. D was actually in court on the day of the
           murder, but the complaints do not show the time. I later picked up his waiver of
           right to a jury trial signed by him on that day.

           The PROBABLE CAUSE hearing was recorded by a stenographer brought by the Commonwealth.
           It was before J. Rowe. He has ordered a copy of that transcript for me.

           The evidence as indicated at the probable cause hearing is very simply that the
           D's ex-girlfriend after two years, said that when she asked the D if he "killed that
           woman?" he is supposed to have said, "yeah, so what". She was shown a knife which
           was found in a waste basket and positively identified the knife as being that of
           the D. However there is not one single special identification mark on the weapon.
           It could be one of a 1,000. Judge Rowe, however did bind the D over.

           His mother was in court, his sister and his ex-wife Michelle and her sister-in-law
           and mother-in-law put together some dates as to when Kenneth was and was not in
           Ayer and put some dates together which may contradict the testimony of his ex-girl-
           friend.

           I asked Elizabeth Fahey if she had a copy of a statement taken by the police.
           She said the only thing they have is a hand written set of notes which I have marked
           "A" for my own use. These notes were taken by the former Chief Adamson. There
           is a statement somewhere that he gave to Nancy Taylor I have not yet received it.

Nov. 10    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 11/10/82.
           Was at Billerica to see another client. D wanted to see me. He just wanted to talk
           generally, nothing specifically.

Nov. 18    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 11/18/82.
           On today for arraignment on 2 indictments. Pleaded guilty, case continued until
           <u>DECEMBER 2, 1982 FOR MOTIONS</u>.

           At bail hearing D's bail set at $250,000 or $25,000 cash.

Dec. 2     Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 12/2/82.
           On todays list. Motion for Appointment of Investigator allowed up to $500.00.
           Governments motion for blood and hair sample not objected to by the D himself and
           allowed.

           CONTINUED TO <u>DECEMBER 30, 1982</u> FOR FURTHER MOTIONS AND CONFERENCES.

Dec. 30    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 12/30/82.
           Continued to JANAURY 17, 1983 FOR CONFERENCE.

1983
Jan. 14    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 1/24/83.
           Conference with Ray Morgan. He spoke with D on the 13th. Reveiwed required
           investigation. Ray has suggested a polygraph by Joe(?) Murphy, it would cost
           $200.00.

Jan. 17    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 1/24/83.
           D desired a 2nd polygraph exam. Said family would pay $200.00

Jan. 18    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 1/24/83.
           D called. Ok on polygraph. Called Billerica to setup polygraph exam for Monday,
           January 24, 1983 at 10 - 11 a.m. Picked up copy of polygraph of Brenda Marsh.

Jan. 20    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 1/24/83.
           Saw ADA Fahey. Requested she take D off jail list for Monday, January 24th. She
           did so.

.1983       Kenneth W. Waters           Case #EC-13103-MD                    Page 4

Jan. 24    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 1/24/83.
           ADA Fahey told me that FBI could make no determination from blood sample. Expects
           to have a report on hair within 3-4 days.

           CONTINUED TO FEBRUARY 1, 1983 FOR FURTHER CONFERENCE.

           Mailed copy of polygraph report re: Brenda Marsh to Ray Morgan.

Feb. 1     Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 2/1/83.
           D on for status.

           Polygraph given by Mr. Murphy to the D. Was passed with a very high score.
           Murphy recommends doing one for real.

           Spoke to D relative to polygraph, what it meant and how it could be used. We
           talked about his extensive record and what that might do to him if he were to
           testify. He decided not to take the polygraph, his thinking, with which I agree,
           is that his record is so bad that even a polygraph would not be able to pull it
           out.

           CASE CONTINUED UNTIL MARCH 28, 1983 FOR TRIAL.

           ADA Fahey to get assignment from the chief justice.

Feb. 2     Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 2/2/83.
           Received from E. Fahey a report from the Ayer police taken from a man named
           Joseph Kenadek, sole purpose being to show D carried knife and assaulted people.
           Copy this day sent to Ray Morgan.

Feb. 4     Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 2/4/83.
           Saw Mary Treacy this day. D on list FEBRUARY 8, 1983 for hearing on polygraph
           motion.

Feb. 8     Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 2/10/83.
           A motion for polygraph at the D's request allowed. ADA Fahey wants to have a David
           Raskin from a college in Utal do it. I told her I had no objection.

