UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-10521-GAO

BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,

Plaintiff

v.

TOWN OF AYER, NANCY TAYLOR-HARRIS, in Her Individual Capacity, ARTHUR BOISSEAU, In His Individual Capacity, BUDDY DECOT, In His Individual Capacity, WILLIAM ADAMSON, in His Individual Capacity, PHILIP L. CONNORS, in His Individual Capacity, and JOHN DOE and JANE DOES 1-16, in Their Individual Capacities,

Defendants

DEFENDANTS' MOTION TO STRIKE THE PLAINTIFF'S DNA EXPERTS DR. EDWARD T. BLAKE AND DR. SUDHIR K. SINHA

Now come the defendants to the above-referenced case and hereby move to strike the plaintiff's designated DNA experts, Dr. Edward T. Blake ("Dr. Blake") and Dr. Sudhir K. Sinha ("Dr. Sinha").[1] This Motion is made in accordance with paragraph 4(b) of the Court's May 23, 2007 Scheduling Order and Order on Motions to Compel. Also, in accordance with said Order, the defendants specifically reserve the right to identify a rebuttal expert on the topic of DNA evidence if this Motion is denied.

As grounds for this Motion, the defendants state that the entire reports of Dr. Blake and Dr. Sinha should be stricken because scientific testimony as to the validity of the DNA evidence is legally irrelevant and the admission of such evidence is highly prejudicial to the defendants. More specifically, this trial does not concern the plaintiff's actual guilt or innocence, but whether the alleged misconduct of the defendants in the early 1980's violated the United States Constitution, and whether the outcome of the underlying criminal trial would have been different

---

[1] The reports of Drs. Blake and Sinha are appended hereto as exhibits "A" and "B" respectively.

had the alleged misconduct not occurred. As DNA evidence was not available at the time of the underlying criminal trial, the admission of extensive scientific testimony concerning the results of recently conducted DNA testing is both irrelevant and highly prejudicial to the defendants as the actual innocence of Waters is not a matter that must be determined by the jury. Therefore, the proffered testimony of Dr. Blake and Dr. Sinha should be stricken.

As further grounds for this Motion, the defendants rely on the within Memorandum of Reasons.

MEMORANDUM OF REASONS

I.    FACTUAL BACKGROUND

The plaintiff alleges that in the early 1980's the defendants violated Kenneth Waters' constitutional rights during his arrest and prosecution for the murder of Katherina Brow. A sample of non-victim blood recovered at the murder scene, which was analyzed using the most advanced technology available at that time, indicated that the non-victim blood sample was the same blood type as Waters'. At the time of Waters' arrest and criminal trial, DNA testing of evidence was not an available investigatory procedure. Approximately 17 years after Waters' conviction, Waters requested that the blood samples retrieved from the murder scene be subjected to DNA testing. The defendants did not interfere in any way with Waters' request to have blood samples submitted for DNA analysis. The results of the DNA analysis suggested that Waters was not the source of non-victim blood found at the murder scene. On that basis, Waters filed a motion for a new trial, which was unopposed. The District Attorney declined further prosecution through a nolle pros, and Waters was released from prison. Although the underlying cause of action concerns only the actions of the defendants in the early 1980's, the plaintiff is seeking to present extensive scientific testimony from Dr. Blake and Dr. Sinha concerning the

results of DNA testing which was conducted years later, the results of which are irrelevant to this action and are unfairly prejudicial to the defendants.

II.   ARGUMENT

    A.   <u>The Expert Report of Dr. Sinha Should Be Stricken For Failure to Comply with Federal Rule of Civil Procedure 26(a)(2)</u>

Rule 26(a)(2)(A) requires a party to "disclose to other parties the identity of any person who may be used at trial to present [expert] evidence." This disclosure must be "accompanied by a written report," which is to contain:

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

The disclosures are to be made "at the times and in the sequence directed by the [district] court." Fed.R.Civ.P. 26(a)(2)(C).

Based on the reporting requirements of Fed.R.Civ.P. 26(a)(2)(B), the report of Dr. Sinha is deficient in that it presents three conclusory statements without providing the basis or reasons therefor. <u>See</u> Exhibit B. In addition to the three conclusory statements, the rest of the report is comprised of two tables, one purporting to contain DNA testing results from Forensic Science Associates and the other DNA test results for Elizabeth O'Conner. The report contains no actual exhibits or information concerning how those results were obtained or the conclusions were reached. The report is completely devoid of any reasoning or exhibits to support Dr. Sinha's conclusions.

