UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-10521-GAO

| | |
|---|---|
| BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,<br><br>　　　　　　Plaintiff<br>v.<br><br>TOWN OF AYER, NANCY TAYLOR-HARRIS, in Her Individual Capacity, ARTHUR BOISSEAU, In His Individual Capacity, BUDDY DECOT, In His Individual Capacity, WILLIAM ADAMSON, in His Individual Capacity, PHILIP L. CONNORS, in His Individual Capacity, and JOHN DOE and JANE DOES 1-16, in Their Individual Capacities,<br><br>　　　　　　Defendants | DEFENDANTS' MOTION TO STRIKE THE PLAINTIFF'S POLYGRAPH EXPERT <u>CHARLES R. HONTS</u> |

　　　　Now come the defendants to the above-referenced case and hereby move to strike the plaintiff's designated polygraph expert, Charles R. Honts. This Motion is made in accordance with paragraph 4(b) of the Court's May 23, 2007 Scheduling Order and Order on Motions to Compel. Also, in accordance with said Order, the defendants specifically reserve the right to identify a rebuttal expert on the topic of polygraph examinations if this Motion is denied.

　　　　As grounds for this Motion, the defendants state that the entire report of Dr. Honts should be stricken and that he should be precluded from testifying at trial because the validity of the polygraph examination administered by the Chief Polygraph Examiner for the Commonwealth of Massachusetts, who is not a defendant in this case, is legally irrelevant and the admission of such evidence is highly prejudicial to the defendants[1]. More specifically, Dr. Honts challenges the validity of the polygraph examination administered to Brenda Marsh prior to defendant Nancy

---

[1] Through this Motion, the defendants do not seek to strike the report based on the qualifications of the proposed expert or the adequacy of the report, but respectfully reserve the right to assert such objections if this Motion is denied.

Taylor's application for an arrest warrant. The test was not administered by any defendant in this case or any employee of the Town of Ayer, and none of the defendants are "trained polygraphists." Indeed, the results of the polygraph were not used at the probable cause hearing, the grand jury, trial, or any post-trial proceeding. Therefore, it would appear that the plaintiff's proffer of expert testimony on this subject is premised solely upon the flawed and absurd premise that, in assessing probable cause to arrest, Officer Taylor had a duty to impeach the validity of the polygraph examination conducted by the Chief Polygraph Examiner for the Commonwealth of Massachusetts. Officer Taylor had no such duty, as was clearly established by the First Circuit's opinion in Burke v. Town of Walpole, 405 F.3d 66, 80-81 (1st Cir. 2005). Therefore, the proffered testimony of Dr. Honts is entirely irrelevant and should be stricken.

     As further grounds for this Motion, the defendants rely on the within Memorandum of Reasons.

MEMORANDUM OF REASONS

I.    FACTUAL BACKGROUND

     On or about October 4, 1982, defendants Officer Nancy Taylor and Police Chief Philip Connors met with Robert Osborne and Brenda Marsh at a location in Worcester County to discuss the period of time when Ms. Marsh lived in Ayer with Kenneth Waters (Ayer Police Department Report dated October 5, 1982, attached hereto as "Exhibit A"). During this interview, Ms. Marsh made several statements implicating Mr. Waters in the murder of Katrina Brow, including that Waters admitted to her that he committed the crime (Exhibit A).

     On or about October 8, 1992, State Police Polygraphist, John P. Nasuti subjected Ms. Marsh to a polygraph examination (the Report of Polygraph Examination is attached hereto as "Exhibit B"). The examination was requested by State Police Detective Lieutenant John P.

Dwyer (Exhibit B). Prior to the polygraph examination, Ms. Marsh was interviewed by Detective Dwyer and Officer Taylor, in the presence of Mr. Nasuti, at which interview she repeated the assertion that Mr. Waters admitted-to the murder (a transcript of the pre-polygraph interview is attached hereto as "Exhibit C").

After conducting the polygraph examination, Mr. Nasuti concluded that "It is the opinion of the undersigned, based on tests conducted along with a pre-test interview that the subject was truthful in her answers to the following questions: 1. Did you tell me the real truth about the conversation you had with Kenny regarding Mrs. Brows death? Yes." (Exhibit B).

On or about October 12, 1982, Officer Taylor applied for and received a warrant for the arrest of Kenneth Waters (Ayer Police Department Report dated October 13, 1982, attached hereto as "Exhibit D"). Subsequent to issuance of the warrant, a probable cause hearing on the criminal complaint against Kenneth Waters was conducted, but the results of the polygraph examination of Brenda Marsh were not admitted into evidence or referred-to in anyway. Likewise, the polygraph results were not mentioned to the Grand Jury, at trial or in any post-trial proceeding.

