UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-10521-GAO

BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,

Plaintiff

v.

TOWN OF AYER, NANCY TAYLOR-HARRIS, in Her Individual Capacity, ARTHUR BOISSEAU, In His Individual Capacity, BUDDY DECOT, In His Individual Capacity, WILLIAM ADAMSON, in His Individual Capacity, PHILIP L. CONNORS, in His Individual Capacity, and JOHN DOE and JANE DOES 1-16, in Their Individual Capacities,

Defendants

DEFENDANTS' MOTION TO STRIKE THE PLAINTIFF'S FINGERPRINT EXPERT RON SMITH

    Now come the defendants to the above-referenced case and hereby move to strike the plaintiff's designated fingerprint expert, Ron Smith. This Motion is made in accordance with paragraph 4(b) of the Court's May 23, 2007 Scheduling Order and Order on Motions to Compel. Also, in accordance with said Order, the defendants specifically reserve the right to identify a rebuttal expert on the topic of fingerprinting if this Motion is denied.

    As grounds for this Motion, the defendants state that the issue of fingerprints in this case is a "red herring" that has no relevance to the false arrest, *Brady* failure to disclose, or fabrication of evidence claims advanced by the plaintiff. Indeed, the undisputed facts developed through discovery clearly show that Kenneth Waters' defense counsel was aware of the fact that latent prints had been recovered from the scene and that such evidence was in the custody, possession and control of the Massachusetts State Police. Indeed, Waters' criminal defense attorney subpoenaed evidence from the Massachusetts State Police regarding a comparison of Kenneth Waters' fingerprints that was conducted by the State Police on or about April 22, 1983, less than

a month before trial, but he chose not to use such evidence at trial. Thus, as Mr. Waters' defense attorney had notice of the fingerprint evidence prior to Mr. Waters' criminal trial, any subsequent expert testimony on the issue of fingerprint comparison is wholly irrelevant to the *Brady* claims at issue. Further, since the only evidence of a comparison of Waters' prints to the prints found at the scene was conducted by the State Police after Waters was arrested, the plaintiff's expert fingerprint analysis is irrelevant to the false arrest claim. Finally, there is no evidence that any defendant fabricated evidence relating to the fingerprint issue.

In addition to being legally and factually irrelevant, Mr. Smith's report contains numerous statements that should be stricken as not being proper subjects of expert testimony.

As further grounds therefor, the defendants rely on the within Memorandum of reasons.

MEMORANDUM OF REASONS

I.     FACTUAL BACKGROUND

1.     Corporal John I. Baliunas was a fingerprint examiner for the Massachusetts State Police from approximately 1977 until November 1982 (Baliunas Depo. (relevant portions of which are attached hereto as "Exhibit A"), p. 5, l. 7-11; p. 28, l. 5-9).

2.     Corp. Baliunas arrived at the scene of the Brow murder on or about May 21, 1980 (Baliunas Depo., p. 12, l. 18-20).

3.     Corp. Baliunas authored a report of his involvement at the scene that day (Baliunas Depo., p. 14, l. 8-10; a true and accurate copy of said report is attached hereto as "Exhibit B").

4.     The report was obtained by the plaintiff in this case from the files of the Massachusetts State Police (Baliunas Depo., p. 13, l. 9-11).

5.     The report indicates that five latent prints were lifted from the crime scene (Exhibit B; Baliunas Depo., p. 16, l. 18-21).

6. The report was not in the Ayer Police Department's file on the Brow Homicide. Further, because it was lost prior to the filing of the instant litigation, there is no way to determine whether it was in the District Attorney's file (Deposition of Scott Sarsfeld, relevant portion of which are attached hereto as "Exhibit C"). It was Corp. Baliunas' practice, however, to give a copy of the report to the District Attorney's Office (Baliunas Depo., p. 35, l. 12 – p. 36, l. 1).

