UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,<br><br>        Plaintiff,<br>v.<br><br>TOWN OF AYER, NANCY TAYLOR-HARRIS, in her individual capacity, ARTHUR BOISSEAU, in his individual capacity, BUDDY DECOT, in his individual capacity, WILLIAM ADAMSON, in his individual capacity, PHILIP L. CONNORS, in his individual capacity, and JOHN DOE and JANE DOES 1–16, in their individual capacities,<br><br>        Defendants. | Case No. 04 10521 (GAO)<br><br>**DECLARATION OF JOHN I. BALIUNAS** |

I, John Baliunas, residing at 15 Spring Street, Westborough, Massachusetts, 01581 hereby declare the following to be true:

1. I was the fingerprint examiner for the Massachusetts State Police assigned to the investigation of the Brow homicide that took place in Ayer, Massachusetts on May 21, 1980.

2. I responded to the crime scene, where I found and collected 5 latent prints. I also photographed the crime scene.

3. As it has been more than 27 years since the crime and 25 years since I retired, I do not remember everything that I did on the case.

4. When I retired in or about November 1982 I kept my file in the expectation that if and when there was an arrest, I would be called to testify about my work on the case.

1

5. In the mid-1990's many of my files were packed into boxes and placed in a storage unit. I was the only person with a key to that padlocked unit.

6. On July 10, 2007, pursuant to a subpoena, my storage unit was searched for the Brow file. The file was found. I looked through the file but did not have an opportunity to thoroughly examine it.

7. The Brow file that I kept included a copy of my original crime scene report, original latent prints I recovered from the crime scene, photographic enlargements of those latents, fingerprint cards taken from the victim at the morgue, negatives and prints of photographs from the crime scene and the autopsy, copies of fingerprint cards of some suspects whose prints I compared to the latents from the crime scene, and my handwritten lists of suspects.

8. It was my custom and practice to return original fingerprint cards of suspects to the submitting agencies, and to keep copies of fingerprint cards in my file in cases where the submitting agency sent me a copy rather than the original card.

9. The attached four pages are true and correct color copies of lists I made of suspects whose fingerprints I compared and excluded as the source of the latents I found at the crime scene. The heading "Con't list of FP cards checked" part of the way down "Sheet #2" means "continued list of fingerprint cards checked."

10. It was my custom and practice to keep these kinds of lists so I would remember which suspects' prints I had compared and excluded during an investigation.

11. It was my custom and practice to report all of my findings – whether excluding suspects or including them – to the submitting agency, in this case Chief Adamson of the Ayer

2

Police Department.

12. I was able to match only one latent print in this case: I determined that a latent on a Ballantine beer can was left by victim Katherina Brow's right index finger.

13. All of the suspects whose prints I received for comparison were excluded as the source of the remaining 4 latents I lifted from the scene.

14. I do not now remember the names of all the suspects whose fingerprints I compared to the latent prints I found at the crime scene.

Pursuant to 28 U.S.C. § 1746, I declare the foregoing to be true under the pains and penalties of perjury.

Dated: July 30th, 2007

*/s/ John Baliunas*
John Baliunas

3