UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-10521-GAO

BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,

Plaintiff

v.

TOWN OF AYER, NANCY TAYLOR-HARRIS, in Her Individual Capacity, ARTHUR BOISSEAU, In His Individual Capacity, BUDDY DECOT, In His Individual Capacity, WILLIAM ADAMSON, in His Individual Capacity, PHILIP L. CONNORS, in His Individual Capacity, and JOHN DOE and JANE DOES 1-16, in Their Individual Capacities,

Defendants

DEFENDANTS' MOTION TO STRIKE THE PLAINTIFF'S POLICE PRACTICES EXPERT LOU REITER

Now come the defendants to the above-referenced case and hereby move to strike the plaintiff's designated police practices expert, Lou Reiter. This Motion is made in accordance with paragraph 4(b) of the Court's May 23, 2007 Scheduling Order and Order on Motions to Compel. Also, in accordance with said Order, the defendants specifically reserve the right to identify a rebuttal expert on the topic of police practices if this Motion is denied.

As grounds for their Motion, the defendants state that the entire report of Reiter should be stricken and that he should be precluded from testifying at trial because his "preliminary report" is not in compliance with the Federal Rules of Civil Procedure and the Court's Scheduling Order. The defendants also contend that the preliminary report should be stricken on the substantive grounds that it is legally irrelevant and lacks a reliable factual foundation, rendering it likely to cause jury confusion.

As further grounds therefor, defendants rely on the within Memorandum of Reasons.

MEMORANDUM OF REASONS

I.     FACTUAL BACKGROUND

The plaintiff alleges in this cause of action that the defendants violated Kenneth Waters' constitutional rights during his arrest and prosecution for the murder of Katherina Brow on May 21, 1980. Plaintiff's constitutional claims fall into two categories: (1) that the defendants violated Waters' Fourth Amendment rights by arresting and prosecuting him without probable cause; and (2) that the defendants violated Waters' Fourteenth Amendment right to due process by failing to disclose exculpatory evidence and by fabricating inculpatory evidence. Plaintiff now seeks to offer police practices expert testimony from Lou Reiter that misstates the applicable liability standard and is devoid of factual record support. For the reasons stated herein, Mr. Reiter's opinions are therefore irrelevant, unreliable, unsubstantiated, speculative and misleading. As such, the proffered testimony of Mr. Reiter should be stricken as it will not assist the trier of fact.

II.    ARGUMENT

    A.    The Plaintiff's Submission of a "Preliminary" Expert Report Contravenes Fed.R.Civ.P. 26(a)(2)(B) and the Scheduling Order In This Case.

Mr. Reiter's "preliminary" expert report, submitted to the defendants on August 23, 2007 is not proper under the Federal Rules of Civil Procedure and this Court's scheduling order. On July 16, 2007, this Court allowed Plaintiff's Assented-To Motion to Extend Expert Disclosure Deadlines (Docket No. 100). Under the Court's Order, plaintiff's expert disclosures, including final reports under Fed.R.Civ.P. 26(a)(2)(B) were due on August 23, 2007. Plaintiff's submission of Mr. Reiter's "preliminary" report by the August 23 deadline does not comply with the Court's scheduling order and should be stricken as it does not provide the defendants with a

complete opinion, as required under Fed.R.Civ.P. 26(a)(2)(B), with which to prepare their defense and designate appropriate rebuttal expert witnesses.

Rule 26 mandates that an expert report, "shall contain a <u>complete</u> statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions…" Fed.R.Civ. P. 26(a)(2)(B). (emphasis supplied) "The Civil Rules endow trial judges with formidable case-management authority…In exercising this power, 'trial judges enjoy great latitude, and a litigant who ignores a case-management deadline does so at his peril." <u>Gonzalez</u> v. <u>Diaz Ortiz</u>, 140 F.3d 312, 315 (1st Cir. 1998). Indeed, "if Plaintiff has provided Defendant with a report from an expert witness but the report does not contain a <u>complete</u> <u>statement</u> of all opinions to be expressed and the basis and reasons therefor and the data and other information considered by the witness in forming the opinions, as required by Fed.R.Civ.P 26(a)(2)(B), Plaintiff may be precluded from presenting that expert witness's testimony at trial…" <u>Vigeant</u> v. <u>United States of America</u>, 2005 WL 1566628 *2 (D.R.I. 2005). (emphasis supplied). Adherence to the specific requirements of Fed.R.Civ.P 26(a)(2)(B) ensures that "opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." <u>Flebotte</u> v. <u>Dow Jones & Company, Inc.</u>, 2000 WL 35539238 *7 (D. Mass. 2000) (quoting <u>Mounger</u> v. <u>Goodyear Tire & Rubber Co.</u>, 2000 WL 1466198 *1 (D. Kan. 2000)).

