Not Reported in F.Supp.2d                                                                                                            Page 1
Not Reported in F.Supp.2d, 2005 WL 563212 (N.D.Ill.), 66 Fed. R. Evid. Serv. 873
**(Cite as: Not Reported in F.Supp.2d)**

Lopez v. City of Chicago
N.D.Ill.,2005.

United States District Court,N.D. Illinois, Eastern Division.
Joseph LOPEZ, on behalf of himself and a class of others similarly situated, Plaintiffs,
v.
CITY OF CHICAGO, Detective James Delafont, Detective Jennifer Delucia, Detective Hector Vergara, Officer Jose Gomez, Officer Daniel Jacobs and Officer Robert Myers, Defendants.
**No. 01 C 1823.**

March 8, 2005.

Jonathan I. Loevy, Arthur R. Loevy, Danielle Loevy, Jonathan A. Rosenblatt, Michael I Kanovitz, Loevy & Loevy, Chicago, IL, for Plaintiffs.
Michael P. Manly, Neal, Gerber & Eisenberg, Thomas George Dicianni, Michael W. Tootooian, Darcy L. Proctor, Allen Duarte, Ancel, Glink, Diamond, Bush, Dicianni & Rolek, P.C., Paul W. Schroeder, June K. Ghezzi, James Cordray Dunlop, Alicia Marie Hawley, Karey Vering Skiermont, Jones Day, Dina Marie Kapernekas, Seyfarth Shaw, Chicago, IL, for Defendants.

DERYEGHIAYAN, J.
*1 This matter is before the court on Plaintiff Joseph Lopez's ("Lopez") motion for judgment on the pleadings on the unlawful detention claim in Count IV against Defendants City of Chicago ("City"). This matter is also before the court on the parties' motions in limine. For the reasons stated below, we deny the motion for judgment on the pleadings. We also grant in part and deny in part the motions in limine.

BACKGROUND

On July 19, 2000, near 2820 West Cortland in Chicago, Illinois, an occupant of a gold colored vehicle fired shots intended for the occupants of a beige colored van. The shooter missed his target and instead shot and killed a twelve year old boy. Witnesses described the shooter as a male Hispanic. Defendant officers Robert Meyers ("Meyers") and Jose Gomez ("Gomez") are partners on the Chicago police force. The officers became aware of the shooting and learned from another officer that the shooting might have involved the Latin Kings and YLO Cobras gangs. Gomez learned from another source that it was the Cobras shooting at the Latin Kings. Meyers and Gomez received a tip that a girl named BeBe was a witness at the shooting. The officers spoke to BeBe and she indicated that a YLO Cobra with the nickname of JoJo had done the shooting. Meyers claims that he knew that Plaintiff Joseph Lopez ("Lopez") was nicknamed JoJo. Meyers claims that at a previous meeting on the street, Lopez admitted that he belonged to the Cobras and that his nickname was JoJo. On July 20, 2000, the officers brought BeBe into the police station and she gave a description of JoJo as 5 8 to 5 9 tall and approximately 150 pounds. She also indicated that he was thin and medium to light skinned. Meyers claims that the physical description of JoJo matched his recollection of the person he knew as Joseph Lopez. BeBe was later brought to the station and interviewed by Detective Delucia. BeBe successfully picked Lopez out of a photo lineup. Lopez was arrested the day after the shooting.

Lopez alleges that he was taken to the police station and placed in an interview room. According to Lopez, he was kept in the interview room for approximately five days, and during that time he was handcuffed to a ring in the wall. Lopez claims that the room had no facility for sleeping and contained only a small metal bench of four feet in length and ten inches in width. Lopez claims that he was not furnished with a mattress, blanket, or pillow and that he was denied access to his attorney during the five day period. According to Lopez, he was not taken to court for a probable cause hearing during the alleged five day detention. Lopez claims that he was not given a probable cause hearing because the Chicago Police Department ("CPD") is required to wait until the State's Attorney's Office ("SAO") has

Case 1:04-cv-10521-GAO   Document 114-5   Filed 10/15/2007   Page 2 of 10

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 563212 (N.D.Ill.), 66 Fed. R. Evid. Serv. 873
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

decided whether to approve the charges sought by the CPD. Lopez claims that if the SAO is not satisfied with the evidence presented by the CPD to support a charge, the SAO will request a continued investigation while the prisoner remains in custody. Lopez claims that the SAO declined to initially approve charges against him and that he remained in custody for the five days while the CPD continued to investigate the case. Lopez alleges that at some point during the detention he made a statement indicating that he shot the boy and the SAO then approved the charge of capital murder against Lopez. Lopez also claims that approximately one hour after prosecutors told Lopez they were seeking the death penalty against him, the CPD arrested Miguel Figueroa for the crime. Lopez claims he was then released and the charges against him were dismissed.

