UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BETTY ANNE WATERS as )<br>Administratrix of the Estate of )<br>KENNETH WATERS, )<br>                       Plaintiff, )<br>vs. )<br>)<br>TOWN OF AYER, )<br>NANCY TAYLOR-HARRIS, )<br>ARTHUR BOISSEAU, )<br>BUDDY DECOT, )<br>WILLIAM ADAMSON, )<br>JOHN AND JANE DOES 1-16, )<br>)<br>                       Defendants. ) | CIVIL ACTION<br>NO. 04-10521-GAO |

**PLAINTIFF BETTY ANNE WATERS'S OPPOSITION TO
MOTION TO STRIKE EXPERT REPORT OF CHARLES R. HONTS, PH.D.**

Plaintiff Betty Anne Waters, by her counsel, hereby opposes defendants' motion to strike the expert report of polygraph expert Charles R. Honts, Ph.D. ("Honts Report"). For the reasons set forth below, defendants' motion should be denied.

**I.   Brenda Marsh**

The Honts Report concerns the 1982 polygraph examination of Brenda Marsh ("Marsh"), a key prosecution trial witness and the former girlfriend of Kenneth Waters ("Waters"). Marsh testified at trial that Waters admitted to her that he had killed Katherina Brow. This testimony was a featured part of the Commonwealth's case against Waters.

On November 1, 2006, defendants conducted Marsh's deposition. During the course of that deposition, Marsh stated that her testimony against Waters was false and was the result of her being pressured and threatened by defendant Nancy Taylor and the Ayer Police Department.

See, e.g., November 1, 2006 Deposition of Brenda Marsh (Examination by Plaintiff's Counsel (objections omitted)), at 211-12 ("Q: ...But is it fair to say, Miss Marsh, that at some point in time the pressure and threats resulted in you agreeing to -- *A: Yes.* Q: -- to give them the information they were looking for? *A: Yes.*"); 212 ("Q: Did you remain frightened and scared of the Ayer Police Department and losing your children from your first interaction in person at the night of the dinner at Maxwell Silverman's right through 1985 when you in Exhibit Five had occasion to give testimony once again -- *A: Yes.*"); and 217-18 ("Q: In fact, your testimony was the result of your desire to do what the Ayer Police Department was asking of you. *A: Exactly.* Q: If pressure was not applied to you as you described it earlier today by Officer Taylor and the Ayer Police Department, would you have testified the way you testified at Mr. Waters' trial? *A: No.*").[1]

Based on the record as developed during discovery, Marsh may be a significant witness in the present action. Her testimony supports Plaintiff's claims that Waters' wrongful conviction was the product of unconstitutional acts by the defendants -- including witness coercion. Defendants will, as their motion to strike suggests, challenge Marsh's anticipated trial testimony and rely on the statements she made regarding Waters in the early 1980s as part of their defense. As part of this defense, Defendants may elect to cite Marsh's 1982 polygraph examination in an effort to: (a) impeach the credibility of her anticipated trial testimony; and/or (b) argue that the defendants were reasonable in relying on Marsh's initial statements inculpating Waters.

---

[1] The entirety of Marsh's examination by Plaintiff's counsel is attached hereto as Exhibit A.

II.     **The Honts Report**

The Honts Report[2] states two essential conclusions that may inform the fact finder at trial. First, the report explains that no reasonably trained polygraph examiner would have viewed the questions asked of Marsh during her October 8, 1982 examination as probative or incriminating. Second, Professor Honts explains that the results of the 1982 examination are not a reliable indicator of Marsh's credibility on the subject matter of the examination.

While at this stage of the litigation is not altogether clear if, when, and how Honts' testimony will be proffered at trial, it is clear that his report may not be stricken based on defendants' motion. The motion advances two grounds to strike the Honts Report -- relevance and prejudice. Defendants' motion should be denied because, on the present record, there is no way for this Court to conclude that the Honts Report (and Professor Honts' anticipated trial testimony) has no relevance to this action, or that its prejudicial effect of his testimony would outweigh its probative value.

III.    **Defendants' Motion Is Premature And The Court
        Cannot Bar Honts' Testimony Based On The Present Record**

As an initial matter, defendants' motion does not challenge the conclusions reached by Professor Honts regarding the propriety or reliability of the 1982 Marsh polygraph examination. Instead, defendants' motion to strike is focused on the question of *relevance*, and makes only a series of unsubstantiated and conclusory assertions about how Honts' testimony might (or might not) fit into the fabric of this litigation. See, e.g., Defendants' Motion To Strike Honts Report, at

---

[2] The Honts Report is found at Exhibit F to Defendants' Motion to Strike.

