UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,<br><br>          Plaintiff,<br>     v.<br><br>TOWN OF AYER, et al.,<br>          Defendants. | Case No. 04 10521 (GAO) (JGD) |

## PLAINTIFF'S REQUEST FOR ADMISSION

Plaintiff Betty Anne Waters, by counsel, pursuant to Rule 36 of the Federal Rules of Civil Procedure, hereby serves the following request for admission upon defendants. The requested admissions shall be deemed admitted unless, within 30 days of service, you serve a signed, written answer or objection. If you object, you must indicate all the reasons for your objection. Your answer shall admit, specifically deny the matter, or set forth in detail all the reasons why you cannot truthfully admit or deny the matter. When good faith requires that you qualify an answer or deny only a part of the matter of which an admission is requested, you shall admit so much of it as is true and qualify or deny the remainder. You may not give lack of information or knowledge as a reason for failure to admit or deny unless you have made reasonable inquiry and the information known or readily obtainable by you is insufficient to enable you to admit or deny. In that event, you must describe the full extent of your inquiry. You may not object to a request on the grounds that you believe it presents a genuine issue for trial. In the event that you fail to admit a matter without reasonable grounds, plaintiff reserves

1

the right to petition the court to deem the matter admitted and seek reimbursement of expenses

incurred in connection with the motion.

## REQUESTS TO ADMIT

1. Katharina Brow was found dead lying in a pool of blood on the bedroom floor of her home at

approximately 10:45am on May 21, 1980.[1]

RESPONSE:

2. Katharina Brow was last known to have been alive at approximately 7:00am on May 21,

1980.[2]

RESPONSE:

3. Katharina Brow sustained approximately thirty stab wounds to her body.[3]

RESPONSE:

4. On the day of the murder, blood was found in the front bedroom, the hallway between the

kitchen and the front bedroom, the kitchen, the dining area, and the living room of Brow's

home.[4]

RESPONSE:

5. The blood, broken ceramic lamp, and hair found in Katharina Brow's clutched fists indicated

that there was a struggle between the perpetrator and Katharina Brown before her murder.

RESPONSE:

---

[1] *See* Ex. A, Autopsy Report, Document Nos. AG000157-63.

[2] *See id.*

[3] *See id.*

[4] *See* Ex. B, State Police Forensic Report Dated July 28, 1980, Document Nos. B000231-42.

2

6. As of May 21, 1980, State Police Detective Lieutenant John Dwyer believed that there was a struggle in the house between the perpetrator and Katharina Brow before her murder.[5]

    RESPONSE:

7. State Police Chemist Kathleen Higgins collected blood and hair samples from the crime scene.[6]

    RESPONSE:

8. State Police Chemist John C. Abbott determined that the blood at the scene was ABO Type B-positive and Type O.[7]

    RESPONSE:

9. Abbott determined that the blood sample taken from the floor of the entrance to the back left bedroom (item #2) was ABO Type O.[8]

    RESPONSE:

10. Abbott determined that the blood sample taken from the fibers of the bathroom rug (item #3) was ABO Type O.[9]

    RESPONSE:

11. Abbott determined that the blood sample taken from the front of the left closet in the middle

---

[5] *See* Ex. C, Correspondence from Dwyer to O'Donovan Dated May 21, 1980, Document Nos. AG000150-52.

[6] *See* Ex. D, Ayer Police Department Report Dated June 2, 1980, Document No. B000010-12.

[7] *See* Ex. E., State Police Report Dated April 17, 1981, Document Nos. IP00021-22.

[8] *See id.*

[9] *See id.*

bedroom (item #4) was ABO Type O.[10]

RESPONSE:

12. Abbott determined that the blood sample taken from the light green terrycloth (item #10A) was ABO Type O.[11]

RESPONSE:

13. Abbott determined that the blood sample taken from the white cotton cloth (item #10B) was ABO Type O.[12]

RESPONSE:

14. Abbott determined that the blood sample taken from the pink, gold, white floral cotton cloth (item #10D) was ABO Type O.[13]

RESPONSE:

15. Abbott determined that the blood sample taken from the pink cotton cloth (item #10E) was ABO Type O.[14]

RESPONSE:

16. Abbott determined that the blood sample taken from the white cotton cloth with multi-color floral print (item #10F) was ABO Type O.[15]

