UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
BETTY ANNE WATERS, as                         )
Administratrix of the Estate of               )
KENNETH WATERS,                               )
                                              )   Case No. 04 10521 (GAO) (JGD)
                Plaintiff,                    )
        v.                                    )   **PLAINTIFF BETTY ANNE WATERS'**
                                              )   **BRIEF IN OPPOSITION TO**
TOWN OF AYER, NANCY TAYLOR-                   )   **DEFENDANTS' MOTION FOR A**
HARRIS, in her individual capacity, ARTHUR    )   **PROTECTIVE ORDER TO**
BOISSEAU, in his individual capacity,         )   **PRECLUDE THE NOVEMBER 26,**
BUDDY DECOT, in his individual capacity,      )   **2007 TELEPHONE CALL WITH**
WILLIAM ADAMSON, in his individual            )   **SHEILA CALKINS**
capacity, PHILIP L. CONNORS, in his           )
individual capacity, and JOHN DOE and JANE    )
DOES 1–16, in their individual capacities,    )
                                              )
                Defendants.                   )
                                              )
_____           )

Plaintiff Betty Anne Waters, by counsel, submits this brief in opposition to defendants' motion for a protective order to preclude the November 26, 2007 telephone call with former Middlesex County Assistant District Attorney Sheila Calkins regarding the reinvestigation of the fingerprint evidence in the Waters/Brow case. Essentially, defendants seek to preclude counsel from picking up the telephone and talking to a witness, a proposition that has no legal support whatsoever. In light of the recently discovered file of the State Police's fingerprint examiner, John Baliunas, which was only found after the close of discovery, plaintiff sought and obtained, after several months of negotiations with her counsel (and fruitless attempts at negotiations with defense counsel), the opportunity to discuss the new fingerprint evidence with her in an informal telephone interview now scheduled for the morning of November 26. As the questioning of former A.D.A.

1

Calkins will be informal and relates to newly discovered evidence that could not have been obtained prior to the close of discovery, the telephone call is eminently proper investigation and must be permitted to proceed.

## BACKGROUND

At his May 17, 2007 deposition, former State Police fingerprint examiner John Baliunas alerted counsel to the possibility that he might possess some materials from his original examination of fingerprints in the Brow murder investigation in a storage facility. Fact discovery ended the next day, on May 18, 2007. Undersigned counsel for the plaintiff sought the assistance of the defense, the State Police and the Middlesex County District Attorney's Office in searching the facility; none of them agreed to assist. On July 10, 2007, plaintiff and her undersigned counsel, in the presence of Mr. Baliunas, searched his storage unit and discovered documents from the Brow murder investigation.[1] The file contains crime scene evidence and examination notes that have never been disclosed to plaintiff despite her repeated requests to the Ayer defendants, the State Police, and the DA's Office, including original latent prints lifted from the scene of the murder, a copy of the victim's print card, numerous crime scene photographs, and handwritten notes apparently indicating that a number of individuals' print cards, including that of Mr. Waters, had been compared to and excluded from the crime scene prints. Of particular interest to the instant matter, the file contains a photograph of a bloody print on a piece of a toaster – evidence that had previously not been known to plaintiff.

None of the previously disclosed documents from the original crime scene investigation from

---

[1] Plaintiff's counsel formally requested that the State Police, MCDA and defendants share her costs in finding the file under the circumstances. While both the State Police and MCDA have agreed to pitch in, to date defendants have ignored the request.

either the Ayer Police Department or the State Police referenced this toaster print. The only reference to this print was in the District Attorney's reinvestigation files, specifically in a single note taken by A.D.A. Calkins. While Ms. Calkins was deposed by plaintiff's counsel on March 7, 2007, she was deposed well before the discovery of the Baliunas file and, thus, plaintiff did not have documentary evidence necessary to understand the significance of Calkins' note – nothing in the inventory of evidence from the crime scene, no formal lab report or anything else from the original investigation ever made any reference to a latent print on a piece of a toaster. As a result, plaintiff's counsel did not question her about that particular notation.

