

Ron Smith & Associates, Inc.

P.O. Box 670 • Collinsville• Mississippi • 39325
Toll Free: 1-866-TEAM RSA (832-6772) • Office (601) 626-1100 • Fax (601) 626-1122 •
www.ronsmithandassociates.com

August 21, 2007

Cochran Neufeld & Scheck, LLP
99 Hudson Street, 8th Floor
New York, New York 10013

Attention: Debbie Cornwell,

RE: Latent Print Examination (RS & A Latent Case Number 07-0635MA)
Waters v. Town of Ayer, et al., No. 04 Civ 10521

Ms. Cornwall,

Between the dates of February 26, 2007 and July 1, 2007, the following items of evidence and documents, Exhibits #1 through Exhibit #4, have been received from your office:

February 26, 2007: Via United States mail, one sealed brown envelope containing:

**Exhibit #1:** Copies of Ayer Police Department incident reports and communications, Massachusetts State Police field reports, copies of numerous inked fingerprint cards and other related documents along with copy machine enlarged reproductions of latent fingerprint lifts. Copies of documents regarding communications between Ayer Police Department and Cpl. John Baliunas in reference to results of latent print comparisons. All these items are related to the investigation of the death of "Katherina Brow".

March 30, 2007: Via United Parcel Service, Tracking Number 1Z T2T 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 8914, one sealed shipping envelope containing:

**Exhibit #2:** Copies of Cpl. John Baliunas', (Massachusetts State Police) field report, a copy of a list of names of those individuals whose known fingerprints were reported to have been compared with the unidentified latent fingerprints collected from the crime scene, and copy machine enlarged reproductions of latent fingerprint lifts. (Same as enlargements in Exhibit #1)

June 12, 2007: Via United Parcel Service, Tracking Number A373 326 671 9, one sealed shipping box containing:

**Exhibit #3:** Copy of Nancy Taylor's Grand Jury testimony of November 10, 1982, copy of excerpts from Nancy Taylor-Harris's deposition of November 30, 2006, copy of excerpts from Nancy Taylor-Harris's deposition of May 18, 2007, and copy of complete deposition from John I. Baliunas of May 17, 2007. Copy of known inked fingerprints of "Kenneth W. Waters", received upon request from Rhode Island Attorney General's Office in Providence, Rhode Island.

July 1, 2007: Via United parcel Service, Tracking Number 1Z T2T 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 9093, one sealed shipping envelope containing:

**Exhibit #4:** Copy of Arthur Boisseau's deposition of June 13, 2007.

The following items were received on July 11, 2007 from retired Massachusetts State Police Corporal John Baliunas via sealed FedEx shipping box, Tracking Number 8621 6896 7151:

**Exhibit #5:** One (1) handwritten letter dated 7-10-07 from John Baliunas advising of the contents of the box along with a request for return upon completion. The box also contained numerous photographs and photographic negatives from the death investigation scene of "Katherina Brow".

This box also contained several additional manila envelopes further described as follows:

**Exhibit #5-A:** One (1) manila photo sleeve envelope (4" X 5") labeled "3 lifts from table, possible RI, RM & RR" containing one (1) black card with two (2) glass microscope type slides with gray powder latent prints under tape. Note: Glass slides were broken when received but are still being held together by lift tape. Note: The latent fingerprints contained on these glass slides are the same latent fingerprints which were represented in the copy machine enlarged reproductions contained in Exhibit #1 and Exhibit #2. Also contained in this envelope were five (5) instant type film photographs (enlarged) of two (2) of the latent fingerprints on the first of the two (2) glass slides.

**Exhibit #5-B:** One (1) manila photo sleeve envelope (4" X 5") labeled "Photos of latent on Toaster part", containing three (3) instant type film photographs and three matching photo negatives of a visible partial fingerprint. The appearance of the visible print is consistent with the matrix being that of blood.

**Exhibit #5-C:** One (1) manila photo sleeve envelope (4" X 5") labeled "Cold Water Handle, Cpl. J. Bal.", containing four (4) instant type film photographs of a visible print, either fingerprint or partial palm print. The appearance of the visible print is consistent with the matrix being that of blood.

