UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-10521-GAO

BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,

Plaintiff

v.

TOWN OF AYER, NANCY TAYLOR-HARRIS, in Her Individual Capacity, ARTHUR BOISSEAU, In His Individual Capacity, BUDDY DECOT, In His Individual Capacity, WILLIAM ADAMSON, in His Individual Capacity, PHILIP L. CONNORS, in His Individual Capacity, and JOHN DOE and JANE DOES 1-16, in Their Individual Capacities,

Defendants

DEFENDANTS' PARTIAL OBJECTION TO MAGISTRATE DEIN'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO STRIKE PLAINTIFF'S POLYGRAPH AND DNA EXPERTS

Now come the defendants to the above-captioned case, pursuant to 28 U.S.C. §636(b)(1) and Fed.R.Civ.P. 72(a), and hereby respectfully submit this partial objection to Magistrate Dein's Report and Recommendation on Defendants' Motions to Strike Plaintiff's Polygraph and DNA Experts. Specifically, the defendants object to the language of the proposed jury instruction concerning the relevance of polygraph testimony arising out of defendants' motion to strike plaintiff's polygraph expert and to the denial of defendants' motion to strike plaintiff's DNA experts.

As grounds for said objection, the defendants state that the proposed instruction goes too far in negating the probative value of polygraph testimony. The defendants further state that the objection to the denial of defendants' motion to strike DNA experts places squarely before the trial judge the issue of whether "actual innocence" evidence is admissible in this action, even for

the limited purpose of proving damages, particularly where plaintiff has identified a psychiatric expert for this purpose. This issue has yet to be addressed in the First Circuit.

As further grounds for this partial objection, the defendants rely on the within Memorandum of Reasons.

MEMORANDUM OF REASONS

I.   STATEMENT OF FACTS

In this action the plaintiff, Betty Anne Waters, as the Administratrix of the Estate of Kenneth Waters, asserts that her brother, Kenneth Waters ("Waters"), was wrongfully arrested and convicted, and served nineteen years of a life sentence, for the 1980 murder and armed robbery of Katherina Brow. Waters was released from prison following the filing of a nolle prosequi in which the District Attorney acknowledged that new DNA evidence had revealed the blood of an unknown person at the murder scene, but did not acknowledge Waters' innocence. Waters subsequently died as the result of an accident. The plaintiff has brought claims against the Town of Ayer, two of its former police chiefs and several of its police officers alleging, in essence, that the defendants violated Waters' rights under 42 U.S.C. § 1983 and state law by arresting and prosecuting him without probable cause and by fabricating incriminating evidence and suppressing exculpatory evidence (Magistrate's Report, pp. 1-2).

II.  ARGUMENT

   A.   Standard of Review

Pursuant to 28 U.S.C. §636(b)(1)(A) and Fed.R.Civ.P. 72(a), a district judge of this Court may designate a magistrate judge to hear and determine any nondispositive pretrial matter pending before the court. A magistrate judge to whom such a matter is referred shall promptly decide the matter and enter a written order into the record. Within ten (10) days of entry of such

order, any party aggrieved by the magistrate's decision may serve and file objections to the order. Rule 2, Rules for United States Magistrates in the United States District Court for the District of Massachusetts.  In addition, a district judge may designate a magistrate to conduct a hearing as to dispositive matters and to submit to the district judge proposed findings of fact and recommendations for disposition by the district judge of the court.  28 U.S.C. §636(b)(1)(B).

The statute sets forth two standards for review of a magistrate's decision by the District Court.  The rulings and orders made by a magistrate judge on nondispositive pretrial matters are subject to reconsideration by the judge of the district court and may be set aside if found to be clearly erroneous in fact or contrary to law. 28 U.S.C. §636(b)(1)(A); Princiotta v. New England Telephone and Telegraph Company, Inc., 532 F.Supp. 1009, 1011 (D.Mass. 1982).  In contrast, when a magistrate considers a dispositive motion, she is limited to making proposed findings of fact and recommendations to the district judge, and, under such circumstances, the district judge is permitted to make a *de novo* determination of those portions of the magistrate's recommendations to which a party timely objects. 28 U.S.C. §636(b)(1); Yang v. Brown University, 149 F.R.D. 440, 442 (D.R.I. 1993).  In making this *de novo* determination, the court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1).

