UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,<br><br>          Plaintiff,<br>v.<br><br>TOWN OF AYER, NANCY TAYLOR-HARRIS, in her individual capacity, ARTHUR BOISSEAU, in his individual capacity, BUDDY DECOT, in his individual capacity, WILLIAM ADAMSON, in his individual capacity, PHILIP L. CONNORS, in his individual capacity, and JOHN DOE and JANE DOES 1–16, in their individual capacities,<br><br>          Defendants. | Case No. 04 10521 (GAO) (JGD)<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' PARTIAL OBJECTION TO MAGISTRATE DEIN'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO STRIKE PLAINTIFF'S POLYGRAPH AND DNA EXPERTS** |

Now comes Plaintiff Betty Anne Waters, by her counsel of record, and submits this opposition to Defendants' partial objection to Magistrate Dein's Report and Recommendation on Defendants' motions to strike Plaintiff's polygraph and DNA experts. In short, Defendants' objections must be denied because they misconstrue Magistrate Dein's decision, rehash nonsensical and meritless arguments, raise new issues for the first time, and seek to tip the careful balance Magistrate Dein established in proposing limiting instructions. As the underlying decision found, innocence, as proven by DNA evidence, pervades every aspect of this 42 U.S.C. § 1983 wrongful conviction lawsuit brought by a man who spent almost two decades in prison for a murder he did not commit, and therefore must be admitted. Likewise, the parties' interests are amply balanced by the proposed limiting instructions as to both the DNA evidence and the polygraph evidence.

# ARGUMENT

## I. The Magistrate's Report is Reviewable Under the Clearly Erroneous or Contrary to Law Standard

A magistrate's ruling on a motion to strike an expert's report is a nondispositive evidentiary ruling reviewed pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure. *See Villafana v. Auto-Owners Ins.*, Civ. 06-0684-WS-B, 2007 WL 1810513, at *1 (S.D. Ala. June 22, 2007) ("[T]he weight of authority holds that a magistrate judge's order that excludes a plaintiff's expert from testifying is not a dispositive ruling." (collecting cases)). Defendants, in fact, concede that their "Motions to Strike are not dispositive of this case." (Docket No. 140, Defs. Objection at 3.) As such, the district court judge can only "set aside the magistrate's ruling if he finds it to be 'clearly erroneous or contrary to law.'" *Pagano v. Frank*, 983 F.2d 343, 346 (1st Cir. 1993) (quoting 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)). "[U]nder this standard, a district court should only overturn a magistrate's order when 'left with the definite and firm conviction that a mistake has been made.'" *United States v. Mehta*, 236 F. Supp. 2d 150, 154 (D. Mass. 2002) (quoting *Weeks v. Samsung Heavy Industries Co.*, 126 F.3d 926, 943 (7th Cir. 1997)).

Despite their own admission that the motions to strike are not dispositive of Plaintiff's case, Defendants claim that this Court must conduct a *de novo* review of the Magistrate's ruling simply because the Magistrate stylized her decision as a "report and recommendation" rather than a final order. Defendants are mistaken. The relevant inquiry centers on whether the motion is dispositive, not the title of the Magistrate's decision. *See Donato v. Rhode Island Hosp. Trust Nat. Bank*, 52 F. Supp. 2d 317, 323 (D. R.I. 1999) (reviewing magistrate's report and recommendation on nondispositive motion to remand under "clearly erroneous or contrary to law" standard). It is undisputed that the motions at issue here are nondispositive and, thus, the appropriate standard of

review is "the clearly erroneous or contrary to law" standard pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a). Under either standard of review, however, Magistrate Dein's decision is factually and legally correct and should be fully adopted by this Court.

