UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-10521-GAO

| | |
|---|---|
| BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,<br><br>Plaintiff<br>v.<br><br>TOWN OF AYER, NANCY TAYLOR-HARRIS, in Her Individual Capacity, ARTHUR BOISSEAU, In His Individual Capacity, WILLIAM ADAMSON, in His Individual Capacity and PHILIP L. CONNORS, in His Individual Capacity,<br><br>Defendants | MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARTHUR BOISSEAU'S MOTION FOR SUMMARY JUDGMENT |

I.    INTRODUCTION

On May 21, 1980, Katarina Brow ("Brow, Mrs. Brow") was found murdered in her home

at 7 ½ Rosewood Drive, Ayer, MA (Amended Complaint, ¶14).  The investigation of the murder

was conducted pursuant to G.L. c.38, §4 by the Middlesex District Attorney and the State Police

Department with the assistance of the Ayer Police Department (L.R. 56.1 Statement of Facts,

"S.O.F." ¶8).  The District Attorney's case file has been lost or inadvertently destroyed (S.O.F.,

¶6)

From the outset, plaintiff's decedent, Kenneth Waters ("Waters") was a person of interest

in the investigation (S.O.F., ¶15).  Waters was arrested by Ayer Police on October 12, 1982,

pursuant to directive of the prosecuting Assistant District Attorney (currently Massachusetts

Superior Court Associate Justice) Elizabeth Fahey (S.O.F., ¶78).

Waters was convicted of Mrs. Brow's murder on May 12, 1983 and incarcerated (S.O.F., ¶102). His conviction was affirmed on appeal to the Supreme Judicial Court (Commonwealth v. Waters, 399 Mass. 708 (1987).

In 2001, Waters filed an unopposed motion for a new trial, based solely upon DNA evidence not available at the time of his trial, which established that he was not the source of the non-victim blood found at the crime scene (although his blood type was the same) (S.O.F., ¶2). Thereafter, the Commonwealth filed a nolle prosequi which stated:

> Based upon new DNA evidence of the presence of blood of an unknown person at the scene of the 1980 murder of Katarina Brow, the Commonwealth has agreed that, at a minimum, a new trial of the above indictments is warranted.
>
> At this time, there is insufficient evidence to proceed with a criminal prosecution against the defendant, Kenneth Waters, and as such, the Commonwealth has determined that, at this time, a nolle prosequi is in the interests of justice. The Commonwealth's investigation into the murder of Katarina Brow was and will continue (S.O.F. ¶1).

Waters was released from prison but remained a suspect in the Brow murder up to the point of his own death, as a result of substantial, inculpatory, non-blood evidence developed at trial, as described in detail herein (S.O.F. ¶4). The investigation of the crime for purposes of determining whether to re-try Waters revealed no police misconduct nor was the nolle prosequi predicated upon any evidence of same (S.O.F. ¶5).

This case therefore proceeds not on the basis of any discovery of police misconduct leading to Waters' release. Instead, it reflects post hoc scrutiny of a conviction upheld on appeal by the Supreme Judicial Court in order to unfairly hold the defendants liable for monetary damages.[1]

---

[1]   Waters' prosecutor, Judge Fahey, is entitled to absolute prosecutorial immunity. None of the State Police Officials involved in the Brow prosecution have been sued.

As set forth hereinafter, the plaintiff has failed to establish actionable individual or

municipal misconduct leading to false arrest or an unfair trial, and defendants have produced

herein compelling affirmative evidence negating plaintiff's claims.  Consequently, the

defendants' motions for summary judgment should be allowed.

Specifically, there is no evidence establishing actionable misconduct attributable to Lt.

Arthur Boisseau ("Lt. Boisseau") leading to Waters' alleged false arrest or unfair trial.  In fact,

Lt. Boisseau has produced herein compelling affirmative evidence negating plaintiff's claims.

Indeed, contrary to plaintiff's allegations, Lt. Boisseau was not involved in the interviews of

Marsh or Perry or the arrest of Waters.  Significantly, Lt. Boisseau testified during Waters'

criminal trial regarding significant *exculpatory* evidence to support his defense (S.O.F. ¶102).

Consequently, Lt. Boisseau's motion for summary judgment should be allowed as to all counts

against him.

II.    FACTS

The facts underlying this case are set forth in the Defendants' Statement of Material Facts

Not in Dispute Pursuant to L.R. 56.1, filed herewith.

III.    ARGUMENT

**A**.    **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "In civil

procedure, summary judgment's role is "to pierce the pleadings and to assess the proof in order to

see whether there is a genuine need for trial." Mesnick v. General Elec. Co., 950 F.2d 816,

822 (1st Cir. 1991) (citing, Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990)).

