UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-10521-GAO

BETTY ANNE WATERS, as Administratrix of the Estate of KENNETH WATERS,

Plaintiff

v.

TOWN OF AYER, NANCY TAYLOR-HARRIS, in Her Individual Capacity, ARTHUR BOISSEAU, In His Individual Capacity, WILLIAM ADAMSON, in His Individual Capacity and PHILIP L. CONNORS, in His Individual Capacity,

Defendants

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TOWN OF AYER'S MOTION FOR SUMMARY JUDGMENT

I. INTRODUCTION

On May 21, 1980, Katarina Brow ("Brow, Mrs. Brow") was found murdered in her home at 7 ½ Rosewood Drive, Ayer, MA (Amended Complaint, ¶14). The investigation of the murder was conducted pursuant to G.L. c.38, §4 by the Middlesex District Attorney and the State Police Department with the assistance of the Ayer Police Department (L.R. 56.1 Statement of Facts, "S.O.F." ¶8). The District Attorney's case file has been lost or inadvertently destroyed (S.O.F., ¶6)

From the outset, plaintiff's decedent, Kenneth Waters ("Waters") was a person of interest in the investigation (S.O.F., ¶15). Waters was arrested by Ayer Police on October 12, 1982, pursuant to directive of the prosecuting Assistant District Attorney (currently Massachusetts Superior Court Associate Justice) Elizabeth Fahey (S.O.F., ¶78).

Waters was convicted of Mrs. Brow's murder on May 12, 1983 and incarcerated (S.O.F., ¶102). His conviction was affirmed on appeal to the Supreme Judicial Court (Commonwealth v. Waters, 399 Mass. 708 (1987).

In 2001, Waters filed an unopposed motion for a new trial, based solely upon DNA evidence not available at the time of his trial, which established that he was not the source of the non-victim blood found at the crime scene (although his blood type was the same) (S.O.F., ¶2). Thereafter, the Commonwealth filed a nolle prosequi which stated:

> Based upon new DNA evidence of the presence of blood of an unknown person at the scene of the 1980 murder of Katarina Brow, the Commonwealth has agreed that, at a minimum, a new trial of the above indictments is warranted.
>
> At this time, there is insufficient evidence to proceed with a criminal prosecution against the defendant, Kenneth Waters, and as such, the Commonwealth has determined that, at this time, a nolle prosequi is in the interests of justice. The Commonwealth's investigation into the murder of Katarina Brow was and will continue (S.O.F. ¶1).

Waters was released from prison but remained a suspect in the Brow murder up to the point of his own death, as a result of substantial, inculpatory, non-blood evidence developed at trial, as described in detail herein (S.O.F. ¶4). The investigation of the crime for purposes of determining whether to re-try Waters revealed no police misconduct nor was the nolle prosequi predicated upon any evidence of same (S.O.F. ¶5).

This case therefore proceeds not on the basis of any discovery of police misconduct leading to Waters' release. Instead, it reflects post hoc scrutiny of a conviction upheld on appeal by the Supreme Judicial Court in order to unfairly hold the defendants liable for monetary damages.[1]

As set forth hereinafter, the plaintiff has failed to establish actionable individual or municipal misconduct leading to false arrest or an unfair trial, and the Town has produced herein compelling affirmative evidence negating plaintiff's claims. Specifically, the record evidence establishes that the Town of Ayer "policymaker" for purposes of §1983 analysis is its Board of Selectmen. (S.O.F. ¶¶145-8). The record further establishes that the Board of Selectmen was not

---

[1] Waters' prosecutor, Judge Fahey, is entitled to absolute prosecutorial immunity. None of the State Police Officials involved in the Brow prosecution have been sued.

deliberately indifferent to Ayer police misconduct, but instead, responded forcefully to misconduct of which it had notice, sending a strong message throughout the Ayer Police Department that misconduct would not be tolerated. (S.O.F. ¶¶149-156). Consequently, the Town's motion for summary judgment should be allowed.

II.     FACTS

The facts underlying this case are set forth in the Defendants' Statement of Material Facts Not in Dispute Pursuant to L.R. 56.1, filed herewith.

III.    ARGUMENT

A.      **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In civil procedure, summary judgment's role is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (C.A.1 (Mass.),1991) (citing, Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990)). In order to defeat a summary judgment motion, "the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would bear the burden of proof at trial." Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1171 (1st Cir. 1988). Under Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987), summary judgment is appropriate where the non-moving has the burden of proof and "fails to make a showing sufficient to establish the existence of an element essential to that party's case."

