UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____ )
BETTY ANNE WATERS, as ) 
Administratrix of the Estate of )
KENNETH WATERS, )
        Plaintiff, )
       v. ) Case No. 04 CV 10521 (GAO)(JGD)
 )
TOWN OF AYER, NANCY TAYLOR- ) **PLAINTIFF'S MEMORANDUM**
HARRIS, in her individual capacity, ) **IN OPPOSITION TO**
ARTHUR BOISSEAU, in his individual ) **DEFENDANTS' MOTION TO**
capacity, WILLIAM ADAMSON, in his ) **STRIKE THE REPORTS OF**
individual capacity, and PHILIP L. ) **PLAINTIFF'S FINGERPRINT**
CONNORS, in his individual capacity, ) **EXPERT, RON SMITH**
 )
       Defendants. )
_____ )

## INTRODUCTION

Defendants have moved to strike the reports of plaintiff Betty Anne Waters' fingerprint expert, Ron Smith, on the grounds that "the issue of fingerprints in this case is a 'red herring,'" (Doc. 105 at 1.) Nothing could be further from the truth. In fact, as set forth in plaintiff's memoranda in opposition to the summary judgment motions of defendants Nancy Taylor, Arthur Boisseau, Philip Connors, and Town of Ayer, and her statement of disputed material facts ("SDF"), Ayer Police Department ("APD") reports reflected that usable fingerprints were collected at the scene, and had been used to eliminate suspects including Kenneth Waters long before he was arrested; Taylor and Boisseau knew, but withheld this critical fact from prosecutor Elizabeth Fahey

and Waters' defense counsel. (*See* SDF ¶¶ 24, 72-117, 227-52, 343, 348.)[1] Fingerprints are not only relevant, they are critical evidence of Waters' innocence and defendants' violations of Waters' constitutional rights.[2] As the relevance of fingerprint evidence is set forth comprehensively in plaintiff's summary judgment filings, this memorandum responds solely to defendants' remaining argument that portions of Mr. Smith's report are not properly the subject of expert testimony.

## BACKGROUND

Defendants do not challenge Mr. Smith's expertise in the arena of fingerprint examination, comparison and analysis, nor could they. Mr. Smith started as a fingerprint technician for the Federal Bureau of Investigation in 1972, went on to work as a fingerprint examiner at the Alabama Bureau of Investigation for five years, then operated as a Fingerprint Examiner III at the State of Mississippi Crime Laboratory from 1978 to November 1987, before being promoted to Associate Director, a post he retained until 2002, when he formed a private forensic consulting firm, Ron Smith & Associates, Inc. (*See* Doc. 105-13 (also attached as Pl. S.J. Ex. 57) at 15-16 (Smith Curriculum Vitae).)

Mr. Smith is a Diplomate of the International Association for Identification ("IAI") as both a Certified Latent Print Examiner and as a Certified Senior Crime Analyst. (*Id.* at 18.) He has been

---

[1] All of plaintiff's aforementioned summary judgment filings are incorporated herein by reference. The factual allegations in defendants' motion to strike (*see* Doc. 105 at 2-6) are disputed for the reasons set forth in the SDF and exhibits cited therein. Likewise, defendants' discussion of the legal standards they claim apply to plaintiff's claims is irrelevant to this motion to strike; the applicable legal standards are set forth in plaintiff's summary judgment memoranda.

[2] Evidence is relevant if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "[T]he threshold for relevance is very low under Federal Rule of Evidence 401." *U.S. v. Cotto-Aponte*, 30 F.3d 4, 6 (1st Cir. 1994) (citation and internal quotations omitted).

qualified as an expert fingerprint witness in state and federal courts more than 500 times. (*Id.* at 16.) He has lectured and taught fingerprinting techniques across the country since 1989 and has held numerous high-ranking posts in the IAI. (*Id.* at 17.) Finally, in 2001, the IAI awarded him the John A. Dondero Memorial Award, the highest award available within the field of forensic identification, and one of 20 ever issued. (*Id.* at 18.)

