# EXHIBIT A

COPY

Volume 1, Pages 1-254

Exhibits: 1-6

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - -

DENNIS MAHER,

     Plaintiff

v.                        Docket No. 06CA10514 RGS

TOWN OF AYER, ET AL.,

     Defendants

(FULL CAPTION NEXT PAGE)

- - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF PHILIP L. CONNORS

Friday, May 30, 2008, 10:10 a.m.

Goodwin Procter LLP

53 State Street - 17th Floor

Boston, Massachusetts


- - - - Reporter: Kathleen Mullen Silva, RPR, CRR - - - -

ksilva@fabreporters.com   www.fabreporters.com

Farmer Arsenault Brock LLC

50 Congress Street, Suite 415

Boston, Massachusetts 02109

617.728.4404   fax 617.728.4403

207

```
 1   was told he could help my investigation.
 2       Q.  Could you tell me what you're referring to
 3   when you say "the rape charge"?
 4       A.  Yes.  There was a police officer who had
 5   been charged with raping a woman.
 6       Q.  Do you recall the name of that police
 7   officer?
 8       A.  Yes.
 9       Q.  What was it?
10       A.  Stanley Randall.
11       Q.  Why were you involved in investigating that
12   particular -- were you involved in investigating
13   that rape charge?
14       A.  There was no formal complaint of that.  It
15   was just information furnished to me.
16       Q.  About the rape charge?
17       A.  Yes.
18       Q.  What information was furnished to you?
19       A.  The officer that had been charged felt that
20   Nancy Taylor had been involved in that, that
21   incident where he was charged.
22       Q.  What did you do?
23       A.  I asked him what he had for any evidence or
24   possible evidence, and I believe I might have --
```

1  that was the general thing.  I also spoke to some
2  other people.
3      Q.  Who did you speak with?
4      A.  An attorney who had represented Officer
5  Randall in that case.
6      Q.  Other than Randall and his attorney, who
7  else did you speak with?
8      A.  I don't recall now.
9          MS. ENGLISH:  One moment.
10     Q.  Did you determine whether Randall's
11 accusation was warranted?
12         MR. TEHAN:  Objection.
13     A.  There was no evidence to support his
14 feeling.
15     Q.  When you were police chief at the Ayer
16 Police Department, who was in charge of discipline
17 at the Ayer Police Department?
18     A.  In part it was the police chief and the
19 board of selectmen.
20     Q.  What disciplinary procedures were in place
21 at the Ayer Police Department in 1983 and 1984?
22         MR. TEHAN:  Object to disciplinary
23 procedures.  If you understand what it means, please
24 answer.

244

1    Q.   I'd like to refer you to the second page.
2  What is this document?
3    A.   This is a police report supplement.
4    Q.   I'd like to direct you to the portion that
5  states "Jack told us about when he arrested someone
6  for possession of marijuana.  If the person arrested
7  had a lot of marijuana while being booked at the
8  station, they would go to their locker, take some
9  marijuana from the bag of the persons being charged
10 and put in a bag in their own locker to be used for
11 their own personal use.  The rest of the marijuana
12 would then be tagged as evidence and used against
13 the person arrested.  Jack said that he, Lenny,
14 Adamson, Pugh and MacDonald were doing this on a
15 regular basis."  Did I read that correctly?
16   A.   Yes.
17   Q.   Have you ever seen this document before?
18   A.   I don't recall.
19   Q.   Do you recall hearing about the allegations
20 that I just read?
21   A.   Some of them, yes.
22   Q.   Did you investigate the allegations?
23   A.   Yes.
24   Q.   Which allegations did you investigate?

```
                                                        245
 1      A.    What's here about Dennis MacDonald, Nancy
 2  Taylor and some additional information.
 3      Q.    What's the allegation about Nancy Taylor?
 4      A.    Well, on the first page McAdam supposedly
 5  said that in his opinion, we should keep an eye on
 6  Nancy Taylor because she is probably bringing
 7  information from the PD back to ex-Chief Adamson.
 8      Q.    How did you investigate?
 9      A.    I interviewed McAdam.
10      Q.    And did you reach any conclusions as a
11  result of your investigation?
12      A.    Yes.
13      Q.    And what were your conclusions?
14      A.    He had no specific incidents that he could
15  testify to.
16      Q.    Did you investigate the allegations about
17  drugs?
18      A.    Yes.
19      Q.    Did you investigate the allegations that I
20  read on page 2 about drugs?
21      A.    Yes.
22      Q.    How did you investigate those allegations?
23      A.    I interviewed McAdam.
24      Q.    And what happened as a result of your
```

246

1  investigation?
2      A.   Well, he could not give me any specifics
3  about this information and some additional
4  information.
5      Q.   Other than interviewing McAdams, did you do
6  any other investigation?
7      A.   Yes.
8      Q.   What did you do?
9      A.   I spoke to both Taylor and MacDonald about
10 the allegation.
11     Q.   The allegations about taking marijuana?
12     A.   Yes, and some other things.
13     Q.   What were the other things?
14     A.   That Taylor was involved in what Officer
15 Randall described being framed with the rape charge
16 and that McAdam knew much more about Ties and much
17 more about that rape charge against Randall and the
18 belief was, from Officer Randall and others, that if
19 I personally spoke with McAdam, that he probably
20 would come clean and give details that I needed to
21 proceed.
22     Q.   Regarding the allegations about marijuana,
23 other than speaking with Taylor and McAdam, did you
24 do any other investigation?

247

1       MR. TEHAN:  I think he said he spoke to
2  Mr. MacDonald.
3       A.   Yes.  I spoke to Officer MacDonald.
4       Q.   In addition to those three individuals --
5  in addition to speaking to those three individuals,
6  did you do any other investigation as far as this
7  marijuana allegation?
8       A.   Yes.
9       Q.   What else did you do?
10      A.   I spoke to other members of the department
11 about it.
12      Q.   What did you learn through that?
13      A.   No one had any specifics to back up any of
14 the allegations here and other ones also.
15      Q.   Did other officers have similar suspicions?
16      A.   Yes.
17      Q.   What did you do?  I'm sorry.  Other than
18 what you've just described to me, did you do
19 anything else to investigate the marijuana
20 allegation?
21      A.   I don't recall what else was done, what I
22 did.
23      Q.   Did you reach any conclusions after your
24 investigation?

248

1    A.   Yes.
2    Q.   What were your conclusions?
3    A.   There was no evidence to support mandatory
4  polygraphs or charges or convening a grand jury.
5    Q.   Do you know who Ernest Downing is?
6    A.   Yes.
7    Q.   Who is Ernest Downing?
8    A.   Ernest Downing was a former member of the
9  Ayer Police Department, and he was a reporter in
10 Ayer.
11   Q.   Do you know if he was ever charged with a
12 crime?
13   A.   I don't recall that he was.
14   Q.   Did you hear that Mr. Maher was exonerated?
15   A.   I heard that the charge was dropped against
16 him or the case.  I don't know the exact details,
17 but that the charge was dropped against him, in
18 essence, and the conviction removed.
19   Q.   Did you hear anything more about why the
20 case or charges were dropped?
21   A.   No.
22   Q.   So you did not hear anything about DNA
23 testing on Dennis Maher?
24   A.   I don't recall about DNA testing.