Feb. 10    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 2/10/83.
           Received notice from Mr. Phil O'Toole, Clerk in Worcester Superior Court informing
           me that J. Traverse has been assigned to the D's case.

           D called today. He is concerned about a ring that Brenda said he tried to sell
           sometime after the murder. He called today to inform me that he did in fact
           try to sell a ring, but it was sometime before the murder. It was a ring he
           had stolen from Global Van Lines when he was working there. The girl he tried
           to sell it to was a Cindy LeClair. He does not know where she lives, but recently
           married a man who owns a jewelry store. He said it was after trying to sell
           this ring that he was fed up with Worcester and came to Ayer. He said that
           he did not return there and that Brenda used to take the bus from Worcester
           to Ayer to stay with him. Brenda joined him in Ayer about one month before
           the killing.

           D has mentioned this ring on several other occasions.

Feb. 14    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 2/15/83.
           Ray Morgan gave me the polygraph done by Mr. Joseph Murphy. In file.

.1983     Kenneth W. Waters     Case #EC-13103-MD

Page 5

**Feb. 16**   Bernard E. Bradley, Atty.:   Barbara Hodgkins, Secy.   Dict. 2/16/83.
We talked further today about the lady named Phyllis Loring  . She apparently is a
very well thought of lady in Ayer and this lady took a particular interest in the D's
grandfather. She used to call every single day and she would stop in to see him every
day to make sure that he had his breakfast and was feeling ok. On the day of the murder
she went to visit him. Neither the D nor Brenda were home. The grandfather had in-
formed her that Brenda was with the D in court. This of course directly contradicts
her probable cause testimony. He also mentioned something to me today and it is some-
thing I missed. That when he gave his report to the police the day after the killing,
he gave them his Providence address which seems to blunt the prosecutions theory that
he ran away.On the morning of the killing the D came into court early and foundthat
the doors leading into the courtroom were locked. This was very unusual. Officer
Decoe was standing with the D and he was kiddingly saying something about "we
will have to shoot our way in" when the court officer Marty Silva came. He opened
the doors and told the D and Decoe they were locked because someone had tried to
steal the tape system the night before. Also on that morning Brenda was there with
the kids, I think the two of them, she was asked to leave the courtroom with the
kids because they were making so much noise.

**Feb. 25**   Bernard E. Bradley, Atty.:   Barbara Hodgkins, Secy.   Dict. 2/25/83.
Received call this date from Elizabeth Fahey that a copy of the FBI report was at
the front desk at the courthouse for me. Went over and picked up same which is
in the file.   Also this date, sent a copy to Ray Morgan.

**Feb. 28**   Bernard E. Bradley, Atty.:   Barbara Hodgkins, Secy.   Dict. 2/28/83.
Contacted Thomas Wade, Chief Supervisor, Adult Probation, Providence, Rhode Island.
Telephone 401-277-3496. He will sent me what information he can pertaining to D
and the dates of his transfer of probation from Massachusetts to Providence.

**Mar. 1**   Bernard E. Bradley, Atty.:   Barbara Hodgkins, Secy.   Dict. 3/1/83.
Received a call from Elizabeth Fahey. Professor Raskin will be able to do the polygraph
apparently on Sunday, March 6th, 1983. He is flying in sometime Saturday. She will get
his schedule and notify me and we will meet with him.

It also appears that J. Traverse has been assigned by J. Mitchell to try another murder
case starting on the 28th of March, 1983. Elizabeth Fahey will have to straighten
that out.

**Mar. 3**   Bernard E. Bradley, Atty.:   Barbara Hodgkins, Secy.   Dict. 3/3/83.
Had a talk today with D at Billerica,mostly about the witness the government expects
to come in from Germany, Adie August who is an elderly lady somewhere around 80.
She worked in the diner for 18 years or so, knows everybody's business, talks about
everybody's business and is kindly known as the local character. She lives in a
trailer park very close to the D's grandfather's house. She, on many occasions,
drove the D home. Adie is the local president of the gossip league. Knows every-
thing about everyone. She is supposed to have said to the D on several times
"I know who did it". He kept telling her to go to the police, but she did not. She
also told the D that the victim was afraid for a long time prior to the killing.
At least on one night, she was so afraid of someone that she stayed at Adie's trailer
rather than go home.