The primary purpose of Rule 26(a)(2) is "to require disclosure of expert testimony sufficiently in advance of trial so that opposing parties have a reasonable opportunity to prepare

3

for effective cross examination and perhaps arrange for expert testimony from other witnesses." Flebotte v. Dow Jones & Co., Inc. 2000 WL 35539238, 7 (D.Mass.,2000), citing Mounger v. Goodyear Tire & Rubber Co., 2000 WL 1466198, 1 (D.Kan. 2000). By this Court's Order, plaintiff's expert disclosures, including complete reports under Fed.R.Civ.P. 26(a)(2)(B) were due on August 23, 2007. Plaintiff's failure to provide a report for Dr.Sinha that complies with the required components of expert reports under Fed.R.Civ.P. 26(a)(2)(B) severely prejudices the defendants in their ability to prepare their defense and designate appropriate rebuttal expert witnesses. Accordingly, the report of Dr. Sinha should be stricken in its entirety.

  B. Standard for the Admission of Expert Testimony

"When faced with a proffer of expert testimony, the district court must determine whether the expert witness is qualified and has specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue." Bogosian v. Mercedes-Benz of North America, Inc., 104 F.3d 472, 476 (1st Cir. 1997) (quoting, Fed.R.Evid. 702). In making this determination, the Court must perform "a gatekeeping function to ascertain whether the testimony is helpful to the trier of fact, *i.e.* whether it rests on a reliable foundation and is relevant to the facts of the case." Bogosian, 104 F.3d at 476 (citing, Vadala v. Teledyne Indus., Inc., 44 F.3d 36, 39 (1st Cir. 1995); Daubert v. Merell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993)). Along with reliability, there is a "special relevancy requirement" for expert testimony: "To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, *see* Fed.R.Evid. 402, but also in the incremental sense that the proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." Ruiz-Trouche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) (citing, Daubert, 509 U.S. at 591-92). "In other words, Rule 702, as visualized through the

*Daubert* prism 'requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" Id.

In this matter, for the detailed reasons stated below, the plaintiff's proffer of expert testimony on the subject of the DNA testing should be excluded because it is irrelevant to the central issue in this matter and its admission would be unfairly prejudicial to the defendants.

        C.        The Experts' Opinions Concerning DNA Testing Are Factually Irrelevant

In this matter, the plaintiff is seeking to submit expert testimony concerning DNA testing, which was unavailable at the time of Waters' arrest and conviction and which was performed many years after the fact. The relevance of the expert testimony concerning DNA testing must be evaluated in light of the substance of the claims asserted by the plaintiff. In this regard, the plaintiff's constitutional claims fall into two categories: (1) that the defendants violated Waters' Fourth Amendment rights by arresting and prosecuting him without probable cause; (2) that the defendants violated Waters' Fourteenth Amendment right to due process by failing to disclose exculpatory evidence and by fabricating inculpatory evidence. Thus, at trial, the jury must determine whether these alleged constitutional violations by the defendants actually occurred, and whether Waters' arrest and prosecution as it actually occurred in 1982-1983 would have had a different result if the alleged actions by the defendants had not taken place.

        1.        Fourth Amendment and Probable Cause

Extensive expert testimony concerning the later-processed DNA evidence is clearly irrelevant to the plaintiffs' claim that the defendants violated Waters' Fourth Amendment rights by arresting and prosecuting him without probable cause. It is well-settled that the existence of probable cause is based on the facts and circumstances known at the time of arrest rather than in hindsight. Burke v. Town of Walpole, 405 F.3d 66, 80 (1st Cir. 2005). "One who asserts the existence of probable cause is not a guarantor either of the accuracy of the information upon

5

which he has reasonably relied or of the ultimate conclusion that he reasonably drew therefrom." Burke, 405 F.3d at 80 (quoting, Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996)).

It is undisputed that the defendants had no access to DNA testing at the time they were investigating the murder of Katherina Brow.  Thus, they could not have based their decision to arrest and prosecute Waters on this evidence.  Therefore, the DNA testing of the evidence has no bearing on whether, based on facts and circumstances at the time of arrest, the defendants acted without probable cause.  The DNA experts' testimony would not assist the jury in understanding or determining any issue of fact relevant to this claim.  Extensive expert reports and testimony as to the process of DNA testing, the results, or the accuracy of the results is irrelevant to the plaintiff's Fourth Amendment claim and should be excluded.