By Expert Disclosures dated August 23, 2007, the plaintiff seeks to introduce expert testimony of Charles R. Honts, Ph.D., Professor of Psychology, Boise State University, on the issue of polygraph (Plaintiff's Expert Disclosure is attached hereto as "Exhibit E"). According to his expert report, Dr. Honts is offering an expert opinion on the following question: "Would any reasonable <u>trained polygraphist</u> have asked the questions included in [Mass. State Police Polygraphist John P. Nasuti's October 8, 1982] report in the context of a murder investigation, or relied on the results as probative, incriminating evidence against Kenneth Waters in 1982? Why not?" (a copy of Dr. Honts' Expert Report is attached hereto as "Exhibit F"). In answer to this

3

question, Dr. Honts states "based on my training as a polygraph examiner and as a scientist who studies credibility assessment, the Nasuti report is not a reliable indicator of Brenda Marsh's credibility concerning whether or not Ken Waters admitted to the murder of Katherina Brow." (Exhibit F, p. 3).

II.   ARGUMENT

   A.   Standard for the Admission of Expert Testimony

"When faced with a proffer of expert testimony, the district court must determine whether the expert witness is qualified and has specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue." Bogosian v. Mercedes-Benz of North America, Inc., 104 F.3d 472, 476 (1st Cir. 1997) (quoting, Fed.R.Evid. 702). In making this determination, the Court must perform "a gatekeeping function to ascertain whether the testimony is helpful to the trier of fact, *i.e.* whether it rests on a reliable foundation and is relevant to the facts of the case." Bogosian, 104 F.3d at 476 (citing, Vadala v. Teledyne Indus., Inc., 44 F.3d 36, 39 (1st Cir. 1995); Daubert v. Merell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993)). Along with reliability, there is a "special relevancy requirement" for expert testimony: "To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, *see* Fed.R.Evid. 402, but also in the incremental sense that the proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." Ruiz-Trouche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) (citing, Daubert, 509 U.S. at 591-92). "In other words, Rule 702, as visualized through the *Daubert* prism 'requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" Id. (emphasis supplied).

In this matter, for the detailed reasons stated below, the plaintiff's proffer of expert testimony on the subject of the polygraph examination of Brenda Marsh should be excluded because it is wholly irrelevant and lacks even a slight connection to the pertinent inquiry in this case.

      B.      The Expert's Opinion on the Polygraph Examination of Brenda Marsh is Factually Irrelevant

As previously discussed, the results of Brenda Marsh's polygraph examination were not used at the probable cause hearing, grand jury, trial or ant post-trial proceeding. Therefore, the only possible relevance of this information is at it relates to the issue of whether Officer Taylor had probable cause to seek a warrant to arrest Waters. As described in detail below, the opinion of the plaintiff's polygraph expert is not pertinent of to that inquiry because the Ayer Police had no duty to impeach the State Polygraph Examiner, and no obvious reason to doubt the veracity of his report.

According to his report, Dr. Honts is addressing the question "would any reasonable <u>trained polygraphist</u> have asked the questions included in [Mass. State Police Polygraphist John P. Nasuti's October 8, 1982] report in the context of a murder investigation, or relied on the results as probative, incriminating evidence against Kenneth Waters in 1982?" (Exhibit F, p. 1 (emphasis supplied). Of course, Mr. Nasuti is not a defendant in this case, and none of the defendants are "trained polygraphists." Therefore, the question is wholly irrelevant. Instead, the relevant question is whether a reasonable police officer in 1982 would have relied on the report of Mr. Nasuti to bolster the credibility of Brenda Marsh for purposes of probable cause to arrest.

It is well-settled that the existence of probable cause is based on the facts and circumstances known at the time of arrest rather than in hindsight. <u>Burke</u> v. <u>Town of Walpole</u>, 405 F.3d 66, 80 (1st Cir. 2005). "One who asserts the existence of probable cause is not a

5

guarantor either of the accuracy of the information upon which he has reasonably relied or of the ultimate conclusion that he reasonably drew therefrom." Burke, 405 F.3d at 80 (quoting, Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996)).  As such, "it is axiomatic that police work often requires officers and agents to rely on the observations, statements and conclusions of fellow investigators", Meuse v. Freeh, 421 F.Supp.2d 365, 369 (D.Mass. 2006), and "forensic evidence relied upon by the police to establish probable cause need not be unassailably accurate." Burke, 405 F.3d at 80.

In Burke, in seeking an arrest warrant, the police relied in part upon an opinion of a forensic odontologist to support the proposition that bite marks on a murder victim matched the plaintiff's teeth.  In a subsequent Section 1983 claim filed after he was released from prison pursuant to a *nolle pros*, the plaintiff sought to introduce the testimony of his own bite-mark expert to the effect that the original expert opinion was unreliable. Specifically, the plaintiff claimed that the expert bite mark evidence was so unreliable that it should not have been considered as part of the probable cause calculus.  The First Circuit Court of Appeals disagreed, holding the expert bite mark testimony was an appropriate factor to be weighed in the probable cause calculus and the totality of the circumstances.  Burke, 405 F.3d at 81.  The Court further held that the plaintiff failed to show that the circumstances evidenced obvious reasons to doubt the veracity of the expert report.  Burke, 405 F.3d at 82.