7. Corp. Baliunas does not recall whether he compared Kenneth Waters' prints to the latent prints found at the scene (Baliunas Depo., p. 67, l. 10-12; p. 145, l. 13-16).

8. If Waters' prints were compared and he was excluded as the source of the latent prints, Corp. Baliunas would have "documented" that information (Baliunas Depo., p. 65, l. 2-9).

9. Included with the documents in the State Police files was a handwritten list of names. Corp. Baliunas did not write the list, nor was it his practice to make such lists. (Baliunas Depo., p. 76, l. 10-18; p. 77, l. 10-12; p. 89, l. 1-10)[1].

10. On or about November 10, 1982, a grand jury was convened in the matter of Commonwealth v. Kenneth Waters (A true and accurate copy of the transcript of the grand jury proceeding is attached hereto as "Exhibit E").

11. Officer Taylor testified before the grand jury in the presence of A.D.A. Fahey (See, Exhibit E).

12. During the proceeding, Officer Taylor testified as follows:

 Q (By Juror) Was the department able to lift any fingerprints?

---

[1] By later affidavit (attached hereto as "Exhibit D"), Corp. Baliunas attempts to change this deposition testimony, despite the fact that he clearly and unequivocally stated three times at the deposition that he did not write the list. Pursuant to the "sham affidavit" rule, when a witness has given clear deposition testimony, he cannot create a conflict with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed. Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994). This Court and others have extended the sham affidavit rule as prohibiting the admission of a post-deposition affidavit of a non-party to contradict unambiguous deposition testimony of the same previously deposed non-party. Mahan v. Boston Water and Sewer Commission, 179 F.R.D. 49, 56, n. 6 (D.Mass. 1998) (citations omitted). Therefore, the Baliunas affidavit is not competent evidence to support any fact in this matter.

| | | |
|---|---|---|
| A | | The State Police did lift some prints. None of them were anything that were able to match up. They were smeared et cetera. |
| Q (By Ms. Fahey) | | So the State Police were unable to match any prints - - lift any prints to be of use in any investigation? |
| A | | That's correct. |

(Exhibit E, p. 15).

13.     According to the pre-trial conference report for the criminal case, the transcript of this grand jury proceeding was provided to Waters' defense attorney, Bernard Bradley (a true and accurate copy of the Pretrial Conference Report is attached hereto as "Exhibit F").

14.     Attorney Bradley identified the "Massachusetts State Police Fingerprint Section" as one of his trial witnesses (a true and accurate copy of "Defendants List of Witnesses" is attached hereto as "Exhibit G").

15.     Attorney Bradley made a "Motion to Summons Witnesses at Expense of the Commonwealth" which was allowed by the Court on or about May 10, 1983 (a true and accurate copy of the Motion is attached hereto as "Exhibit H"). Corp. Baliunas was on the list of witnesses (See, Exhibit H).

16.     Corp. Baliunas was also identified on the Commonwealth's list of potential trial witnesses, which was provided to Mr. Waters' defense counsel prior to trial (a true and accurate copy of the Commonwealth's witness list is attached hereto as "Exhibit I"). Corp. Baliunas, however, was not called as a Commonwealth witness and did not testify at the criminal trial (Baliunas Depo., p. 65, l. 23-24).

17.     Criminal defense counsel could request comparison by the State Police of their client's prints to the prints lifted from the scene (Baliunas Depo., p. 148, l. 17-21).

18.     No defense lawyer for Mr. Waters ever made such a request of Corp. Baliunas (Baliunas Depo., p. 148, l. 24 – p. 149, l. 1-3).

19.     Corp. Balinuas would have done the comparison if such a request had been made (Baliunas depo., p. 149, l. 5-6).

20.     After Corp. Baliunas' retirement in 1982, on or about April 28, 1983, Attorney Bradley caused a trial subpoena to be served upon Sgt. Amaral of the Massachusetts State Police (a true and accurate copy of the subpoena is attached hereto as "Exhibit J").  According to the subpoena, which was served upon Sgt. Amaral in hand, he was required to bring with him to trial "fingerprint comparison re: Kenneth Waters done for the Ayer Police Department on or about April 22, 1983" (See, Exhibit J).