Thus, as plaintiff has failed to comply with the Court's Order and provide a complete report, Mr. Reiter should be precluded from testifying at trial because the defendants are unduly prejudiced as they prepare their own potential expert witnesses.[1] Mr. Reiter's report does not

---

[1] Plaintiff further disclosed a "supplemental" expert report from her designated fingerprint expert, Ron Smith, on Wednesday, August 29, 2007, almost a week after plaintiff's expert disclosures were due. Such "supplemental"

provide a complete account of the topics upon which he may testify or his ultimate opinions on those matters. After reviewing Reiter's preliminary report, the defendants remain uncertain whether Mr. Reiter's opinions may change, shift, or take into account additional information when his "final" report is prepared. In fact, Mr. Reiter states in his report, "[i]t is my understanding that additional materials may be in process of being produced or may be requested later. I would request that this report be considered a preliminary report. Should any subsequent information be produced and materially affect or alter any of these opinions, I will either submit a supplemental response or be prepared to discuss them during any scheduled deposition." (See Exhibit A, Lou Reiter's Preliminary Expert Report, p. 43, ¶89). This is an unsatisfactory solution. Mr. Reiter's failure to disclose all of his opinions regarding issues of central importance to this litigation unduly impairs the defendants' trial preparation and that of their potential expert witnesses as Mr. Reiter has failed to provide the definitive opinion he will testify to at trial. As such, Mr. Reiter's expert report should be stricken and he should be precluded from testifying at trial. See Fed.R.Civ.P. 26(a)(2)(C) (requiring a party to make expert disclosures at the time and the sequence that the court orders).

        B.        Mr. Reiter's Report Should Be Stricken Due To Its Reliance On Incompetent Evidence.

Mr. Reiter's preliminary report should also be stricken on the basis that it ignores critical evidence and relies on incompetent evidence. Specifically, in preparing his report, Mr. Reiter failed to acknowledge the deposition of Roseanna Perry, a key witness in this case, in which she adamantly denied any police misconduct. Instead of relying on her sworn testimony, Mr. Reiter bases his opinions that the defendants fabricated evidence on an unsigned affidavit prepared for Ms. Perry in 2001, See Exhibit A, p. 4, and upon an affidavit of her daughter which is replete

---

report is tardy and should be stricken as well. Such "supplemental" materials are impermissible under Rule 26(a)(2)(B). Defendants will address this issue in an accompanying Motion to Strike fingerprint expert Ron Smith.

with hearsay. Mr. Reiter therefore effectively creates his own version of the "facts". His further "facts" that "[t]here is testimony in this matter that Ms. Perry believed the Ayer Police Department would advise the Providence Police Department that she had assisted them in this case." (Exhibit A, p. 36, ¶ 72) is also unsupported by the record. At her deposition, Ms. Perry specifically denied that anyone promised her anything in exchange for her cooperation during the Brow investigation. (Exhibit B, p. 88, ll. 11-14).

Reiter's reliance on the unsigned affidavit of Ms. Perry, in lieu of her sworn testimony, is likely to cause jury confusion. Not only is an unsigned affidavit incompetent evidence, but, as noted, the statements in the affidavit were specifically and emphatically denied by Ms. Perry at deposition. (See Exhibit B, Deposition Transcript of Roseanna Baggesen (Perry), p. 132-156). In fact, Ms. Perry was specifically asked at her deposition "have you ever signed [the affidavit]" by defense counsel and specifically replied "no", adding "I certainty (sic) would not." (Exhibit B, p. 132, ll. 2-9). Mr. Reiter's opinions regarding the alleged fabrication of evidence based on Ms. Perry's unsigned affidavit, adamantly refuted by Ms. Perry at her deposition, are deceptive and will only serve to confuse the jury. (See, e.g., Exhibit A, p. 37, ¶73, "The affidavits of Roseanna Perry and her daughter represent that she was threatened by Ms. Taylor with being prosecuted as an accessory to the murder of Mrs. Brow and later with the threat of being charged with perjury during subsequent hearings on this matter.")