**\*2** Lopez's third amended complaint includes an excessive force claim alleging violations of 42 U.S.C. § 1983 ("Section 1983")(Count I), a state law assault and battery claim (Count II), an intentional infliction of emotional distress claim (Count III), a Section 1983 unlawful detention claim (Count IV), a Section 1983 claim alleging torture (Count V), a state law respondeat superior claim (Count VI), and a state law indemnification claim (Count VII).

LEGAL STANDARD

A party is permitted under Federal Rule of Civil Procedure 12(c) to move for judgment on the pleadings after the parties have filed the complaint and the answer. Fed.R.Civ.P. 12(c); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir.1998). The courts apply the Rule 12(b) motion to dismiss standard for Rule 12(c) motions and thus the court may "grant a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.' " *Id.* (quoting *Craigs, Inc. v. General Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir.1993)). The court, in ruling on a motion for judgment on the pleadings, must "accept as true all well-pleaded allegations," *Forseth v. Village of Sussex,* 199 F.3d 363, 364 (7th Cir.2000), and

"view the facts in the complaint in the light most favorable to the nonmoving party...." *Northern Indiana Gun & Outdoor Shows, Inc.,* 163 F.3d at 452(quoting *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir.1995)). The main difference between a Rule 12(b) motion and a Rule 12(c) motion is that a Rule 12(b) motion may be filed before the answer to the complaint is filed, whereas, a Rule 12(c) motion may be filed "after the pleadings are closed but within such time as not to delay the trial." *Id.* n. 2

A court may rule on a judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone. *Id.* at 452.The pleadings include the complaint, the answer, and any written instruments attached as exhibits, such as affidavits, letters, contracts, and loan documentation. *Id.* at 452-53.In ruling on a motion for judgment on the pleadings a "district court may take into consideration documents incorporated by reference to the pleadings ... [and] may also take judicial notice of matters of public record."*U.S. v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991). If the court considers matters outside the pleadings, the court should convert the motion for judgment on the pleadings into a motion for summary judgment. *Northern Indiana Gun & Outdoor Shows, Inc.,* 163 F.3d at 453 n. 5.

DISCUSSION

*I. Motion for Judgment on the Pleadings*

We first want to make clear that Lopez chose on his own initiative to file a motion for judgment on the pleadings at such a late juncture in these proceedings. The filing of this motion was independently done by Lopez rather than in accordance with the schedule set in these proceedings by the court. Specifically, we note that Lopez filed the motion for judgment on the pleadings after discovery had been completed. Despite the lateness of the motion in these proceedings, in the interest of justice, we shall address it below.

*A. Admissions in Answers to the Complaint*

**\*3** Lopez argues that he is entitled to judgment on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 563212 (N.D.Ill.), 66 Fed. R. Evid. Serv. 873
**(Cite as: Not Reported in F.Supp.2d)**

the pleadings because of the Defendants' admissions in their answers to the third amended complaint. Lopez claims that Defendants admit that Lopez was held in police custody for at least four days without a judicial determination verifying that there was probable cause. Lopez also cites *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) in which the Supreme Court provides that "[w]here an arrested individual does not receive a probable cause determination within 48 hours, the burden of proof shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance, which cannot include intervening weekends or the fact that in a particular case it may take longer to consolidate pretrial proceedings."*Id. at 45.*Lopez argues that based upon the pleadings in this action it is clear that the City did not have "a bona fide emergency or other extraordinary circumstance" and that Lopez is entitled to judgment.