3

5 ("plaintiff's proffer of expert testimony . . . is wholly irrelevant and lacks even a slight connection to the pertinent inquiry in this case").

It is well-settled that "the threshold for relevance is very low under Federal Rule of Evidence 401." *U.S. v. Cotto-Aponte*, 30 F.3d 4, 6 (1st Cir. 1994) (citation and internal quotations omitted). With respect to experts, if the expert testimony is helpful to the jury's understanding of the issues in the case, qualified experts may testify as to their opinions "if 1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Honts' anticipated testimony more than satisfies this standard.

Based on the discovery record, two things are clear: (1) Brenda Marsh's false criminal trial testimony inculpating Waters was the result of pressure and threats by the Ayer Police Department generally, and Nancy Taylor specifically; and (2) the defendants are now in the undesirable position of having to impeach the credibility of a key trial witness who holds defendants responsible for having pressured her into giving false trial testimony. Under these circumstances, Brenda Marsh's credibility, then and now, may be an important issue at Waters' civil rights trial.[3] Accordingly, at a minimum, Honts' anticipated testimony is highly relevant to whether the 1982 polygraph shows that Brenda Marsh had been truthful when she provided inculpatory information against Waters.

---

[3] Defendants have explored, for example, whether Brenda Marsh has been promised some financial benefit from a favorable outcome for plaintiff in this case. See Marsh Depo. Trans. at 28. She testified that there has been no such promise. Id.

4

Moreover, the Motion to Strike itself suggests that defendants will argue that, in light of the 1982 polygraph examination results, defendant Taylor and others were reasonable in relying on Marsh as a witness against Waters. See, e.g., Defendants' Motion to Strike Honts Report, at 7 ("It is unquestionably reasonable for the defendants to rely on the report of the State's Chief Examiner, particularly where a State Police Detective requested the test"[4]). The Honts Report and his expected trial testimony may be important to the fact finder in evaluating this "reasonable reliance" defense, if advanced.[5]

Finally, Defendants object to the Honts Report arguing that the probative value of his expected testimony is outweighed by the prejudice that would be caused if he is permitted to testify. The essential grievance is that "the plaintiff is inviting the jury to speculate as to whether or not Brenda Marsh was telling the truth during the original polygraph exam." See Defendants' Motion to Strike Honts Report, at 9. Not exactly. The Honts Report is disfavored by defendants because it highlights one of the many flaws in the underlying criminal investigation that led to Waters' wrongful conviction. The fact finder will not be confused by Professor Honts' testimony. On the contrary, to the extent *defendants* cite Marsh's 1982 polygraph as a basis for the fact finder to conclude that she is lying at the civil rights trial, Honts' testimony may aid the fact finder in reconciling the apparent inconsistencies in her prior and current description of events. If defendants were to cite the polygraph examination results without Professor Honts' testimony, the fact finder will be left to evaluate Marsh as a witness without the benefit of full

---

[4] Of course, the reasonableness of reliance is typically a question left for the fact finder. See Down East Energy Corp. v. Niagra Falls Ins. Co., 176 F.3d 7, 17 (1st Cir. 1999).

[5] It is worth noting that the test for reasonableness in connection with the qualified immunity context is an objective test. See, e.g., Garcia v. Royal Bank of Canada, 178 F. Supp.2d 74 (D.P.R. 2001). Therefore, regardless of

information. Finally, the risk of any prejudice is further diminished by the fact that Defendants have every right an opportunity to present their own expert to challenge Professor Honts' substantive conclusions.

## CONCLUSION

For the reasons set forth herein, Defendants' motion to strike the Honts Report must be denied.

Respectfully submitted,

BETTY ANNE WATERS,
By her attorneys


/s/ Robert N. Feldman
BIRNBAUM & GODKIN, LLP
Robert N. Feldman (BBO # 630734)
280 Summer Street
Boston, MA  02210
Tel: 617-307-6100
Fax: 617-307-6101

Barry C. Scheck, Esq.
Deborah L. Cornwall, Esq.
Monica Shah, Esq.
Cochran Neufeld & Scheck, LLP
99 Hudson St., 8th Floor
New York, NY 10013
(212) 965-9081

Dated:  October 15, 2007

---

defendants' actual understanding of the veracity of the 1982 polygraph examination results, Honts testimony may be material to the objective determination required under the qualified immunity analysis.

## CERTIFICATE OF SERVICE

    I, Robert N. Feldman, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 15, 2007.

                                    /s/ Robert N. Feldman
                                    Robert N. Feldman