---

[10] *See id.*

[11] *See id.*

[12] *See id.*

[13] *See id.*

[14] *See id.*

[15] *See id.*

RESPONSE:

17. Abbott determined that the blood sample taken from the carpeting in the living room (item #21) was ABO Type O.[16]

RESPONSE:

18. Abbott determined that the blood sample taken from the curtain from the front door window (item #22) was ABO Type O.[17]

RESPONSE:

19. Abbott determined that the blood sample taken from the inside of the front door (item #23) was ABO Type O.[18]

RESPONSE:

20. ABO Type B-positive blood was consistent with Katharina Brow's blood type.[19]

RESPONSE:

21. ABO Type O blood was not consistent with Katharina Brow's blood type.[20]

RESPONSE:

22. The police believed that the perpetrator of Katharina Brow's murder had ABO Type O blood.[21]

---

[16] *See id.*

[17] *See id.*

[18] *See id.*

[19] *See id.*

[20] *See id.*

[21] *See* Exs. C & D.

RESPONSE:

23. The perpetrator of Katharina Brow's murder had ABO Type O blood.

RESPONSE:

24. As of May 21, 1980, State Police Detective Lieutenant John Dwyer believed that the perpetrator was injured and bled at the crime scene.[22]

RESPONSE:

25. As of May 21, 1980, Ayer Police Department Chief William Adamson believed that the perpetrator was injured and bled at the crime scene.[23]

RESPONSE:

26. Adamson and Dwyer searched for Katharina Brow's murderer by checking surrounding hospitals for injuries sustained with a knife or other objects.[24]

RESPONSE:

27. On May 22, 1980, Adamson questioned Kenneth Waters about Katharina Brow's murder.[25]

RESPONSE:

28. On May 22, 1980, Adamson inspected Kenneth Waters for scratches or cuts.

RESPONSE:

29. On May 22, 1980, Adamson observed no scratches or cuts on Kenneth Waters.

---

[22] *See* Ex. C.

[23] *See* Ex. D.

[24] *See* Ex. C; Ex. F, Request for New England Broadcast Dated June 9, 1980, Document No. B000068.

[25] *See* Ex. G, Transcript of Interview with Kenneth Waters on May 22, 1980, Document No. AG000086.

RESPONSE:

30. On May 22, 1980, Adamson observed no scratches or cuts on Kenneth Waters' face or hands.

RESPONSE:

31. On May 22, 1980, Adamson observed no long, deep, red scratch on Kenneth Waters' left cheek running from beneath his eye to his chin.

RESPONSE:

32. Had Adamson observed a cut or scratch on Kenneth Waters' on May 22, 1980, he would have reported it.

RESPONSE:

33. On the morning of May 21, 1980, Ayer Police Department Senior Lieutenant Arthur Boisseau saw Kenneth Waters in Ayer District Court.[26]

RESPONSE:

34. On May 22, 1980, Boisseau questioned Kenneth Waters about Katharina Brow's murder.[27]

RESPONSE:

35. On May 22, 1980, Boisseau inspected Kenneth Waters for scratches or cuts.

RESPONSE:

36. On May 22, 1980, Boisseau observed no scratches or cuts on Kenneth Waters.

RESPONSE:

---

[26] *See* Ex. H, Testimony of Boisseau, Trial Transcript Vol. 2 at 122.

[27] *See* Ex. G.

37. On May 22, 1980, Boisseau observed no scratches or cuts on Kenneth Waters' face or hands.

    RESPONSE:

38. On May 22, 1980, Boisseau observed no long, deep, red scratch on Kenneth Waters' left cheek running from beneath his eye to his chin.

    RESPONSE:

39. Had Boisseau observed a cut or scratch on Kenneth Waters' on May 22, 1980, he would have reported it.

    RESPONSE:

40. At Kenneth Waters' trial, Boisseau testified that he did not observe any scratches on Kenneth Waters' on May 22, 1980.[28]

    RESPONSE:

41. At Kenneth Waters' trial, Boisseau testified that he did not observe a scratch on Kenneth Waters' face on May 22, 1980.[29]

    RESPONSE:

42. On May 22, 1980, Dwyer questioned Kenneth Waters about Katharina Brow's murder.[30]

    RESPONSE:

43. On May 22, 1980, Dwyer inspected Kenneth Waters for scratches or cuts.

    RESPONSE:

44. On May 22, 1980, Dwyer observed no scratches or cuts on Kenneth Waters.

---

[28] *See* Ex. I, Testimony of Boisseau, Trial Transcript Vol. III at 196.