After discovering his file, however, Mr. Baliunas sent the original file directly to plaintiff's fingerprint expert Ron Smith.[2] As reflected in his report of August 21, 2007, Mr. Smith concluded that Mr. Waters could not be the source of the latent print from the toaster. (*See* Ex. A, Smith Report dated Aug. 21, 2007.) This conclusion was consistent with the single reference in Calkins' notes. (*See In Camera* Ex. B, Notes of A.D.A. Calkins, Bates No. 1801 (highlighted in relevant part).) As reflected in his supplemental report of August 28, 2007, Mr. Smith did not have sufficient information in the photograph to exclude the victim as the source of the print. (*See* Ex. C, Smith Supplemental Report dated Aug. 28, 2007.)[3] Then-A.D.A. Calkins' notation, however, suggested that she had learned during the reinvestigation that the victim had in fact been excluded as the source of the toaster print. (*See In Camera* Ex. B.)

In light of the newly discovered file and Mr. Smith's conclusion on the toaster print,

---

[2] Plaintiff immediately sent an additional copy of the file to defendants and notified counsel for both the DA's Office and the State Police of the discovery.

[3] Defendants have moved to strike this report as untimely in addition to claiming that the fingerprint evidence is irrelevant insofar as it bears on Kenneth Waters's actual innocence.

plaintiff's counsel promptly contacted Mike Halpin, counsel for the State Police, and John Ofilos, counsel for the MCDA's Office, in an effort to schedule informal but limited telephone conversations with State Police Trooper Al Hunte and Ms. Calkins regarding the reinvestigation of the fingerprint evidence.[4] (*See* Ex. D, Correspondence from Cornwall to Halpin dated Aug. 29, 2007.) Plaintiff's counsel also notified defense counsel of Plaintiff's request. The choice of an informal phone call instead of a deposition appeared appropriate for several reasons. First, as defense counsel notes, the deadline on formal discovery – and therefore the deposition deadline – had ended on May 18, 2007. Indeed, Mr. Ofilos indicated that his office would oppose an application to redepose Ms. Calkins. While, in counsel's view, plaintiff could have appropriately moved for leave to redepose Ms. Calkins's on this limited new issue, to do so would unduly burden the Court if Ms. Calkins and her counsel would agree to take part in an informal phone call limited to the matter of the reinvestigation of the fingerprints, evidence that was not discovered until after the discovery deadline had run. Moreover, as set forth below, the fact discovery deadline did not bar plaintiff from continuing her investigation.

On September 20, 2007, counsel for the DA's Office informed both plaintiff's counsel and defense counsel that Calkins would make herself available subject to certain conditions, including the participation of defense counsel on the call. (*See* Ex. E, E-Mail Correspondence from Ofilos to Cornwall and Corbo dated Sept. 20, 2007.) Defense counsel objected to the call. Ultimately, counsel for the DA's Office agreed to schedule the call with Ms. Calkins for November 26, 2007, inviting defense counsel to participate, but agreeing to go forward with the interview regardless of whether

---

[4] While counsel is negotiating the matter, no telephone conference has yet been scheduled with Trooper Hunte, who is referenced in Calkins' notes in connection to the fingerprint information. To the extent that defendants' objection to the informal call with A.D.A. Calkins extends to an as-yet unscheduled call with Mr. Hunte, that call, too, would be proper investigation under the circumstances.

defense counsel chose to take part. (*See* Ex. F, Correspondence from Cornwall to Ofilos dated Nov. 12, 2007.) As such, plaintiff did not move for leave to take Ms. Calkins's deposition. Nonetheless, defendants opposed the call.

## ARGUMENT

**A.    The November 26th Phone Call Does Not Constitute Formal Discovery**

There is a clear distinction under the law between an interview and a deposition and "there is little relation between them." *International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 41 (2nd Cir. 1975); *see also Wagner v. City of Holyoke*, 183 F. Supp. 2d 289, 292–93 (D. Mass. 2001). In *Edelstein*, the Second Circuit explained that in an interview, as opposed to a deposition:

> A lawyer talks to a witness to ascertain what, if any, information the witness may have relevant to his theory of the case, and to explore the witness' knowledge, memory and opinion-frequently in light of information counsel may have developed from other sources. This is part of an attorney's so-called work product. It is the common experience of counsel at the trial bar that a potential witness, upon reflection, will often change, modify or expand upon his original statement and that a second or third interview will be productive of greater accuracy.