**Exhibit #5-D:** One (1) manila photo sleeve envelope (4" X 5") labeled "Ayer Hosp. Morgue, 5-22-80, Katherine Brow, rolled impressions at morgue, comparison made with R.I. from latent of Ballantine Ale can, Cpl. J. Bal." containing five (5) post-mortem inked fingerprint strips labeled "Katharina Brow". Envelope also contains one (1) white card with one (1) glass microscope slide with black powder lift and a duplicate lift on the same slide. Slide labeled "5-21-80, Ayer, Ballantine, xxx". Also contained two (2) instant type film photographs of latent fingerprint on glass slide. Photographs labeled "Ballantine Ale can = R.I., K. Brow".

**Exhibit #5-E:** One brown manila "Case Type" envelope labeled "Ayer, Murder, C17813, Autopsy C17813A, 5-21-80, VIC: Katherine Brow, 7 ½ Rosewood Av., Ayer, Cpl. J. Bal, Photos forwarded to Midd. D.A. ----, Office in Dec. 1981".

**Of special notice is the following quotation handwritten on the case envelope. It reads as follows:**

**"To Officer Concerned: F.P. to be checked.**

1. **The 8 X 10 of F.P. on table.**
2. **The faucet handle.**
3. **Toaster**

**J. Bal."**

The envelope contains the original latent lift envelope, the original list of names of individuals whose known fingerprints were reported to have been compared, the original carbon copy of Cpl. Baliunas scene report, three (3) 8" X 10" photo sheets of the latent fingerprints from "table", and multiple copies of known fingerprints to be compared.

**Examinations Requested:**

Examine the original latent print evidence and original photographs of latent print evidence to determine if any of the latent or visible fingerprints are of value for comparison purposes. If latent or visible fingerprints of value are found on the evidence, determine if it is possible to exclude "Kenneth W. Waters" as having been a donor of any of the latent or visible fingerprints recovered by Corporal Baliunas at the crime scene.

**Examinations Conducted:**

Only the original evidence and/or photographs of the original evidence were used for examination purposes. This included the following exhibits:

Exhibit #5-A: Original latent lifts from table collected by Cpl. Baliunas.

Exhibit #5-B: Photographs of visible fingerprint (consistent with a matrix of blood) photographed on "Toaster" by Cpl. Baliunas.

Exhibit #5-C: Photographs of visible partial print (consistent with a matrix of blood) photographed on "Faucet Handle" by Cpl. Baliunas.

Exhibit #5-D: Original latent lift from Ballantine Ale Can collected by Cpl. Baliunas.

**Results of Initial Latent Print Examination:**

One (1) latent fingerprint of value for individualization purposes, marked L-1, was found on one (1) of the latent lifts from the "table" contained in Exhibit #5-A.

One (1) visible fingerprint, consistent with having a matrix of blood, of value for exclusion purposes, marked L-2, was found on the photographs from the "Toaster" contained in Exhibit #5-B.

One (1) latent fingerprint of value for individualization purposes, marked L-3, was found on the latent lift from the "Ballantine Ale can" contained in Exhibit #5-D.

Although the remaining latent lifts contained in Exhibit #5-A and the photographs of the latent print on the "Faucet Handle" in Exhibit #5-C, contain some friction ridge detail information, they do not contain sufficient friction ridge detail information to be used for individualization purposes.

**Comparisons Conducted:**

The latent fingerprint of value, marked L-1, which was found on the latent lift from the "table" in Exhibit #5-A, has been compared with the known inked fingerprints of "Kenneth W. Waters".

The visible fingerprint, consistent with having a matrix of blood, marked L-2, which was found and photographed on the "Toaster" contained in Exhibit #5-B, has been compared with the known inked fingerprints of "Kenneth W. Waters".

The latent fingerprint of value, marked L-3, which was found on the latent lift from the "Ballantine Ale can" contained in Exhibit #5-D, has been compared with the right index fingerprint of the deceased, "Katherina Brow".

**Comparison Results**

It has been determined that "Kenneth W. Waters" could not have been the donor of either the latent fingerprint, marked L-1, from the "table", nor the visible fingerprint, marked L-2, (consistent with a matrix of blood) from the "Toaster". This opinion is based upon the significant differences which exist between the basic pattern types of the fingerprints of "Kenneth W. Waters" and the fingerprints represented as L-1 and L-2.