In this matter, although the defendants' Motions to Strike are not dispositive of this case, the Magistrate chose not to issue a decision on such motions as is authorized by 28 U.S.C. §636(b)(1)(A).  Instead, presumably on the basis that defendants' motion to strike DNA experts presents "first impression" issues in the First Circuit concerning the admissibility of "actual innocence" evidence, the Magistrate chose to issue a Report and Recommendation for final

disposition of the matter by the trial judge. As such, the Magistrate's proposed findings and rulings are subject to *de novo* review by this Court.

> B.  Defendants Object to the Language of the Magistrate's Instruction as to the Relevance of Polygraph Evidence

For purposes of disposition of the defendants Motion to Strike only, the defendants accept the findings of fact set forth by the Magistrate on pages 8-10 of her recommendation. The defendants also do not object to the Magistrate's decision insofar as it excludes the proffered polygraph evidence. The defendants do, however, object to the instruction proposed by the Magistrate because it goes too far in negating the probative value of polygraph results. In support of this objection, the defendants rely upon and expressly incorporate herein the facts and arguments set forth in Defendants' Motion to Strike the Plaintiff's Polygraph Expert (Dkt #104). The defendants further state that, although the Magistrate correctly determined that the polygraph examination results at issue would be admissible for the limited purpose of establishing probable cause, the proposed limiting jury instruction goes too far in negating the probative value of polygraph results. Specifically, the defendants object to the bolded portion of the Magistrate's proposed instruction as follows:

> You are instructed that the evidence regarding Ms. Marsh's 1982 polygraph examination may only be considered for the limited purpose of deciding whether or not the defendants had probable cause to arrest Mr. Waters. **The reliability of polygraph examinations has not been established and courts have long considered polygraph evidence to be of questionable value in determining the guilt or innocence of a defendant or the credibility of a testifying witness. In Massachusetts, polygraph evidence is considered by the courts to be unreliable and it is inadmissible in criminal trials either for substantive purposes or for corroboration or impeachment of testimony.** Therefore, while you may consider Officer Taylor's knowledge of the results of Ms. Marsh's polygraph examination in your assessment whether there was probable cause to arrest Mr. Waters in 1982, you are not to consider the polygraph evidence for the purpose of determining whether Ms. Marsh was truthful in 1982 or whether she is telling the truth now.

The defendants suggest that, if such a limiting instruction is necessary at all, it should provide that while polygraph examinations have not been universally accepted, at the time of Waters' arrest in 1982, the Supreme Judicial Court ruled that polygraph examinations may be "useful as an investigatory aid." See Baker v. City of Lawrence, 379 Mass. 322, 329 (1979); see, also Commonwealth v. Scanlon, 9 Mass.App.Ct. 173, 179-80 (1980) (use of polygraph to bolster credibility of informant did not render warrant invalid); Commonwealth v. Donahue, 430 Mass. 710, 714, n. 1 (2000) (inclusion of defendant's polygraph result in search warrant application did no render affidavit invalid where there was no evidence that the results were intentionally falsified or stated with reckless disregard as to their accuracy). By citing to the fact that polygraph results are not admissible in criminal trials, a proposition that was not established by the Supreme Judicial Court until after Waters' criminal trial, the Magistrate is inviting the jury to conclude that Officer Taylor was unreasonable in relying on the results. Such an inference is not supported by the case-law. Therefore, if the Court finds that any instruction on the admissibility of the polygraph evidence is warranted, the bolded portions of the proposed instruction should be stricken.

    C.    Defendants Object to the Magistrate's Denial of the Defendants' Motion to Strike DNA Experts

The defendants do not object to the Magistrate's decision insofar as it excludes the proffered DNA evidence from the liability phase of this case. In this regard, the Magistrate's decision was correct that "as a matter of law the constitutionality of the defendants' conduct does not rise or fall on Waters' guilt or innocence." (Magistrate's Decision, p. 18). The defendants do, however, object to the Magistrate's finding that such evidence should be admitted for purposes of assessing the plaintiff's damages claim, on the speculative theory that a wrongfully

incarcerated innocent man is entitled to greater damages than one whose conviction was overturned on a technicality.[1]  In support of this objection, the defendants rely upon and expressly incorporate herein the facts and arguments set forth in Defendants' Motion to Strike the Plaintiff's DNA Experts (Dkt #103).  As further grounds for this objection, the defendants rely on the following arguments.