## II. Magistrate Dein Correctly Held that the DNA Evidence and Innocence Is Relevant to Both Liability and Damages

### A. DNA and Innocence are Relevant to Liability

Defendants incorrectly claim that the Magistrate's decision "excludes the proffered DNA evidence from the liability phase of this case." (Defs. Objections at 5.) Nowhere in Magistrate Dein's decision does she state that Plaintiff's DNA evidence should be excluded entirely from consideration of Defendants' liability, nor does she ever state that the DNA evidence is irrelevant to Plaintiff's claims. Quite the contrary: Magistrate Dein unequivocally held that innocence is relevant to Plaintiff's claims: "[T]his court concludes that while a finding of innocence may not be necessary to establish liability with respect to plaintiff's constitutional claims, *the plaintiff's assertion that Waters was innocent is relevant to those claims*." (Docket No. 136, Report & Recommendation ("R&R") dated Dec. 19, 2007 at 4 (emphasis added)); *see also* Fed. R. Evid. 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

Defendants themselves have implicitly conceded the relevance of Plaintiff's DNA evidence to the issue of liability, repeatedly asserting that:

> ... to the extent that issues related to Waters' actual innocence are relevant background, plaintiff needs to show no more than the following facts: DNA evidence suggested that Waters was not the source of non-victim blood at the murder scene, on that basis he filed a motion for a new trial; the motion was not opposed; and the District Attorney declined further prosecution through a *nolle pros*.

(Defs. Mtn. at 7; Defs. Objection at 6.)  In light of their own admission as to the relevance of the DNA evidence, Magistrate Dein correctly recognized that Defendants had no valid basis for their motion to strike Plaintiff's DNA experts.[1]

As detailed in Plaintiff's memorandum in opposition to Defendants' motion, (*See* Docket No.114 at 10–15), which is relied upon in full and expressly incorporated herein, Magistrate Dein's holding is consistent with the law on this matter.  Indeed, courts uniformly recognize that where, as here, "[t]he fundamental premise of this claim is that Mr. [Waters] is, in fact, innocent of those crimes for which he was convicted," evidence of innocence is relevant to both damages and liability. *Evans v. City of Chicago*, 231 F.R.D. 302, 309-10 (N.D. Ill. 2005).[2]  To our knowledge, the only two courts ever to bar evidence of innocence in wrongful conviction cases alleging 14th Amendment violations were reversed on appeal.  In a case Plaintiff's counsel recently litigated, the district court's in limine ruling barring evidence of actual innocence was summarily reversed in an extraordinary pre-trial mandamus order.  *See In re Herman Atkins*, No. 06-74094 (9th Cir. Aug. 22, 2006) (Slip op.) (holding that "[e]vidence of actual innocence is both relevant and not subject to

---

[1] Defendants also claim to be willing to enter into a stipulation regarding the DNA evidence. Defendants purported willingness to stipulate to the DNA facts belies their claim that such facts are irrelevant.  In any event, Plaintiff has attempted to negotiate a stipulation on the forensic facts for over a year, only to be rebuffed by Defendants.  Defendants' refusal to enter into a stipulation caused Plaintiff to retain DNA experts at great expense to Plaintiff.  Even now, pursuant to Magistrate Dein's suggestion that the parties enter into a stipulation on the DNA evidence, Defendants are only willing to stipulate to limited portions of the DNA evidence while simultaneously seeking to exclude Plaintiff from presenting the remaining evidence, namely Dr. Sinha's report excluding all of Mr. Waters' maternal relatives, including his brother Leroy Waters as the source of the blood, at trial.  Magistrate Dein has ruled that all the DNA evidence, including Dr. Sinha's report, is relevant.  Thus, Defendants' claim that they are willing to enter into a stipulation regarding the DNA evidence is misleading.

[2] The case cited by Defendants (Defs. Objections at 6), *DeToledo v. County of Suffolk*, found that the fact of innocence "is not dispositive," but implicitly found it relevant by considering evidence of innocence before refusing to dismiss the deprivation-of-liberty claim.  379 F. Supp.2d 138, 144 (D. Mass. 2005).

exclusion under Rule 403.") (Pl. Opp., Ex. 1).