In order to defeat a summary judgment motion, "the non-moving party must demonstrate the

existence of a genuine issue of material fact pertaining to those issues on which it would bear the

burden of proof at trial."  Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1171 (1st Cir.

1988).  Under Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987), summary judgment is

appropriate where the non-moving has the burden of proof and "fails to make a showing

sufficient to establish the existence of an element essential to that party's case."

As the First Circuit has held, "[g]enuine issues of material fact are not the stuff of an

opposing party's dreams. On issues where the nonmovant bears the ultimate burden of proof, he

must present definite, competent evidence to rebut the motion." Mesnick, 950 F.2d at 822.  For

summary judgment purposes evidence must be competent and "cannot be conjectural or

problematic; it must have substance in the sense that it limns differing versions of the truth which

a factfinder must resolve at an ensuing trial." Id. (citing, Mack v. Great Atl. & Pac. Tea Co., 871

F.2d 179, 181 (1st Cir.1989)).  As the plaintiff can make no such showing in this case, Lt.

Boisseau is entitled to summary judgment as a matter of law.

> **B.      Lt. Boisseau Is Entitled to Summary Judgment as to All Claims Set Forth
> Against Him In Count I Because He Was Not Personally Involved**

>> **1.      Lt. Boisseau Did Not Fail to Disclose Exculpatory Evidence or
>> Fabricate Inculpatory Evidence**

Although plaintiff alleges that Lt. Boisseau failed to disclose to the District Attorney

Waters' time cards from the Park Street Diner, statements made by Marsh and Perry that they

initially denied having any information about the murder, the fact that inculpatory statements by

Marsh, Perry and Global Van Lines were coerced, and facts relating to fingerprints, there is not

one scintilla of evidence to suggest that Lt. Boisseau was personally involved in any of these

matters.  Consequently, no Section 1983 liability may be imposed against Lt. Boisseau for such

acts. Gagliardi v. Sullivan, 513 F.3d 301 (1ˢᵗ Cir. 2008) (only those officials directly responsible for an injury causing action can be held liable under Section 1983).

Here, as noted, since Lt. Boisseau was not involved in the interviews of Marsh or Perry, nor was he involved in picking up the time cards from the Park Street Diner or conducting or receiving any information regarding fingerprint comparison, he clearly did not act in bad faith or consciously attempt to suppress exculpatory evidence. Indeed, Lt. Boisseau's only relevant involvement was to testify regarding *exculpatory* evidence at Waters' criminal trial (S.O.F. ¶102). Therefore, Lt. Boisseau is entitled to summary judgment as to plaintiff's Fourteenth Amendment claims as a matter of law.

### 2.    Lt. Boisseau Disclosed Exculpatory Evidence at Trial

As discussed, there is no evidence that Lt. Boisseau possessed any exculpatory evidence that was not disclosed. To the contrary, Lt. Boisseau was the source of the only evidence favorable to Waters that was introduced at trial, including providing Waters with a potential alibi defense for the morning of the murder. Specifically, at the criminal trial, Lt. Boisseau testified that did not observe a scratch on Waters' face the day after the murder when he participated in the interview of Waters (S.O.F. ¶102). He also testified that he saw Waters at the Ayer District Court at 11:00 a.m. the morning of the murder, providing Waters with a viable alibi. (Id.) Lt. Boisseau's testimony had the additional effect of impeaching Ms. Marsh's contrary trial testimony regarding the scratch on Waters' face and as to Waters' whereabouts on the morning of the murder. Further, he testified that Mrs. Brow's husband had identified the murder weapon as his. (Id.) Thus, for purposes of analyzing plaintiff's Fourteenth Amendment claims, the record is clear that Lt. Boisseau did not act with the requisite bad faith, engage in a conscious effort to suppress exculpatory evidence or fabricate inculpatory evidence. Indeed, the contrary is

true.  As such, Lt. Boisseau is entitled to summary judgment as to Count I for failure to establish

bad faith or intentional misconduct on his part, as required.  In this regard, Lt. Boisseau further

relies on the substantive argument set forth in Section III(B)(2) of the Memorandum in Support

of Nancy Taylor-Harris' Motion for Summary Judgment.