As the First Circuit has held, "[g]enuine issues of material fact are not the stuff of an opposing party's dreams. On issues where the nonmovant bears the ultimate burden of proof, he

must present definite, competent evidence to rebut the motion." Mesnick, 950 F.2d at 822.  For summary judgment purposes evidence must be competent and "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." Id. (citing, Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir.1989)).  As the plaintiff can make no such showing in this case, Officer Taylor is entitled to summary judgment as a matter of law.

### B. Standard for Municipal Liability

To establish liability on the part of the Town, the plaintiff must satisfy two basic elements: first, that Waters was harmed by a constitutional violation; and second, that the Town was responsible for that violation through something more than mere *respondeat superior*. Young v. City of Providence, 404 F.3d 4, 25-6 (1st Cir. 2005).  "The Supreme Court, concerned that municipal liability based on fault by the [Town] might collapse into de facto *respondeat superior*, has set a very high bar for assessing municipal liability." Young, 404 F.3d at 26. Thus, to establish liability on the part of the Town, the plaintiff must show that the alleged municipal action at issue constituted a policy or custom attributable to the Town.  Id.  In addition to establishing the existence of a municipal custom or policy, the plaintiff must also show that "(1) the municipal policy or custom actually [] caused [Waters'] injury, and (2) that the [Town] possessed the requisite level of fault, which is generally labeled in these sorts of cases as 'deliberate indifference.'" Young, 404 F.3d at 26 (quoting, County Commissioners of Bryan County v. Brown, 520 U.S. 397, 404 (1997)).

4

### C. The Town is Entitled to Summary Judgment because the Plaintiff cannot Establish an underlying Constitutional Violation

It is well settled that there can be no municipal liability unless the individual defendants have inflicted some constitutional harm. Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002). In this matter, for the detailed reasons set forth in the Memoranda in support of Nancy Taylor-Harris, William Adamson, Philip Connors and Arthur Boisseau's Motions for Summary Judgment, the plaintiff has failed to establish an underlying violation of Waters' constitutional rights. Therefore, the Town is entitled to summary judgment as a matter of law.

### D. The Town is Entitled to Summary Judgment Because there was no Deliberate Indifference on the Part of its Policymaker

Even if the plaintiff can establish some underlying violation of Waters' constitutional rights, the plaintiff cannot show that such violations were as a result of deliberate indifference on the part of the Town's official policymaker, the Board of Selectmen. Where, as here, "a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Board of the County Commissioners of Bryan County v. Brown, 520 U.S. 397, 405 (1997). "A showing of simple or even heightened negligence will not suffice." Brown, 520 U.S. at 407. Rather, the plaintiff must meet a stringent standard of fault by showing that the policymakers of the Town were deliberately indifferent to known or obvious consequences of their actions or inactions. Id. To meet this standard, the plaintiff must show that the Town's policymakers "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees." Id.

The identification of a policymaker for purposes of *Monell* liability is determined in accordance with state law.  Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989) (citing, City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)); Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). Under G.L., c. 41, §97, the Police Department of the Town was established by the Board of Selectmen, and the Selectmen appoint the Chief of Police, may remove the Chief and other officers for cause, and may make suitable regulations governing the department.  Consistent with the statute, the Board of Selectmen in the Town of Ayer at the time of Waters' arrest and prosecution, appointed the Chief of Police and approved his appointment of subordinate officers (S.O.F. ¶147).  The Board of Selectmen had ultimate authority over the Ayer Police Department, and it approved all policies developed by the Chief (S.O.F. ¶¶145, 146).  Therefore, as the Board of Selectmen was the final policymaker for the Ayer Police Department at all times relevant to this case, the plaintiff must show that the Board of Selectmen acted with deliberate indifference to Waters' constitutional rights.

In this matter, there is not one scintilla of evidence to suggest that the Board of Selectmen condoned or acquiesced in any misconduct within the Ayer Police Department.  First of all, it hired a Chief of Police with impeccable credentials in the person of Connors (S.O.F. ¶32). The Selectmen also aggressively and proactively responded to any suggestions of misconduct in the Ayer Police Department.  Specifically, Connors started an internal investigation into alleged police vandalism at Ties Construction (S.O.F. ¶149), and recommended the ultimate sanction of termination when the suspect officers refused to take polygraphs. (S.O.F. ¶¶150-152).  The Board of Selectmen sustained Connors' firing of the officers. (S.O.F. ¶153).  This action sent "a positive reinforcing message . . ." to the remaining Ayer police officers. (S.O.F. ¶156).