## LEGAL STANDARD

If helpful to the jury's understanding of the issues in the case, experts qualified on account of their "knowledge, skill, experience, training or education," may testify as to their opinions "if 1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. In making the admissibility determination, "[t]he inquiry envisioned by Rule 702 is ... a flexible one," *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993), and must be "tied to the facts of a particular case," *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 150 (1999). Moreover, "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." Fed. R. Evid. 703.

## ARGUMENT

I.  **Mr. Smith Has Ample Foundation to Opine on the Usual and Customary Practices Among Fingerprint Examiners for Reporting their Results in the 1980's**

Defendants contend that Mr. Smith improperly opines on a disputed factual question in stating that "It appears that Corporal Baliunas followed his usual and customary practices in this case which would have been to compare the known fingerprints of Kenneth Waters with the previously unidentified latent prints in this case and to have notified Chief Adamson of the Ayer PD

as the results of those comparisons. This method of recording comparisons performed and orally notifying investigating agencies of the results was commonplace in 1980 by the majority of agencies conducting these types of analytical examinations." (Doc. 105 at 12.) However, Mr. Smith is not opining on an issue of fact. Rather, taking Mr. Baliunas' testimony as true, as any expert is free to do, Mr. Smith merely opines that the custom and practice described by Baliunas was indeed the custom and practice that was widespread among law enforcement agencies conducting fingerprint examinations in 1980. Given the breadth of Mr. Smith's experience, defendants can hardly dispute his foundation to so opine.

Indeed, invoking nationally accepted law enforcement practices and standards is precisely what experts such as Mr. Smith do in § 1983 actions every day; it just so happens that Mr. Smith's opinion is that Baliunas acted consistently with those practices, whereas the typical police practices expert testifies to a departure from them. *See Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 10 (1st Cir. 2005) (affirming admission in *Monell* failure-to-train action, over defendants' objections, of testimony of "Dr. James Fyfe, an expert on police tactics, who offered expert testimony that both [defendants' actions] were contrary to accepted police standards in a situation like the one at issue. . ."); *id.* at 19, 28-29 (holding that police practices expert's testimony regarding what "*minimally competent* police administrators have long recognized" . . . "could lead the jury to conclude that it was common knowledge within the police community" that certain procedures were required, and that failure to follow such procedures "support[s] a view that the City *knew* its [procedures were] seriously deficient") (emphasis added); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 564, 565 (1st Cir. 1989) (reviewing evidence supporting plaintiff's verdict at trial and noting with approval that, "[b]ased on a review of the pertinent facts, [expert Lou] Reiter concluded

that Alvarez' supervision and discipline of Soto was totally deficient... Reiter maintained that there were other glaring inadequacies in the disciplinary system employed by Cartagena").[3]

## II. Mr. Smith Has Ample Foundation to Opine that Nancy Taylor's Grand Jury Testimony Was False

Defendants next seek to strike Mr. Smith's opinions that Taylor "was clearly incorrect" when she told the jury there were no usable prints collected at the scene and that they were all "smeared," and that "her answers to the juror and the prosecutor were false." (Doc. 105 at 12, 13.) First, Mr. Smith was careful not to opine as to Taylor's knowledge or intent in testifying falsely. Rather, he merely reviewed the available fingerprint evidence and rendered an opinion as to whether there were in fact usable, unsmeared prints collected at the Brow crime scene. This is not a matter that lay witnesses could appreciate simply by looking at photographs of latent prints. For example, Baliunas testified in his deposition that while the copies of latent fingerprint enlargements from the state police file were of such poor quality as to make the prints appear unreadable, print examiners work from the best quality print available and, he was in fact able to exclude suspects from the