The D's sister-in-law, Pam Waters, who is married to the D's brother John will be
able to testify as to a threat made by Brenda against the D after the D and Brenda
brokeup and left Ayer. They went to Providence and for a period of time the D had a
place just off of River Avenue – he doesn't remember the name of the street. He had
it for 3 or 4 weeks, they were still fighting and that is the time she left him and
went to Worcester. He took all of the furniture and all the stuff they had accumulated
out of that apartment and put it in his brothers apartment at 25 Unit Street one day
maybe in August or September, he wasn't sure when, he thinks it was after their final

.1983        Kenneth W. Waters        Case #EC-13103-MD

Page 6

**Mar. 3**   Bernard E. Bradley, Atty.:  Barbara Hodgkins, Secy.  Dict. 3/3/83.
CONT.        fight on labor day, she came to Pam's apartment with four Providence cops, and said
she was going to move all of the furniture that they had out.  Pamela told her Ken
said she was going to take nothing.  The police at that time told her she could take
only her personal belongings.  Brenda is supposed to have said in front of the police
and Pamela "I will get him for this no matter how long it takes.

The reason the D and Brenda left Providence is because they were deeply involved in
the food stamp fraud that was going on their.  Ken, Brenda and her stepfather and
Ken's brother was in it.  The FBI made a couple of arrests.  The D left before he
was involved.  Two people were arrested, but did not mention names.

PHYLLIS LORING resides at 1 Mark Street.  She is the woman who used to visit the
D's grandfather every morning.  She is the woman who can testify on the morning of
the killing when she went to the house, the D was not there, neither was Brenda or
the children.

**Mar. 3**   Bernard E. Bradley, Atty.:  Barbara Hodgkins, Secy.  Dict. 3/4/83.
Received a call from Joe Murphy the examiner who administered the polygraph to D.
He informed me that Raskin, who I agreed to have examine the D is one real son-of-
a-bitch.  Joe said he is filled up with his own importance, really doesn't believe
too many people and says that he is really a repulsive guy to deal with, disliked
intensely by all who know him in the American Polygraph Association.  He suggested
I tell the D what type person he is and advise the D not to be fearful of him or
impressed with his remarkable abilities that Joe says he will tell the D about.

**Mar. 4**   Bernard E. Bradley, Atty.:  Barbara Hodgkins, Secy.  Dict. 3/4/83.
Talked with D.  Told him about Raskin.  He said he isn't worried.  Said he won't
be impressed by him, just be at ease and tell the truth.

Raskin is coming in Saturday night the 5th of March.  ADA Fahey will drive him to
BHC Sunday morning and I will pick him up about noon and take him to his hotel.

**March 6**   Bernard E. Bradley, Atty.:  Shirley M. Roderick, Secy., Dict. 3/9.
I picked up Raskin at Billerica.  D did not do well on the exam.  Ras-
kin showed some concern and blames poor showing on prior tests.  Raskin
understood that there was little evidence of D's guilt.  He was going
to suggest to ADA that Brenda be examined re: her story on morning of
killing.  Spoke to D while there in presence of Raskin.

**March 7**   Bernard E. Bradley, Atty.:  Shirley M. Roderick, Secy., Dict. 3/9.
Spoke to ADA Fahey.  She wanted agreement to introduce whatever result
of Brenda's polygraph exam.  I refused.

**March 8**   Bernard E. Bradley, Atty.:  Shirley M. Roderick, Secy., Dict. 3/9.
Spoke with Pam Waters.  She verified the episode involving Brenda and
Providence police and her threat.  She also told me that shortly after
the return of D and Brenda to Providence the family was talking about
the killing and Brenda said, "He (D) didn't do it he was in Court with
me."

**March 18**   Bernard E. Bradley, Atty.:  Barbara Hodgkins, Secy.  Dict. 3/18/83.
Ellie Fahey called today.  Says that she has to have a continuance because she is
just wrapping up a rape case that will not finsh until the middle part of next
week.  I told her I would not agree to it.

We went to see J. Connolly, who has been assigned to hear this case on the 28th
of March.  Ms. Fahey requested a months continuance, I opposed any continuances.
I Connolly gave her until April 11th, 1983 for trial. He does not know whether

CPCS000008

1983.    Kenneth W. Waters    Case #EC-13103-MD    Page 7

Mar. 18    Bernard E. Bradley, Atty.: Barbara Hodgkins, SEcy. Dict. 3/18/83.
DEFENDANT'S NEW TRIAL DATE IS APRIL 19TH, 1983.