2. Fourteenth Amendment and Disclosure of Evidence

Likewise, expert testimony concerning the DNA evidence is irrelevant to the plaintiff's claims that defendants violated Waters' Fourteenth Amendment right to due process by failing to disclose exculpatory evidence and fabricating inculpatory evidence.  Pursuant to the Supreme Court decision in Brady v. Maryland, 373 U.S. 83, 87 (1963), the government has an obligation to disclose to the accused in advance of trial favorable, exculpatory evidence in its custody, possession, or control. See Lavallee v. Coplan 374 F.3d 41, 43 (1st Cir. 2004).  The duty to disclose such evidence attaches even absent the accused's request for it. United States v. Agurs, 427 U.S. 97 (1976).  However, the Brady doctrine does not require a prosecutor to seek out and disclose exculpatory material not in the prosecutor's possession. Lavallee 374 F.3d at 43, citing United States v. Bender, 304 F.3d 161, 163-64 (1st Cir. 2002).  Here, expert testimony concerning the DNA evidence that became available after Waters' conviction is irrelevant to the issue of whether or not there was a Brady violation at the time of trial.  Highly scientific

6

testimony by DNA experts as to the results obtained from DNA testing performed many years after the trial cannot be considered relevant to a claim of whether or not the defendants withheld or fabricated evidence.  There is evidence that at the time of investigation, the blood samples taken from the crime scene were subjected to the highest technological analysis available, and based on this analysis, it was correctly determined that Waters' blood type matched that of the non-victim sample.  This information was made available to Waters prior to the time of trial.  Once the technological capabilities for processing DNA evidence became available and Waters submitted a request for DNA review of the evidence, the defendants did not interfere in any way with Waters' request. Thus, there can be no relevant basis for admitting technical, scientific DNA results and testimony to the jury.  The DNA results have no bearing on whether or not exculpatory evidence was withheld or fabricated at the time of trial.

       3.       Relevance of Actual Innocence

To the extent the plaintiff seeks to support her allegations of constitutional violations by asserting Waters' actual innocence, as established through expert testimony concerning DNA evidence, such evidence is completely irrelevant to the underlying action and should not be allowed.  See Baker v. McCollan, 443 U.S. 137, 145 (1979) (finding that respondent's innocence of the charge contained in the warrant was largely irrelevant to his claim of deprivation of liberty without due process of law"); see also DeToledo v. County of Suffolk  379 F.Supp.2d 138, 144 (D.Mass. 2005) (undisputable innocence of detainees not dispositive in §1983 action for deprivation of liberty).  Instead, to the extent that issues related to Waters' actual innocence are relevant background, plaintiff needs to show no more than the following facts:  DNA evidence suggested that Waters was not the source of non-victim blood at the murder scene, on that basis he filed a motion for a new trial; the motion was not opposed; and the District Attorney declined further prosecution through a nolle pros.  As the actual guilt or innocence of Waters is not

relevant to a determination of the defendants' constitutional violations, extensive scientific testimony from DNA experts concerning DNA testing, procedure, and results are irrelevant and should be excluded. See Newsome v. McCabe, 2002 WL 54725 *6 (N.D. Ill. 2002) (stating that issue of whether plaintiff was guilty or innocent of the crime was not relevant to §1983 action for wrongful conviction where jury had evidence of a pardon).

It is expected that the plaintiff may argue that DNA expert testimony tending to show Waters' actual innocence is relevant to the within action in that it has bearing on Waters' psychological state while incarcerated and the damages claimed by the plaintiff. There is no merit to this argument. Any consideration of the effect of Waters' actual innocence on his mental state would be speculative. This speculation as to the effect of Waters' innocence on his mental state is, in any event, unnecessary in this instance as the plaintiff has proffered the testimony of a Forensic Psychiatric Expert, Dr. Jerome Rogoff, M.D. ("Dr. Rogoff") to testify to the actual psychological state of Waters. Dr. Rogoff's report [Exhibit "C"], which draws on review of prison medical and psychological records as well as interviews with Waters' family members, sets forth his opinion as to the actual impact of incarceration on Waters' mental state. Extensive expert testimony concerning DNA evidence for the purpose of establishing Waters' actual innocence would only serve the purpose of allowing wild jury speculation, in the face of actual psychological expert testimony, as to the impact of Waters' incarceration on his mental state.

For these reasons, this Court should strike the proffered testimony of Dr. Blake and Dr. Sinha concerning DNA evidence as irrelevant and inadmissible.