In 1982, when the polygraph examination of Brenda Marsh was conducted, none of the defendants had any reason to believe that the results were unreliable.  Mr. Nasuti was the Chief Polygraph Examiner for the Massachusetts State Police. See United States v. Vardoudakis, 1998 WL 151238 (D.Mass. 1998).  There was no evidence to suggest that Mr. Nasuti was not qualified to render a competent opinion in 1982, and even today, the plaintiff's proposed expert does not

6

suggest that Mr. Nasuti was unqualified. Bolstering the reasonableness of the defendants' reliance on Mr. Nasuti was the fact that the examination was requested by Det. Lieut. John P. Dwyer of the State Police, and Detective Dwyer was present during the pre-test interview of Ms. Marsh. None of the defendants were experts in polygraph techniques, nor did they have to be in order to rely on Mr. Nasuti's opinion. It is unquestionably reasonable for the defendants to rely on the report of the State's Chief Examiner, particularly where a State Police Detective requested the test. Moreover, the Massachusetts Supreme Judicial Court did not rule that polygraph evidence was inadmissible in criminal trials until 1989, see Commonwealth v. Mendes, 406 Mass. 201, 212 (1989), and in 1979, the Supreme Judicial Court ruled that polygraph examinations may be "useful as an investigatory aid." See Baker v. City of Lawrence, 379 Mass. 322, 329 (1979); see, also Commonwealth v. Scanlon, 9 Mass.App.Ct. 173, 179-80 (1980) (use of polygraph to bolster credibility of informant did not render warrant invalid); Commonwealth v. Donahue, 430 Mass. 710, 714, n. 1 (2000) (inclusion of defendant's polygraph result in search warrant application did no render affidavit invalid where there was no evidence that the results were intentionally falsified or stated with reckless disregard as to their accuracy).

Whether the polygraph examination of Brenda Marsh supported probable cause to arrest is a question of law for the Court, to be decided in light of all the evidence available to the defendants at the time of Mr. Waters' arrest. As such, the accuracy of the State Police expert's conclusion, which was not in question at the time of Waters' arrest, is wholly irrelevant. Therefore, the plaintiff's designated polygraph expert, Charles R. Honts be stricken.

    C.    The Expert's Opinion on the Polygraph Examination of Brenda Marsh will Lead to Jury Confusion and Undue Prejudice to the Defendants

By seeking to introduce evidence that the State Police Polygraph Examiner erroneously concluded that Brenda Marsh was telling the truth, it appears that the plaintiff is seeking to

7

bolster the credibility of Ms. Marsh's current testimony, which is vastly different than her testimony in the 1980's. This is an impermissible basis for admitting the testimony of Dr. Honts.

Generally, expert testimony that bears on the credibility of witnesses is disfavored because such testimony involves credibility determinations that are within the ken of the judge and jury. United States v. Rodriguez, 445 F.Supp.2d 190, 192 (D.P.R. 2006). Thus, where expert testimony calls into question the credibility of a witness, "its probative value must be carefully weighed against its tendency to cause unfair prejudice, confusion of the issues or to mislead the jury." Rodriguez, 445 F.Supp.2d at 192 (citing Fed.R.Evid. 403).

Because polygraph examinations "have long been considered of dubious scientific value", the results are usually deemed irrelevant. deVries v. St. Paul Fire and Marine Insurance Co., 716 F.2d 939, 945 (1st Cir. 1983). As such, polygraph results are not admissible in criminal trials in Massachusetts courts for purposes of impeaching a prosecution witness, Commonwealth v. Walker, 392 Mass. 152, 159 (1984), and they have only been allowed in the First Circuit for purposes other than proving their substance. United States v. Lynn, 856 U.S. 430, 433 (1st Cir. 1988).

In this matter, the probative value of the plaintiff's polygraph evidence is extraordinarily low, where the original test was not administered by any defendant in this case, and the results were used for limited purposes. Moreover, Dr. Honts did not conduct a new polygraph examination of Brenda Marsh; he merely opines that the prior test administered by the State Police was unreliable. Even assuming, *arguendo*, that the method employed by the State Police was improper, it does not automatically follow that Brenda Marsh was lying during the original exam, nor does it prove that she is telling the truth today. Without resort to undue speculation,

we will never know what the results of the original exam would have been had Dr. Honts' method been employed.

By introducing the expert testimony of Dr. Honts, the plaintiff is inviting the jury to speculate as to whether or not Brenda Marsh was telling the truth during the original polygraph exam. This is not a proper subject of expert testimony, and this risk of jury confusion far outweighs any slight probative value of this testimony. Therefore, the plaintiff's designated polygraph expert, Charles R. Honts be stricken.

III.    CONCLUSION

For the foregoing reasons, the defendants respectfully request that the plaintiff's designated polygraph expert, Charles R. Honts be stricken. In the alternative, the defendants request that they be given thirty days from the date of the Court's decision to designate a rebuttal polygraph expert.

DEFENDANTS,

By their attorneys,

/s/ Joseph L. Tehan, Jr.
Joseph L. Tehan, Jr. (BBO # 494020)
Gregg J. Corbo (BBO # 641459)
Janelle M. Austin (BBO# 666835)
Kopelman and Paige, P.C.
101 Arch Street, 12th Floor
Boston, MA  02110
(617) 556-0007

324269/01907/0053