21.     Sgt. Amaral did not testify at trial.

22.     Waters' awareness of the Commonwealth's fingerprint evidence is further demonstrated by correspondence from Waters' appellate attorney, Herbert F. DeSimone, Jr., to Attorney Bradley and the District Attorney's Office (true and accurate copies of Attorney DeSimone's post-trial fingerprint letters are attached hereto as "Exhibit K").  Indeed, on or about January 20, 1984, Waters' appellate attorney, wrote to the District Attorney's Office requesting information as to whether or not Waters' prints were compared to the latent prints lifted from the scene. Attorney Bradley also requested copies of the latent prints (Exhibit K).

23.     Despite the fact that Waters did not attempt to use any fingerprint comparison during his criminal trial or appeal, the plaintiff now seeks to introduce the expert testimony of Ron Smith who opines that the latent prints left at the scene were "identifiable" and that those prints did not match Waters' prints (a copy of Mr. Smith's report is attached hereto as "Exhibit L").

24.     On or about August 29, 2007, after the expiration of the time for designation of plaintiff's expert witnesses, and without leave of Court, the plaintiff supplemented Mr. Smith's report (a copy of Mr. Smith's Supplemental report is attached hereto as "Exhibit M").

II.     ARGUMENT

   A.   Standard for the Admission of Expert Testimony

"When faced with a proffer of expert testimony, the district court must determine whether the expert witness is qualified and has specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue." Bogosian v. Mercedes-Benz of North America, Inc., 104 F.3d 472, 476 (1st Cir. 1997) (quoting, Fed.R.Evid. 702). In making this determination, the Court must perform "a gatekeeping function to ascertain whether the testimony is helpful to the trier of fact, *i.e.* whether it rests on a reliable foundation and is relevant to the facts of the case." Bogosian, 104 F.3d at 476 (citing, Vadala v. Teledyne Indus., Inc., 44 F.3d 36, 39 (1st Cir. 1995); Daubert v. Merell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993)). Along with reliability, there is a "special relevancy requirement" for expert testimony: "To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, *see* Fed.R.Evid. 402, but also in the incremental sense that the proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." Ruiz-Trouche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) (citing, Daubert, 509 U.S. at 591-92). "In other words, Rule 702, as visualized through the *Daubert* prism 'requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" Id.

In this matter, for the detailed reasons stated below, the plaintiff's proffer of expert testimony on the subject of fingerprinting should be excluded because it is wholly irrelevant to the pertinent inquiry in this case.

B. <u>The Expert's Opinion on the Fingerprinting Issues is Factually Irrelevant</u>

The relevance of the plaintiff's fingerprint evidence must be evaluated in light of the substantive claims that she has asserted. In this regard, the plaintiff's constitutional claims fall into three categories: (1) that the defendants violated Waters' Fourth Amendment rights by arresting and prosecuting him without probable cause; (2) that the defendants violated Waters' Fourteenth Amendment right to due process by failing to disclose exculpatory evidence; and (3) that the defendants violated Waters' Fourteenth Amendment right to due process by fabricating inculpatory evidence. Without waiving the defendants' rights to contest the viability of these causes of action under the circumstances of this case, the defendants contend that Mr. Smith's opinions should be stricken for the following reasons:

1. <u>Fourth Amendment and Probable Cause</u>

Notwithstanding the speculative musings of the plaintiff's police practices expert (which the defendants have also moved to strike), there is no evidence in the record to suggest that Waters' fingerprints were compared to the latent prints found at the scene prior to his arrest and the filing of criminal charges, or that any defendant knew of any such comparison. The plaintiffs' Fourth Amendment claim, cannot be premised upon the theory that the defendants' should have compared Waters' prints to the latent prints found at the scene prior to arresting and charging him. It is well-settled that the existence of probable cause is based on the facts and circumstances known at the time of arrest rather than in hindsight. <u>Burke</u> v. <u>Town of Walpole</u>, 405 F.3d 66, 80 (1st Cir. 2005). "One who asserts the existence of probable cause is not a

guarantor either of the accuracy of the information upon which he has reasonably relied or of the ultimate conclusion that he reasonably drew therefrom." Burke, 405 F.3d at 80 (quoting, Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996)). Thus, "the law is clear that once police officers are presented with probable cause to support an arrest, no further investigation is required at that point." Forrest v. Pawtucket Police Department, 377 F.3d 52, 57 (1st Cir. 2004) (citing, Brodnicki v. City of Omaha, 75 F.3d 1261, 164 (8th Cir. 1996)); Acosta v. Ames Department Stores, Inc., 386 F.3d 5, 11 (1st Cir. 2004) ("once a law enforcement officer unearths sufficient facts to establish probable cause, she has no constitutional duty either to explore the possibility that exculpatory evidence may exist or to conduct any further investigation in the hope of finding such evidence."). As there was no duty on the part of the defendants to compare Waters' prints to the latent prints found at scene prior to his arrest, the results of the plaintiff's expert fingerprint analysis, conducted more than twenty-years after-the-fact is irrelevant.

Likewise, the plaintiff's Fourth Amendment claim cannot be premised upon the theory that the defendants lacked probable cause to arrest or file a complaint because Waters' prints had actually been compared to the latent prints found that the scene, and were excluded as the source of the same, because there is no competent evidence to suggest that such a comparison occurred at that time.

The only evidence of a comparison between Waters' prints and the prints found at the scene is in a subpoena issued by Waters' criminal defense attorney shortly before trial. The reference is to a comparison done on or about April 22, 1983, after Waters had been arrested and charged. The results of this comparison are not known, but such after-the-fact evidence cannot be used to derogate from the Officer's determination of probable cause at the time of arrest. At

8

that point, if the results of the comparison impacted the pending prosecution, it was the duty of the District Attorney and the State Police to terminate the case.

Therefore, as the plaintiff has failed to establish a sufficient link between the proffered expert fingerprint analysis and her Fourth Amendment claim, the plaintiff's designated fingerprint expert, Ron Smith, should be stricken

### 2. Due Process and Disclosure of Exculpatory Evidence

The *ex post facto* fingerprint analysis conducted by the plaintiff's proffered expert has no bearing on the due process, failure to disclose exculpatory evidence claim, as no defendant in this case had a duty to disclose fingerprint evidence. It is undisputed that the handling of fingerprint evidence was solely within the domain of the Massachusetts State Police. The prints were lifted by the State Police and the State Police maintained exclusive possession, custody and control of the evidence at all times. As such, if the fingerprint evidence was exculpatory, it was the State Police that had the duty to disclose it.

Furthermore, even if any Ayer defendant had some duty to disclose evidence regarding the State Police fingerprint analysis, the moment Officer Taylor truthfully and accurately testified that latent prints had been lifted from the scene, her obligation to disclose exculpatory evidence[2] was satisfied. Reid v. Simmons, 163 F.Supp.2d 81, 86 (D.N.H. 2001). As observed by the United States District Court for the District of New Hampshire in Reid, relying on precedent from the First, Seventh, Eight and Eleventh Circuit Courts of Appeals, "*Brady* does not require the government to turn over information which, with any reasonable diligence, the defendant can obtain himself." Reid, 163 F.Supp.2d at 86. Thus, in Reid, the Court found that a police officer

---

[2] For purposes of this Motion only, the defendants will accept Mr. Smith's conclusion that Waters could not have been the donor of the latent prints lifted from the table and the toaster, and that this evidence is exculpatory. The defendants, however, specifically reserve the right to contest these conclusions should this Motion be denied.