Therefore, as Mr. Reiter based those opinions on inherently unreliable evidence, the Court should strike his report.

### C. Mr. Reiter's Report and Testimony Should be Stricken As It Lacks Reliability and Relevance To This Case and Will Not Assist the Trier of Fact

#### 1. Legal Standard

"When faced with a proffer of expert testimony, the district court must determine whether the expert witness is qualified and has specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue." Bogosian v. Mercedes-Benz of North America, Inc., 104 F.3d 472, 476 (1st Cir. 1997) (quoting, Fed.R.Evid. 702). In making this determination, the Court must perform "a gatekeeping function to ascertain whether the testimony is helpful to the trier of fact, *i.e.* whether it rests on a reliable foundation and is relevant to the facts of the case." Bogosian, 104 F.3d at 476 (citing, Vadala v. Teledyne Indus., Inc., 44 F.3d 36, 39 (1st Cir. 1995); Daubert v. Merell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993)). Along with reliability, there is a "special relevancy requirement" for expert testimony: "To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, *see* Fed.R.Evid. 402, but also in the incremental sense that the proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." Ruiz-Trouche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) (citing, Daubert, 509 U.S. at 591-92). "In other words, Rule 702, as visualized through the *Daubert* prism 'requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" Id.

To fulfill its gatekeeping function, the Court must determine that "a proposed expert witness must be sufficiently qualified to assist the trier of fact, and that his or her expert testimony must be relevant to the task at hand and rest on a reliable basis…" U.S. v. Diaz, 300 F.3d 66, 73 (1st Cir. 2002) (citing Fed.R.Evid. 702). "The trial court must remember that '[t]he

ultimate purpose of the [expert evidence] inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue.'" Hutchinson, 344 F. Supp. at 222 (quoting Cipollone v. Yale Industries Prod. Inc., 202 F.3d 376, 380 (1st Cir. 2000) *accord* Hochen v. Bobst Group, Inc., 290 F.3d 446, 452 (1st Cir. 2002)).

In this matter, for the detailed reasons stated below, the Court should exercise its gatekeeping function and exclude plaintiff's designation of expert testimony pertaining to police practices because Mr. Reiter's preliminary report is based on an incorrect liability standard, relies on deceptive, speculative and inconclusive "facts" and will not assist the jury.

        2.        Mr. Reiter's Report Is Irrelevant and Misleading As It Is Based On the Wrong Standard of Liability

To the extent that Mr. Reiter seeks to testify regarding the defendants' liability by applying negligence standards, such testimony is irrelevant, misleading and will not assist the trier of fact. "'[E]xpert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue.'" U.S. v. Diaz, 300 F.3d 66, 73 (1st Cir. 2002) (citing Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998); Daubert, 509 U.S. at 591-92).

As previously noted, plaintiff alleges that the defendants violated Waters' Fourth Amendment rights by arresting and prosecuting him without probable cause and violated Waters' due process rights under the Fourteenth Amendment by failing to disclose exculpatory evidence and fabricating inculpatory evidence. For the reasons stated in detail below, the plaintiff's expert testimony is irrelevant and will not assist the jury in determining whether the defendants acted with the requisite culpability under the Fourth and Fourteenth Amendments.

7

a) Fourth Amendment- Probable Cause Analysis

The relevant inquiry to evaluate plaintiff's allegations of constitutional violations under the Fourth Amendment is whether the evidence available to the Ayer Police Department prior to Kenneth Waters' arrest provided probable cause to arrest. If probable cause exists for an arrest, then there is no violation of an individual's Fourth Amendment rights. Bryant v. Noether, 163 F.Supp.2d 98, 107 -108 (D.N.H. 2001). Notably, "[p]robable cause does not require the facts and circumstances within the officer's knowledge to "be sufficient to prove guilt beyond a reasonable doubt, to make out a prima facie case or even to establish that guilt is more probable than not." Bryant, 163 F.Supp.2d at 107-08 (citing State v. Thorp, 116 N.H. 303, 307, 358 A.2d 655 (1976) (citing Spinelli v. United States, 393 U.S. 410, 419, (1969)).