First of all, as is illustrated by the above quoted language in *McLaughlin,*"the burden of proof shifts to the government to *demonstrate* the existence of a bona fide emergency or other extraordinary circumstance."*Id.* (emphasis added). The Court thus indicated that the government must present evidence to "demonstrate" the existence of an extraordinary circumstance which entails a consideration of evidence rather than a review of the pleadings to determine whether the government responded in the affirmative or negative to an allegation by the plaintiff. The Court in *McLaughlin* did not state that the government must allege in its answer to the complaint or indicate in the form of a response in its answer to the complaint that there was an extraordinary circumstance. Lopez also cites *Chortek v. City of Milwaukee,* 356 F.3d 740 (7th Cir.2004) for the proposition that "[i]n the case of detentions over forty-eight hours, the government bears the burden of proving an emergency or other extraordinary circumstance which justifies the delay."*Id. at 746.*However, in *Chortek* as is indicated by the language "bears the burden of proving," the Court did not hold that the defendant had failed to meet its burden at the pleading stage. Rather, the Court was reviewing a district court ruling granting a motion for summary judgment.*Id.* at 744.

In *Conley v. Gibson,* 355 U.S. 41, 47-48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) the Court made clear that the concept of notice pleading applies to both claims and defenses. *Id. at 47-48* (stating that "[s]uch simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and *defense* and to define more narrowly the disputed facts and issues.")(emphasis added). In regards to defenses other than affirmative defenses, Federal Rule of Civil Procedure 8(b) only requires a defendant at the pleading stage to "admit or deny the averments upon which the adverse party relies" or to state that the defendant does not have sufficient information to respond to an averment in the affirmative or negative.Fed.R.Civ.P. 8(b).

**\*4** Lopez has provided no authority for the proposition that a defendant is required to introduce in its answer to the complaint the entire universe of facts that the defendant is going to bring out at trial as part of its defense. Neither does Lopez even cite to a response in any of the Defendants' answers that establishes an admission by Defendants that there was no emergency or other extraordinary circumstance. Lopez cites collectively to the same paragraphs of the answers of Defendants James Delafont ("Delafont"), Jennifer DeLucia ("DeLucia"), Daniel Jacobs ("Jacobs"), and Hector Vergara ("Vergara"). For example, the only paragraphs cited by Lopez in Defendants' answers on this issue are Paragraphs 22, 23, 24, 26, and 58. In Paragraphs 22 through 24 Defendants merely admit that Lopez was detained in a witness room for approximately four days. (Ans. Par. 22-4). In Paragraph 26 Defendants admit that Lopez did not receive a judicial hearing to determine whether there was probable cause. (Ans. par. 26). In Paragraph 58 Defendants merely admit that they were acting under the color of state law. Thus, Lopez has failed to point to any admission that pertains to the absence of an emergency or other extraordinary circumstance and Lopez has not shown that a judgment on the pleadings is warranted.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10521-GAO   Document 114-5   Filed 10/15/2007   Page 4 of 10

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 563212 (N.D.Ill.), 66 Fed. R. Evid. Serv. 873
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

*B. Monell Waiver*

Lopez argues that he is entitled to judgment on the pleadings because the City waived the right to contest the claim when the City filed its *Monell* waiver in this action. On October 27, 2004, we granted the City's motion to bar trial of policy issues on the [Section 1983](#) claim against the City. In support of the City's motion, the City filed a stipulation which waived the need for Lopez to prove a portion of the *Monell* claim against the City. However, in the stipulation provided by the City in support of that motion, the City did not consent to judgment being entered against the City on the *Monell* claim. Rather, the City merely waived the need for Lopez to prove at trial that a City policy, custom, or practice caused damage to Lopez. Before the City waiver would be of any importance in this action, Lopez must first prove, as is provided in the City's stipulation, that one of the individual officers violated his constitutional rights. Lopez is thus not entitled to judgment based solely upon the City's stipulation. Lopez argues that the City's answer to the third amended complaint "demonstrates that the Individual Defendants violated Plaintiff's constitutional rights."(Reply 6). However, the responses provided by the City in its answer are insufficient to show conclusively that any individual Defendant violated Lopez's constitutional rights. Therefore, we deny Lopez's motion for judgment on the pleadings.