[29] *See id.*

[30] *See* Ex. J, Testimony of Dwyer, Probable Cause Hearing Transcript at 23.

RESPONSE:

45. On May 22, 1980, Dwyer observed no scratches or cuts on Kenneth Waters' face or hands.

RESPONSE:

46. On May 22, 1980, Dwyer observed no long, deep, red scratch on Kenneth Waters' left cheek running from beneath his eye to his chin.

RESPONSE:

47. Had Dwyer observed a cut or scratch on Kenneth Waters' on May 22, 1980, he would have reported it.

RESPONSE:

48. At trial, Dwyer testified that there were no scratches or cuts on Kenneth Waters' face or hands on May 22, 1980.[31]

RESPONSE:

49. Kenneth Waters had no scratches or cuts on his face or body on or around May 22, 1980.

RESPONSE:

50. Dr. Edward Blake of Forensic Science Associates reported on February 27, 2001 that Kenneth Waters was excluded as the source of the ABO Type O blood from the bathroom rug #3.[32]

RESPONSE:

51. Dr. Edward Blake of Forensic Science Associates reported on February 27, 2001 that

---

[31] See Ex. K, Testimony of Dwyer, Trial Transcript Vol. V at 607-608.

[32] See Ex. L, Forensic Science Associates Report Dated Feb. 27, 2001 at 8, Document No. IP00236.

Kenneth Waters was excluded as the source of the ABO Type O blood from the light green terry cloth #10A.[33]

RESPONSE:

52. Dr. Edward Blake of Forensic Science Associates reported on February 27, 2001 that Kenneth Waters was excluded as the source of the ABO Type O blood from the white cotton cloth #10B.1.[34]

RESPONSE:

53. Dr. Edward Blake of Forensic Science Associates reported on February 27, 2001 that Kenneth Waters was excluded as the source of the ABO Type O blood from the white cotton cloth #10B.2.[35]

RESPONSE:

54. Dr. Edward Blake of Forensic Science Associates reported on February 27, 2001 that Kenneth Waters was excluded as the source of the ABO Type O blood from the pink, gold, white floral cotton cloth #10D.[36]

RESPONSE:

55. Dr. Edward Blake of Forensic Science Associates reported on February 27, 2001 that Kenneth Waters was excluded as the source of the ABO Type O blood from the pink cotton cloth

---

[33] *See id.*

[34] *See id.*

[35] *See id.*

[36] *See id.*

#10E.[37]

RESPONSE:

56. Dr. Edward Blake of Forensic Science Associates reported on February 27, 2001 that

Kenneth Waters was excluded as the source of the ABO Type O blood from the white cotton

cloth with multi-colored floral print #10F.[38]

RESPONSE:

57. The ABO Type O blood found in Katharina Brow's home on May 21, 1980 was not Kenneth

Waters' blood.

RESPONSE:

58. Three unknown hairs, including one found in Katharina Brow's left hand and one found on

the murder weapon, were also collected from the crime scene.[39]

RESPONSE:

59. The three unknown hairs found at the crime scene were microscopically inconsistent with

Kenneth Waters' hair samples.[40]

RESPONSE:

60. The three unknown hairs found at the crime scene were not Kenneth Waters' hairs.

RESPONSE:

61. On May 21, 1980, State Police investigators lifted fingerprints from the dining table, a beer

---

[37] *See id.*

[38] *See id.*

[39] *See* Ex. B.

[40] *See* Ex. M, FBI Laboratory Report Dated Feb. 9, 1983, Document Nos. IP00025-26

can, the faucet, and the toaster in Katharina Brow's home.[41]

RESPONSE:

62. On July 8, 1980, State Police Corporal Baliunas determined that the fingerprint on the toaster did not belong to Katharina Brow or her family members.[42]

RESPONSE:

63. Baliunas reported on July 8, 1980 that the fingerprint on the toaster excluded suspect Larry Williams.[43]

RESPONSE:

64. Larry Williams was ruled out as a suspect in the murder of Katharina Brow based on the fingerprint exclusion.

RESPONSE:

65. Baliunas reported on July 8, 1980 that the fingerprint on the toaster excluded suspect Raymond Williams.[44]

RESPONSE:

66. Raymond Williams was ruled out as a suspect in the murder of Katharina Brow based on the fingerprint exclusion.

RESPONSE:

67. Baliunas reported on July 8, 1980 that the fingerprint on the toaster excluded suspect

---

[41] *See* Ex. N, Calkin Notes Dated Apr. 6, 1001, AG Bates No. 1801.