*Id.* (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). The Second Circuit further explained that:

> In contrast to the pre-trial interview with prospective witnesses, a deposition serves an entirely different purpose, which is to perpetuate testimony, to have it available for use or confrontation at the trial, or to have the witness committed to a specific representation of such facts as he might present. A desire to depose formally would arise normally after preliminary interviews might have caused counsel to decide to take a deposition.

*Id.* at 41 n.4. Aware of this distinction, this Court has noted that "[f]ormal discovery has consistently been recognized as an inadequate substitute for the 'opportunity to speak directly with potentially favorable witnesses[.]'" *Kaveney v. Murphy*, 97 F. Supp. 2d 88, 95 (D. Mass. 2000) (Gertner, J.) ("Formal discovery has consistently been recognized as an inadequate substitute for the "opportunity to speak directly with potentially favorable witnesses . . . .") (citation omitted); *see*

5

*also Siguel v. Trustees of Tufts College*, CIV. A. No. 88-0626-Y, 1990 WL 29199, at *3 (D. Mass. Mar. 12, 1990) (Young, J.) ("For the adversary system to operate effectively, counsel must have access to potential witnesses. A lawyer needs access in order to perform the traditional litigation functions of interviewing favorable witnesses and preparing them for trial.").

Here, plaintiff's counsel is simply seeking to conduct an informal interview to explore former A.D.A. Calkins's recollection, if any, of the reinvestigation of the fingerprint evidence. Defendants cite no authority for the proposition that such a call is formal discovery subject to the limitations set forth in the Court's scheduling order. Indeed, plaintiff has every right to continue to investigate her claims after the close of fact discovery; defendants fail to cite any case to the contrary. Nor do defendants explain how such a call, which will not be under oath or transcribed, is a deposition. *See, e.g., In re Tyco Intern. Ltd. Securities Litigation*, No. 00-MD-1335-B, 2001 WL 34075721 (D.N.H. Jan. 30, 2001) ("Those unfamiliar with case preparation might confuse "discovery" with the work product protected investigatory interviews of third party witnesses. However, Congress did not confuse them. Neither logic, tradition, [nor] the constitution . . . prohibit interviewing prospective witnesses."). Thus, defendants' motion simply amounts to an attempt to bar plaintiff's counsel from informally interviewing a third-party witness—investigation that would otherwise fall squarely within attorney work product—and should be denied as meritless. Indeed, consistent with the wishes of Ms. Calkins and her counsel, and in the interest of transparency in the search for the truth, plaintiff' has gone above and beyond her duty in inviting defense counsel to participate in an interview with a witness who might otherwise be inaccessible to them.

**B.    Defendants' Motion Is Premature**

Former A.D.A. Calkins may or may not have any memory of the reinvestigation of the

6

fingerprint evidence. Thus, at this stage, it is unclear whether the interview will lead to the discovery of new information – for example, a witness (such as Trooper Hunt) with knowledge of or, written materials further documenting, the fingerprint exclusion) – that could prompt an application to reopen discovery. Thus, defendants' motion is premature. To the extent that Ms. Calkins does provide leads concerning the fingerprint evidence, plaintiff may move to reopen discovery on that limited basis and would have good cause to do so as the fingerprint evidence was recently discovered, after the close of fact discovery (but within expert discovery) only due to the diligence of plaintiff and her counsel.

## CONCLUSION

For the foregoing reasons, defendants' motion to preclude the November 26th call with former A.D.A. Calkins should be denied.

Dated: November 19, 2007               /s/ Deborah L. Cornwall
                                       Barry C. Scheck
                                       Deborah L. Cornwall
                                       Monica R. Shah
                                       COCHRAN NEUFELD & SCHECK, LLP
                                       99 Hudson St., 8th Floor
                                       New York, NY 10013
                                       Tel. (212) 965-9081
                                       Fax (212) 965-9084

## CERTIFICATE OF SERVICE

      I, Monica Shah, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 13, 2007.

                                                 /s/ Monica Shah
                                                 Monica Shah