The latent fingerprint of value, marked L-3, from the "Ballantine Ale can" has been individualized as the right index fingerprint of the victim, "Katherina Brow".

The opinions which resulted from the examination which I personally conducted in this case appear to be fundamentally consistent with the results noted in the records submitted by retired Corporal John I. Baliunas.

**Comments Regarding References to Latent Print Evidence Which Appeared in Documents Submitted for Review:**

1. It was noted in the declaration of John I Baliunas ("attached") that it was his common practice to record the names of the suspects whose known inked prints had been compared with latent prints in a case. It was also his practice to notify the agency for which he was working the case about the results of his comparisons. This notice would include all his findings, to include identifications or exclusions. His declaration included the fact that he notified Chief Adamson of the Ayer Police Department as the results of all comparisons conducted in this particular case.

This declaration was supported by the documentation which was included in the case related documents submitted to me for review. It appears that Corporal Baliunas followed his usual and customary practices in this case which would have been to compare the known fingerprints of Kenneth Waters with the previously unidentified latent fingerprints in this case and to have notified Chief Adamson of the Ayer PD as the results of those comparisons. This method of recording comparisons performed and orally notifying investigating agencies of the results was commonplace in 1980 by the majority of agencies conducting these types of analytical examinations.

2. It was noted that in the transcript of Nancy Taylor before the Middlesex County Grand Jury on November 10, 1982 she replied to a question from a juror that although "the State Police did lift some prints, none of them were anything that they were able to match up. They were smeared et cetera". The follow up question from the prosecutor, Ms. Fahey was "So the State Police were unable to match any prints – lift any prints to be of use in any investigation?", to which Nancy Taylor replied "That's correct.".

Based upon the examination which I conducted on the latent print evidence in this case, it is my opinion that Nancy Taylor was clearly incorrect when she made this statement. There were indeed identifiable prints left at the scene and this had been noted by Corporal John Baliunas on many occasions as he periodically advised Chief Adamson of Ayer PD as to the results of his latest comparisons against the known fingerprints of potential suspects. Based upon the evidence, her answers to the juror and to the prosecutor were false.

**Remarks:**

I have been a practicing latent print examiner for over thirty years and am certified as a Latent Print Examiner by the International Association for Identification where I have served in numerous leadership positions. I have been employed in the field of forensic identification since 1972, first with the Federal Bureau of Investigation, then the Alabama Bureau of Investigation and the last twenty-four years prior to my government retirement in 2002 with the Mississippi Crime Laboratory. I earned a Bachelors of Science Degree from Mississippi State University. I am president of Ron Smith & Associates, Inc, which is a forensic consulting, training and management company, who serves both the government and private sector by providing quality forensic services in several forensic disciplines. I have been qualified to provide expert witness testimony in the field of latent print examination and or crime scene examination in excess of five hundred times in state and federal courts and have lectured on various facets of forensic identification in over

forty states and numerous other countries. It has also been my pleasure over the last several years to provide technical forensic instruction to members of the Massachusetts State Police as well as assist their agency in forensic consultations involving latent print examination.

My fees for the examination of latent print related evidence are $125.00 per hour and upon completion of the work in this case I will be submitting an invoice at that rate of compensation. If called upon to testify, the rate of compensation will be $1000.00 per day plus usual and customary travel expenses for airfare, lodging, transportation upon arrival and meals at the federal per diem rate for that location of the trial. I have attached a copy of my Curriculum Vitae and 2007 Fee Schedule to this report.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 21, 2007

Ron Smith

Ron Smith, President

Ron Smith & Associates, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,

Plaintiff,

v.

TOWN OF AYER, NANCY TAYLOR-HARRIS, in her individual capacity, ARTHUR BOISSEAU, in his individual capacity, BUDDY DECOT, in his individual capacity, WILLIAM ADAMSON, in his individual capacity, PHILIP L. CONNORS, in his individual capacity, and JOHN DOE and JANE DOES 1–16, in their individual capacities,

Defendants.