        1.        Evidence Relating to DNA to Support an Actual Innocence Argument is not Relevant to the Plaintiff's Damages Claim

To the extent the plaintiff seeks to support her allegations of constitutional violations by asserting Waters' actual innocence, as established through expert testimony concerning DNA evidence, such evidence is completely irrelevant to the underlying action and should not be allowed.  See Baker v. McCollan, 443 U.S. 137, 145 (1979) (finding that respondent's innocence of the charge contained in the warrant was largely irrelevant to his claim of deprivation of liberty without due process of law"); see also DeToledo v. County of Suffolk, 379 F.Supp.2d 138, 144 (D.Mass. 2005) (undisputable innocence of detainees not dispositive in §1983 action for deprivation of liberty).  Instead, to the extent that issues related to Waters' actual innocence are relevant background, plaintiff needs to show no more than the following facts:  DNA evidence established that Waters was not the source of non-victim blood at the murder scene; on that basis he filed a motion for a new trial; the motion was not opposed; and the District Attorney declined further prosecution through a nolle pros.  As acknowledged by the Magistrate, the actual guilt or innocence of Waters is not relevant to a determination of the defendants' constitutional violations; therefore extensive scientific testimony from DNA experts concerning DNA testing, procedure, and results are irrelevant and should be excluded.  See Newsome v. McCabe, 2002

---

[1] With respect to the Magistrate's recommendation that this issue could be resolved through a stipulation to certain facts, the defendants wish the Court to know that they are willing to enter into such a stipulation, provided that the stipulation is expressly contingent upon exclusion of expert DNA testimony at summary judgment and trial.  To date, the plaintiff has been unwilling to agree to this condition.

WL 54725 *6 (N.D. Ill. 2002) (stating that issue of whether plaintiff was guilty or innocent of the crime was not relevant to §1983 action for wrongful conviction where jury had evidence of a pardon).

The Magistrate found that DNA expert testimony tending to show Waters' actual innocence is relevant to the within action only insofar as it has bearing on Waters' psychological state while incarcerated and the damages claimed by the plaintiff. The defendants submit that this finding, unsupported by any First Circuit precedent, is erroneous. Any consideration of the effect of Waters' actual innocence on his mental state is speculative, confusing and unnecessary in this instance, as the plaintiff has proffered the testimony of a Forensic Psychiatric Expert, Dr. Jerome Rogoff, M.D. ("Dr. Rogoff") to testify to the actual psychological state of Waters. Dr. Rogoff's report [Exhibit "C" to the defendants' Motion to Strike], which draws on review of prison medical and psychological records as well as interviews with Waters' family members, sets forth his opinion as to the actual impact of incarceration on Waters' mental state. Therefore, extensive expert testimony concerning DNA evidence for the purpose of establishing Waters' actual innocence would only serve the purpose of allowing wild jury speculation, in the face of actual psychological expert testimony, as to the impact of Waters' incarceration on his mental state.

For these reasons, this Court should strike the proffered testimony of Dr. Blake and Dr. Sinha concerning DNA evidence as irrelevant and inadmissible.

    2.    <u>The Risk of Prejudice to the Defendants is not Cured by a Limiting Instruction</u>

Even were this Court to concur that the DNA evidence proffered by Dr. Blake and Dr. Sinha is relevant on the issue of damages, it should nonetheless exclude the DNA evidence

7

pursuant to Federal Rules of Evidence Rule 403 as unfairly prejudicial, misleading to the jury, and a waste of time.

Pursuant to FRE 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  The notes to the 1972 Proposed Rule provide that 'Unfair prejudice' within this context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  FRE Rule 403 Notes.

In considering whether to exclude evidence pursuant to Rule 403, the Court must weigh the prejudicial effect against the probative value of admitting the testimony to determine whether the risk of unfair prejudice substantially outweighs the probative value.  United States v. Aguilar-Aaranceta, 58 F.3d 796, 800 (1st Cir. 1995).  In United States v. Buchanan, 964 F.Supp.533 (D.Mass. 1997), the Court addressed the balancing requirement of Rule 403 in a two-part test by looking at "how strong a tendency" the proffered evidence has to prove the issue of consequence in the litigation, and "the proponent's need for the evidence".  Id., citing United States v. Beechum, 582 F.2d 898, 914,-915 (5th Cir. 1978); United States v. Spletzer, 535 F.2d 950, 956 (5th Cir. 1976).