In *Moran v. Clarke*, a § 1983 malicious prosecution and due process action, the district court had "excluded significant amounts of evidence on the basis that it ran to the issue of whether [the plaintiff] was actually innocent." 296 F.3d 638, 649 (8th Cir. 2002). Despite finding that such evidence was irrelevant to the existence of probable cause, the Eighth Circuit nonetheless reversed, finding that the "evidence should have been received" insofar as it was "probative both to prove [plaintiff's] innocence and also to establish the very questions at issue in this case." *Id.* at 650. Just as in *Moran*, this case presents many legal questions aside from probable cause. As Magistrate Dein correctly recognized, innocence is relevant to all of them. (*See* R&R at 4.)

### B.     Magistrate Dein Correctly Held that the DNA Evidence Is Critical to Plaintiff's Damages Case

Defendants have made no credible argument challenging, much less undermining, Magistrate Dein's well-reasoned conclusion the DNA evidence and the fact of Mr. Waters' actual innocence generally is "highly relevant to the issue of damages," (R&R at 19). Indeed, Defendants cite no case law in support of their claim that Magistrate Dein's decision is somehow "erroneous," nor can they. As Magistrate Dein observed, "[t]here can be little dispute that the release of a person who was innocent is qualitatively different in the eyes of the public from the release of a guilty person on a 'technicality.'" (R&R at 19–20 (quoting *Lopez v. City of Chicago*, No. 01 C, 2005 WL 563212, at *8 (N.D. Ill. Mar. 8, 2005).)

In fact, as Magistrate Dein correctly recognized, both common sense and legal authority lead the inescapable conclusion that the emotional distress suffered by an innocent person for being arrested, tried, convicted, imprisoned and branded as a murderer for a crime he did not commit are exponentially higher than any damages suffered by a factually guilty plaintiff whose procedural trial

5

rights were violated. *See Lopez*, 2005 WL 563212, at *8 (holding that evidence of another person's confession was "relevant to allow an inference that [the plaintiff] was innocent and thus suffered the anguish during detention that an innocent person would suffer when wrongfully accused of a crime" as opposed to inference that the plaintiff was "simply released because the police could not collect enough evidence"); *Carter v. City of Philadelphia*, No. Civ. A. 97-4499, 2000 WL 1016653, at *2 (E.D. Pa. July 12, 2000) ("[T]he issue of whether or not a civil plaintiff committed the underlying criminal act is central to the measure of damages for a wrongful imprisonment claim . . . . [A] reasonable jury could conclude that an innocent person serving a jail term is likely to feel more emotional anguish than a guilty person who know that he, in fact, committed the crime, but may have an avenue of relief available to him because of police misconduct."); *see also Limone v. United States*, 497 F. Supp. 2d 143, 227, 243 (D. Mass. 2007) ("Framing innocent men for a capital crime, prolonging their suffering for decades while they made futile attempt after attempt to win their freedom, thwarted at every turn – these are acts beyond all bounds of decency ... The plaintiffs – who knew themselves to be innocent – were wrongfully convicted. [. . .] There is no way to describe that kind of horror than as so severe and of such a nature that no reasonable person could be expected to endure it. [ . . .] Losses of this magnitude are almost impossible to catalogue.").

Unable to challenge the overwhelming legal authority establishing that innocence is relevant to damages, Defendants instead rehash their nonsensical argument that evidence of actual innocence is irrelevant *in light of* the expert report of psychiatrist Dr. Jerome Rogoff, in which he opines that Mr. Waters suffered immeasurably *as a result of his incarceration for a crime he did not commit,* ((*See* Rogoff Rpt., Docket No. 103-4 (Mtn. Ex. "C")). Separate and apart from the DNA evidence, Dr. Rogoff's report represents evidence of the psychological injuries suffered by Mr. Waters while

6

he was imprisoned as an innocent man. Yet, Defendants have not moved to strike Dr. Rogoff's report on the basis of relevance or on any other ground for that matter. Indeed, Dr. Rogoff is the only one of Plaintiff's experts that Defendants have not moved to strike. Given that they have apparently conceded the relevance of Dr. Rogoff's report, they must acknowledge that the DNA evidence on which he relies is also relevant to damages.