**C.    There is no evidence to support plaintiff's 4th Amendment Claims against Lt. Boisseau (Count II)**

**1.    The False Arrest Claim is Barred by Statute of Limitations**

By this point and even when the Amended Complaint was filed, it is clear that the false

arrest claim is barred by the applicable statute of limitations set forth by the Supreme Court's

decision in Wallace v. Kato, 127 S.Ct. 1091 (2007); see also Faust v. Coakley, 2008 WL 190769,

1 (D.Mass.2008).  Therefore, plaintiff's false arrest claim against Lt. Boisseau should be

dismissed as a matter of law.

**2.    Lt. Boisseau was not involved in the arrest of Kenneth Waters**

At the outset, Lt. Boisseau is entitled to summary judgment as to the *Franks v. Delaware*

claim for the detailed reasons set forth in Section III(C)(2) of the Memorandum in Support Chief

Connors' Motion for Summary Judgment and said arguments are expressly incorporated herein.

Specifically, it is clear that Lt. Boisseau did not apply for Waters' arrest warrant, nor was he

involved in the procurement of such warrant, which Officer Taylor-Harris applied for in

conjunction and with the approval of the Assistant District Attorney Fahey (S.O.F. ¶78).

Therefore, no liability may be imposed as a matter of law against Lt. Boisseau.

**3.    There is no viable malicious prosecution claim against Lt. Boisseau**

Lt. Boisseau is also not liable for the alleged malicious prosecution of Waters.  In this

case, it is clear that Lt. Boisseau did not proceed with "actual malice" to convict Waters, as he

provided the *only* exculpatory testimony during his trial to support Waters' defense.  As the First Circuit has held, "in order to state a cause of action for *malicious prosecution,* a claimant must allege: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice.  Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 (1st Cir. 1995) (citing, Landrigan v. City of Warwick, 628 F.2d 736, 745 n. 6 (1st Cir.1980)) (emphasis in original).  To prevail on a Section 1983 claim for malicious prosecution, a plaintiff must prove the elements of malicious prosecution under state law, and also demonstrate that "the misuse of the legal proceedings is so egregious as to subject the individual to a deprivation of a constitutional dimension."  Torres v. Superintendent of Police of Puerto Rico, 893 F.2d 404, 409 (1st Cir. 1990).

In this case, no liability may be imposed as a matter of law against Lt. Boisseau under a malicious prosecution theory, as it is undisputed that Lt. Boisseau played no role in the initiation or continuation of criminal proceedings initiated against Waters.  Indeed, the only aspect of the criminal proceedings that Lt. Boisseau was involved with during Mr. Waters' criminal trial was to present significant *exculpatory* evidence to the jury (S.O.F. ¶102).  Therefore, plaintiff's malicious prosecution claim against Lt. Boisseau should be dismissed as a matter of law.

### D.   Lt. Boisseau is entitled to qualified immunity.

Lt. Boisseau is entitled to qualified immunity because no reasonable officer would have believed that his minimal investigative work at the beginning of the Brow investigation (S.O.F. ¶¶16-17), long prior to Waters' arrest, or his provision of exculpatory trial testimony would have violated Waters' rights.  "Qualified immunity is an affirmative defense shielding public officials sued in their individual capacity from civil damages so long as their conduct does not violate any

7

clearly-established statutory or constitutional right of which a reasonable person would be aware." Rodriguez-Esteras v. Solivan-Diaz, 266 F.Supp.2d 270, 281 (D.P.R. 2003).  Courts apply a trifurcated inquiry to determine whether an official is entitled to qualified immunity. Hatch v. Department for Children, Youth and Their Families, 274 F.3d 12, 20 (1st Cir. 2001). First, courts will evaluate "whether the plaintiff has alleged the violation of a constitutional right. If so, we then ask whether the contours of the right were sufficiently established at the time of the alleged violation."  Only if the first two prongs are established, it is necessary to inquire whether an objectively reasonable official would have believed that the action taken or omitted violated that right.  Id.  (citing, Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 141 (1st Cir.2001)).

Here, as noted, the plaintiff cannot establish any constitutional violation attributable to Lt. Boisseau in connection with the Brow murder investigation, including the disclosure of exculpatory evidence, the alleged fabrication of evidence, or the alleged false arrest or malicious prosecution of Waters.  Specifically, Lt. Boisseau is entitled to qualified immunity because, at the time of Waters' arrest and prosecution, Lt. Boisseau took no actions which he would have known violated the Constitution, because none of his acts did.  In this case, Lt. Boisseau played no substantial role in the Brow murder investigation.  Plaintiff's Amended Complaint points to no direct action by Lt. Boisseau which violated Waters' constitutional rights.  Under the circumstances of this case, no reasonable official in Lt. Boisseau's position would have believed that his minimal role in the early stages of a murder investigation, in conjunction with State Police and the District Attorney's Office, and subsequent testimony at Waters' criminal trial regarding exculpatory evidence would have violated Waters' constitutional rights.  Therefore, Lt. Boisseau is entitled to qualified immunity.