Under such circumstances, it cannot be seriously said that the Board of Selectmen were deliberately indifferent to the constitutional rights of the citizens of Ayer. Therefore, the Town is entitled to summary judgment as a matter of law.

### E. The Town is Entitled to Summary Judgment because the Plaintiff cannot Establish that an Unconstitutional Policy or Custom was the Moving Force Behind any Deprivation

In this matter, the plaintiff's Section 1983 claim against the Town also fails because the plaintiff has failed to identify an unconstitutional policy or custom of the Town which caused Waters' alleged injury. For purposes of municipal liability under Section 1983, the term "official policy" refers to formal rules or understandings that establish fixed plans of action to be followed under similar circumstances consistently over time. Pembaur, 475 U.S. at 480. A municipality may be held liable under the policy theory "where and only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur, 475 U.S. at 483.

Unlike a policy, which comes into existence because of the top-down affirmative decision of a policymaker, a custom develops from the bottom-up. Barron v. Suffolk County Sheriff's Dept., 402 F.3d 225, 236 (1st Cir. 2005)(quoting, Britton v. Maloney, 901 F.Supp. 444, 450 (D.Mass. 1995), *aff'd in part and rev'd in part on other grounds*, 196 F.3d 24 (1st Cir. 1999)). A custom is established when the plaintiff can show a course of conduct which is "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practices." Barron, 402 F.3d at 236-7 (quoting, Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989)). If a

7

custom is attributable to the municipality, the plaintiff must also show that the custom was the "cause and moving force behind the deprivation of constitutional rights." Id.

In this matter, the plaintiff asserts three theories of municipal liability in Counts V and VI of the Amended Complaint.  First, the plaintiff claims that: (a) APD officers systemically failed to disclose exculpatory evidence; (b) APD officers systemically committed and permitted witnesses to commit perjury; (c) APD officers routinely coerced, pressured and threatened witnesses; and (d) APD officers systemically failed to investigate leads pointing away from their primary suspects (Amended Complaint, ¶96).  Second, the plaintiff claims that the Town maintained a custom or policy of failing to screen or improperly hiring police officers (Complaint, ¶99).  Third, the plaintiff claims that the Town failed to train and/or supervise its police officers (Complaint, ¶99).

The plaintiff's allegations do not identify any policy of the Town requiring Ayer police officers to engage in misconduct of the type alleged in the Amended Complaint. Rather, it appears that the plaintiff is alleging the existence of a custom of misconduct in connection with criminal investigations.  The plaintiff, however, cannot establish the first element of a custom claim by showing a widespread pattern of unconstitutional misconduct by Ayer Police Officers to which the Board of Selectmen exhibited deliberate indifference.

It is well-settled that a single instance of unconstitutional conduct cannot suffice to establish a "pattern" of unconstitutional behavior of which the City's policymakers should have been aware. See Voutour v. Vitale, 761 F.2d 812, 820 n.5 (1985) (holding that previous "isolated incident" of excessive force and unlawful arrest by defendant officer "cannot form the predicate for the customary use of excess force"); Noel v. Town of Plymouth, 895 F.Supp. 346, 351 (D. Mass. 1995) (Saris, J.) (rejecting custom or policy claim premised upon "only three documented

8

incidents" of alleged police brutality – two of which were against the same officer). Rather, where courts have found the existence of an unconstitutional custom or policy, the plaintiff has presented evidence of far more widespread violations than are alleged in this case. See, e.g., Foley v. City of Lowell, 948 F.2d 10, 13 (1991) (excessive force plaintiff "presented a series of witnesses who laid various atrocities at the Department's doorstep," including one witness who had been beaten by the defendant police officer within six months of the incident involving plaintiff); Bordanaro, 871 F.2d at 1156-57 (plaintiff proved custom or policy of breaking down doors without warrant by showing that such practice had taken place on "numerous occasions," and that city provided officers with 12-pound sledgehammer for use in breaking down doors); Herrara v. Valentine, 653 F.2d 1220, 1225 (8th Cir. 1981) (plaintiffs proved 40 separate incidents of police misconduct); Lowers v. City of Streator, 627 F.Supp. 244, 247 (N.D.Ill.1985) (police were indifferent to complaints by rape victim who was subsequently raped again by the same perpetrator).