---

[3] *See also Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir. 2005) (in § 1983 case, "the plaintiff's proffered expert testimony that [the officer's] tactics violated standard police practices, while not dispositive, may also be deemed relevant"); *Young,* 404 F.3d at 10; *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (holding that "testimony of 'an expert on proper police procedures and policies' [is] relevant and admissible" in a § 1983 action); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908-09 (6th Cir. 2004) (in § 1983 cases, "[c]ourts have permitted [police] experts to testify about discrete police-practice issues when those experts are properly credentialed and their testimony assists the trier of fact"); *Billington v. Smith*, 292 F.3d 1177, 1185-86 (9th Cir. 2002) (in § 1983 case, relying on police practices expert's testimony that "the officers' tactics were entirely wrong [and] that no reasonable officer would have used them")*; Larez v. City of Los Angeles*, 946 F.2d 630, 635-36 (9th Cir. 1991) (in § 1983 case, quoting police practices expert's testimony that certain procedures were "totally inappropriate," not "in accord with generally accepted police custom and practice," that he was "offended by" officers' conduct, and that "any reasonable police administrator would be offended by it"); *see also Spina v. Forest Preserve of Cook County*, No. 98 C 1393, 2001 WL 1491524, at *13 (N. D. Ill. Nov. 23, 2001) ("[T]o the extent that Chief Harrington confines her testimony to her opinion that the District's conduct was inappropriate based upon generally accepted police custom and practice, her testimony is not an inappropriate legal conclusion.").

5

enlargement of the original photographic negative he made of the latent prints in this case. (Pl. S.J. Ex. 1 at 91-93.) Based on his knowledge of the print evidence, defendant Boisseau, also a trained fingerprint examiner, likewise found that the prints in this case were not smeared. (Pl. S.J. Ex. 3 at 134-38.) Mr. Smith's opinion that the prints were not smeared is supported by his own examination of the latent fingerprint evidence in Baliunas' original file, will be helpful to the jury, and is entirely proper.

### III. The Filing of Mr. Smith's Supplemental Report Was Proper

Rule 26 requires that, where export reports have been filed, parties "shall supplement these disclosures" in the event they learn "that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1); *see also* Fed. R. Civ. P. 26(a)(2)(C). That is precisely what plaintiff did in filing the August 27, 2007 supplemental report of Mr. Smith, who was able to render additional opinions based on new analysis that he had not previously had the opportunity to conduct. As such, the report was properly filed, and is admissible. *See Poulis-Minott v. Smith*, 388 F.3d 354, 358-59 (1st Cir. 2004) (affirming district court's denial of motion to dismiss expert reports filed after expert discovery deadline had passed, given substantial justification that evidence supporting reports was only belatedly discovered). Moreover, defendants have not even attempted to argue that they are prejudiced by the supplemental report. *See Diomed, Inc. v. AngioDynamics, Inc.*, 450 F. Supp. 2d 130, 137 (D. Mass. 2006) (denying motion to strike expert report that, after discovery deadline, offered entirely new theory of liability, because movant failed to demonstrate prejudice).

After 28 years, plaintiff has attempted to develop the facts of the crime and the investigation

as comprehensively as possible, notwithstanding defendants' attempts to obstruct and suppress the truth. Mr. Smith's supplemental report merely ensures that the summary judgment record accurately reflects the truth of the fingerprint evidence as it is now known.

## CONCLUSION

For the foregoing reasons, as well as those set forth in plaintiff's memoranda and statement of disputed facts in opposition to defendants' summary judgment motions, the motion to strike Ron Smith's reports should be denied in full.

Dated: May 27, 2007    Respectfully submitted,
    New York, NY

/s/ Deborah L. Cornwall
Barry C. Scheck (BS 4612)
Deborah L. Cornwall (DC 2186)
Monica R. Shah (MS 9846)
COCHRAN NEUFELD & SCHECK, LLP
99 Hudson Street, 8th Floor
New York, NY 10013
Tel. (212) 965-9081 / Fax (212) 965-9084

Robert N. Feldman
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA 02210-1108
Tel. (617) 307-6130 / Fax (617) 307-6101

*Attorneys for Plaintiff Betty Anne Waters*

**CERTIFICATE OF SERVICE**

      I, Monica R. Shah, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via overnight delivery to those indicated as non-registered participants on May 27, 2008 as well as:

Joseph L. Tehan, Jr.
Gregg J. Corbo
Jeffrey T. Blake
Kopelman & Paige, PC
101 Arch Street, 12th Floor
Boston, MA 02110

                                                /s/ Monica R. Shah
                                                Monica R. Shah