Mar. 24    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 3/25/83.
Talked to D on phone. He said that about the time of his arrest, Betty Ann, his
sister and his wife Michelle went to the diner in Ayer. They were informed that his
time slips were there, they were in a box in the safe with the others, but they would
need a court order to get them. This is in response to my telling D that the
investigator said that the entire weeks (week of murder) time cards were missing.
He also said that he was informed in the diner that Tuesday was usually the D's
night off and the manager thought he did not work the night before the murder.

He also told me in regards Brenda Marsh in her claim that she moved to Ayer in May is
wrong. His sister Betty Ann was married March 23, 1980. The D went to the wedding
with Brenda and with two other people whose name he does not remember. Phyllis
Loring babysat for the kids that day. Brenda also applied sometime in March to
the WIC Program in Ayer at the YMCA.

Mar. 29    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 3/29/83.
Received from ADA Fahey copies of police reports re: John Weatherbee, Phylis Loring,
Pat Miles, Shirley Connors, Cathy Hale. Also time card of Charles Brow and a
report of Nancy Taylor's.

Prepared motions for criminal records. Forwarded copies of above to Ray Morgan
with letter, copy of which is in file.

Mar. 29    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 4/1/83.
The D called. I told him of the additional statements and from whom they came.
He said that in regards to Weatherbee who was living with Pat Miles, he was always
punching her around and one day Pat Miles called him for help and he punched
Weatherbee out.

Mar. 30    Bernard E. Bradley, Atty: Barbara Hodgkins, Secy. Dict. 4/1/83.
D called. He said there was a Beth Armstrong who was a friend of the D's brother
Leroy and his sister Caroline. It was she that introduced the D to Brenda Marsh.
She knows apparently of Brenda's drug addiction, drug problems and knows her not to
be a truthful person. Caroline lives in Providence. She is 27 and single. Her
telephone number is 401-885-3218.

He also said that he left Brenda late in 1979 and went to Ayer and she at that time
got a restraining order against him.

Apr. 1    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 4/4/83.
D called 4/1/83. The infamous swimming pool was bought in Child's World in Fitchburg.
All of the records according to the D are in Leominster. He said that it was a $99.00
pool and the tax brought it to $102.00. He said that it was setup so that when he
bought it, he drove around back, picked the pool up and had to sign for it.

Apr. 5    Bernard E. Bradley, Atty.: Barbara Hodgkins, Secy. Dict. 4/5/83.
As a result of the D's call this date received, called Ray Morgan and requested
that he locate the manager of the diner at the time of the murder. According to
the D, this man would be able to verify that he did in fact work the night before
the killing because he, the manager, came in to relieve the D. He would also
testify that the D and Brenda came into the diner after their court appearance.
He said he should remember because they ordered hamburgers and french fries and
Brenda did nothing but complain about the french fries. Tunney said he would be
happy to do this.

CPCS000009

1983     Kenneth W. Waters          Case #EC-13103-MD                    Page 8

Apr. 5     Bernard E. Bradley, Atty.:  Barbara Hodgkins, Secy.  Dict. 4/5/83.
           Spoke to Pamela Waters who informed me that ADA Fahey and Nancy Taylor and one other
           person were in Providence yesterday speaking to a Linda Tench who at one time claimed
           the D broke into her home.  That matter was dismissed, and in speaking to Tench,
           they got the name of Rosann Baggerson Perry who apparently was beaten once or twice
           by the D.  She said that both girls have long criminal records.

           Spoke briefly to ADA Fahey after this.  She said they really didn't intimidate anyone
           They really did not speak to Perry, were unable to find her..

           We also conferenced this matter with Judge Mitchell since he has not assigned a judge
           If we go on the 19th of this month, it would be with a J. Sheehan who is brand new.
           With that in mind, we agreed on a May 2nd, 1983 date with J. Keady.  ADA Fahey
           then gave me the missing pages from the probable cause hearing and a list of witnesse
           most of whom will not be called.

Apr. 11    Bernard E. Bradley, Atty.:  Barbara Hodgkins, Secy.  Dict. 4/11/83.
           My motion for criminal records was allowed.  Commonwealth's motion of defense
           witnesses if any and reciprocal discovery was allowed.