D.   The Experts' Opinions Concerning DNA Testing will Lead to Jury Confusion and Undue Prejudice to the Defendants

Even were this Court to find the DNA evidence proffered by Dr. Blake and Dr. Sinha to be relevant in some capacity to the within action, this Court should exclude the DNA evidence pursuant to Federal Rules of Evidence Rule 403 as unfairly prejudicial, misleading to the jury, and a waste of time.

Pursuant to FRE 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The notes to the 1972 Proposed Rule provide that 'Unfair prejudice' within this context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FRE Rule 403 Notes.

In considering whether to exclude evidence pursuant to Rule 403, the Court must weigh the prejudicial effect and the probative value of admitting the testimony to determine whether the risk of unfair prejudice substantially outweighs the probative value. United States v. Aguilar-Aaranceta, 58 F.3d 796, 800 (1st Cir. 1995). In United States v. Buchanan, 964 F.Supp.533 (D.Mass. 1997), the Court addressed the balancing requirement of Rule 403 in a two-part test by looking at "how strong a tendency" the proffered evidence has to prove the issue of consequence in the litigation, and "the proponent's need for the evidence". Id., citing United States v. Beechum, 582 F.2d 898, 914,-915 (5th Cir. 1978); United States v. Spletzer, 535 F.2d 950, 956 (5th Cir. 1976).

In the within action, the evidence is clearly more prejudicial than probative in that it has absolutely no tendency to prove the issues of consequence in the litigation, and the plaintiff has demonstrated no compelling need for the evidence. As discussed in the preceding section, at

9

issue in this trial is whether the defendants violated Waters' constitutional rights by their actions in 1982-1983.  Although DNA testing was not available at that time, testing was later performed and Waters' was subsequently released from prison.  To allow the plaintiff to submit extensive expert testimony concerning those DNA results, which evidence was unavailable to the defendants and can have no bearing on the defendants' alleged constitutional violations, would be unfairly prejudicial to the defendants.  Unquestionably, cases involving issues of wrongful conviction in which an individual claims to have been unjustly deprived of his liberty are fraught with emotion.  In order for the defendants to have a fair trial, this court should exclude evidence which tends to show actual innocence, as that finding has no bearing on whether or not the defendants acted appropriately on the basis of information and evidence available to them at the time of arrest and conviction.

Furthermore, admission of expert testimony concerning DNA evidence would unquestionably "muddle the issues" and lead to jury confusion.  Williams v. Drake, 146 F.3d 44, 48 (1st Cir. 1998).  In Williams the court considered a decision by a magistrate to exclude evidence of an inmate's guilty plea to a prison disciplinary charge of inflicting bodily injury on an officer where the underlying action involved a §1983 claim by the inmate against correctional officers for use of excessive force.  The Court determined that the evidence was properly excluded where it would have "created an unwarranted sideshow, drawing attention from the main event."  Id.  Similarly, in this instance, the central issue of whether the defendants violated Waters' constitutional rights is separate and distinct from the issue of whether Waters was actually innocent or whether the DNA evidence completely exonerated him of the charges.  In fact, the jury need not consider the question of Waters' actual innocence at all.  Thus, to present expert testimony of DNA evidence for the purpose of proving innocence unquestionably

muddles the central issue and draws attention away from the limited constitutional issues before the jury.

To allow the admission of the expert reports and expert testimony on DNA evidence will also be a substantial waste of time and judicial resources. As discussed above, Waters was arrested and tried before DNA evidence existed; thus the original jury did not consider DNA evidence and there is no allegation that DNA evidence was withheld from the original jury. Thus, for purposes of determining whether the defendants violated Waters' constitutional rights, the jury should only consider the evidence that was available at the time of Waters' arrest and trial and should not consider any testimony concerning later DNA evidence, in the interest of judicial economy.

III.    CONCLUSION

For the foregoing reasons, the defendants respectfully request that the plaintiff's designated DNA experts, Dr. Blake and Dr. Sinha, be stricken. In the alternative, the defendants request that they be given thirty days from the date of the Court's decision to designate a rebuttal DNA expert.

DEFENDANTS,
By their attorneys,

/s/ Joseph L. Tehan, Jr.
Joseph L. Tehan, Jr. (BBO # 494020)
Gregg J. Corbo (BBO # 641459)
Janelle M. Austin (BBO# 666835)
Kopelman and Paige, P.C.
101 Arch Street, 12th Floor
Boston, MA  02110
(617) 556-0007

324738/019067/0053