9

satisfied his *Brady* obligation when he testified at a probable cause hearing about the existence of investigative reports which the plaintiff claimed were exculpatory. In so holding, the Court found that

> Accepting the fact that Simmons testified about those reports at the probable cause hearing, as the state court did, that testimony not only placed the prosecution on notice of the existence of the other investigative reports, it necessarily also informed Reid and his counsel (both of whom were present at the probable cause hearing) that those reports existed, as well as their substantive content . . . Consequently, Reid (or his counsel) likely should have, in the exercise of reasonable diligence, recognized the exculpatory value of those reports and could have obtained copies of them simply by asking the prosecutor or the Manchester Police Department.

Here, as in Reid, Officer Taylor's testimony placed both the district attorney and Waters' defense counsel on notice of the fact that latent prints had been lifted from the scene[3]. At that juncture, any defense attorney exercising "reasonable diligence" would have recognized the exculpatory value of comparing his client's prints to those found at the scene. Indeed, it appears that this did occur to Attorney Bradley, as evidenced by the fact that State Police Fingerprint examiners were identified on his trial list, and that he subpoenaed the results of a State Police fingerprint comparison of Kenneth Waters prints that was conducted shortly before trial. Moreover, the value of this evidence was certainly recognized by Waters' appellate counsel, as evidenced by his correspondence to Attorney Bradley and the District Attorney (Exhibit K) Therefore, as Waters' defense counsel was aware of the State Police Fingerprint evidence, and this evidence was neither suppressed nor unavailable, there was no *Brady* violation with respect to the fingerprint evidence. As such, it is irrelevant and the plaintiff's proffered expert should be stricken.

---

[3] Although neither Waters nor his defense counsel were present at the grand jury proceedings, the pretrial conference report (Exhibit F) indicates that Attorney Bradley was provided with a transcript, thereby putting him on notice of Officer Taylor's testimony.

### 3. Due Process and Fabrication of Evidence

To the extent that the plaintiff's fabrication of evidence claim is premised on an allegation that Officer Taylor's fingerprint testimony at the probable cause hearing was knowingly false, the claim is barred because Officer Taylor is entitled to absolute immunity for testimony given in a judicial proceeding. Briscoe v. LaHue, 460 U.S. 325 (1983). The plaintiff cannot circumvent this immunity simply by casting the claim in terms of fabrication of evidence. Therefore, there is no reason to show that Officer Taylor's fingerprint testimony was false, as Mr. Smith's report concludes, because there is no basis for liability even if it were. As such, opinion of the plaintiff's fingerprint expert is wholly irrelevant to this claim and should be stricken.

### 4. The Fingerprint Evidence has no Bearing on "Actual Innocence"

In prior pleadings filed with this Court, the plaintiff claimed that fingerprint evidence supports her theory of "actual innocence." To the extent that the plaintiff proffers Mr. Smith's testimony to support her actual innocence theory, the same should be excluded for the detailed reasons contained in Defendants' Motion to Strike Plaintiff's DNA Experts Dr. Edward T. Blake and Dr. Sudhir K. Sinha, which is filed contemporaneously herewith. More specific to the fingerprint issue, the evidence is irrelevant because both Waters criminal defense and appellate attorneys had notice of the latent fingerprint evidence in the possession of the State Police, but both chose not to use such evidence in his defense. It would be patently unfair and will likely cause jury confusion if the plaintiff is allowed to introduce evidence at this juncture that was available to Waters at his original criminal trial but that he chose not to use. The mere fact that this tactic by Waters' defense counsel (which suggests that the latent print comparison done before trial was not exculpatory) failed does not justify retrying an issue that should have been

presented to the original jury in the criminal prosecution. If this argument "did not merit argument when the facts were fresh and the plaintiff's liberty was at stake, [it] does not merit argument [now] when the facts are stale and the plaintiff seeks financial compensation." Alexander v. City of South Bend, 320 F.Supp.2d 761, 775 (N.D. Ind. 2004). Therefore, as the proffered expert testimony does not even support the plaintiff's actual innocence theory, the opinion of the plaintiff's fingerprint expert is wholly irrelevant and should be stricken.