In determining whether probable cause existed for an individual's arrest, "[i]t is objectively reasonable for officers to seek an arrest warrant 'so long as the presence of probable cause is at least arguable'" Brady v. Dill, 187 F.3d 104, 113 (1st Cir.1999) (citing Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir.1991)). A police officer's subjective intentions are irrelevant to a Fourth Amendment probable cause analysis. Brady, 187 F.3d at 113 *accord* Whren v. United States, 517 U.S. 806, 811-13 (1996). The objective reasonableness standard pertains to the evaluation of the evidence comprising probable cause. It does not establish mere negligence as a sufficient basis for liability, as Mr. Reiter posits.

The Fourth Amendment is not violated unless a police officer procured the warrant by intentionally or recklessly making material false statements in a supporting affidavit. Franks v. Delaware, 438 U.S. 154 (1978). A so-called Franks Violation may also be established by showing "the intentional or reckless omission of material exculpatory facts from information presented to a magistrate. Burke v. Walpole, 405 F.3d 66, 82 (1st Cir. 2005). In Burke, the court

8

held that "[a]llegations of intentional or reckless misstatements or omissions implicate the very truthfulness, not just the sufficiency, of a warrant application. If such allegations prove to be true, a court owes no deference to a magistrate's decision to issue an arrest warrant because, 'where officers procuring a warrant have deliberately misled the magistrate about relevant information, no magistrate will have made a prior probable cause determination" based on the correct version of the material facts.'" Id. (citing Verlardi v. Walsh, 40 F.3d 569, 574 n. 1 (2nd Cir. 1994)).

        b) Due Process Considerations: The Disclosure of Exculpatory Evidence and Fabrication of Evidence

        1. Fourteenth Amendment Standard

Plaintiff alleges that the defendants failed to disclose exculpatory evidence and fabricated inculpatory evidence which ultimately led to Waters' conviction. In this respect, plaintiff's allegations implicate the Due Process Clause of the Fourteenth Amendment. See Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding the duty to disclose exculpatory evidence derives from the Due Process Clause of the Fourteenth Amendment); Limone v. Condon, 372 F.3d 39, 44-46 (1st Cir. 2004) (ruling that allegations that defendants deliberately fabricated evidence to frame innocent individuals implicates the Due Process Clause).

As such, to assess liability against the defendants for these Brady allegations, a jury must decide whether their actions related to Waters' arrest constituted "deliberate indifference" or were sufficiently "conscience-shocking" to violate his constitutional rights; a negligence standard is inapplicable to assess the defendants' liability. See McConkie v. Nichols, 446 F.3d 258, 260 (1st Cir. 2006) (quoting DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005)). It is well-settled that mere negligence is insufficient to establish a violation of substantive due process. McConkie, 446 F.3d at 260. As the Supreme Court held, "we have made it clear that

9

the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998). "This culpability "metric 'points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability.' It is, therefore, readily apparent that negligent conduct, simpliciter, is categorically insufficient to shock the conscience." McConkie, 446 F.3d at 260-61.

### 2. Due Process and Disclosure of Exculpatory Evidence

To impose liability under Brady for the defendants' alleged failure to disclose exculpatory evidence, the plaintiff must prove that the defendants violated Waters' constitutional rights during his criminal trial by failing to disclose exculpatory evidence and that the defendants acted with the requisite culpable state of mind. See Reid v. Simmons, 163 F. Supp.2d 81, 85 (D.N.H. 2001). Therefore, plaintiff must prove that the defendants "[intentionally] withheld the evidence for the purpose of depriving the plaintiff of the use of that evidence during his criminal trial." Id. at 87. (emphasis supplied).

### 3. Due Process and Fabrication of Evidence

To prove her fabrication of evidence allegations, plaintiff must establish that the defendants acted in an "extreme and egregious" manner so "as to shock the contemporary conscience." To do so, plaintiff must show that the defendants violated Waters' constitutional rights by "'knowingly fabricat[ing] evidence against [him], and [that] if there is a reasonable likelihood that the false evidence could have affected the judgment of the jury.'" See Gregory v. City of Louisville, et al., 444 F.3d, 725 (6th Cir. 2006) (quoting United States v. Lochmondy, 890 F.2d. 817, 822 (6th Cir. 1989)). Plaintiff must prove that the defendants' conduct was "'truly

outrageous, uncivilized, and intolerable" not merely negligent.  McConkie, 446 F.3d at 260 (quoting Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999)).