*II. Lopez's Motions In Limine*

In Lopez's motions in limine Lopez seeks to have the court: 1) bar Defendants from arguing that there were circumstances that prevented the state court from conducting a timely probable cause hearing, 2) bar evidence that Lopez was affiliated with a gang, 3) bar testimony by the City's witness John Wilson ("Wilson"), 4) bar evidence of convictions and other arrests, 5) and bar prior bad act evidence involving drug sales.

*A. Circumstances Preventing Timely Hearing (Motion 1)*

**\*5** Lopez asks the court to bar Defendants from presenting evidence that shows that there were circumstances that prevented the state court from conducting a timely probable cause hearing. According to Lopez, Defendants have not provided any evidence during discovery that would indicate that the state court was not capable of providing Lopez with a probable cause hearing during the five days of detention. Defendants correctly point out that they will have a burden at trial to show the reasonableness of detention after 48 hours. Defendants correctly point out that a plaintiff cannot limit a defendant's right to choose the scope of his defense that he plans to present at trial. Lopez cannot simply foreclose Defendants from presenting evidence at trial on this issue. If Defendants attempt to introduce at trial unsupported facts or evidence that was not produced during discovery, Lopez may raise the appropriate objection at that time. If Defendants attempt to introduce evidence that is contrary to the pleadings or other evidence produced regarding the feasibility of a hearing, Lopez can point out those inconsistencies at trial. Therefore, we deny Lopez's motion to bar Defendants from arguing that there were circumstances that prevented the state court from conducting a timely probable cause hearing.

*B. Gang Affiliation (Motion 2)*

Lopez requests that the court bar any evidence that he had a gang affiliation. Lopez argues that the information is irrelevant and unduly prejudicial. Defendants argue that Lopez's gang affiliation is relevant because Lopez admitted that his gang affiliation caused him emotional distress which undercuts Lopez's claims that his detention caused emotional distress. Defendants also argue that his gang affiliation is relevant because it shows that Defendants reasonably believed Lopez to be a flight risk because of the severe sentence enhancement he would have received as a result of his affiliation.

Lopez argues that his gang affiliation is not relevant to his intentional infliction of emotional distress claim. Significantly Lopez acknowledges that his claim is limited to seeking damages for "emotional distress he experienced *while* he was in custody."(L

Case 1:04-cv-10521-GAO   Document 114-5   Filed 10/15/2007   Page 5 of 10

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2005 WL 563212 (N.D.Ill.), 66 Fed. R. Evid. Serv. 873
**(Cite as: Not Reported in F.Supp.2d)**

In Lim Mot. 9). With this limitation in mind, although it is possible that Lopez had some emotional distress during his confinement due to his gang affiliation, Lopez clearly bases his claims of emotional distress upon Defendants' conduct during the detention. We agree that Lopez's gang affiliation would have only minimal relevance. Having ruled thus, Lopez will be bound by his representation in his motion and will not be allowed at trial to seek damages for emotional distress that occurred other than during his confinement.

In regards to Defendants' argument that Lopez was a flight risk because of the gang member sentence enhancement, Lopez correctly points out that, regardless of whether or not he had a gang affiliation, if he was convicted of murder he faced a severe sentence and could possibly be deemed a flight risk. We also conclude that the introduction of Lopez's gang affiliation would be prejudicial to Lopez. Therefore, we grant Lopez's motion to bar any evidence that he had a gang affiliation.

*C. Testimony of John Wilson (Motion 3)*

**\*6** Lopez requests that the court bar testimony by the City's expert witness Wilson who is a psychologist. Lopez argues that Wilson's opinions are limited to criticizing Lopez's expert witness Henry Lahmeyer ("Lahmeyer"). Lopez also argues that Wilson's testimony will be irrelevant because Lopez "has determined not to call Dr. Lahmeyer on the issue of Plaintiff's individual damages."(L In Lim Mot. 8). Defendants concede that Wilson's testimony will be limited to criticizing the testimony provided by Lahmeyer. (D In Lim Ans. 7). Defendants state that "to the extent Plaintiff, as he indicates, will not be calling Lahmeyer as a witness, then Defendants concede that there is no relevance to Wilson's testimony, and he should not be called as a witness."(D In Lim Ans. 7-8). We agree and grant Lopez's motion. However, again, Lopez will be bound by his representation made in his motion and Lopez will not be allowed to introduce testimony by Lahmeyer at trial on the issue of individual damages.