[42] *See* Ex. O, Ayer Police Department Supplemental Report, Document NO. B000047.

[43] *See id.*

[44] *See id.*

Michael Camblin.[45]

RESPONSE:

68. Michael Camblin was ruled out as a suspect in the murder of Katharina Brow based on the fingerprint exclusion.

RESPONSE:

69. Baliunas reported on July 8, 1980 that the fingerprint on the toaster excluded suspect Ray Jones.[46]

RESPONSE:

70. Ray Jones was ruled out as a suspect in the murder of Katharina Brow based on the fingerprint exclusion.

RESPONSE:

71. Baliunas reported on August 8, 1980 that the fingerprint on the toaster excluded suspect Anthony C. Bean.[47]

RESPONSE:

72. Anthony C. Bean was ruled out as a suspect in the murder of Katharina Brow based on the fingerprint exclusion.

RESPONSE:

73. Baliunas reported on August 8, 1980 that the fingerprint on the toaster excluded suspect

---

[45] *See id.*

[46] *See id.*

[47] *See* Ex. P, Ayer Police Department Supplemental Report, Document NO. B000048.

Michael Hamilton.[48]

RESPONSE:

74. Michael Hamilton was ruled out as a suspect in the murder of Katharina Brow based on the fingerprint exclusion.

RESPONSE:

75. Baliunas reported on August 8, 1980 that the fingerprint on the toaster excluded suspect Jerry Graham.[49]

RESPONSE:

76. Jerry Graham was ruled out as a suspect in the murder of Katharina Brow based on the fingerprint exclusion.

RESPONSE:

77. The Ayer Police Department also sent Baliunas the fingerprint cards for Jay Jones, William Jones, Nat Johnson, Robert Williams, Donald Pina, the Spinola brothers, John Good, and Peter Rivera to compare their fingerprints to those lifted at the scene.[50]

RESPONSE:

78. Kenneth Waters provided his fingerprints to the Ayer Police Department when he came in for questioning on May 22, 1980.[51]

RESPONSE:

---

[48] *See id.*

[49] *See id.*

[50] *See* Ex. O; Ex. Q, Ayer Police Department Supplemental Report, Document No. B000052.

[51] *See* Ex. G.

14

79. Kenneth Waters was fingerprinted in the Providence Police Department upon his arrest for Katharina Brow's murder on October 12, 1982.[52]

RESPONSE:

80. Kenneth Waters was excluded as source of fingerprint on the toaster.[53]

RESPONSE:

81. Before the grand jury, Taylor falsely testified that the prints lifted at the scene were smeared and thus were not of any use in the investigation.

RESPONSE:

82. Kenneth Waters was in Ayer District Court on the morning of May 21, 1980.

RESPONSE:

83. Boisseau knew that Kenneth Waters was in Ayer District Court on the morning of May 21, 1980.

RESPONSE:

84. Kenneth Waters told the police that he worked a double shift at the Park Street Diner on the night of May 20, 1980 through the early morning of May 21, 1980.

RESPONSE:

85. Kenneth Waters worked a double shift at the Park Street Diner on the night of May 20, 1980 and the early morning of May 21, 1980.

RESPONSE:

---

[52] *See* Ex. R, Ayer Police Department Supplemental Report Dated Oct. 13, 1982, Document Nos. B000166-67.

[53] *See* Ex. N.

86. Ayer Police Department Officer Walter Decot collected the daily time cards for the week of May 19-May 26, 1980 from the Park Street Diner.

RESPONSE:

87. The daily time cards for the week of May 19-May 26, 1980 were missing from the Park Street Diner's records.[54]

RESPONSE:

88. The defense subpoenaed Kenneth Waters' daily time cards for the week of May 19-May 26, 1980 for his employment at the Park Street Diner.

RESPONSE:

89. Kenneth Waters' daily time cards for the week May 19-May 26, 1980 for his employment at the Park Street Diner are missing.