Case No. 04 10521 (GAO)

**DECLARATION OF JOHN I. BALIUNAS**

I, John Baliunas, residing at 15 Spring Street, Westborough, Massachusetts, 01581 hereby declare the following to be true:

1. I was the fingerprint examiner for the Massachusetts State Police assigned to the investigation of the Brow homicide that took place in Ayer, Massachusetts on May 21, 1980.

2. I responded to the crime scene, where I found and collected 5 latent prints. I also photographed the crime scene.

3. As it has been more than 27 years since the crime and 25 years since I retired, I do not remember everything that I did on the case.

4. When I retired in or about November 1982 I kept my file in the expectation that if and when there was an arrest, I would be called to testify about my work on the case.

5. In the mid-1990's many of my files were packed into boxes and placed in a storage unit. I was the only person with a key to that padlocked unit.

6. On July 10, 2007, pursuant to a subpoena, my storage unit was searched for the Brow file. The file was found. I looked through the file but did not have an opportunity to thoroughly examine it.

7. The Brow file that I kept included a copy of my original crime scene report, original latent prints I recovered from the crime scene, photographic enlargements of those latents, fingerprint cards taken from the victim at the morgue, negatives and prints of photographs from the crime scene and the autopsy, copies of fingerprint cards of some suspects whose prints I compared to the latents from the crime scene, and my handwritten lists of suspects.

8. It was my custom and practice to return original fingerprint cards of suspects to the submitting agencies, and to keep copies of fingerprint cards in my file in cases where the submitting agency sent me a copy rather than the original card.

9. The attached four pages are true and correct color copies of lists I made of suspects whose fingerprints I compared and excluded as the source of the latents I found at the crime scene. The heading "Con't list of FP cards checked" part of the way down "Sheet #2" means "continued list of fingerprint cards checked."

10. It was my custom and practice to keep these kinds of lists so I would remember which suspects' prints I had compared and excluded during an investigation.

11. It was my custom and practice to report all of my findings – whether excluding suspects or including them – to the submitting agency, in this case Chief Adamson of the Ayer

Police Department.

12. I was able to match only one latent print in this case: I determined that a latent on a Ballantine beer can was left by victim Katherina Brow's right index finger.

13. All of the suspects whose prints I received for comparison were excluded as the source of the remaining 4 latents I lifted from the scene.

14. I do not now remember the names of all the suspects whose fingerprints I compared to the latent prints I found at the crime scene.

Pursuant to 28 U.S.C. § 1746, I declare the foregoing to be true under the pains and penalties of perjury.

Dated: July 30th, 2007

John Baliunas

[illegible]

[illegible] Spinola [illegible]-12 [illegible] 0 B

Albert Perry [illegible]

AKA Ricardo Perry [illegible]

[illegible] Thomas

Donald Perry [illegible]

Anthony C White [illegible]

[illegible] 10-[illegible]-72

Walter Doe (R.O. Ayer)

- [illegible] Jones [illegible]
- Michael A [illegible]
- Raymond T. Williams
- [illegible] Williams - [illegible]

[illegible]

[illegible] Brown

Eugene M. Brown

Francis A Brown

Charles [illegible] Brown

- [illegible] Johnson [illegible]

- William S. Jones, Jr, 3.3.55

- [illegible] Williams [illegible]

Jerry W Graham 9-24-62

Sheet #2 as of 8-20-80

Leroy J Johnson jr DOB 1-14-54 alias John Go
Kevin Torres really Peter Rivera DOB 3-24-58
Thomas M Curley 11-15-52

Con't list of FP cards checked

Joseph Breau Melli DOB 11-27-57
Pasquale Mooza jr 9-30-57
Richard Alan Rice
Bogdon Josef Szymagalski 7-6-47