In the within action, the evidence is clearly more prejudicial than probative in that it has absolutely no tendency to prove the issues of consequence in the litigation, and the plaintiff has demonstrated no compelling need for the evidence.  As discussed in the preceding section, at issue in this trial is whether the defendants violated Waters' constitutional rights by their actions in the 1980's.  Although DNA testing was not available at that time, such testing was later performed and Waters was subsequently released from prison.  To allow the plaintiff to submit

extensive expert testimony concerning those DNA results, which evidence was unavailable to the defendants and can have no bearing on the defendants' alleged constitutional violations, would be unfairly prejudicial to the defendants. Unquestionably, cases involving issues of wrongful conviction in which an individual claims to have been unjustly deprived of his liberty are fraught with emotion. In order for the defendants to have a fair trial, this court should exclude evidence which tends to show actual innocence, as that finding has no bearing on whether or not the defendants acted appropriately on the basis of information and evidence available to them at the time of arrest and conviction.

Furthermore, admission of expert testimony concerning DNA evidence would unquestionably "muddle the issues" and lead to jury confusion. Williams v. Drake, 146 F.3d 44, 48 (1st Cir. 1998). In Williams, the court considered a decision by a magistrate to exclude evidence of an inmate's guilty plea to a prison disciplinary charge of inflicting bodily injury on an officer where the underlying action involved a §1983 claim by the inmate against correctional officers for use of excessive force. The Court determined that the evidence was properly excluded where it would have "created an unwarranted sideshow, drawing attention from the main event." Id. Similarly, in this instance, the central issue of whether the defendants violated Waters' constitutional rights is separate and distinct from the issue of whether Waters was actually innocent or whether the DNA evidence completely exonerated him of the charges. In fact, the jury need not consider the question of Waters' actual innocence at all. Thus, to present expert testimony of DNA evidence for the purpose of proving innocence unquestionably muddles the central issue and draws attention away from the limited constitutional issues before the jury.

Specifically, even with a limiting jury instruction, it is a real possibility that a jury will conclude on the basis of sympathy that, if DNA technology unavailable at the time of Waters' prosecution establishes his "actual innocence," then his conviction must have been the result of some police misconduct. Indeed, the plaintiff acknowledges that she intends to use the DNA evidence for this purpose (see, Plaintiff's Opposition, p. 14). This is not a proper basis for adjudicating this case. It is well-settled that the "Constitution does not guarantee that only the guilty will be arrested. If it did, §1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released." Baker, 443 U.S. at 145. Thus, the defendants are not subject to liability merely because a later developed technology suggests that Waters was innocent. Rather, the defendants' liability must be based on some action or inaction by the defendants that ran afoul of the Constitution during the relevant time period. Based on the arguments advanced by the plaintiff, there is a real risk that DNA evidence admitted for damage purposes will "spill over" into and taint the jury's liability deliberations provides a further basis for rejecting the Magistrate's recommendation.

To allow the admission of the expert reports and expert testimony on DNA evidence will also be a substantial waste of time and judicial resources. As discussed above, Waters was arrested and tried before DNA evidence existed; thus the original jury did not consider DNA evidence and there is no allegation that DNA evidence was withheld from the original jury. Thus, for purposes of determining whether the defendants violated Waters' constitutional rights, the jury should only consider the evidence that was available at the time of Waters' arrest and trial and should not consider any testimony concerning later DNA evidence, in the interest of judicial economy. If the Court concurs that this evidence has limited probative value in the assessment of damages, the defendants suggest that the only measure to adequately protect

10

against jury confusion would be to bifurcate the trial into two phases, a liability phase and a damages phase.

III.    CONCLUSION

For the foregoing reasons, the Magistrate's recommended decision should be altered, as stated above.

> DEFENDANTS,
>
> By their attorneys,
>
> /s/ Gregg J. Corbo
> Joseph L. Tehan, Jr. (BBO # 494020)
> Gregg J. Corbo (BBO # 641459)
> Kopelman and Paige, P.C.
>   Town Counsel
> 101 Arch Street, 12th Floor
> Boston, MA  02110
> (617) 556-0007

334129/AYER-WATERS/0053