      **C.    Mag. Dein Properly Found that the Highly Probative Nature of the DNA Evidence Outweighs Any Risk of Prejudice, and the Proposed Limiting Instruction More Than Cures Any Risk of Prejudice to Defendants**

The crux of Defendants' argument appears to be that the highly probative evidence of Plaintiff's innocence should be barred as "unfairly prejudicial, misleading... and a waste of time." (Defs. Objections at 8.) However, as Plaintiff argued before the Magistrate and expressly incorporated herein, (Pl. Opp. at 15–18), Defendants have failed to articulate how they will be prejudiced at all, much less "unfairly" prejudiced by the admission of evidence of innocence, or that any unfair prejudice "substantially outweighs" the probative value of the evidence at issue. In fact, the unfair prejudice to Plaintiff if the DNA evidence were not admitted in evidence vastly outweighs any unfair prejudice to the Defendants if Magistrate Dein's opinion stands.

Defendants' argument is premised on their false characterization of Magistrate Dein's conclusion regarding the relevance of the evidence of innocence. Defendants absurdly claim that the DNA evidence "has absolutely no tendency to prove the issues of consequences in the litigation, and the plaintiff has demonstrated no compelling need for the evidence." (Defs. Objections at 8.) As explained above, Defendants' claim completely disregards Magistrate Dein's determination that the DNA evidence and Mr. Waters' innocence more generally is relevant to issues of liability and damages. (*See* R&R at 4 ("[T]his court concludes that while a finding of innocence may not be

necessary to establish liability with respect to plaintiff's constitutional claims, *the plaintiff's assertion that Waters was innocent is relevant to those claims*.") (emphasis added).)  In fact, Defendants ignore their own repeated concession that the DNA evidence is relevant.  Moreover, not only did Magistrate Dein find that innocence is relevant, but she concluded that "[t]he question of Waters' innocence underlies the plaintiff's theory of the case as a whole" and that "a fundamental premise of the plaintiff's claims is that Waters was innocent."  (R&R at 19.)

Absent the DNA evidence, *particularly given the fact that Mr. Waters is deceased and cannot tell his own story*, Plaintiff will not be able to present this undisputably critical aspect of the case to the jury.  Thus, the DNA evidence clearly satisfies the probative value prong of Rule 403.  *See United States v. Buchanan*, 964 F. Supp. 533, 537 (D. Mass. 1997) ("In evaluating probative value [the Court is] obliged to consider first 'how strong a tendency' the proffered evidence has to prove the issue of consequence in the litigation, and second, the proponent's need for the evidence." (internal citations omitted)).  Indeed, barring the DNA evidence from trial will not only deprive the jury from reviewing highly probative evidence, but, as Magistrate Dein recognized, it "'would be 'highly prejudicial' to the plaintiff as it would 'invite[] the jurors to draw the impermissible inference that he was actually guilty, and, thus, absolve defendants of any misconduct." (R&R at 21) (quoting *Newsome v. McCabe*, No. 96C 7680, 2002 WL 548725, at *6 (N.D. Ill. Apr. 4, 2002).)

Given the undisputed fact that the DNA evidence is not only highly probative, but critical and necessary to Plaintiff's case, Defendants' claim that it will unfairly prejudice them by "muddl[ing] the central issue and draw[ing] attention away from the limited constitutional issues before the jury," (Defs. Objection at 9), is completely meritless.  The fact that Mr. Waters was wrongly convicted and suffered in prison as an innocent man is the central premise of Plaintiff's

case against Defendants. It is not a "sideshow," as Defendants so callously put it, (*id.* at 9), it is the fundamental basis for this lawsuit and Plaintiff's damages.