**E.      Conspiracy, 42 U.S.C. §1983 (Count IV)**

In the Amended Complaint, Plaintiff claims that the Ayer defendants, including Lt.

Boisseau, "reached a mutual understanding and acted in concert to violate Mr. Waters' civil

rights."  (Amended Complaint, ¶92). "A civil rights conspiracy is commonly defined as 'a

combination of two or more persons acting in concert to commit an unlawful act, or to commit a

lawful act by unlawful means, the principal element of which is an agreement between the

parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in

damages.' " Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (citing, Hampton v. Hanrahan,

600 F.2d 600, 620-21 (7th Cir.1979), rev'd in part on other grounds, 446 U.S. 754 (1980)

(quoting, Rotermund v. United States Steel Corp., 474 F.2d 1139 (8th Cir.1973)).  "Purely

conclusory allegations of conspiracy are not adequate to state a claim, and [plaintiff] must

establish the existence of an agreement, express or tacit, between the individual Defendants to

deprive him of a specific federal right. Ousley, 313 F.Supp.2d at 85.

Here, there is no evidence that there was any agreement between the Ayer defendants,

including Lt. Boisseau, to conspire against Waters.  There is also no factual support that Lt.

Boisseau committed any "overt act" to further the alleged "conspiracy" to arrest and prosecute

Waters.  Indeed, Lt. Boisseau's actions at Waters' criminal trial as an alleged "co-conspirator"

would have actually thwarted the alleged conspiracy.  As discussed, Lt. Boisseau, testified at trial

regarding three *exculpatory* pieces of evidence (1) that there was no scratch on Waters face the

day after the murder; (2) that he observed Waters at Ayer District Court the morning of the

murder, which supported Waters' alibi; and (3) that Mr. Brow had identified the murder weapon

as his knife (S.O.F. ¶102).  The undisputed facts simply do not support plaintiff's allegations of a

conspiracy.  Therefore, as there is no evidence of any agreement or overt act involving Lt.

Boisseau for the alleged false arrest and malicious prosecution of Waters, he is entitled to summary judgment as to Count IV.

**F.    Lt. Boisseau is Entitled to Summary Judgment as to the Plaintiff's State Law Tort and Civil Rights Claims (Counts VII and VIII)**

In Count VII, plaintiff claims that Lt. Boisseau violated Waters' civil rights under the Constitution, the Massachusetts Declaration of Rights and Massachusetts' general laws "by coercing witnesses into fabricating evidence against him…by threats intimidation and coercion." (Amended Complaint, ¶¶102-103). In Count VIII, plaintiff further alleges that Lt. Boisseau is liable for malicious prosecution under state law for "acting with malice and without probable cause" by initiating Waters' arrest, fabricating evidence, and testifying before the grand jury and at trial. (Amended Complaint, ¶106).

For the reasons stated in Mitchell v. City of Boston, 130 F.Supp.2d 201, 214-15, 216 (D.Mass. 2001), the plaintiff's state law tort and civil rights claims under the Massachusetts Civil Rights Act accrued at the moment of Kenneth Waters' arrest in 1982, and as such, the statute of limitations for bringing such claims expired long before the plaintiff filed the Complaint in this case. Further, plaintiff's state law claims are patently frivolous against Lt. Boisseau as he was not involved in the interviews of Ms. Marsh or Ms. Perry; he did not initiate Waters' arrest; and the only involvement he had at trial was to testify regarding exculpatory evidence, and clearly did not act with threats, intimidation or coercion. See Planned Parenthood League of Massachusetts v. Blake, 417 Mass. 467, 474, 631 N.E. 2d 985, 990 (1994). Therefore, Lt. Boisseau is entitled to summary judgment as a matter of law as to Counts VII and VIII.

## IV.    CONCLUSION

For the foregoing reasons, Lt. Boisseau is entitled to summary judgment as a matter of

law as to Counts I, II, III, IV, VII and VIII.

<div style="margin-left:45%">

DEFENDANT ARTHUR BOISSEAU,

By his attorneys,

/s/ Joseph L. Tehan, Jr.
Joseph L. Tehan, Jr. (BBO # 494020)
Gregg J. Corbo (BBO # 641459)
Kopelman and Paige, P.C.
101 Arch Street, 12th Floor
Boston, MA  02110
(617) 556-0007

</div>

343804.4/AYER-WATERS/0053