    Furthermore, it is well-settled that the mere filing of complaints or lawsuits is not sufficient evidence to substantiate a municipal custom claim. See Kinan v. City of Brockton, 876 F.2d 1029, 1034-35 (1st Cir. 1989); Strauss v. City of Chicago, 760 F.2d 765, 768-69 (7th Cir. 1985) (statistics of prior complaints insufficient to establish municipal liability because people often file complaints "for many reasons, or for no reason at all"); Bryant v. Whalen, 759 F. Supp. 410, 424 (N.D. Ill. 1991) (recitation of unsustained complaints of excessive use of force, without evidence that those complaints had merit, would not suffice to establish municipal liability). The reason that unadjudicated allegations of past misconduct are inadmissible is because introducing evidence of prior lawsuits or complaints that did not result in judgments or findings against the defendant "would inevitably result in trying those cases, or at least portions

9

of them, before the jury." Kinan, 876 F.2d at 1034. As such, it is well-settled that unproven allegations of misconduct cannot serve as a basis for suggesting that the Town deliberately ignored a known duty to act. Law v. Cullen, 613 F.Supp. 259, 262-3 (S.D.N.Y. 1985).

In this matter, the plaintiff here has failed to make "a showing of remotely comparable strength" to those cases where courts have found the existence of an unconstitutional custom or policy. Compare Noel, 895 F.Supp. at 352. Specifically, plaintiff's reliance on the Ties situation is unavailing to establish a custom of misconduct, in light of the Draconian sanction imposed on the police suspects by Chief Connors and the Board of Selectmen. Similarly, the complaint of Bruce Holdorff that Officers MacDonald and Taylor had filed a false report fails to advance plaintiff's case, since Chief Connors' aggressive orders that all parties be polygraphed yielded conflicting results precluding discipline (S.O.F. ¶¶157-160).

Further, no actionable custom and policy emerges from the Ayer Police Department's limited involvement in response to rape allegations made by Lisa Frawley against Officer Randall, an investigator of the Ties vandalism incident (S.O.F. ¶162). The Ayer Police Department did not bring charges against Randall (S.O.F. ¶169) and defendants Adamson and Taylor declined to become involved as primary investigators, (S.O.F. ¶¶167-8) in light of Taylor's concern that Frawley's charges might comprise retaliation against Randall (S.O.F. ¶166). Reiter has not opined that the Ayer Police Department improperly influenced the Acton Police Department to bring charges, and has deemed Taylor's conduct "very appropriate." (S.O.F. ¶172).

Furthermore, apart from the Ties matter, which was aggressively handled by the Board, there is no evidence that the Board was aware of any alleged misconduct with respect to the Randall and/or Holdorff matters. Indeed, no misconduct was found after an investigation of the

Holdorff matter by the Chief, and there were no allegations of misconduct with respect to the Stanley Randall matter until he filed his lawsuit <u>after</u> Waters was convicted. This suit, however, cannot support the plaintiff's *Monell* claim as it would not have served as notice during the relevant time period and because the case ultimately settled. <u>c.f.</u> <u>Kinan</u>, 876 F.2d at 1034-5. As notice is the key element to a municipal custom claim, <u>Jonielunas</u> v. <u>City of Worcester Police Dept.</u>, 338 F.Supp.2d 173, 177 (D.Mass. 2004) (a plaintiff must demonstrate ". . . that the governmental entity's policymaking officials, <u>after having notice of the misconduct</u>, remained deliberately indifferent to or tacitly authorized continuation of that misconduct . . ." (emphasis supplied)), the Town is entitled to summary judgment as a matter of law.

Finally, even the plaintiff's own police practices expert will <u>not</u> opine that the "environment" within the Ayer Police Department resulted in an unfair trial of Waters (S.O.F. ¶174). Therefore, there can be no municipal liability. <u>City of Springfield, Mass</u>. v. <u>Kibbe</u>, 480 U.S. 257, 268 (1987) ("[t]he limits on municipal liability imposed by § 1983 require more careful analysis, in each instance, of the municipal policy alleged in the case, and whether a jury reasonably could conclude that the city's conduct was the moving force in bringing about the constitutional violation").

### F.     **The Town is Entitled to Summary Judgment on the Improper Hiring Claim**

In Count VI, the plaintiff claims that the Town had a custom or policy of failing to screen and improperly hiring police officers (Amended Complaint, ¶99). In order to succeed on an improper hiring claim, the plaintiff must show that "if the [Town] had performed a full review of the officer's record, the particular constitutional violation committed by the hired officer would have been a 'plainly obvious consequence" of the hiring decision by the municipality." <u>Young</u>, 404 F.3d at 30 (quoting, <u>Brown</u>, 520 U.S. at 412-13). "This standard is exceptionally stringent."