Apr. 12    Bernard E. Bradley, Atty.:  Barbara Hodgkins, Secy.  Dict. 4/11/83.
           D insists that someone told him that the records pertaining to his buying the pool
           in April of 1980 would be in Leominster, Child World in Leominster.  Went to
           Leominster today, checked with the downtown store Merchant's association.  Child
           world does not have a store or office in Leominster.  Their only local area is
           Fitchburg.  I went to Fitchburg and spoke to the manager of Child World Mr.
           Cheraton.  He said that he had been contacted by the police and by our invest-
           igator.  He said that he did not have a record of it, that the D was quite correct
           when he said he had to go around the back of the building to pick it up, but he
           said he did not have to sign anything.  He said that when they go around the back,
           the warehouse man would take the receipts that the customer had, would stamp them
           both, keep one and return the other to the customer.  He said there was a pool on sale
           for $99.00 that was about 12 foot diameter and 3 feet in height.

Apr. 21    Bernard E. Bradley, Atty.:  Barbara Hodgkins, Secy.  Dict. 4/22/83.
           I was curious about arrest and people involved.  He was first arrested on May 22 by
           Boisseau and Jack Dwyer of the State Police.  That was about 9:00 in the morning.
           Brenda was with him and said to the cops at that time "you can't blame this on him".
           "He was with me."  He gave a statement that day to the police which is dated February
           2 rather than May 22.

           The next time the cops got him was on the default warrant on the case that he
           was in court on May 21.  On the way up from Providence Boisseau suggested a stress
           test.  It was given by Boisseau the same day and he passed it.  He was released and
           returned to Providence in January or February of 1981.  Some two weeks before
           he was in the Adult Correction Institute awaiting trial on the Tench assault.  That
           came about because Tench was known as a pushover and the D took Billy     with
           him to see her.  When they got to the house, she had a boyfriend there and
           came out swinging a bat.  The boyfriend jumped Billy and the D took the bat away
           from Tench and may have broken her arm when doing that.  He then went to the detox.
           He spent Christmas and New years there.  He was in Project Rise which apparently is
           a tough program.

           When he went to court on the assault, he had no faith in the lawyer appointed to
           him and borrowed money from his sister Betty Ann and went to his uncle's house in
           Iowa, Councel Bluffs.  His uncles name is Lyle Bernside.  He stayed about two
           weeks, was drinking a lot, and left.  His uncle gave him $5.00 and he hitched
           a ride with a truck driver who is now the dispatcher for the F&H Trucking Co.
           in Salt Lake City, Utah.  That drive took him through Colorado, California
           and into Arizona.  He then went into the Self-Help Program in Pheonix at 4632

CPCS000010

1983        Kenneth W. Waters          Case #EC-13103-MD                        Page 9

Apr. 21    Bernard E. Bradley, Atty.:  Barbara Hodgkins, Secy.  Dict. 4/22/83.
(Cont)     and then moved in with a girl...

           He used to prepare the grandfathers breakfast every morning.  If he didn't, the
           grandfather would tell Phyllis Loring.

           The swimming pool that Brenda claims costs $200.00 or $300.00 was sold by the D to the
           brother John for $50.00.  His ex-wife Michelle can testify as to when the pool
           was purchased.

           He said that Rosanne Perry has been trouble to the Waters family for years.  Has
           been sleeping with his brothers John and Leroy and that any information she has
           comes from Kathy Brooks.

           He said the only time he ever hit Brenda was the time he found maggots in the
           diapers of the baby.  He said that night the police came, arrested the D, but
           did not take Brenda to a hospital nor did she seek any treatment.

May 2      Bernard E. Bradley, Atty.:  Barbara Hodgkins, Secy.  Dict. 5/12/83.
           Impanelled a jury.  Took a view.

May 3      Bernard E. Bradley, Atty.:  Barbara Hodgkins, Secy.  Dict. 5/12/83.
           Pretrial.  DA moved in limine to prevent defense from using stress test given D by the
           Ayer police.  Motion under advisement and allowed..

           The trial went along, witnesses pretty close to their statements in the file.

           I took no objection to the judges charge, seemed to be ok.

           Objected to prosecutions arguments.  Received curative instructions on two occasions
           and on one open court he instructed the jury to disregard.

May 11     Jury deliberated about nine hours and returned verdict of G, murder in the 1st degree,
           and armed robbery.

           Case sent to appeals division...

CPCS000011