    C.        The Experts Report Contains Inadmissible Statements

Assuming, *arguendo*, that Mr. Smith's report is not stricken, portions of it should be on the grounds that it contains statements that are improper

Specifically, the defendants state that the following statements should be stricken from Mr. Smith's report:

> 1.      It appears that Corporal Baliunas followed his usual and customary practices in this case which would have been to compare the known fingerprints of Kenneth Waters with the previously unidentified latent prints in this case and to have notified Chief Adamson of the Ayer PD as the results of those comparisons. This method of recording comparisons performed and orally notifying investigating agencies of the results was commonplace in 1980 by the majority of agencies conducting these types of analytical examinations.
>
> 2.      it is my opinion that Nancy Taylor was clearly incorrect when she made this statement.
>
> 3.      Based upon the evidence, her answers to the juror and the prosecutor were false.

Statement 1 should be stricken because it does not address a proper subject of expert testimony. Whether or not Corp. Baliunas followed his "usual and customary practices" is an issue of fact for the Court to decide and does not require the aid of expert testimony. United States v. Olender, 338 F.3d 629, 638 (6th Cir. 2003) (expert not permitted to testify to matter that is able to be shown by a lay witness or by cross-examination). In addition, the last sentence of

Statement 1 should be stricken because Mr. Smith has not laid a proper foundation for his opinion of what was "commonplace" in 1980. Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994).

Statements 2 and 3 should be stricken because "an expert's opinion that another witness is lying or telling the truth is ordinarily inadmissible pursuant to Rule 702 because the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion." United States v. Shay, 57 F.3d 126, 131 (1st Cir. 1995) (citing, Bachman v. Leapley, 953 F.2d 440, 441 (8th Cir. 1992); United States v. Benson, 941 F.2d 598, 604 (7th Cir. 1991); Fed.R.Evid. 704 advisory committee's note (evidence can be excluded pursuant to Rule 702 if it "would merely tell a jury what result to reach, somewhat in the manner of oath-helpers of an earlier day.")); see, also Berry, 25 F.3d at 1354 (expert cannot tell jury what result to reach).

Finally, the Supplemental Report of Mr. Smith, submitted on August 29, 2007, should be stricken in its entirety because it is untimely and was filed without leave of Court. On July 16, 2007, this Court allowed Plaintiff's Assented-To Motion to Extend Expert Disclosure Deadlines (Docket No. 100). Under the Court's Order, plaintiff's expert disclosures, including complete reports under Fed.R.Civ.P. 26(a)(2)(B) were due on August 23, 2007. Plaintiff's submission of Mr. Smith's Supplemental Report on August 29, 2007 does not comply with the Court's scheduling Order and should be stricken as it is untimely. Gonzalez v. Diaz Ortiz, 140 F.3d 312, 315 (1st Cir. 1998) (a litigant who ignores a case-management deadline does so at his peril.).

### III.   CONCLUSION

For the foregoing reasons, the defendants respectfully request that the plaintiff's designated fingerprint expert, Ron Smith, be stricken. In the alternative, the defendants request

that they be given thirty days from the date of the Court's decision to designate a rebuttal fingerprint expert.

                DEFENDANTS,
                By their attorneys,

                /s/ Joseph L. Tehan, Jr.
                Joseph L. Tehan, Jr. (BBO # 494020)
                Gregg J. Corbo (BBO # 641459)
                Janelle M. Austin (BBO# 666835)
                Kopelman and Paige, P.C.
                101 Arch Street, 12th Floor
                Boston, MA  02110
                (617) 556-0007

324434/01907/0053