####                        4.   Municipal And Supervisory Liability

Mr. Reiter's opinion also uses an incorrect legal standard to assess municipal and supervisory liability and therefore his testimony, which implicates a misleading negligence standard, should be stricken.  See Ringuette v. City of Fall River, 888 F.Supp. 258, 274 (D.Mass.1995) (dismissing supervisory liability claims against the Police Chief and municipality because of a lack of evidence that either had the requisite knowledge or state of mind to demonstrate a callous or reckless indifference).  This Circuit requires proof of gross negligence "amounting to deliberate indifference" before finding *Monell* liability.  See City of Springfield, Mass. v. Kibbe, 480 U.S. 257, 270 (1987) (citing Voutour v. Vitale, 761 F.2d 812, 820 (1st Cir.1985)).  "[A] plaintiff must show that the municipality made a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Walden v. City of Providence, 2007 WL 1976115 *9 (D.R.I. 2007) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986)).  Because Mr. Reiter does not address the defendants' supervisory or municipal liability under Monell through the appropriate "deliberate indifference" standard as required, his testimony inferring liability based on negligence should be stricken.

Therefore, Mr. Reiter's proposed testimony that the defendants acted "negligently" or deviated from a "generally accepted" standard of care is irrelevant to the issues to be decided and will mislead the jury regarding the appropriate standard to assess the defendants' liability.  (See Exhibit A, ¶'s 7, 9, 11, 15, 29, 30, 39, 43, 49, 52, 53, 54, 55, 57, 59, 61, 62, 64, 68, 71, 72, 75, 79, 81, 82)

Under Federal Rule of Evidence 702, an expert's opinion must be "based upon sufficient facts or data" and "the testimony must be the product of reliable principles and methods" with the expert applying "the principles and methods reliably to the facts of the case." "As Rule 702 makes clear, expert testimony is admissible only if it <u>both</u> relevant and reliable." <u>Chapman</u> v. <u>Bernard's Inc.</u>, 167 F. Supp.2d. 406, 420 (citing <u>Kumho Tire Co.</u> v. <u>Carmichael</u>, 526 U.S. 137, 147-49 (1999)). (emphasis supplied). An expert's testimony may not merely be supported by his version of the "facts" or speculation. "It is fundamental that expert testimony must be predicated on facts legally sufficient to provide a basis for the expert's opinion, thus an expert should not be permitted to give an opinion that is based on conjecture or speculation from an <u>insufficient</u> <u>evidentiary</u> <u>foundation</u>." <u>Fiorentino</u> v. <u>Rio Mar Associates, LP, SE, et al.</u>, 381 F. Supp.2d 43, 48 (D.P.R. 2005) (holding an expert's testimony based on unreliable facts or data should be excluded) (quoting <u>Damon</u> v. <u>Sun Co. Inc</u>., 87 F.3d 1467, 1474 (1st Cir. 1996)) (emphasis supplied). Accordingly, Mr. Reiter's further opinion that the defendants acted deliberately (<u>Exhibit A</u>, ¶'s 27, 29, 31, 62, 86, 88) should be stricken.

Mr. Reiter's unsubstantiated opinions should therefore be stricken on the additional basis.

     5.     **Mr. Reiter's Report Improperly Relies on Policy Directives Which Postdate the Relevant Time Period**

Mr. Reiter's testimony relies on police policies which postdate the relevant time period. While an expert must not prove that his testimony is "correct" per se, it must rest on a reliable foundation and be relevant to the task at hand. <u>Downeast Ventures, Ltd.</u> v. <u>Washington County, et al</u>., 2007 WL 679889 *2 (D.Me. 2007) (Slip Opinion) (quoting <u>United States</u> v. <u>Mooney</u>, 315 F.3d 54, 62 (1st Cir. 2002)). Despite the fact that Mr. Reiter states in his preliminary report that "I am aware that the events of this matter occurred between the years of 1980 and 1984. I have taken this into account and my opinions are based upon my

12

understanding of the generally accepted police practices involved in this matter during those years", Exhibit A, p. 7, ¶ 7), he relies extensively on police policies and directives which postdate the relevant 1980-1983 time period when the Brow investigation occurred. See Exhibit A,, ¶ 14, 25, 30, 45, 46, 47, 63, 76. Consequently, even were negligence the appropriate standard, Mr. Reiter's reliance on subsequent policies dictates that his opinion be stricken.