*D. Convictions and Other Arrests (Motion 4)*

Lopez requests that the court bar evidence of his prior convictions and arrests. Federal Rule of Evidence 609(a) ("Rule 609(a)") provides the following: a) General rule. For the purpose of attacking the credibility of a witness,
(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Fed.R.Evid. 609(a). Lopez argues that none of his prior arrests or convictions will be admissible under Rule 609(a). Lopez also argues that regardless, the arrests and convictions should be excluded because they are unduly prejudicial. Defendants argue that evidence of Lopez's prior convictions and arrest is relevant to show that Lopez had prior experience being in police custody which undermines Lopez's contention that he suffered emotional distress when in custody during the pertinent period in this action. We acknowledge that the prior experience in custody may be relevant. However, we also find that there is no need to introduce the additional connected prejudicial facts that Lopez was arrested or was convicted of a crime. Defendants will be allowed to present evidence that Lopez was detained in custody by police on prior occasions. However, Defendants are barred from presenting testimony or eliciting testimony that reveals that Lopez was arrested, convicted of a crime, or served a prison sentence.

Defendants seek to present a wide spectrum of evidence in this regard such as Lopez's confinement in youth facilities and in jail. Defendants claim that such evidence is relevant to the extent that it shows

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10521-GAO   Document 114-5   Filed 10/15/2007   Page 6 of 10

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2005 WL 563212 (N.D.Ill.), 66 Fed. R. Evid. Serv. 873
**(Cite as: Not Reported in F.Supp.2d)**

Lopez's familiarity "with different forms of institutional confinement." We think that it is too far afield to compare such forms of long-term confinement with the five day confinement during an interrogation alleged in the instant action. Also, Lopez is clearly not basing his emotional distress damages claims on the mere fact that he was being detained. The main thrust of his argument for emotional distress damages relates to the alleged wrongdoing by Defendants during the interrogation. Any relevance of the jail term or time in the youth facilities would be minimal. On the other hand, such evidence that shows prior jail sentences or time spent in youth facilities would be prejudicial. Therefore, we grant in part and deny in part Lopez's motion to bar evidence of his prior convictions and arrests.

*E. Bad Act Evidence Involving Drug Sales (Motion 5)*

**\*7** Lopez requests that we bar bad act evidence involving drug sales. Lopez admits that when he was questioned during his deposition he stated that he had sold small quantities of drugs on a few occasions. Lopez argues that such evidence is irrelevant and unduly prejudicial. Defendants argue that it is relevant that Lopez "supported himself selling drugs" because the fact that he was involved in such dangerous and thus stressful activity undermines Lopez's claims of emotional distress due to his confinement. Defendants also argue that Lopez admitted that in July of 2000, the sale of illegal drugs was Lopez's only form of income. We agree with Lopez's contention that since he is not going to introduce testimony of Lahmeyer that Defendants' first argument is nullified. Also, the relevance of the stressfulness of drug sales is of limited relevance and is prejudicial. Lopez also acknowledges that he is not seeking a claim for lost wages. (L In Lim Reply 15), Therefore, we grant Lopez's requests that we bar bad act evidence involving drug sales.

*III. Defendants' Motions In Limine*

Defendants have filed twenty-four motions in limine. We first note that although Defendants could have filed their motions in limine in separate documents, Defendants chose to file all their motions in one memorandum. Defendants filing is deficient on its face for two reasons. Pursuant to Local Rule 5.2(b) the minimum spacing for a brief is 1 1/2 spacing. Defendants are apparently aware of this rule since Defendants' briefs other than the motion in limine brief comply with the rule. However, Defendants' motions in limine brief is properly spaced only for the first four lines. After that point, Defendants present eighteen pages of single spaced text. Local Rule 5.2(b) is a rudimentary rule of filings in this district and Defendants' error should have been apparent to Defendants when glancing at the document. Secondly, pursuant to Local Rule 7.1 the page limitation for a brief is fifteen pages. Defendants' motions in limine brief is eighteen pages long when single spaced. Were the text converted to 1 1/2 spacing, the text would clearly far exceed the fifteen page limitation. Defendants did not request leave for a page extension from the court. Thus, Defendants' motions are deficient on their face and could be denied under the Local Rules. Nevertheless, in the interest of justice, since the trial date is approaching, we shall address the motions below. Although we have agreed in our discretion to proceed to a certain extent despite Local Rule violations, we note that all of the denials provided below are further reinforced by the fact that Defendants failed to comply with the Local Rules.