RESPONSE:

90. Kenneth Waters did not break into Katharina Brow's home on May 21, 1980

RESPONSE:

91. Kenneth Waters did not burglarize Katharina Brow's home on May 21, 1980

RESPONSE:

92. Kenneth Waters did not stab Katharina Brow.

RESPONSE:

93. Kenneth Waters did not murder Katharina Brow.

RESPONSE:

94. Kenneth Waters was not present during the murder of Katharina Brow on May 21, 1980.

---

[54] *See* Ex. S, Testimony of Alice Tessier, Trial Transcript Vol. 5 at 535.

16

RESPONSE:

95. Any and all copies of police reports and notes generated by the Ayer Police Department in connection with the investigation of the murder of Katharina Brow, produced in discovery in the above-referenced matter pursuant to Rules 34 and/or 45, are true and accurate copies of the originals, and therefore are authenticated pursuant to Federal Rule of Evidence 901, with the exception that any additional handwritten notations on any such report are not hereby authenticated.

RESPONSE:

96. Any and all police reports and handwritten notes generated by the Ayer Police Department in connection with the investigation of the murder of Katharina Brow and produced in discovery in the above-referenced matter pursuant to Rules 34 and/or 45, were kept in the regular course of business, and it was the regular practice of the Ayer Police Department to make such reports and notes, with the exception that it is not agreed that any additional handwritten notations on any such report were kept in the regular course of business.

RESPONSE:

97. Any and all copies of police reports and notes generated by the Massachusetts Attorney General's Office in connection with the investigation of the murder of Katharina Brow, produced in discovery in the above-referenced matter pursuant to Rules 34 and/or 45, are true and accurate copies of the originals, and therefore are authenticated pursuant to Federal Rule of Evidence 901, with the exception that any additional handwritten notations on any such report are not hereby authenticated.

RESPONSE:

98. Any and all police reports and handwritten notes generated by the Massachusetts Attorney General's Office in connection with the investigation of the murder of Katharina Brow and produced in discovery in the above-referenced matter pursuant to Rules 34 and/or 45, were kept in the regular course of business, and it was the regular practice of the Massachusetts Attorney General's Office to make such reports and notes, with the exception that it is not agreed that any additional handwritten notations on any such report were kept in the regular course of business.

    RESPONSE:

99. Copies of any and all reports generated by the Commonwealth of Massachusetts Department of Public Safety Laboratory in connection with the investigation of the murder of Katharina Brow, and produced pursuant to Rules 34 and/or 45 in the above-referenced matter, are true and accurate copies of the originals, and therefore are authenticated pursuant to Federal Rule of Evidence 901, with the exception that any additional handwritten notations on any such reports are not hereby authenticated.

    RESPONSE:

100. Copies of any and all reports generated by the Commonwealth of Massachusetts Department of Public Safety Laboratory in connection with the investigation of the murder of Katharina Brow, and produced pursuant to Rules 34 and/or 45 in the above-referenced matter, were kept in the regular course of business, and it was the regular practice of the Commonwealth of Massachusetts Department of Public Safety Laboratory to make such reports, with the exception that it is not agreed that any additional handwritten notations on any such reports were kept in the regular course of business.

    RESPONSE:

101. Copies of any and all reports generated by the Federal Bureau of Investigation Laboratory in connection with the investigation of the murder of Katharina Brow, and produced pursuant to Rules 34 and/or 45 in the above-referenced matter, are true and accurate copies of the originals, and therefore are authenticated pursuant to Federal Rule of Evidence 901, with the exception that any additional handwritten notations on any such reports are not hereby authenticated.

RESPONSE:

102. Copies of any and all reports generated by the Federal Bureau of Investigation Laboratory in connection with the investigation of the murder of Katharina Brow, and produced pursuant to Rules 34 and/or 45 in the above-referenced matter, were kept in the regular course of business, and it was the regular practice of the Federal Bureau of Investigation Laboratory to make such reports, with the exception that it is not agreed that any additional handwritten notations on any such reports were kept in the regular course of business.

RESPONSE:

Dated: November 15, 2006
      New York, NY

By: _Monica R. Shah_
Deborah L. Cornwall, Esq. (DC 2186)
Barry C. Scheck, Esq. (BS 4612)
Monica R. Shah, Esq. (MS 9846)
COCHRAN NEUFELD & SCHECK, LLP
99 Hudson Street, 8th Floor
New York, NY 10013

Robert N. Feldman
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA 02210-1108

**Attorneys for Plaintiff Betty Anne Waters**

19