X Jonathan Davis 5-5-57 C17880 5-21-80
X Michael Joseph Grannon 4-24-58 X Deceased
X Gary J Spinola
X Albert Perry 11-12-54 707141
X Donald Pina 2-27-52 700739
X Anthony C White 7-23-53 766033
X Ronald Spinola 5-7-56 757677
X William Ray Jones Jr 10-2-42
X Larry Williams 3-3-55
X Raymond Thomas Williams 7-6-57 1-5-47
Leroy Kenneth Waters
X Alicia Brow
X Eugene M Brow (poor card)
X Charlie A Brow
X Charles J Brow
X Nathaniel M Johnson
X Robert L Williams 2-3-44
X Jerry W Graham 5-2-45 GRANNON 9-29-62
Anthony A. Bean
Michael L. Hamilton
X Leroy J Johnson Jr 1-14-54 AKA John Goode
X Kevin Torres AKA Peter Rivers 3-24-58
X Thomas M. Curley 11-15-52
X Joseph Brian Mello 11-27-59
X Pasquale Mooza Jr. 9-30-57
X Richard Alan Rice
X Bogdon Josef Szymagelski 7-6-47
(OVER) —end— X Dennis R. Gariepy 11-6-60

x Ethelbert Stone 10-11-55
Jonathan Palmatier 3-22-61 (poor card)
x Vincent Archie Opie DOB ?
Kenneth Waters



Ron Smith & Associates, Inc.

P.O. Box 670 • Collinsville• Mississippi • 39325
Toll Free: 1-866-TEAM RSA (832-6772) • Office (601) 626-1100 • Fax (601) 626-1122 •
www.ronsmithandassociates.com

# Curriculum Vitae

## Ron Smith, President
## Ron Smith & Associates, Incorporated
## Email: ron@ronsmithandassociates.com

### PROFESSIONAL SPECIALITIES

Latent Print Examination / Forensic Management / Crime Scene Examination

Instructional Areas: Latent Print Examinations & Courtroom Testimony Techniques

### WORK EXPERIENCE

July 1, 2002 - Present President: Ron Smith & Associates, Inc.

Duties: Forensic consulting and technical training of forensic specialists and criminal investigators. Case consultations with prosecutors and defense attorneys. Provide full range of latent print related services to law enforcement agencies and the private sector. Review of expert witness testimony transcripts and provision of technical testimony training in both criminal and civil cases. Determine and implement company policies and supervise daily activities of full time and contractual employees and forensic specialists.

December 1987 - June 31, 2002 — Mississippi Crime Laboratory
Position: Associate Director

Duties: Supervise daily forensic activities of a regional forensic laboratory. Served as senior latent print examiner and technical reviewer of latent print casework. Served as the primary expert witness testimony trainer for the Mississippi Crime Laboratory system. Served as the AFIS latent print coordinator for the State of Mississippi. Supervised crime scene examinations. Lectured at the state law enforcement academy.

January 1978 - November 1987 — Mississippi Crime Laboratory
Position: Fingerprint Examiner III

Duties: Examined physical evidence for the presence or absence of latent prints and conducted comparisons with known inked prints. Provided expert witness testimony. Supervised the daily activities of all other latent print examiners within the Mississippi Crime Laboratory system. Collected physical evidence at crime scenes. Lectured at the state law enforcement academy.

May 1973 - December 1977 — Alabama Bureau of Investigation
Position: Fingerprint Examiner

Duties: Examined physical evidence for the presence or absence of latent prints and conduct comparisons with known inked prints. Provided expert witness testimony. Supervised the daily activities of other latent print examiners. Collected physical evidence at crime scenes. Lectured at the state law enforcement academy.

June 1972 - May 1973 — Federal Bureau of Investigation
Position: Fingerprint Technician

Duties: Classified, searched and filed criminal arrest fingerprint cards using modified Henry system of fingerprint classification.

## EXPERIENCE AS EXPERT WITNESS

Qualified as an expert witness in county, state and federal courts in excess of 500 times in Mississippi, Alabama, Louisiana, Georgia, New Jersey, New Mexico, Maine, Michigan, Massachusetts, Oregon and South Carolina.

## TEACHING EXPERIENCE

Designer and sole instructor of "Demystifying Palm Prints", an internationally recognized advanced palm print comparison seminar which has been taught in over forty states in the United States along with numerous other countries in North America, Europe and the Caribbean Islands.

Designer and sole instructor of "Courtroom Testimony Techniques—Success Instead of Survival", an internationally recognized testimony preparation seminar taught in excess of 100 times throughout the United States and Canada.

Invited to lecture at sixteen (16) annual educational conferences of the International Association for Identification since 1989.