The only other potential risk of prejudice identified by Defendants is more than cured by Magistrate Dein's limiting instruction and adequate cross-examination. Defendants claim that expert testimony on DNA technology, which was unavailable to Defendants in 1983, may inaccurately suggest that the DNA results were available at the time of Mr. Waters' conviction. Plaintiff's counsel has repeatedly gone on record stating their intention to stipulate to this fact and otherwise to make it clear to the jury. Further, Magistrate Dein recommended the following limiting instruction: "[T]he DNA evidence may not be considered in evaluating the defendants' conduct in connection with Waters' arrest and conviction, since it was not available at the time, but it may be considered in connection with the plaintiff's claim that Waters' was innocent of the crime charged." (R& R at 21.) Defendants fail to make any argument explaining why this limiting instruction is inadequate and simply assume that the jury will be unable to follow the Court's order. In fact, courts "presume that jurors will follow clear instructions to disregard evidence 'unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *United States v. Portela*, 167 F.3d 687, 701 (1st Cir. 1999) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (citations omitted)); *see also United States v. Rullan-Rivera*, 60 F.3d 16, 18 (1st Cir. 1995) ("[T]he normal presumption-that juries follow the court's instructions-can be rebutted only on a sufficient showing that the offending testimony reasonably could not have been ignored and that serious prejudice likely resulted."). Defendants have made no such showing and, thus, have failed to rebut the presumption that the jury will in fact follow the limiting instruction set forth above.

### D. Defendants' Procedurally-Deficient Request for Bifurcation Should Be Denied

Defendants failed to raise the issue of bifurcation before the Magistrate and therefore must not be permitted to raise it now in the first instance. As Magistrate Dein never heard arguments on the matter nor issued a ruling on it, as a practical matter, there is no underlying decision for this Court to review under the clearly erroneous and contrary to law standard. Even if a *de novo* standard of review applies, which Defendants claim is applicable here, Defendants cannot raise a new issue before the district court that was "never seasonably raised before the magistrate." *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988). As repeatedly recognized by the First Circuit, "'[t]he purpose of the Federal Magistrate's Act is to relieve courts of unnecessary work." *Borden v. Sec'y of Health and Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (quoting *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980)). "It would defeat this purpose if the district court was required to hear matters anew on issues never presented to the magistrate." *Id.* Here, Defendants had every opportunity to raise the bifurcation issue before the Magistrate and failed to do so. They cannot seek such relief from this Court through their objections to the Magistrate's decision.

In any event, bifurcation of this case into separate liability and damages phases is neither necessary nor appropriate in this case and would in fact highly prejudice Plaintiff's case. "It is for the proponent of bifurcation to prove the merits of applying the procedure to a given case." *Industrias Metalicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 2 (D. Puerto Rico 1997). "Bifurcation is not and should not be routine." *Id.* Under Rule 42(b), bifurcation is only appropriate if the Court deems it is necessary "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. Pro. 42(b). As explained above, Defendants' claim of prejudice disregards the fact that

evidence of Mr. Waters' innocence is the fundamental basis of Plaintiff's entire case, as Magistrate Dein correctly recognized. Given the curative effect of the Magistrate's limiting instruction, there will be no prejudicial effect of presenting the fact of Mr. Waters' innocence to the jury during trial. Any other claim of prejudice by Defendants is conclusory in nature and simply not sufficient to satisfy their burden under Rule 42(b). *Gonzalez-Marin v. Equitable Life Assur. Soc. of U.S.*, 845 F.2d 1140, 1146 (1st Cir. 1988) (finding insufficient motion for bifurcation that "contained conclusory allegations of prejudice without setting forth facts which would support a decision to exclude [evidence]").