11

Id.  Moreover, the First Circuit Court of Appeals has stated that "[a] pattern of previous bad hiring decisions leading to constitutional violations (perhaps of the same type as the one at issue) would likely be necessary to get one outside the 'single incident' analysis in *Brown*."  Young, 404 F.3d at 31 (citing, Brown, 520 U.S. at 409-11).

Absent notice that any of the defendant officers was likely to engage in the type of misconduct alleged in the complaint, the Town cannot be said to have been deliberately indifferent to a risk that these officers would violate the plaintiffs' rights in this manner.  Febus-Rodriguez, 14 F.3d at 93 (it is "[a]n important factor ... whether [the supervisor] was put on notice of behavior which was likely to result in the violation of ... constitutional rights"); Brown, 520 U.S. at 412, 117 S.Ct. at 1392 ("finding of culpability … must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff.  The connection between the background of the particular [officer] and the specific constitutional violation alleged must be strong.''  (emphasis in original)).

Here, there is absolutely no evidence of anything in the backgrounds of the defendant officers to suggest they would undertake the constitutional violations plaintiff alleges.  Compare, Brown, 520 U.S. at 413-14, 117 S.Ct. at 1393 (holding there was an insufficient causal connection for an officer's alleged excessive force behavior and previous criminal charges for assault and battery, resisting arrest, public drunkenness, various driving-related offenses, including nine moving violations and a charge of driving with a suspended license and control of a vehicle while intoxicated"); Crete v. City of Lowell, 418 F.3d 54, 66 (1st Cir. 2005) (quoting, Young v. Providence, 404 F.3d 4, 30 (1st Cir.2005) (holding "[t]he process used to investigate the background of Ciavola was reasonable: it revealed the past conduct which Crete asserts links the hiring of Ciavola with his use of excessive force.  'Even when an applicant's background

12

contains complaints of physical violence, including acts of aggression and assault, this may still be insufficient to make a City liable for inadequate screening of an officer who then uses excessive force'"). In this matter, there is no evidence of any proven, or even unproven, allegations of any type of misconduct by the defendant officers prior to being hired in Ayer, and the plaintiff may not rest on mere unsupported allegations to support her improper hiring claim. Roadmaster Industries, Inc. v. Columbia Mfg. Co., Inc., 893 F.Supp. 1162, 1165 (D.Mass.,1995) (citing, Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 181 (1st Cir.1989)) ("[t]he nonmovant may not defeat a properly supported motion for summary judgment by relying on mere allegations"). Therefore, the Town is entitled to summary judgment as a matter of law.

Not only has the plaintiff failed to adduce any evidence of prior misconduct as to the defendants, but as to the primary players in this dispute, it is clear that Chief Connors and Officer Taylor were qualified for the work they were hired for. Chief Connors had extensive criminal justice experience prior to his appointment as Chief in Ayer in 1982 (S.O.F ¶47). After graduating from the Police Academy in 1969, Chief Connors worked for eleven years at the Southborough Police Department, serving nine years as a patrol officer and two years as a sergeant (Id.). In Southborough, Chief Connors worked on felony investigations, including homicides and rapes (Id.). During his tenure in Southborough, the Police Department adopted the Massachusetts Police Institute ("MPI") Model Policy Manual (Id.). In fact, Chief Connors was actively involved in the development of MPI's first manual of rules, regulations, policies and procedures (Id.). The MPI manual was prepared for the Massachusetts Chiefs of Police Association in the 1970's and updated in the 1980's (Id.). After his tenure in Southborough, Chief Connors was hired as chief of the Rowley Police Department, overseeing all investigations, including homicides. His extensive background as a police officer, sergeant and

chief prior to his appointment in Ayer in 1982 demonstrate that there was no improper hiring with respect to Chief Connors.

Officer Taylor had professional and police experience prior to her employment with the Ayer Police Department in 1977 (S.O.F ¶49). Officer Taylor worked as a newspaper reporter in Lowell and Ayer reporting on police news. (Id.) In 1975, Officer Taylor began her police career at the Pepperell Police Department as a dispatcher, rape investigator and special police officer. (Id.) In 1977, Officer Taylor joined the Ayer Police Department to work as a rape investigator, clerk and special police officer, the same position she held in Pepperell, MA. (Id.) As such, there can be no causal connection between the alleged failure to train and the alleged constitutional violation suffered by Waters. Therefore, the Town is entitled to summary judgment as a matter of law as to plaintiff's improper hiring claim.