        D.)     Mr. Reiter's Opinions Based Upon Unadjudicated Allegations Should Be Stricken

Mr. Reiter's municipal and supervisory liability testimony based on the Ties, Randall, Downing, Holdorff and Maher matters should be stricken because none of these allegations resulted in an adjudication of wrongdoing by any of the defendants in this case or by any member of the Ayer Police Department; they are mere unsubstantiated accusations which are inherently unreliable and will only mislead the jury. See Fiorentino, 381 F. Supp.2d at 48 (ruling that an expert's testimony should be precluded if the probative value within the context of the expert's report is substantially outweighed by its prejudicial effect in confusing the jury in light of the speculative nature of the expert's conclusion).

It is well-settled that the mere filing of complaints or lawsuits is not sufficient evidence to substantiate such misconduct. See Kinan v. City of Brockton, 876 F.2d 1029, 1034-35 (1st Cir. 1989); Strauss v. City of Chicago, 760 F.2d 765, 768-69 (7th Cir. 1985) (statistics of prior complaints insufficient to establish municipal liability because people often file complaints "for many reasons, or for no reason at all"); Bryant v. Whalen, 759 F. Supp. 410, 424 (N.D. Ill. 1991) (recitation of unsustained complaints of excessive use of force, without evidence that those complaints had merit, would not suffice to establish municipal liability). The reason that unadjudicated allegations of past misconduct is inadmissible is because introducing evidence of

prior lawsuits that did not result in judgments against the defendant "would inevitably result in trying those cases, or at least portions of them, before the jury." Kinan, 876 F.2d at 1034.

In this case, Mr. Reiter's improper reliance on mere unadjudicated accusations will surely mislead the jury by conflating the issues in this litigation with unrelated unadjudicated complaints.  As noted, the Ties, Randall and Downing matters did not result in any adjudication of wrongdoing by any of the defendants in this case or by any member of the Ayer Police Department.  Further, Reiter's reliance on the Maher matter to support wrongdoing is also improper.  That case, docketed in this Court as Dennis Maher v. Town of Ayer, et al., C.A. No. 06-CV-10514-RGS, has not been tried and therefore comprises mere allegations against certain of the defendants, which have also not been adjudicated on the merits.

Mr. Reiter's testimony, which links these unadjudicated "incidents" to prove that the defendants acted in a certain manner, or within a pattern of conduct, merely because someone proffered allegations against a police department, is wholly unreliable, irrelevant to this matter and deceptive.  Such testimony would necessitate adjudicating the merits of those allegations, leading to jury confusion and undue prejudice to the defendants.  Therefore, as the Ties, Randall, Holdorff, Downing and Maher matters do not constitute competent evidence for Mr. Reiter's opinion, the same should be stricken on this additional basis.

> E. Expert Testimony Regarding the Ties, Randall and Downing Allegations Should Be Stricken As Irrelevant Because They Occurred Under a Prior Administration and Did Not Involve the Individual Defendants

The Ties, Randall and Downing allegations arose during defendant Adamson's tenure as police chief.  Waters' arrest and prosecution did not occur under Chief Adamson's tenure and such unadjudicated allegations are irrelevant to determine and assess liability against the defendants related to the Brow murder investigation and arrest of Waters.  See Kinan, 876 F.2d

at 1035 (a municipality cannot be held liable for the alleged misconduct of a prior administration).

Specifically, although the Brow murder investigation began on May 21, 1980, while Chief Adamson was in office, the alleged misconduct occurred in 1982 and thereafter, during Chief Connors' tenure. To the extent that any investigative misconduct occurred in the Ties, Randall or Downing matters, such allegations of misconduct cannot be used to establish a custom or policy of the Town or supervisory liability on the part of Chief Connors. Therefore, Mr. Reiter's testimony regarding the Ties, Randall or Downing matters is improper to assess supervisory or municipal liability against the Connors administration and should be precluded.

III.   CONCLUSION

For the foregoing reasons, the defendants respectfully request that the report and trial testimony of Lou Reiter, the plaintiff's designated police practices expert be stricken. In the alternative, the defendants request that they be given thirty days from the Court's decision to designate a rebuttal police practices expert witness.

DEFENDANTS,

By their attorneys,

/s/ Joseph L. Tehan, Jr.
Joseph L. Tehan, Jr. (BBO# 494020)
Gregg J. Corbo (BBO# 641459)
Janelle M. Austin (BBO# 666835)
Kopelman and Paige, P.C.
 Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007

324883/01907/0053