*A. Complaints Filed Against Police Personnel (Motion 1)*

Defendants request that the court bar any evidence of complaints filed with the Office of Professional Standards ("OPC") regarding police personnel and evidence of resulting disciplinary actions. Although we are not ruling that such evidence will be admissible, we cannot find at this juncture that all such potential evidence would be inadmissible. Therefore, we deny Defendants' motion to bar evidence of OPS complaints.

*B. DeLucia's Criminal History (Motion 2)*

**\*8** Defendants request that the court bar evidence

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10521-GAO   Document 114-5   Filed 10/15/2007   Page 7 of 10

Not Reported in F.Supp.2d                                                                                              Page 7
Not Reported in F.Supp.2d, 2005 WL 563212 (N.D.Ill.), 66 Fed. R. Evid. Serv. 873
**(Cite as: Not Reported in F.Supp.2d)**

that DeLucia was convicted of reckless homicide and aggravated reckless driving earlier this year and evidence of her resignation. Lopez argues that he does not have sufficient information about the conviction to properly respond to the motion. Lopez has not shown that the conviction would be admissible under Rule 609(a) and we grant the motion to bar evidence of De Lucia's conviction and resignation.

*C. Delafont's Criminal History (Motion 3)*

Lopez requests that the court bar evidence of Delafont's criminal history. Lopez does not contest this motion and we grant the motion.

*D. Absence of Probable Cause (Motion 4)*

Defendants request that the court bar all testimony from an extensive list of witnesses because Defendants anticipate that their testimony will be used to contest probable cause. Lopez provides several explanations for the usage of testimony by the individuals other than to contest probable cause. Defendants' motion is overly broad and we cannot find that all testimony by the mentioned witnesses would be inadmissible. Therefore we deny the motion.

*E. Confession By Other Person and Dropped Charges (Motion 5)*

Defendants request that the court bar evidence that another person confessed to the crime for which Lopez was detained and the charges against Lopez were dropped. We agree with Lopez that evidence that shows that another person confessed to the crime and that the charges against Lopez were dropped are relevant to allow an inference that he was innocent and thus suffered the anguish during detention that an innocent person would suffer when wrongfully accused of a crime. Also, absent such an explanation, a possible reasonable inference by a trier of fact from the fact that Lopez was detained by police for a crime would be that he was ultimately charged and convicted of the crime or simply released because the police could not collect enough evidence. Therefore, we deny the motion.

*F. Testimony of Lahmeyer (Motion 6)*

Defendants request that the court bar any testimony of Lahmeyer. Lopez does not contest the motion and we grant the motion.

*G. Testimony of Peter Faraci (Motion 7)*

Defendants request that the court bar any testimony of Peter Faraci ("Faraci") because his opinions are unreasonable and he is not qualified to give such opinions. Lopez claims that Faraci formerly worked as an Assistant Cook County State's Attorney ("State's Attorney") for ten years until 1998 and that he has experience and training which enable him to present evidence about the felony review process, State's Attorney procedures, the importance of a confession to a detective, the fact that police are responsible to provide for a detainee's needs, and the propriety of extended interrogation room detentions. We agree with Defendants that Lopez has failed to show that Faraci would be admissible as an expert. Faraci is clearly not allowed to provide opinion testimony on any of the topics other than perhaps State's Attorney procedures and the felony review process. However, Lopez himself concedes that Faraci's employment at the State's Attorney ended two years before the detention occurred which undermines any relevance regarding State's Attorney procedures or processes. Therefore, we grant Defendants' motion to bar any testimony of Faraci.