Invited to lecture at over two hundred and fifty (250) state or regional educational conferences throughout the United States since 1989.

## FORMAL EDUCATION

Earned a Bachelor's of Science Degree in Interdisciplinary Studies (Criminal Justice and Management) from Mississippi State University.

## PROFESSIONAL AFFILIATIONS

**International Association for Identification:**

Positions Held:
- Chairman of Fingerprint Identification Committee (2 years)
- Member of Resolution, Membership and Safety Committees
- Regional Vice-President (3 years)
- Member of Latent Print Examiner Certification Board (6 years)
- Member of IAI Board of Directors (7 years)

**Mississippi Division of International Association for Identification:**

Positions held:
- Charter Member
- Secretary / Treasurer
- Vice-President
- President
- Chairman, Board of Directors
- Regional Representative

## PROFESSIONAL CERTIFICATIONS

Diplomate of the International Association for Identification as a Certified Latent Print Examiner.

Diplomate of the International Association for Identification as a Certified Senior Crime Scene Analyst.

## AWARDS

Recipient of the "John A. Dondero Memorial Award" presented by the International Association for Identification at their Annual Educational Conference in Miami, Florida in July 2001. This is the highest award available from the I.A.I. for a professional working within the forensic identification field and has been awarded only 20 times since it was began in 1959.

Recipient of the "Dedication to Service" award presented by the International Association for Identification at their Annual Educational Conference in Dallas, Texas in August 2005.



Ron Smith & Associates, Inc.

P.O. Box 670 • Collinsville• Mississippi • 39325
Toll Free: 1-866-TEAM RSA (832-6772) • Office (601) 626-1100 • Fax (601) 626-1122 •
www.ronsmithandassociates.com

# CONSULTANT FEE SCHEDULE

**Examination Fee:** One thousand dollars ($1000.00) per day of analytical time. (Eight hour day, with a one day minimum.) Partial days in excess of the first day will be billed at a rate of one hundred and twenty-five dollars ($125.00) per hour.

**Travel Time:** Travel time will be billed at a rate of five hundred dollars ($500.00) per day of travel. (out of state)

**Expenses:** All actual expenses associated with either examination or travel will be reimbursed upon presentation of final invoice. Travel expenses would be based on government rate travel allowances. All other expenses related to analysis, such as shipping, mail fees, long distance calls, etc. would be based on actual expenses with itemized records available upon request.

**Testimony Fee:** One thousand dollars ($1000.00) per day in court, including days waiting to testify. Travel days to and from court will be billed at the rate of five hundred dollars ($500.00) per day.

A minimum retainer of one thousand dollars ($1000.00) will be required prior to any examinations being performed. Larger cases may require larger retainers. (Does not apply to government agencies such as Prosecutors, Public Defenders, Law Enforcement Agencies, etc.)

A detailed invoice will be prepared upon completion of the examination or testimony. Payment is due in thirty (30) days.



Ron Smith & Associates, Inc.

P.O. Box 4436 • Meridian• Mississippi • 39304
Toll Free: 1-866-TEAM RSA (832-6772) • Office (601) 485-7606 • Fax (601) 485-7622 •
www.ronsmithandassociates.com

**Publications Authored:**

"Demystifying Palm Prints": (Written in 1989 and revised in 1996)

A technical training manual used in the administration of a three day training seminar taught throughout the United States and Europe.

"Courtroom Testimony Techniques – Success Instead of Survival": (Written in 1995)

A technical training manual used in the administration of a two day training seminar taught throughout the United States.

**Recent Expert Witness Testimony Provided:**

State of Mass. vs. Dennis LeBlanc: 2005
(Grand Jury: Suffolk County, Boston, Mass.)

United States vs. David Seymour : August 29, 2005
(Deposition): Boston, Mass / Case Number: 03-10296

United States vs. David Seymour: November 3, 2005
(Jury Trial): Boston / U.S. District Court Case Number 03-10296-JLT)

State of Maine vs. Tina Bickart: June 12-13, 2007
(Jury Trial): Alfred, Maine (Palmar Crease Identification)

Robert Cestaro vs. Oregon State Police: March 28-29, 2007
(Jury Trial): Eugene, Oregon