Likewise, Defendants have made no credible argument regarding judicial economy, except to disregard what they have already repeatedly conceded, (Defs. Mtn. at 7; Defs. Objection at 6)—that the DNA evidence is in fact relevant to liability. Given Defendants' concession, it is clear that the DNA evidence will have to be presented at the liability phase of trial, as well as the damages phase. Such duplication of witnesses will only serve to waste resources and the Court's time. As such, Defendants have failed to establish that bifurcation will promote judicial economy. *See Industrias Metalicas Marva,* 172 F.R.D. at 2 ("[B]ifurcation may promote judicial economy by (1) rendering certain issues moot before vast resources are wasted litigating them; (2) reducing jury confusion; and/or (3) facilitating settlement." (internal citations omitted)). Not only is there no practical benefit to bifurcation, but any attempt to exclude evidence of innocence from the liability phase of a bifurcated trial will lead to an unjust result: it will preclude Plaintiff from presenting the truth to the jury in a case that was brought precisely to vindicate the constitutional rights violated by the unfair trial that originally resulted from Defendants' obstructions and lies. *See id.* ("Whatever procedure the court selects under Rule 42(b) 'should be conducive to expedition and economy,' and

in rendering that determination, '*the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation.*'" (internal citations omitted)).

### III. Magistrate Dein's Proposed Instruction Regarding the Polygraph Evidence Is Not Clearly Erroneous or Contrary to Law

Magistrate Dein's proposed jury instruction represents a compromise of the parties' respective positions on how to address Brenda Marsh's 1982 polygraph examination results. Anticipating that Defendants will attempt to undermine Marsh's description of Defendant Taylor's (and others') coercive and improper conduct by introducing into evidence Marsh's 1982 polygraph results, Plaintiff seeks to offer testimony of Dr. Honts, a polygraph expert. Plaintiff's expert, Dr. Honts, has opined that Marsh's 1982 polygraph examination was so flawed that an examiner would have known that it was not a trustworthy assessment of her credibility.

Magistrate Dein's Report and Recommendation, however, precludes Plaintiff from presenting expert testimony from Dr. Honts. Having precluded Dr. Honts from testifying, and in order to strike a fair balance on the polygraph question, Magistrate Dein proposed a jury instruction that is intended to address both sides' interests in the jury not misconstruing the meaning of Marsh's 1982 polygraph examination. Magistrate Dein observed that "[s]omething is needed to balance the risk to the plaintiff that a jury faced with evidence of Marsh's polygraph examination may improperly use it in assessing whether she was truthful at the time she implicated Waters in the Brow murder." (R&R at 11.).

Defendants, however, now seek to rewrite Magistrate Dein's proposed instruction, by carving out language that disturbs the very balance Magistrate Dein has attempted to achieve. Absent the language Defendants now seek to exorcise, the instruction would read (language Defendants' seek to strike is included in italics):

> You are instructed that the evidence regarding Ms. Marsh's 1982 polygraph examination may only be considered for the limited purpose of deciding whether or not the defendants had probable cause to arrest Mr. Waters. *The reliability of polygraph examinations has not been established and courts have long considered polygraph evidence to be of questionable value in determining the guilt or innocence of a defendant or the credibility of a testifying witness. In Massachusetts, polygraph evidence is considered by the courts to be unreliable and it is inadmissible in criminal trials either for substantive purposes or for corroboration or impeachment of testimony.* Therefore, while you may consider Officer Taylor's knowledge of the results of Ms. Marsh's polygraph examination in your assessment whether there was probable cause to arrest Mr. Waters in 1982, you are not to consider the polygraph evidence for the purpose of determining whether Ms. Marsh was truthful in 1982 or whether she is telling the truth now.

Most critically, Defendants' edited version removes the explanation as to why the jury must not consider the polygraph examination in assessing Marsh's credibility in the civil rights trial, and is therefore inadequate as redrafted. *See United States v. Varoudakis*, No. 97-10158-RGS, 1998 WL 151238, at *5 (D. Mass. Mar. 27, 1998) ("polygraph is imbued in the popular imagination with the aura of a 'lie detector'"). Absent this critical sentence, the jury will neither have the benefit of Honts' expert testimony nor any statement from the Court that could guard against the jury accepting Marsh's 1982 polygraph examination results as an absolute indicator of Marsh's truthfulness on the question of Waters' culpability for the Brow murder.