### G. The Town is Entitled to Summary Judgment on the Failure to Train/Supervise Claim

In Count VI, the plaintiff further alleges that the Town failed to properly train and supervise its police officers (Amended Complaint, ¶99). "The liability criteria for 'failure to train' claims are exceptionally stringent." Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir.1998) (citing City of Canton, 489 U.S. at 388-89, 109 S.Ct. at 1204-05). "Inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Meehan v. Town of Plymouth, 167 F.3d 85, 91 (1st Cir. 1999). To demonstrate the "deliberate or conscious choice" which is required for a failure to train claim under §1983, a plaintiff must establish that the municipality knew that training to prevent the particular constitutional violations asserted here was required, and deliberately or consciously chose not to provide it. Hayden, 134 F.3d at 456; Meehan v. Town of Plymouth, 167 F.3d 85, 91 (1st Cir. 1999). "Deliberate indifference will

14

be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir. 1995).

The plaintiff does not offer any evidence "that these specific practices violated a legally mandated standard" or "were inferior by the standards of the profession." Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92-93 (1st Cir. 1994). Indeed, the training of Officer Taylor in this case (S.O.F. ¶31) was superior to that which this Court has held sufficient to preclude a failure-to-train claim. See, e.g., Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989, 891 F.2d at 380-81 (failure-to-train claim failed where evidence showed that defendant police officer received only four hours of constitutional law training at police academy; did not officially receive notice of changes in the law; was not aware of any incentives for pursuing further training, and had never received a policy manual); Swain v. Spinney, 117 F.3d 1 (1st Cir.1997) (rejecting failure-to-train claim in unlawful strip search case, where every officer was supplied with strip search policy guidelines, including periodic updates – even though not all officers had a consistent understanding of those materials).

Reiter "did not find this to be from the traditional sense a negligent training issue." (S.O.F. ¶49). Indeed, Mr. Reiter opined that both Chief Connors and Officer Taylor were sufficiently trained to handle the interview of Brenda Marsh (S.O.F. ¶¶47, 49). Reiter specifically agreed "that the specific training that Nancy Taylor-Harris took in order to become a rape investigator was on point and apt for the task she undertook in interviewing Ms. Marsh." (S.O.F. ¶49).

Even if the plaintiff can show some failure on the part of the Town to provide adequate training to its Officers, the plaintiff cannot show a direct causal link between the alleged failure

to train and the alleged constitutional deprivation. In this regard, this case is similar to Fernandez v. Leonard, 963 F.2d 459, 468 (1st Cir. 1992), where the First Circuit Court of Appeals found that the municipality could not be held liable for failing to train its officers in hostage negotiation where "at all times relevant to the plaintiffs' suit, [the officers] were acting under the supervision of FBI Agent Leonard, a trained and experienced expert in hostage situations." Here, Officer Taylor was always closely supervised by Chief Connors, ADA Fahey and State Police Detective Dwyer. Indeed, Fahey was unconcerned about Taylor's training because the State Police was in charge of the investigation. (S.O.F. ¶144).

When Taylor first interviewed Ms. Marsh, Chief Connors was present (S.O.F. ¶44); when she interviewed Marsh the second time, State Police Lieutenant Dwyer was present (S.O.F. ¶70); at both Perry interviews, ADA Fahey was present (S.O.F. ¶¶90, 93); and when Waters was arrested, Officer MacDonald was present (S.O.F. ¶¶84, 85). Moreover, Officer Taylor only sought the arrest warrant and the criminal complaint after being instructed to do so by ADA Fahey. (S.O.F. ¶78). Indeed, there is nothing in the summary judgment record to suggest that Officer Taylor was not closely and appropriately supervised in all relevant aspects of this case. Therefore, the Town of Ayer is entitled to summary judgment as a matter of law.

IV.    CONCLUSION

    For the foregoing reasons, the Town of Ayer is entitled to summary judgment as a matter of law as to Counts V and VI.

                   DEFENDANT
                   TOWN OF AYER,
                   By its attorneys,

                   /s/ Joseph L. Tehan, Jr.
                   Joseph L. Tehan, Jr. (BBO # 494020)
                   Gregg J. Corbo (BBO # 641459)
                   Kopelman and Paige, P.C.
                   101 Arch Street, 12th Floor
                   Boston, MA  02110
                   (617) 556-00034

343069/01907/0053