*H. False Confession by Lopez (Motion 8)*

**\*9** Defendants request that the court bar evidence that Lopez gave a confession and as Defendants themselves concede "falsely confessed" since Lopez was innocent. (D Ans. In Lim Mot. 10). Defendants also seek to bar evidence that shows that Lopez was not given proper *Miranda* warnings and was questioned after he requested a lawyer. Defendants contend that such evidence is irrelevant and unduly prejudicial. We agree with Lopez that Defendants are seeking to exclude evidence that is at the heart of Lopez's claims and is relevant evidence. The basis of Lopez's case is that he was coerced into confessing even though he was innocent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10521-GAO   Document 114-5   Filed 10/15/2007   Page 8 of 10

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 563212 (N.D.Ill.), 66 Fed. R. Evid. Serv. 873
**(Cite as: Not Reported in F.Supp.2d)**

Page 8

and that the police were not following the law when they obtained a false confession. We do not find such evidence to be unfairly prejudicial. Therefore, we deny Defendants' motion.

*I. Class Allegations,* Monell *Claim, Rule 30(b)(6) Witnesses (Motion 9)*

Defendants request that the court bar any reference to Lopez's class allegations or the *Monell* claim. Defendants also request that we bar the testimony provided by Vergara, Delafont, and Jacobs pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Rule 30(b)(6)"). Lopez concedes that the class allegations are not relevant, but contends that the motion referring to *Monell* claim evidence is too vague. We do not agree that the *Monell* request is too vague and we grant Defendants' request. In regards to the Rule 30(b)(6) evidence, Lopez takes issue with an apparent representation by the City that it is no longer a party in this action. However, in a recent status hearing before this court, the City expressly acknowledged that it remains a party in this action. In regards to the testimony of Vergara, Delafont, and Jacobs, each of these individuals were designated as Rule 30(b)(6) witnesses. Each of them indicated that they were designated by the City as a Rule 30(b)(6) witness. Therefore, we grant Defendants' motion to bar evidence of class allegations and the *Monell* claim. We deny the motion to bar the Rule 30(b)(6) testimony.

*J. Unrelated Police Misconduct (Motion 10)*

Defendants request that the court bar any evidence of police misconduct that is not the subject of this lawsuit. Such evidence would include other civil lawsuits and citizen complaints. Defendants contend that such evidence is irrelevant and is inadmissable hearsay. Lopez first complains that he has not been provided evidence of other lawsuits during discovery. Next Lopez argues that he intends to present evidence that he was mistreated by non-defendant City police officers prior to the pertinent detention. Lopez also intends to introduce evidence that shows that his girlfriend was harassed by police. We agree with Defendants that it is highly unlikely that any evidence relating to police misconduct other than during the pertinent detention period in this action would be admissible. However, we cannot find in the abstract that all such evidence would be irrelevant or inadmissable. For example, in regards to Defendants' hearsay objection, it is possible that a piece of evidence may be admissible through one of the hearsay exceptions. Therefore, we deny Defendants' motion to exclude all evidence of other police misconduct. However, we caution Lopez that any such evidence that he may seek to introduce at trial will need to be relevant and supported with an evidentiary basis.

*K. Testimony of Charles Gruber (Motion 11)*

**\*10** Defendants request that the court bar certain opinion testimony by Lopez's expert Charles Gruber ("Gruber"). Specifically, Defendants seek to bar Gruber's opinion that the Defendant officers' conduct was not "lawful" and that the "hold past call practice" is not lawful because such opinions are legal conclusions. We agree. Defendants also seek to bar Gruber's opinion that the officers did not follow Chicago Police Department rules and regulations because such evidence is prejudicial and would mislead the jury into concluding that such evidence is sufficient to show a constitutional violation. We agree with Lopez that such evidence may be relevant and that confusion in this regard may be avoided with a proper jury instruction. Therefore, we grant Defendants' request to bar the above mentioned opinion testimony of Gruber and we deny Defendants' request to bar evidence of non-compliance with department rules and regulations. We are not finding that all such evidence is admissible, and note that Defendants may raise objections on a case by case basis at trial.

*L. Police Misconduct in the News (Motion 12)*

Defendants request that the court bar any reference to recent police misconduct that was in the news such as the O.J. Simpson trial. Lopez does not object to this motion and the motion is granted.