Additionally, Defendants' suggestion notwithstanding, the disputed language is an accurate statement of law regarding polygraph examinations. *See United States v. Catalan-Roman*, 368 F. Supp. 2d 119, 122 n.2 (D.P.R. 2005) (First Circuit generally does not admit polygraph evidence for its truth) (citing *United States v. Trenkler*, 61 F.3d 45, 58 (1st Cir. 1995)); *see also Commonwealth v. Mendes*, 406 Mass. 201, 206 (1989) (polygraph evidence inadmissible in criminal trials). While Defendants argue that any limiting instruction should be a statement of the law as it existed in 1982, this is erroneous. In her Report, Magistrate Dein acknowledged that there was no body of law regarding polygraph evidence in 1982. (R&R at 10). Magistrate Dein correctly determined that an

13

accurate statement of polygraph admissibility today is an appropriate substitute for the testimony of Dr. Honts, who would not only challenge Marsh's polygraph based on general reliability questions, but would identify specific issues with the Marsh examination that undermine completely any notion of reliability for that particular examination.

Finally, contrary to Defendants' assertion, the instruction as it currently exists will not prejudice the Defendants, and certainly puts them in a better position than if Honts were permitted to fully explain the problems with the 1982 Marsh examination. The Defendants contend Magistrate Dein's instruction invites the jury to conclude that Officer Taylor was unreasonable to the extent she relied on the polygraph examination results. (Defs. Objection at 5.) This contention is unfounded. Magistrate Dein's description of polygraph reliability is entirely neutral, i.e., the Court expresses no opinion as to its view of the specific examination of Marsh. Moreover, Magistrate Dein's instruction specifically informs the jury that they "may consider Officer Taylor's knowledge of the results of Marsh's polygraph examination in your assessment whether there was probable cause to arrest Mr. Waters in 1982" – which is exactly what Defendants want the jury to do in a favorable way. This Court must presume that the proposed instruction will be followed, and the Court should therefore leave undisturbed Magistrate Dein's attempt to provide an instruction that balances both parties interests and risks. *See, e.g., United States v. Pierre*, 484 F.3d 75, 85 (1st Cir. 2007) ("'We normally presume that a jury will follow an instruction'") (quoting *Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987)); *United States v. Lemmerer*, 277 F.3d 579, 593 (1st Cir. 2002) (same); *Pinkham v. Maine Cent. R.R. Co.*, 874 F.2d 875, 882 (1st Cir. 1989) (same).

Therefore, the Court should adopt Magistrate Dein's proposed instruction in its entirety as the disputed language is fair and necessary for the jury to properly consider Marsh's 1982 polygraph

examination results.

## CONCLUSION

For the foregoing reasons, Defendants' objections should be rejected in full and Magistrate Dein's Report and Recommendation of December 19, 2007 should be adopted in its entirety. Furthermore, Defendants' request for bifurcation should be denied as procedurally improper or, in the alternative, dismissed as meritless.

Dated: January 10, 2008  
        New York, NY

Respectfully submitted,

/s/ Deborah L. Cornwall_____  
Barry C. Scheck (BS 4612)  
Deborah L. Cornwall (DC 2186)  
Monica R. Shah (MS 9846)  
COCHRAN NEUFELD & SCHECK, LLP  
99 Hudson Street, 8th Floor  
New York, NY 10013  
Tel. (212) 965-9081 / Fax (212) 965-9084  

Robert N. Feldman (BBO # 630734)  
BIRNBAUM & GODKIN, LLP  
280 Summer Street  
Boston, MA 02210-1108  
Tel. (617) 307-6130 / Fax (617) 307-6101  

***Attorneys for Plaintiff Betty Anne Waters***

**CERTIFICATE OF SERVICE**

      I, Emily Gordon, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 10, 2008.

                                                                      /s/ Emily Gordon
                                                                       Emily Gordon