*M. General Tendency For Police Cover-Up (Motion 13)*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 563212 (N.D.Ill.), 66 Fed. R. Evid. Serv. 873
(Cite as: Not Reported in F.Supp.2d)

Page 9

Defendants request that the court bar any evidence that shows that police in general protect each other from misconduct and that there is a "code of silence." Defendants argue that such evidence is irrelevant and prejudicial. We agree and grant Defendants' motion.

### N. City Indemnification and Monell Waiver (Motion 14)

Defendants request that we bar evidence that shows that the City will provide indemnification for individual Defendants and evidence of the *Monell* waiver. Lopez does not contest this motion and we grant Defendants' motion.

### M. Lopez Testimony as to his Medical Condition (Motion 15)

Defendants request that we bar Lopez's testimony relating to any medical conditions, causation, diagnoses, or prognoses, since Lopez is not qualified to provide such opinion testimony. Lopez argues that he should be allowed to testify as to his subjective experiences and symptoms. While we agree that Lopez can provide a recitation of subjective feelings, such subjective testimony is not what is at issue in Defendants' motion. Lopez cannot testify as to medical conditions, diagnoses, prognoses, or causation and therefore we grant Defendants' motion.

### O. Office of Professional Standards Investigation (Motion 16)

Defendants request that the court bar evidence regarding the Office of Professional Standards ("OPS") investigation. Lopez argues that an in limine bar on this issue would be inappropriate. For example, Lopez contends that if Defendants argue that Lopez was making up his allegations that Defendants struck him during his detention, the complaint filed by Lopez with the OPS would corroborate Lopez's story. We agree that it would not be appropriate to bar all evidence pertaining to the OPS investigation at this juncture and therefore deny Defendants' motion.

### P. Police Disclaimer (Motion 17)

**\*11** Defendants request that the court bar evidence regarding the disclaimer provided by the Defendant officers in their police report which was formulated by the police union. Defendants argue that the disclaimer would confuse the jury. However, we agree with Lopez and find that since the Defendant officers chose to put the disclaimer in their reports, they should therefore be required to explain that decision at trial. Defendants are free to introduce other evidence at trial to explain that the disclaimer was a standard practice endorsed by the police union. Therefore, we deny Defendants' motion.

### Q. Testimony of Matt Brady (Motion 18)

Defendants request that the court bar testimony of Matt Brady ("Brady") because his testimony would confuse the jury and would be prejudicial. Brady is the person designated by the City to examine the City records. Brady answered certain interrogatories on behalf of the City. We agree with Lopez that it is not proper to bar all testimony by Brady at this juncture and therefore deny Defendants' motion.

### R. Standard of Care (Motion 19)

Defendants request that the court bar any evidence that shows that Defendants failed to act in accordance with a standard of care other than the standard defined by the jury instructions. We agree with Lopez that such a request is too vague. The jury will be properly instructed on the law relating to such issues and we therefore deny Defendants' motion as moot.

### S. Remaining Motions 20-24

Defendants seek in motions 20 to 24 to bar evidence indicating a duty by Defendants to provide medical care. Defendants also seek to bar the presence in the court room of non-party witnesses during the proceedings, any evidence not produced prior to trial, any testimony by witnesses not previously disclosed, and any expert testimony not previously disclosed. Lopez does not object to these motions and we grant Defendants' motions.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10521-GAO Document 114-5 Filed 10/15/2007 Page 10 of 10

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 563212 (N.D.Ill.), 66 Fed. R. Evid. Serv. 873
**(Cite as: Not Reported in F.Supp.2d)**

Page 10

CONCLUSION

Based on the foregoing analysis, we deny Lopez's motion for judgment on the pleadings. We deny Lopez's motion in limine number 1. We grant Lopez's motion in limine numbers: 2, 3, and 5. We grant in part and deny in part Lopez's motion in limine number 4. We deny Defendants' motion in limine numbers: 1, 4, 5, 8, 10, 11, 16, 17, 18, and 19. We grant Defendants' motion in limine numbers: 2, 3, 6, 7, 12, 13, 14, 15, 20, 21, 22, and 24. We grant in part and deny in part Defendants' motion in limine number 9.

N.D.Ill.,2005.
Lopez v. City of Chicago
Not Reported in F.Supp.2d, 2005 WL 563212 (N.D.Ill.), 66 Fed. R. Evid. Serv. 873

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.